1  Jeffrey B. Isaacs, Esq., SBN 117104
2  Jerome H. Friedberg, Esq., SBN 125663
   Amanda R. Touchton, Esq., SBN 220430
3  **ISAACS | FRIEDBERG LLP**
   633 West 5th Street, 28th Floor
4  Los Angeles, California 90071
5  Telephone (213) 223-2299/Facsimile (213) 223-2298
6  jisaacs@ifcounsel.com

7  Attorneys for Plaintiffs

8                    **UNITED STATES DISTRICT COURT**
9
                     **CENTRAL DISTRICT OF CALIFORNIA**
10

11 JUDITH ALLEN,                    ) Case No.  14-CV-02721
12   an individual;                 )
   KAREN AWALD,                     )       **COMPLAINT FOR:**
13   an individual;                 )
   PHYLLIS BARNES,                  )   **1)   BREACH OF  FIDUCIARY**
14   an individual;                 )        **DUTY;**
15 ADRIANNA CARRERA,                )
     an individual;                 )   **2)   CONVERSION;**
16 MARIAN CONNER,                   )
     an individual;                 )   **3)   UNFAIR BUSINESS**
17 ALBA CORDON,                     )        **PRACTICES (CAL BUS. &**
18   an individual;                 )        **PROF. CODE § 17200);**
   MARY DAWSON,                     )
19   an individual;                 )   **4)   MONEY HAD AND**
   ANGELA DRAUGHN,                  )        **RECEIVED;**
20   as Legal Guardian for          )
21   Donna Peters;                  )   **5)   ACCOUNTING; and**
   RITA HREN,                       )
22   an individual;                 )   **6)   DECLARATORY RELIEF.**
23 HORACE GILLIAM,                  )
     as Executor of the Estate of   )       **DEMAND FOR JURY TRIAL**
24   Gail Gilliam;                  )
25 DONNA LEHNHARDT,                 )
     an individual;                 )
26 DOROTHY MALLETTE,                )
27   an individual;                 )
28

---

**COMPLAINT**

NAN MAURY,                          )
  an individual;                  )
LILLIAN MEEKS,                      )
  an individual;                  )
BARBARA NORVELL,                    )
  an individual;                  )
REVA ORR,                          )
  an individual;                  )
PATRICIA PEASE,                     )
  an individual;                  )
MURIEL PITSINGER,                   )
  an individual;                  )
VIOLA PLIESEIS,                     )
  an individual;                  )
JOYCE PODHAYSKI,                    )
  an individual;                  )
FORTUNATO SOLIS,                    )
  as Executor for the Estate of   )
  Mary Solis;                     )
ANNA SOLOMON,                       )
  an individual;                  )
SUE STRANDRIFF,                     )
  an individual;                  )
TENA VALENTINE,                     )
  an individual; and              )
CHARLENE WEINMANN,                  )
  an individual,                  )
                                    )
      Plaintiffs,            )
                                    )
     vs.                      )
                                    )
GIRARDI | KEESE,                    )
  a California partnership;       )
THOMAS V. GIRARDI;                  )
  an individual; and              )
JAMES G. O'CALLAHAN,                )
  an individual,                  )
                                    )
     Defendants.            )
_____)

1

**COMPLAINT**

Plaintiffs Judith Allen; Karen Awald; Phyllis Barnes; Adrianna Carrera; Marian Conner; Alba Cordon; Mary Dawson; Angela Draughn as Executor of the Estate of Donna Peters; Rita Hren; Horace Gilliam, as Executor of the Estate of Gail Gilliam; Donna Lehnhardt; Dorothy Mallette; Nan Maury; Lillian Meeks;  Barbara Norvell; Reva Orr; Patricia Pease; Muriel Pitsinger; Viola Plieseis; Joyce Podhayski; Fortunato Solis as Executor for the Estate of Mary Solis; Anna Solomon; Sue Strandriff; Tena Valentine and Charlene Weinmann (collectively, "Plaintiffs"), complaining of the above-named Defendants, allege as follows:

## I.    INTRODUCTION

1.    Plaintiffs are elderly women who were prescribed pharmaceutical medications by their physicians and subsequently developed cancer and the representatives of the estates of women who were similarly situated and are now deceased.

2.    Between in or about 2005 and December 2013, Plaintiffs were represented in individual personal injury actions against manufacturers of the pharmaceuticals ("Personal Injury Actions") by Defendants, the Los Angeles, California law firm of Giradi | Keese and attorneys Thomas V. Girardi and James G. O'Callahan (collectively, "Defendants").  These cases were consolidated were other similar lawsuits into a Multi-District Litigation ("MDL") entitled *In Re Prempro Products Liability Action*, Case Number 03-CV-01507 – BRW, MDL 1507.

