1  GIRARDI | KEESE
   THOMAS V. GIRARDI (SBN 36603)
2  tgirardi@girardikeese.com
   JAMES G. O'CALLAHAN (SBN 126975)
3  jgocallahan@girardikeese.com
   CELENE S. CHAN (SBN 260267)
4  cchan@girardikeese.com
   1126 Wilshire Boulevard
5  Los Angeles, California 90017
   Phone: (213) 977-0211
6  Facsimile: (213) 481-1554

7  Attorneys for Defendants

8

9

10

11

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14

15  JUDITH ALLEN, *et al.*,                 CASE NO.: 14-CV-02721-MWF-FFM

16            Plaintiffs,                   **DEFENDANTS' NOTICE OF**
                                            **MOTION AND MOTION TO**
17                                          **DISMISS AND COMPEL**
18  vs.                                     **ARBITRATION; MEMORANDUM**
                                            **OF POINTS AND AUTHORITIES**
19  GIRARDI | KEESE, THOMAS V.
20  GIRARDI, and JAMES G.                   Hon. Michael G. Fitzgerald
    O'CALLAHAN,
21
22            Defendants.                   Date:       June 9, 2014
                                            Time:       10:00 a.m.
23                                          Location:   Courtroom 1600

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on June 9, 2014 at 10:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California, in Courtroom 1600 before the Honorable Michael G. Fitzgerald, Defendants Girardi | Keese, Thomas V. Girardi, and James G. O'Callahan (collectively "Defendants") will and hereby do move the Court to dismiss Plaintiffs Judith Allen, *et al.*'s (collectively "Plaintiffs") claims against Defendants and compel Plaintiffs to arbitration pursuant to the arbitration provision in the Retainer Agreement signed by Plaintiffs.  In the alternative, Defendants respectfully request that the Court stay the matter pending arbitration.

Defendants base this motion on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the record on file in this matter, and such further evidence and argument as the Court may permit or require prior to or at the time of hearing on this Motion.  This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on May 1, 2014.

Dated:  May 12, 2014                                      GIRARDI | KEESE

                                          By:       /s/ Celene S. Chan
                                                  THOMAS V. GIRARDI
                                                  JAMES G. O'CALLAHAN
                                                  CELENE S. CHAN
                                                  Attorney for Defendants

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................... 1

II.   PROCEDURAL AND FACTUAL BACKGROUND ................................. 2

    A.   Plaintiffs Enter into Retainer Agreements Containing Arbitration
        Agreements in Underlying HRT Litigation ........................ 2

    B.   Justice Panelli's Sole Discretion to Make Settlement Awards in
        HRT Litigation ................................................. 3

    C.   Plaintiffs File the Instant Case ............................... 4

    D.   Counsel Meet and Confer Regarding the Instant Motion .......... 4

III.  THE COURT SHOULD DISMISS THE COMPLAINT AND COMPEL
    ARBITRATION ......................................................... 5

    A.   Venue Is Improper Pursuant to Fed. R. Civ. P. 12(b)(3) ........ 5

    B.   The Arbitration Falls Under the FAA ........................... 6

    C.   The Arbitration Provision Is Valid and Enforceable ............ 7

    D.   Plaintiffs' Entire Dispute Is Encompassed by the Arbitration Agreement .... 8

    E.   Arbitration Before Justice Panelli Is Appropriate ............. 8

    F.   Defendants, Though Non-Signatories to the Agreement, May Still
        Compel Arbitration ............................................ 9

IV.   PUBLIC POLICY STRONGLY FAVORS ARBITRATION ...................... 10

V.    THE COURT MUST DISMISS THE COMPLAINT BECAUSE
    PLAINTIFFS FAIL TO JOIN NECESSARY PARTIES ...................... 12

VI.   IF THE COURT DOES NOT DISMISS PLAINTIFFS' CLAIMS OUTRIGHT,
    THE COURT SHOULD STAY THE ENTIRE ACTION PENDING
    ARBITRATION ....................................................... 13

VII.  CONCLUSION ......................................................... 14

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Altmann v. Republic of Aus.*,
   142 F. Supp. 2d 1187 (C.D. Cal. 2001) ....................................................... 13