3.    In or about 2011, Defendants settled the Personal Injury Actions on behalf of Plaintiffs.  They did not, however, disclose to Plaintiffs the terms of the settlement, the aggregate settlement amount or the amount for which they had settled each Plaintiff's action.

4.    In subsequent correspondence with Plaintiffs, Defendants misrepresented the amount that each Plaintiff's case had settled for and the status of the distribution of her settlement funds.

5.      Without the knowledge or consent of Plaintiffs, and contrary to Defendants' written representations, Defendants wrongfully retained at least six (6) percent of the entire settlement fund.

6.      In or around late 2013, Plaintiffs, through new counsel, made multiple written requests to Defendants for their client files and an accounting of their settlement proceeds.

7.      In violation of their legal and ethical duties to Plaintiffs, Defendants refused to provide Plaintiffs with either the documents they had requested or an accounting of their settlement proceeds.

8.      Stonewalled by Defendants in their efforts to obtain their complete client files and a full accounting of their settlement proceeds, and concerned that Defendants had materially misrepresented the amount and status of their settlements, Plaintiffs terminated Defendants as their counsel in or about December 2013. Even after they were terminated, Defendants refused to give Plaintiffs their full case files, withholding the documents necessary for Plaintiffs to determine the amount their actions had settled for and the proper distribution of their settlement funds.

9.      In this action, Plaintiffs are seeking their full case files, an accounting of the settlement funds, restitution of misappropriated settlement proceeds, disgorgement of legal fees paid to Defendants and compensatory and punitive damages.

## II.    THE PARTIES

10.     Plaintiff Judith Allen ("Allen") is an individual and a citizen of Mentor, Ohio.

11.     Plaintiff Karen Awald ("Awald") is an individual and a citizen of Walkerton, Indiana.

12.     Plaintiff Phyllis Barnes ("Barnes") is an individual and a citizen of Warren, Arkansas.

13.     Plaintiff Adrianne Carrera ("Carrera") is an individual and a citizen of Sebring, Florida.

**COMPLAINT**

14.   Plaintiff Marian Conner ("Conner") is an individual and a citizen of Morgantown, West Virginia.

15.   Plaintiff Alba Cordon ("Cordon") is an individual and a citizen of Youngstown, Ohio.

16.   Plaintiff Angela Draughn ("Draughn") is the legal guardian of Patricia Rogers and a citizen of Asheboro, North Carolina.  Patricia Rogers is a citizen of Asheboro, North Carolina.

17.   Plaintiff Horace Gilliam ("Gilliam") is the Executor of the Estate of decedent Gail Gilliam and a citizen of Cleburne, Texas.  The deceased was a citizen of Cleburne, Texas during all relevant time periods.

18.   Plaintiff Rita Hren ("Hren") is an individual and a citizen of Homosassa, Florida.

19.   Plaintiff Donna Lehnhardt ("Lehnhardt") is an individual and a citizen of Medford, Oregon.

20.   Plaintiff Dorothy Mallette ("Mallette") is an individual and a citizen of Anderson Island, Washington.

21.   Plaintiff Nan Maury ("Maury") is an individual and a citizen of Dover, New Hampshire.

22.   Plaintiff Lillian Meeks ("Meeks") is an individual and a citizen of Farmville, North Carolina.

23.   Plaintiff Barbara Norvell ("Norvell") is an individual and a citizen of Pasco, Washington.

24.   Plaintiff Reva Orr ("Orr") is an individual and a citizen of Marion, Ohio.

25.   Plaintiff Patricia Pease ("Pease") is an individual and a citizen of Denver, Colorado.

26.   Plaintiff Muriel Pitsinger ("Pitsinger") is an individual and a citizen of Dayton, Ohio.

**COMPLAINT**

27.   Plaintiff Viola Plieseis ("Plieseis") is an individual and a citizen of Marcell, Minnesota.

28.   Plaintiff Joyce Podhoyski ("Podhoyski") is an individual and a citizen of Mount Upton, New York.

29.   Plaintiff Fortunato Solis ("Solis") is the executor of the estate of Mary Solis and a citizen of Kirkland, Washington.  The deceased was a citizen of Kirkland, Washington during all relevant time periods.