*AT&T Mobility LLC v. Concepcion*,
   131 S.Ct. 1740, 179 L. Ed. 2d 742 (2011) ..................................................... 6

*AT&T Techs., Inc. v. Communications Workers of America*,
   475 U.S. 643(1986) ...................................................................................... 10

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
   2006 U.S. Dist. LEXIS 21214, 2006 WL 931756 (N.D. Cal. April 11, 2006 ) .............. 5

*Brown v. Gen. Steel Domestic Sales, LLC*,
   2008 U.S. Dist. LEXIS 97832, 2008 WL 2128057 (C.D. Cal. May 19, 2008) ............. 10

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ....................................................................... 9

*Davis v. O'Melveny & Myers*,
   485 F.3d 1066 (9th Cir. 2007) ....................................................................... 7

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, US.*,
   9 F.3d 1060(2d Cir. 1993) ............................................................................. 7

*Desert Outdoor Adver. v. Superior Court*,
   196 Cal. App. 4th 866, 127 Cal. Rptr. 3d 158 (2011) ...................................... 8

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) ....................................................................... 5

*Gonsalves v. Infosys Techs., Ltd.*,
   2010 U.S. Dist. LEXIS 79683, 2010 WL 3118861 (N.D. Cal. Aug. 5, 2010) ............. 14

*Green Tree Fin.Corp. v. Bazzle*,
   539 U.S. 444 (2003) ...................................................................................... 10

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

## <u>TABLE OF AUTHORITIES, continued</u>

<u>Page</u>

**Cases**

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
   206 F.3d 411 (4th Cir. 2000) ...................................................................9

*Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA)*,
   560 F.3d 935 (9th Cir. 2009) .................................................................14

*Larson v. Speetjens*,
   2006 U.S. Dist. LEXIS 66459, 2006 WL 2567873 (N.D. Cal. Sept. 1, 2006).......7, 9, 10

*Letizia v. Prudential Bache Securities, Inc.*,
   802 F.2d 1185 (9th Cir. 1986) ...............................................................9

*MCA Fin. Group, Ltd. v. Gardere Wynne Sewell, LLP*,
   2007 U.S. Dist. LEXIS 22611, 2007 WL 951959 (D. Ariz. Mar. 23, 2007) ................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1, 103 S.Ct. 927, 74 L. Ed. 2d 765 (1983).....................................7, 14

*Murphy v. Schneider Nat'l, Inc.*,
   362 F.3d 1133(9th Cir. 2004) ................................................................5

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) ...............................................................14

*Ocean Marine Ins. Co. v. Wickland Corp.*,
   1995 U.S. Dist. LEXIS 3085, 1995 WL 125478 (N.D. Cal. Mar. 8, 1995) ...................12

*Shimkus v. Gersten Cos.*,
   816 F.2d 1318 (9th Cir. 1987) ...............................................................13

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ................................................................7

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988) ..............................................................5, 11

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

1

## <u>TABLE OF AUTHORITIES, continued</u>

2

<u>**Page**</u>

3

**Statutes**

4

9 U.S.C. § 4 ............................................................................................. 6, 7

5

6

**Rules**

7

Fed. R. Civ. P. 12(b)(7) ............................................................................ 12
Fed. R. Civ. P. 19(a)(1) ............................................................................ 12
Fed. R. Civ. P. 19(a)(2) ............................................................................ 12
Fed. R. Civ. P. 19(a)(2)(i) ........................................................................ 12
Fed. R. Civ. P. 19(a)(2)(ii) ....................................................................... 12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Judith Allen, *et al.* (collectively "Plaintiffs") are 24 former clients of Defendants Girardi | Keese, Thomas V. Girardi, and James G. O'Callahan (collectively "Defendants").[1]  Mr. Girardi and Mr. O'Callahan are attorneys at the law firm of Girardi | Keese.  Defendants represented approximately 138 individuals, including Plaintiffs herein, in pharmaceutical litigation which was consolidated into a Multi-District Litigation ("MDL") entitled *In Re Prempro Products Liability Action*, Case No. 03-CV-01507-BRW, MDL 1507.  This MDL concerned hormone replacement therapy ("HRT") wherein Plaintiffs ingested certain hormone therapy medications that allegedly caused cancer and other injuries.