30.   Plaintiff Anna Solomon ("Solomon") is an individual and a citizen of Lake Grove, New York.

31.   Plaintiff Sue Standriff ("Standriff") is an individual and a citizen of Dudley, North Carolina.

32.   Plaintiff Tena Valentine ("Valentine") is an individual and a citizen of Albany, Indiana.

33.   Plaintiff Charlene Weinmann ("Weinmann") is an individual and a citizen of Kailua, Hawaii.

34.   Defendant Girardi | Keese ("GK") is a law firm and a California partnership.

35.   Defendant Thomas V. Girardi ("Girardi") is an attorney licensed to practice in the state of California, a founding partner of GK and a citizen of California.

36.   Defendant James G. O'Callahan ("O'Callahan") is an attorney licensed to practice in the state of California, a partner at GK and a citizen of California.

37.   Plaintiffs are informed and believe, and based thereon allege, that, at all times relevant hereto, each Defendant was the agent, partner, joint venturer, and/or co-conspirator of each other, and that each of them was acting within the course and scope of that agency, partnership, joint venture, or conspiracy.

38.   Plaintiffs are informed and believe, and based thereon allege, that in committing the wrongful acts and omissions alleged herein, each Defendant caused,

aided, abetted, encouraged, facilitated, permitted and/or ratified the wrongful acts and/or omissions of the other Defendants.

### III.   JURISDICTION AND VENUE

39.    Pursuant to Title 28, United States Code, section 1332, this Court has subject matter jurisdiction over this matter in that the amount in controversy exceeds $75,000, exclusive of costs and interest, and all Plaintiffs are citizens of different states than all Defendants.

40.    This Court has personal jurisdiction over the parties to this action in that Defendants, and each of them, have done business within the State of California. Specifically, Defendants, and each of them, conducted business in the County of Los Angeles, California, in connection with the matters that are the subject of this complaint.

41.    Pursuant to Title 28, United States Code, section 1391(b)(1), venue for this matter properly lies within the Central District of California in that at least one defendant is a resident of the Central District and all Defendants are residents of California.

42.    Pursuant to Title 28, United States Code, section 1391(b)(2) venue for this matter properly lies within the Central District of California in that a substantial part of the events and omissions giving rise to this claim occurred within this judicial district.

### IV.   GENERAL ALLEGATIONS

**A.   *Defendants' Ethical and Fiduciary Obligations.***

43.    Attorneys are fiduciaries who owe certain legal and ethical duties to their clients.  These fiduciary duties include the duty of undivided loyalty, the duty of full disclosure of material information, the duty to communicate settlement offers, the duty to provide an accounting and the duty, upon the conclusion of the representation and request, to provide clients with their client files.

44.    Pursuant to Business and Professions Code section 6076 *et. seq.*, the State Bar of California has adopted rules of professional conduct that are binding on all

members of the State Bar ("Rules of Professional Conduct").  As attorneys licensed to practice law in California, Girardi and O'Callahan are required to comply with the Rules of Professional Conduct.

**B.** ***Duty to Communicate with Plaintiffs Regarding the Terms of a Settlement.***

45.     Rule of Professional Conduct 3-510 ("Rule 3-510"), entitled "Communication of Settlement Offer," requires attorneys to promptly communicate to the client "all amounts, terms, and conditions of any written offer of settlement made to the client . . . ."

46.     Rule of Professional Conduct 3-310 ("Rule 3-310") requires that "[a] member who enters into an aggregate settlement of two or more clients shall not enter into an aggregate settlement of the claims of or against the clients without the informed written consent of each client."  This Rule requires attorneys to provide their clients with "sufficient information to permit the settlement plaintiffs to determine whether the settlement funds have been appropriately distributed."  *Prakashpala v. Engstrom, Lipscomb and Lack,* 223 Cal. App. 4th 1105 (2014).

**D.** ***Duty of Honesty and Candor to a Client.***

47.     "The relationship of attorney and client by its very nature is one in which the attorney assumes, and owes to his client, the exercise of the highest good faith" *Rader v. Thrasher*, 57 Cal. 2d 244, 250 (1962).  "Complete candor and honesty by [attorney] both to his client .  . . and to the . . . court [is] a minimum prerequisite to satisfying this fiduciary duty."  *Mayo v. State Bar*, 23 Cal. 3d 72, 75 (1978).

**E.** ***Duty to Provide Files and an Accounting.***

48.     Professional Conduct Rule 3-700 ("Rule 3-700) requires an attorney, upon the conclusion or termination of representation, to "promptly release to the client, at the request of the client, all the client papers and property."  Under Rule 3-700, "[c]lient papers and property includes correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not."

49.     Professional Conduct Rule 4-100 ("Rule 4-100") requires an attorney to "[m]aintain complete records of all funds, securities, and other properties of a client coming into the possession of the member or law firm *and render appropriate accounts to the client regarding them . . . .*" (emphasis added.)