Though the HRT litigation settled in 2011, ongoing medical liens have resulted in delayed distributions of the settlement funds.  Plaintiffs have received the majority of their settlement proceeds (94%), but the remaining 6% is outstanding due to resolution of liens and other issues that must be resolved before a final accounting can be performed. The releases to the HRT settlement agreements, which Plaintiffs signed and notarized, indicate that the Hon. Edward A. Panelli (Ret.) shall have authority to allocate the settlement sums.

In retaining legal counsel for the underlying HRT cases which are the basis of Plaintiffs' instant dispute, Plaintiffs entered into Attorney-Client Retainer Agreements ("Retainer Agreements").  The Retainer Agreements contain arbitration agreements which require the Court to compel arbitration in this case.  Insofar as Justice Panelli is the sole arbiter of the settlement award allocations, Defendants respectfully request that the

---

[1] Though Plaintiffs' counsel purports to represent 27 former clients of Defendants, they have only filed on behalf of 24 clients in the instant case.  Presumably, Plaintiffs did so done in order to preserve diversity jurisdiction, as the 3 clients who are not included as Plaintiffs in this action are California residents, which would destroy the Court's diversity jurisdiction.  *See infra* §§ II.C, V.

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

Court compel arbitration before Justice Panelli.  Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' claims and compel arbitration, or in the alternative, stay the instant action pending the resolution of the mandatory arbitration.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

**A.    Plaintiffs Enter into Retainer Agreements Containing Arbitration Agreements in Underlying HRT Litigation**

Plaintiffs entered into written Attorney-Client Retainer Agreements ("Retainer Agreements") for legal services in connection with the HRT litigation.  Declaration of James G. O'Callahan ("O'Callahan Dec.") Ex. 1; *see e.g., id.* ¶ 2.  Paragraph 9 of the Retainer Agreement requires arbitration of any dispute that may arise under the legal presentation of Plaintiffs.  Specifically, the arbitration provision provides:

> **AGREEMENT TO ARBITRATE**.  In the event of a dispute which arises out of or in connection with the Firms [sic] representation of you with respect to this matter, the parties both agree and do herein stipulate <u>to arbitrate any and all such disputes</u> including any claims for professional malpractice, negligence or errors and omissions.  The law Firm further agrees to maintain professional liability insurance during the pendency of this matter.  Attorneys [sic] agreement to handle this matter is contingent upon clients [sic] agreement to arbitrate.

O'Callahan Dec. Ex. 1 ¶ 9 (emphasis in original).

Though the Retainer Agreements were signed by Plaintiffs and entered into with the Law Offices of Howard A. Snyder and Gruber & Gruber, Paragraph 7 of the Retainer Agreement provides that association of other counsel such as Defendants herein was agreed to by Plaintiffs.  Specifically, Paragraph 7 provides:

> **ASSOCIATION OF COUNSEL** - Client herein consents to the association of outside attorney or law firms whom Howard A. Snyder deems necessary and proper for the handling of the case….

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

O'Callahan Dec. Ex. 1 ¶ 7 (emphasis in original).

Accordingly, Gruber & Gruber and the Law Offices of Howard A. Snyder associated in Defendants as counsel pursuant to Paragraph 7 of the Retainer Agreements. Gruber & Gruber and the Law Offices of Howard A. Snyder claimed and received $102,024.11 and $63,606.01 in costs, respectively, for a total of $165,630.12. O'Callahan Dec. ¶ 3.