50.     California Business and Professions Code section 6091 requires an attorney, upon written request from a client, "to furnish the client with a complete statement of the funds received and disbursed and any charges upon the trust account, within 10 calendar days after receipt of the request."

**F.     *Defendants' Representation of Plaintiffs in the Personal Injury Actions.***

51.     Between 2005 and 2011, Defendants began representing Plaintiffs in the Personal Injury Actions.  Based on the nature of the Personal Injury Actions, Defendants received and reviewed Plaintiffs' medical records.  Defendants knew and should have known that Plaintiffs had been diagnosed with cancer and were senior citizens within the meaning of California Civil Code section 1761(f).

52.     In or around 2011, Defendants negotiated a global settlement of Plaintiffs' Personal Injury Actions, the terms of which were contained in a settlement agreement.

53.     In violation of their ethical responsibilities, Defendants did not provide Plaintiffs with a copy of the settlement agreement or otherwise explain the terms of the settlement offer to them.

54.     In or around 2011, Defendants sent each Plaintiff a release of liability and instructed them to sign and return it to them.  In violation of their ethical duties, Defendants did not provide Plaintiffs with information regarding the value of the aggregate settlement, the number of persons entitled to receive settlement funds, or the settlement value of each individual case.

**G.     *Defendants' False and Misleading Communications.***

55.     During 2013, Defendants prepared and sent each Plaintiff a Consent and Authorization to Settlement (the "Consent").

56.     Each Consent was accompanied by a cover letter from Defendant O'Callahan, which instructed each Plaintiff to sign and return the Consent.   Defendant O'Callahan represented: "[u]pon our receipt of the signed Consent, we will forward your portion of the settlement to you."

57.     The cover letters did not explain how the settlement value of each Plaintiff's Personal Injury Action had been determined.  Nor did they state that Defendants were still in the process of calculating costs, were negotiating medical liens, or would only be forwarding a partial settlement payment until these outstanding issues were resolved.

58.     Each Consent set forth the "total amount" of each Plaintiff's settlement. It read: "I, [plaintiff], hereby authorize my attorneys, Girardi and Keese, to settle all of my claims arising out the [Personal Injury Actions], and to dismiss with prejudice my lawsuit  . . . . for *the total amount of*  [dollar figure]."  (emphasis added).

59.     The Consent was the first and only time that Defendants told the majority of Plaintiffs the amount of the putative amount of their Personal Injury Action settlement.

60.     The Consent further required each Plaintiff to authorize payments and distributions for the following reasons:  (a) 40% for attorney's fees; (b) 5.64% for each Plaintiff's pro rata share of costs and expenses; (c) varying amounts for medical liens; and (d) varying amounts for partial distributions that had previously been made.

61.     In or around 2013, each Plaintiff executed her Consent and returned it to Defendants.

62.     After receiving the Consents from Plaintiffs, Defendants sent each Plaintiff a check with a letter authored by Defendant O'Callahan.  The letter stated that the enclosed check "represent[ed] settlement of the above captioned matter" and indicated that it had "been a pleasure representing [the plaintiff] in this case."  It concluded, "[i]f you have any future needs, please do not hesitate to call."  Printed on the face of the check was the statement ***"Final Settlement Payment."*** (emphasis added).

63.   In the case of Plaintiff Solis, Defendant O'Callahan included the following additional language: "We hope that in some way this helps represent a closure to an unfortunate situation."

64.   The clear message of the cover letter and the notation on the check was that each Plaintiff's Personal Injury Actions was concluded and that she was receiving the final distribution of her settlement proceeds.

65.   Within the past year, Plaintiffs discovered that Defendants had knowingly and intentionally misrepresented to Plaintiffs the amount of their settlements and had withheld and converted at least six (6) percent of each Plaintiff's settlement proceeds.

**H.   *Plaintiffs' Efforts to Obtain Their Client Files and an Accounting of the Disposition of Their Settlement Funds.***

66.   On or about December 2013, certain plaintiffs (Cordon, Gilliam, Lehnhardt, Maury, Pease and Pitsinger), retained counsel to assist them in investigating the disposition of their settlement proceeds.  On January 9, 2014, their counsel sent a written request to Defendants for the complete client files of these Plaintiffs and an accounting of their settlement proceeds.

67.   The January 9, 2014 correspondence stated specifically which documents the plaintiffs were requesting.

68.   On or about January 23, 2014, Defendants responded to the January 9, 2014 correspondence.  In their response, Defendants admitted for the first time that they had retained six (6) percent of each Plaintiff's settlement funds.

69.   Defendants claimed that they were retaining the six (6) percent until "all lien issues were resolved, all consents had been received and the final accounting had been completed."   Defendants' post-hoc, pretextual claims contradicted their prior representations that each Plaintiff had received her "final" payment.