## B.   Justice Panelli's Sole Discretion to Make Settlement Awards in HRT Litigation

In early 2014, Defendants' counsel began receiving written correspondence from Plaintiffs' counsel.  O'Callahan Dec. ¶ 4.  Defendants' counsel explained that retired California Supreme Court Justice Edward A. Panelli was appointed for purposes of allocating settlement monies in the HRT litigation.  *Id.*  This appointment was incorporated into the settlement agreement.  *Id.*  Any plaintiff in the HRT litigation who felt that there were  special circumstances associated with their claim was offered the opportunity to meet with Justice Panelli to tell him what was out of the ordinary about their claim.  *Id.*  A small number of plaintiffs took advantage of this opportunity.  *Id.* After conducting the hearings, Justice Panelli allocated the settlement monies among the plaintiffs.  *Id.*  He also instructed Defendants to hold back 6% of every plaintiff's settlement until all lien issues were resolved, all consents had been received, and the final accounting had been completed.  *Id.*

On February 13, 2014, counsel for Defendants sent counsel for Plaintiffs correspondence explaining and attaching, *inter alia*, a redacted release in the HRT litigation identifying Justice Edward Panelli (Ret.) as having sole discretion to make awards in the HRT litigation.  O'Callahan Dec. ¶ 5.  Each Plaintiff was required to sign and notarize the release containing this provision.  *Id.*  Upon information and belief, Plaintiffs' current counsel also possesses copies of the signed and notarized releases contained within Plaintiffs' files.  *Id*. ¶ 6.  Therefore, Plaintiffs are aware both through

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

their signing and notarization of the HRT release and their counsel's correspondence with Defendants' counsel that Justice Panelli had sole discretion to make awards in the HRT litigation.

### C.    Plaintiffs File the Instant Case

Plaintiffs are suing Defendants because they claim that Defendants wrongfully retained six percent of the entire settlement fund.  Plaintiffs allege six causes of action: (1) Breach of Fiduciary Duty; (2) Conversion; (3) Unfair Business Practices (California Business & Professions Code § 17200); (4) Money Had and Received; (5) Accounting; and (6) Declaratory Relief.

The basis for jurisdiction before this Court is diversity.  Complaint ¶ 39.  Plaintiffs allege that they are all residents of non-California states and Defendants are all California citizens.  *Id*. ¶¶ 10-36.  Interestingly, Plaintiffs' counsel purports to represent 27 clients. O'Callahan Dec. ¶ 7.  However, Plaintiffs' counsel only filed the instant case on behalf of 24 clients, none of whom are California citizens.  *See* Complaint ¶¶ 10-33.  The three former clients of Defendants for whom Plaintiffs' counsel did not name in this complaint are California citizens, which would destroy the Court's diversity jurisdiction. O'Callahan Dec. ¶ 7.

### D.    Counsel Meet and Confer Regarding the Instant Motion

Pursuant to Local Rule 7-3, counsel for the parties met and conferred regarding the instant Motion.  Plaintiffs' counsel was advised that Defendants would seek to resolve said dispute by arbitration as provided in the Retainer Agreement.   O'Callahan Dec. ¶ 8. Plaintiffs' counsel did not agree to arbitration.  Plaintiffs' counsel stated she had done some research and would look for it and send it to Defendants' counsel for review prior to Defendants filing the instant motion.  *Id*.  To date, Defendants have not received any further communication from Plaintiffs' counsel regarding this research.  *Id*.

Plaintiffs refused and still refuse to arbitrate, and instead insist that arbitration is

inappropriate despite the clear and express language of the arbitration provision in the Retainer Agreements.

## III.   THE COURT SHOULD DISMISS THE COMPLAINT AND COMPEL ARBITRATION

### A.   Venue Is Improper Pursuant to Fed R. Civ. P. 12(b)(3)

"A motion to enforce a forum selection clause is treated as a motion to dismiss pursuant to Rule 12(b)(3); pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009); *see also Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 U.S. Dist. LEXIS 21214, 2006 WL 931756, * 2 (N.D. Cal. April 11, 2006 ) (citing *Sparling v. Hoffman Construction Co. Inc.*, 864 F.2d 635, 637-38 (9th Cir. 1988)) ("Although a party seeking to enforce an agreement to arbitrate typically does so by filing a motion to compel arbitration, courts have recognized that a party may choose instead to bring a motion to dismiss under FRCP 12(b)(6).").  The court "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

Defendants respectfully submit that this Court is the improper venue for Plaintiffs' claims.  Instead, the appropriate forum for Plaintiffs to address their claims is in arbitration.  Moreover, as explained in greater detail *infra* § V.E, Defendants submit that arbitration before Justice Panelli is warranted in this instance since he has sole discretion to make awards in the underlying HRT litigation.