70.   Defendants did not produce the Plaintiffs' complete client files or provide an accounting.

71.     On or about February 6, 2014, counsel for plaintiffs Cordon, Gilliam, Lehnhardt, Maury, Pease and Pitsinger wrote again to Defendants and indicated there were deficiencies in their response including their failure to provide documents that reflected the amount of the aggregate settlement, the true settlement value of each Plaintiff's case and materials relating to how that settlement value was determined. However, Defendants still refused to produce the requested documents or provide an accounting.

72.     On or about March 5, 2014, Plaintiffs Allen, Awald, Barnes, Carrera, Draughn, Conner, Hren, Mallette, Meeks, Norvell, Orr, Peters, Plieseis, Podhayski, Solis, Solomon, Standriff, Valentine and Weinmann, through counsel, made a request for their client files and an accounting, setting forth the categories of documents that they wished to have produced.  Defendants again refused to produce the requested documents or provide an accounting.

73.     Plaintiffs are informed and believe that additional settlement funds have been wrongfully withheld and misappropriated by Defendants but, due to Defendants repeated and wilful failure to comply with their fiduciary duties to produce complete client files and provide and accounting, Plaintiffs have been unable to ascertain the nature and extent of Defendants' wrongful actions.

74.     To this day, Defendants had failed to pay Plaintiffs the settlement monies that they have withheld.

## FIRST CAUSE OF ACTION
### (By All Plaintiffs Against All Defendants
### For Breach of Fiduciary Duty)

75.     Plaintiffs reallege and incorporate by reference herein the allegations of paragraphs 1 through 74, above, of this Complaint.

76.     Defendants acted as each Plaintiff's attorneys in connection with negotiating, executing and distributing the aggregate settlement in the Personal Injury Actions.

77.     Defendants continued to serve as legal counsel for Plaintiffs Cordon, Gilliam, Lehnhardt, Maury, Pease and Pitsinger until on or about January 9, 2014, when these Plaintiffs terminated Defendants' representation and demanded the return of their files and an accounting of their settlement proceeds.

78.     Defendants continued to serve as legal counsel for Allen, Awald, Barnes, Carrera, Conner, Draughn, Hren, Mallette, Meeks, Norvell, Orr, Peters, Plieseis, Podhayski, Solis, Solomon, Standriff, Valentine and Weinmann until on or about March 5, 2014, when these Plaintiffs terminated Defendants' representation and demanded the return of their files and an accounting of their settlement proceeds.

79.     Because Defendants affirmatively misstated the amount of each Plaintiff's settlement and failed to comply with their obligation to provide them with the sufficient information to evaluate whether the aggregate settlement funds were properly distributed, Plaintiffs did not discover the facts constituting Defendants' wrongful actions until within the past year.

80.     As their attorneys, Defendants owed the Plaintiffs all of the duties and obligations of a fiduciary, which include, but are not limited to, the following:

a.      The duty to act with the utmost good faith for the benefit of each Plaintiff and to be honest in all of their dealings with them (*Rader v. Thrasher*, 57 Cal. 2d 244, 250 (1962); *Mayo v. State Bar*, 23 Cal. 3d 72, 75 (1978));

b.      The duty of undivided loyalty to each Plaintiff (*Commercial Standard Title Co. v. Superior Court*, 92 Cal. App. 3d 934, 945 (1979));

c.      The duty to communicate with each Plaintiff regarding material developments in their cases, including complying with reasonable requests for information and copies of relevant documents (California Rule of Professional Conduct 3-500);

d.      The duty to communicate to each Plaintiff all amounts, terms and conditions of any written offer of settlement (Rule 3-510);

e.      The duty to provide each Plaintiff with sufficient information to

permit them to determine whether the settlement Defendants received had been properly distributed (Rule 3-310);

f.     The duty to promptly release to each Plaintiff all papers and property related to Plaintiffs' cases matters upon termination of representation of representation and when requested by Plaintiffs (Rule 3-700);

g.     The duty to hold each Plaintiff's settlement funds in an attorney trust account and to not comingle Plaintiffs' funds with any funds belonging to Defendants (Rule 4-100);

h.     The duty to maintain complete records of all settlement funds of each Plaintiff coming into possession of Defendants and render appropriate accounts to Plaintiffs regarding them when requested by Plaintiffs (Rule 4-100; Business and Professions Code section 6091); and

i.     The duty to promptly pay each Plaintiff any funds in the possession of Defendants which Plaintiffs are entitled to receive (Rule 4-100).