Plaintiffs entered into Retainer Agreements in relation to the HRT litigation. O'Callahan Dec. Ex. 1.  As part of the Retainer Agreement, Plaintiffs expressly agreed, in writing, that "In the event of a dispute which arises out of or in connection with the Firms [sic] representation of you with respect to this matter, the parties both agree and do herein stipulate to arbitrate any and all such disputes including any claims for professional malpractice, negligence or errors and omissions." *Id.* ¶ 9 (emphasis in

original).

A dispute has arisen concerning Plaintiffs' receipt of settlement funds. Specifically, Plaintiffs complain that Defendants wrongfully withheld 6% of the entire settlement fund. *See e.g.,* Complaint ¶ 5. Plaintiffs also claim that Defendants failed to provide Plaintiffs with requested documents or an accounting. *Id.* ¶ 7. Plaintiffs point to the California Business and Professions Code (*Id.* ¶¶ 44, 50) and Rules of Professional Conduct (*Id.* ¶¶ 45-46, 48-49) as bases for their claims. Plaintiffs accuse Defendants of breaching their fiduciary duty as attorneys in the first cause of action (*Id.* ¶¶ 75-83) and seek declaratory relief.

The acts Plaintiffs complain of squarely fall within the arbitration provision within the Retainer Agreements. Plaintiffs' allegations are exactly the type of claims which are contemplated within the arbitration provision's language of "claims for professional malpractice, negligence or errors and omissions." O'Callahan Dec. Ex. 1 ¶ 9. As such, Plaintiffs have chosen to file their claims in the wrong forum and the Court should dismiss Plaintiffs' claims and compel them before the proper tribunal, *i.e.*, arbitration before Justice Panelli. Based upon a straightforward reading of Plaintiffs' allegations and the arbitration agreement, it is clear that the proper venue for Plaintiffs' claims is in arbitration, and not the jurisdiction of this Court.


**B.     The Arbitration Agreement Falls Under the FAA**

The principal purpose of the Federal Arbitration Act ("FAA") "is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748, 179 L. Ed. 2d 742 (2011). Section 4 of the FAA requires courts to compel arbitration "upon the motion of either party to the agreement (assuming that the 'making of the arbitration agreement or the failure ... to perform the same' is not at issue)." *Id.* (quoting 9 U.S.C. § 4). Section 4 of the FAA directs a court to compel arbitration unless the making of an arbitration agreement or one party's failure to arbitrate is in question. *Larson v. Speetjens*, 2006 U.S. Dist. LEXIS

66459, 11-12, 2006 WL 2567873 (N.D. Cal. Sept. 1, 2006) (citing *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, US.*, 9 F.3d 1060, 1064 (2d Cir. 1993)).

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. at § 2.  The FAA's provisions manifest a "liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

The court's role under the FAA is limited to:  (1) determining whether a valid agreement to arbitrate exists and, if it does, (2) deciding whether the agreement encompasses the dispute at issue.  9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999).  Both of those determinations can be answered in the affirmative in this case.

## C.    The Arbitration Provision Is Valid and Enforceable

"[I]n assessing whether an arbitration agreement or clause is enforceable, the Court should apply ordinary state-law principles that govern the formation of contracts." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (internal citations omitted) (applying California law to determine whether an arbitration clause was unenforceable due to procedural and substantive unconscionability).

Plaintiffs signed the Retainer Agreements in order to be represented by counsel in the HRT litigation.  The arbitration agreement is in in all capital letters, bolded, and underlined.  Regardless of any arguments Plaintiffs may bring regarding the requisite level of sophistication necessary to assent to an arbitration agreement, the arbitration clause here is in plain language, conspicuous, and on the very same page where Plaintiffs were required to sign the agreement.  The entire Retainer Agreement was two pages long consisting of ten paragraphs written in plain language.

Plaintiffs are bound by the Retainer Agreement, and the arbitration provision

therein, because they signed it.  *See e.g., Desert Outdoor Adver. v. Superior Court*, 196
Cal. App. 4th 866, 873, 127 Cal. Rptr. 3d 158, 163 (2011) (enforcing arbitration
provision within fee agreement for legal malpractice claim).  Moreover, courts have not
hesitated to enforce arbitration clauses within fee agreements in legal malpractice claims
against California counsel.  *See e.g., id*.