81.     Plaintiffs are informed and believe, and on that basis allege, that Defendants breached their fiduciary duties to each Plaintiff in the following respects, among others:

a.     Concealing material information regarding the settlement of each Plaintiff's case;

b.     Falsely representing to each Plaintiff the amount of her settlement in the Personal Injury Action;

c.     Falsely representing to each Plaintiff that the Plaintiff's settlement check represented the final distribution of her settlement proceeds;

d.     Wrongfully withholding and secreting a portion of each Plaintiff's settlement proceeds and using those proceeds for their own purposes;

e.     Including in the costs charged against each Plaintiff's settlement proceeds items that were not properly chargeable as costs or were unreasonable;

f.     Failing to promptly disburse to each Plaintiff her rightful shares of

the settlement proceeds from the Personal Injury Actions;

g.    Failing to deal honestly with each Plaintiff and to communicate with her truthfully;

h.    Failing to maintain each Plaintiff's settlement funds in an interest bearing trust account and not to comingle them with their own funds or apply them to their own purposes.

i.    Failing to provide an accounting of each Plaintiff's settlement proceeds that reflected the gross amount of the settlement of each Plaintiff's case, the manner in which each Plaintiff's share was calculated and other necessary information to allow Plaintiffs to determine if the settlement proceeds had been appropriately distributed; and

j.    Failing to provide each Plaintiff with her complete client file upon termination of Defendant's representation and upon the Plaintiff's request.

82.    As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs have been damaged in an amount to be proven at trial.

83.    In breaching their fiduciary duties to Plaintiffs, Defendants acted fraudulently, oppressively and maliciously, with a willful and conscious disregard of Plaintiffs' rights.  Accordingly, Plaintiffs are entitled to exemplary and punitive damages pursuant to California Civil Code section 3294.

## SECOND CAUSE OF ACTION

### (By All Plaintiffs Against All Defendants
### For Conversion)

84.    Plaintiffs reallege and incorporate by reference herein the allegations of paragraphs 1 through 83, above, of this Complaint.

85.    Defendants settled the Personal Injury Actions on each Plaintiff's behalf in or about 2011.

86.    In or about 2011, the pharmaceutical defendants in the Personal Injury Actions provided Defendants with a lump sum payment to be distributed to the

**COMPLAINT**

individual Plaintiffs and others similarly situated.

87.    Each Plaintiff had an immediate and vested property right in her portion of the settlement funds that Defendants received.

88.    Defendants were required by law to maintain each Plaintiff's settlement funds in an attorney trust account until the settlement funds were distributed to each Plaintiff.

89.    Defendants falsely represented to each Plaintiff that they were distributing to each Plaintiff the full portion of her settlement funds, when, in fact, Defendants had wrongfully, and without Plaintiffs' knowledge or consent retained at least six (6) percent of each Plaintiff's settlement.

90.    Defendants converted six (6) percent of each Plaintiff's settlement by wrongfully withholding it and using it for their own purposes.

91.    Defendants, by wilfully and repeatedly failing to provide Plaintiffs with the accounting to which they are legally entitled, have prevented Plaintiffs from ascertaining the true amount of their settlements and, therefore, the exact sums that Defendants have wrongfully converted.  The amount of each Plaintiff's settlement that Defendants wrongfully converted is specific and identifiable, and can be ascertained by each Plaintiff from documents presently in Defendants' possession.

92.    Defendants intentionally and substantially interfered with each Plaintiff's right to possess her funds by continuing to exercise dominion over her funds and refusing to release custody and control of those funds to her.

93.    Based on information and belief, Defendants have additionally converted each Plaintiff's funds by removing them from an interest bearing trust account and applying them to their own uses.

94.    Plaintiffs did not consent to Defendants' conversion of their funds.

95.    As a direct and proximate result of Defendants' conversion of each Plaintiff's settlement proceeds, each Plaintiff has been damaged in an amount to be proven at trial.

**COMPLAINT**

96.     In wrongfully converting each Plaintiff's settlement funds to their own uses, Defendants acted fraudulently, oppressively and maliciously, with a willful and conscious disregard of Plaintiffs' rights.  Accordingly, Plaintiffs are entitled to exemplary and punitive damages pursuant to California Civil Code section 3294.

### THIRD CAUSE OF ACTION

**(By Plaintiffs Against All Defendants
For Unfair Business Practices)**

97.     Plaintiffs reallege and incorporate by reference herein the allegations of paragraphs 1 through 96, above, of this Complaint.

98.     This cause of action applies to Defendants' business practices in representing personal injury clients in cases involving multiple plaintiffs whose claims are settled as part of an aggregate settlement agreement.