### D.     Plaintiffs' Entire Dispute is Encompassed by the Arbitration Agreement

The FAA compels the arbitration of Plaintiffs' claims.  The Agreement covers
Plaintiffs' dispute because the Agreement broadly encompasses all disputes arising out of
or in connection with representation of Plaintiffs with respect to the HRT matter,
specifically including any claims for professional malpractice, negligence or errors and
omissions.

Plaintiffs expressly agreed, in writing, that "to arbitrate any and all such disputes
including any claims for professional malpractice, negligence or errors and omissions."
Ex. A ¶ 9 (emphasis in original).  A dispute has arisen concerning Plaintiffs' receipt of
settlement funds and alleged damages stemming from not receiving their files or a final
accounting.  This dispute is directly related to the Agreement and "claims for professional
malpractice, negligence or errors and omissions."  As such, it falls squarely within the
arbitration agreement that this Court must enforce.

### E.     Arbitration Before Justice Panelli Is Appropriate

Retired California Supreme Court Justice Edward A. Panelli was appointed for
purposes of allocating settlement monies in the HRT litigation, and this was incorporated
into the Settlement Agreement.   All plaintiffs in the HRT litigation, including any
Plaintiff herein, had the opportunity for an individual meeting with Justice Panelli  to
present special circumstances associated with individual claims.  Per the Settlement
Agreement, after conducting the hearings, Justice Panelli allocated the settlement monies
among the plaintiffs as he was required to do under the Settlement Agreement.  He also

instructed Defendants to hold back 6% of every plaintiff's settlement until all lien issues were resolved, all consents had been received, and the final accounting had been completed.

Justice Panelli is the most appropriate arbitrator in this case. He has authority to award settlements pursuant to the HRT Settlement Agreement. Not only does he have authority, but he has the sole discretion to make such awards. For these reasons, the Court should compel arbitration before Justice Panelli.

### F.      Defendants, Though Non-Signatories to the Agreement, May Still Compel Arbitration

Anticipating that Plaintiffs may dispute the arbitration agreement because it was within the Retainer Agreements from the Gruber/Snyder firms, Defendants note that a party need not sign an arbitration agreement to be bound by it. *See e.g., Larson v. Speetjens*, 2006 U.S. Dist. LEXIS 66459 at 12, 2006 WL 2567873 (N.D. Cal. Sept. 1, 2006). A party can agree to submit to arbitration by means other than personally signing the agreement. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000). Thus, a nonsignatory of an arbitration agreement may be bound by it under ordinary contract and agency principles. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). "Among these principles are '(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.'" *Id.* The rule is an outgrowth of the strong federal policy favoring arbitration. *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986). Whether a nonsignatory is bound by the arbitration contract is governed by the federal substantive law on arbitrability. *Id.* at 1187; *Int'l Paper*, 206 F.3d at 417 n.4.

The court's analysis in *Larson v. Speetjens* provides highly convincing reasoning regarding why this Court should compel arbitration in the instant circumstances, even where Defendants were not signatories to the Retainer Agreements but incorporated therein by Paragraph 7:

Plaintiffs seek to avoid the burdens of the Agreements—the arbitration requirement.  Plaintiffs' entire case hinges on the attorney-client relationship created by the Agreements.  Plaintiffs' claims are inextricably intertwined with the Agreements, as they are based on Defendants' alleged breach of their fiduciary duty that was created by the Agreements.  They cannot seek to enforce the rights the attorney-client relationship provided them and avoid the requirement that any dispute arising out of the Agreements be arbitrated.  *See NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal. App. 4th 64, 84, 100 Cal. Rptr. 2d 683 ("'No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens.'") (internal citation omitted).

*Larson v. Speetjens*, 2006 U.S. Dist. LEXIS 66459 at 22-23; *see also Brown v. Gen. Steel Domestic Sales, LLC*, 2008 U.S. Dist. LEXIS 97832, 42, 2008 WL 2128057 (C.D. Cal. May 19, 2008) (granting non-signatory defendants' motion to compel arbitration).