99.     The California Unfair Competition Law ("UCL"), California Business and Professions Code section 17200, *et. seq.*, prohibits "persons" from engaging in unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice."

100.    At all relevant times, Defendants comprised an "organization of persons" within the meaning of  the UCL, in that they associated together for the common purpose of engaging in a course of unlawful, unfair and fraudulent business acts and practices related to their attorney-client relationship with Plaintiffs.

101.    Beginning in or about 2011, if not earlier, Defendants, and each of them, have violated and aided and abetted the violation of the UCL by engaging in one or more of the following unlawful business acts and practices, among others:

a.      Concealing and failing to disclose the amounts, terms and conditions of any written offer of settlement made to each Plaintiff, in violation of Rule 3-510 and their fiduciary duty to do so;

b.      Failing to provide each Plaintiff with her complete files after termination of Defendants' representation and upon each Plaintiff's written request, in violation of Rule 3-700 and their fiduciary duty to do so;

c.      Concealing and failing to disclose sufficient information regarding the settlement of the each Plaintiff's Personal Injury Action to permit each Plaintiff to determine whether the aggregate settlement funds were properly distributed, in violation of Rule 3-310 and Rule 4-100 and their fiduciary duty to do so.

d.      Failing to provide each Plaintiff with an accounting of her settlement proceeds, in violation of Rule 4-100 and their fiduciary duty to do so; and

e.      Failing to provide each Plaintiff with a complete accounting of all funds received and distributed in her case, which should have been maintained and distributed from Defendants' trust account, in violation California Business and Professions Code section 6091 and their fiduciary duty to do so.

102.    Defendants, and each of them, have further violated, conspired to violate and aided and abetted the violation of the UCL by engaging in one or more of the following unfair and fraudulent business acts and practices, among others:

a.      Concealing and failing to disclose sufficient information about the terms of the Personal Injury Action settlement for each Plaintiff to make informed decisions about her case;

b.      Concealing and failing to disclose sufficient information to permit each Plaintiff to evaluate whether the aggregate settlement was being appropriately distributed;

c.      Falsely representing the amount of each Plaintiff's settlement;

d.      Falsely representing to each Plaintiff that Defendants were distributing each Plaintiff's final settlement funds;

e.      Wrongfully withholding a portion of each Plaintiff's settlement funds;

**COMPLAINT**

f.      Refusing to provide each Plaintiff with an accounting of her settlement funds; and

g.      Wrongfully withholding each Plaintiff's client file.

103.   Plaintiffs are informed and believe that Defendants further violated, conspired to violate and aided and abetted the violation of the UCL by failing to maintain each Plaintiff's funds in an attorney trust account and comingling each Plaintiff's funds with funds belonging to Defendants, in violation of Rule 4-100 and their fiduciary duties.

104.   Plaintiffs have suffered an injury in fact and have lost, and continue to lose, money and property as a result of these unlawful, unfair and fraudulent business acts and practices.

105.   Plaintiffs are entitled to restitution, any disgorgement and interest in accordance with applicable law, according to proof at trial.

### FOURTH CAUSE OF ACTION

**(By All Plaintiffs Against All Defendants
For Money Had And Received)**

106.   Plaintiffs reallege and incorporate by reference herein the allegations of paragraphs 1 through 105, above, of this Complaint.

107.   In or about 2011, Defendants received settlement funds in the Personal Injury Actions that were intended for the benefit of each Plaintiff.  Each Plaintiff had an immediate and vested property interest in her portion of the settlement fund.

108.   The full settlement funds were neither distributed to nor used for the benefit of Plaintiffs.

109.   Defendants retained at least six (6) percent of each Plaintiff's settlement funds without her knowledge or consent.  Defendants' have not returned the Plaintiffs' settlement funds and, instead, have applied the funds to their own purposes.

110.   Defendants, by wilfully and repeatedly failing to provide Plaintiffs with the accounting to which they are legally entitled, have prevented Plaintiffs from

ascertaining the true amount of their settlements and, therefore, the exact sums that Defendants have wrongfully retained.  Each Plaintiff can ascertain the sum certain that Defendants' retained from her settlement from documents presently in Defendants' possession.

111.   As a direct and proximate result of Defendants' wrongful retention of each Plaintiff's settlement proceeds, each Plaintiff has been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (By All Plaintiffs Against All Defendants
### For Accounting)

112.   Plaintiffs reallege and incorporate by reference herein the allegations of paragraphs 1 through 111, above, of this Complaint.

113.   Rule 4-100 requires attorneys to "[m]aintain complete records of all funds, securities, and other properties of a client coming into the possession of the member or law firm and render appropriate accounts to the client regarding them . . . ."