Plaintiffs knowingly accepted the benefits of the Retainer Agreements, *i.e.*, Defendants' legal advice regarding Plaintiffs' potential claims in the HRT litigation.  As such, although Defendants did not sign the Retainer Agreements containing the arbitration provision, they are incorporated by reference as associated counsel in Paragraph 7 and have standing to compel arbitration against Plaintiffs for their claims herein.

## IV.  PUBLIC POLICY STRONGLY FAVORS ARBITRATION

Public policy considerations dictate that arbitration be ordered where a party has expressly agreed to submit its claims to arbitration.  *See AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).  "And if there is a doubt about that matter – about the 'scope of arbitrable issues' – we should resolve that doubt in favor of arbitration."  *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

1    Defendants respectfully submit that this Court lacks jurisdiction to entertain the
2    merits of Plaintiffs' claims, as this matter must proceed to arbitration as required by the
3    FAA, 9 U.S.C. § 2, and the language of the arbitration agreement in the Retainer
4    Agreement.  The arbitration provision is enforceable and is not contrary to public policy
5    in this case.  Plaintiffs were fully informed as to the scope of the arbitration agreement.
6    The plain language of the agreement is clear and broad in scope in applying arbitration
7    "[i]n the event of a dispute which arises out of or in connection with the Firms [sic]
8    representation of you with respect to this matter, … including any claims for professional
9    malpractice, negligence or errors and omissions."  The Retainer Agreement further
10   notified Plaintiffs of the arbitration provision with the conspicuous language above the
11   signature line.

12       The language of the arbitration agreement is sufficiently clear and broad to
13   encompass arbitration of claims alleging legal malpractice, including those alleged by
14   Plaintiffs here.  As noted above, the relevant language of the arbitration provision is
15   triggered "[i]n the event of a dispute which arises out of or in connection with the Firms
16   [sic] representation of you with respect to this matter, … including any claims for
17   professional malpractice, negligence or errors and omissions."  Here, Plaintiffs assert
18   such claims which clearly implicate the arbitration agreement.

19       Plaintiffs' claims based upon legal malpractice are governed by the contractual
20   arbitration agreement.  Where a court determines that claims are subject to arbitration, the
21   court must determine whether to stay the litigation or dismiss it without prejudice.  *See*
22   *e.g., MCA Fin. Group, Ltd. v. Gardere Wynne Sewell, LLP*, 2007 U.S. Dist. LEXIS
23   22611, 20, 2007 WL 951959 (D. Ariz. Mar. 23, 2007).  Since all of Plaintiffs' claims are
24   subject to mandatory arbitration, it is appropriate to dismiss Plaintiffs' claims.  *Id*. (citing
25   *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (dismissing
26   plaintiff's claims upon determining the claims are subject to contractual arbitration)).

27       Not only is this case particularly apt for arbitration because of the fact that
28   Plaintiffs agreed to arbitration in the Retainer Agreements, but the key documents

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

underlying Plaintiffs' claims are strictly confidential.  For example, the Master

Settlement Agreement and Confidential Release contain confidentiality provisions and

are marked strictly confidential due to the nature of the HRT settlements.

### V.      THE COURT MUST DISMISS THE COMPLAINT BECAUSE PLAINTIFFS FAIL TO JOIN NECESSARY PARTIES

A complaint must be dismissed for its failure to join a necessary party under

Federal Rule of Civil Procedure 19.  *See* Fed. R. Civ. P. 12(b)(7).  Rule 12(b)(7) permits

a defendant to challenge (by pre-answer motion or as an affirmative defense in the

answer) the complaint's failure to join "persons whose presence is needed for a just

adjudication" under Rule 19.  *See Ocean Marine Ins. Co. v. Wickland Corp.*, 1995 U.S.

Dist. LEXIS 3085, 20-21, 1995 WL 125478 (N.D. Cal. Mar. 8, 1995).  Rule 19(a)

provides three circumstances where a person must be joined if feasible, i.e., a necessary

party:

(1)     if complete relief cannot be accorded among those already parties in the

person's absence .  Fed. R. Civ. P. 19(a)(1).