114.   California Business and Professions Code section 6091 requires attorneys, upon written request by the client, "to furnish the client with a complete statement of the funds received and disbursed and any charges upon the trust account, within 10 calendar days after receipt of the request."

115.   Defendants acted as each Plaintiff's attorneys in connection with the Personal Injury Actions and received, on each Plaintiff's behalf, settlement funds from the pharmaceutical companies to compensate each Plaintiff for her injuries.

116.   Defendants have refused to provide Plaintiffs with sufficient information relating to the settlement for them to evaluate the amount and status of their individual settlements.

117.   Defendants have further refused to provide Plaintiffs with information relating to the aggregate settlement sufficient to allow them to determine if the settlement funds have been properly distributed.

**COMPLAINT**

118.   The amount of money due and owing to Plaintiffs is unknown and cannot be determined without an accounting of the settlement proceeds.

119.   Plaintiffs have made multiple written requests to Defendants for an accounting pursuant to Rule 4-100 and section 6091, but Defendants have failed and refused, and continue to fail and refuse, to provide such an accounting.

## SIXTH CAUSE OF ACTION

### (By All Plaintiffs Against All Defendants
### For Declaratory Relief)

120.   Plaintiffs reallege and incorporate by reference herein the allegations of paragraphs 1 through 119, above, of this Complaint.

121.   There exists a controversy between Plaintiffs and Defendants regarding Defendants present and future obligations to release to Plaintiffs the settlement funds that Defendants have withheld.

122.   A judicial declaration of the rights and obligations of the parties with respect to the settlement funds is necessary and appropriate at this time.

## PRAYER FOR RELIEF

Therefore, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

**As to the First Cause of Action:**

1.   For disgorgement of all attorney's fees received or retained by Defendants in Plaintiffs' Personal Injury Actions;

2.   For the return of each Plaintiff's complete client file;

3.   For compensatory damages in an amount to be determined at trial;

4.   For restitution to restore to Plaintiffs all money and property wrongfully retained by Defendants;

5.   For a constructive trust over all money and property belonging to Plaintiffs' that has been wrongfully retained by Defendants;

**COMPLAINT**

5.     For prejudgment interest at the maximum rate permitted by law and compounded to the extent permitted by law;

6.     For punitive and exemplary damages to the extent permitted by law; and

7.     For treble punitive damages under California Civil Code section 3345.

**As to the Second Cause of Action:**

1.     For restitution to restore to Plaintiffs all money and property wrongfully converted by Defendants;

2.     For a constructive trust over all money and property belonging to Plaintiffs' that has been wrongfully converted by Defendants;

3.     For prejudgment interest at the maximum rate permitted by law;

4.     For punitive and exemplary damages to the extent permitted by law; and

5.     For treble punitive damages under California Civil Code section 3345.

**As to the Third Cause of Action:**

1.     For restitution to restore to each Plaintiffs all money and property obtained by Defendants, and each of them, as a result of Defendants' unlawful, unfair and fraudulent business acts and practices, including, but not limited to, all such money and property in which Plaintiffs have a vested interest, including, but not limited to, Plaintiffs' client files and Plaintiffs' settlement funds; and

2.     For disgorgement of any money and property obtained by Defendants, and each of them, as a result of their unlawful, unfair and fraudulent business acts and practices, including, but not limited to, property retained by Defendants as attorney's fees.

**As to the Fourth Cause of Action:**

1.     For restitution to restore to Plaintiffs all money and property wrongfully retained by Defendants;

2.     For a constructive trust over all money and property belonging to Plaintiffs' that has been wrongfully retained by Defendants; and

21

**COMPLAINT**

3.     For prejudgment interest at the maximum rate permitted by law.

**As to the Fifth Cause of Action:**

1.     For an accounting.

**As to the Sixth Cause of Action:**

1.     For judgment declaring Defendants ongoing and future obligations with regard to Plaintiffs' settlement funds.

**As to All Causes of Action:**

1.     For costs of suit incurred herein; and

2.     For such other and further relief as the Court may deem just and proper.

Dated:     April 9, 2014     ISAACS | FRIEDBERG LLP


_____/S/_____
JEROME H. FRIEDBERG
Attorneys for Plaintiffs

**COMPLAINT**

1

## **DEMAND FOR JURY TRIAL**

2

3          Plaintiffs hereby demand a jury trial on all issues properly triable to a jury.

4

5

6  Dated:        April 9, 2014                    ISAACS | FRIEDBERG LLP

7

8

9                                                        _____/S/_____

10                                                       JEROME H. FRIEDBERG
                                                         Attorneys for Plaintiffs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

**COMPLAINT**