(2)     when the person claims an interest relating to the subject of the action and is

so situated that the disposition of the action in the person's absence may as a practical

matter impair or impede the person's ability to protect that interest.  Fed. R. Civ. P.

19(a)(2)(i).

(3)     if the person claims an interest relating to the subject of the action and is so

situated that the disposition of the action in the person's absence leaves any of the

persons already parties subject to a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations by reason of the claimed interest.  Fed. R. Civ. P.

19(a)(2)(ii).

The second and third circumstances share a common preliminary requirement:  the

person must claim an interest relating to the subject of the action.  Fed. R. Civ. P.

19(a)(2).  If any one of these three circumstances applies, the person is a necessary party.

1    *Shimkus v. Gersten Cos.*, 816 F.2d 1318, 1322 (9th Cir. 1987); *see also Altmann v.*
2    *Republic of Aus.*, 142 F. Supp. 2d 1187, 1210-11 (C.D. Cal. 2001).

3         Gruber and Snyder are necessary parties as described in Rule 19(a).  Plaintiffs list
4    the two firms as "Associated Plaintiffs' Counsel" on Plaintiffs' Notice of Interested
5    Parties.  [ECF No. 4].  When addressed at the Local Rule 7-3 conference, Plaintiffs'
6    counsel refused to explain whether this referred to Plaintiffs' counsel in the instant
7    litigation or Plaintiffs' counsel in the underlying HRT litigation.  O'Callahan Dec. ¶ 8.
8    Since Gruber and Snyder received sums for the costs they claimed, their absence exposes
9    Defendants to a substantial risk of incurring multiple liability.  In addition, a judgment
10   rendered in Gruber and Snyder's absence would adjudicate rights that might be adverse
11   to them.

12        The current parties cannot receive the complete relief sought without the presence
13   of other parties, *i.e.*, the Gruber and Snyder law firms.  Furthermore, Defendants may be
14   subject to multiple or inconsistent obligations without the joinder of the Gruber and
15   Snyder law firms insofar as they received sums that are to be part of the final accounting
16   in this matter.

17        Pursuant to Rule 19(b), this action should not proceed in Gruber and Snyder's
18   absence.  There is no mechanism by which the Court can shape relief to avoid the
19   prejudice Defendants face here.  Further, arbitration provides an adequate alternative
20   forum through which Plaintiffs can pursue a remedy.  Since joinder of Gruber and Snyder
21   is required, and since joinder of these parties would destroy diversity jurisdiction, the
22   Court should dismiss with prejudice Plaintiffs' claims for nonjoinder of parties .

23

24   **VI.   IF THE COURT DOES NOT DISMISS PLAINTIFFS' CLAIMS**
25   **OUTRIGHT, THE COURT SHOULD STAY THE ENTIRE ACTION**
26   **PENDING ARBITRATION**

27   "If the court finds that an arbitration clause is valid and enforceable, the court
28   should stay or dismiss the action to allow the arbitration to proceed."  *Kam-Ko Bio-*

*Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA)*, 560 F.3d 935, 940 (9th Cir. 2009) (citing *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006) (en banc).  The FAA requires federal courts to enforce arbitration agreements and to stay any litigation that contravenes such agreements.  *See e.g., Gonsalves v. Infosys Techs., Ltd.*, 2010 U.S. Dist. LEXIS 79683, 14, 2010 WL 3118861 (N.D. Cal. Aug. 5, 2010).  The Court's inherent power to control its docket includes the power to stay pending arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 20 n. 23, 103 S.Ct. 927, 74 L. Ed. 2d 765.

## VII.   CONCLUSION

For the aforementioned reasons, Defendants respectfully request that the Court dismiss the complaint in its entirety with prejudice and compel arbitration before Justice Panelli, or in the alternative, stay this matter pending arbitration.

Dated:  May 12, 2014                    GIRARDI | KEESE

                                  By:      /s/ Celene S. Chan
                                        THOMAS V. GIRARDI
                                        JAMES G. O'CALLAHAN
                                        CELENE S. CHAN
                                        Attorney for Defendants

DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION