Jeffrey B. Isaacs, Esq., SBN 117104
    jisaacs@ifcounsel.com
Jerome H. Friedberg, Esq., SBN 125663
    jfriedberg@ifcounsel.com
Amanda R. Touchton, Esq., SBN 220430
    atouchton@ifcounsel.com
**ISAACS FRIEDBERG & LABATON LLP**
555 South Flower Street, Ste. 4250
Los Angeles, California 90071
Telephone (213) 929-5550/Facsimile (213) 929-5541

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH ALLEN, et. al., | Case No.  14-CV-02721-MWF-FFM |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION** |
| vs. | |
| GIRARDI \| KEESE, et. al. | [Supporting Declarations Filed Concurrently Herewith] |
| Defendants. | Hon. Michael G. Fitzgerald |
| | **Hearing:** **Date: June 9, 2013** **Time: 10:00 a.m.** **Location:  Courtroom 1600** |

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ............................................................................. 1

II.  STATEMENT OF FACTS ................................................................ 2

    A.  Plaintiffs' Legal Representation in the HRT Litigation..................... 2

        1.  Plaintiffs' Retainer Agreements with Snyder
            and Gruber............................................................................ 2

        2.  Snyder and Gruber Refer Plaintiffs' Cases to
            Girardi | Keese for Settlement........................................... 4

        3.  Defendants Settle Plaintiffs' Cases and Distribute
            Plaintiffs' Settlement Funds............................................... 4

    B.  Defendants Refuse to Provide Plaintiffs with their Complete
        Client Files and an Accounting ............................................. 6

    C.  Defendants' Relationship to and Misleading Representations
        Regarding Justice Panelli's Role in the HRT Litigation.................... 7

III.  APPLICABLE LAW ....................................................................... 8

    A.  The Federal Arbitration Act Governs, But California Law
        Determines Whether the Arbitration Clause Extends
        to Defendants..................................................................... 8

    B.  There Is No Policy or Preference Favoring Arbitration
        of This Dispute .................................................................. 9

    C.  Under California Law, A Non-Party to an Arbitration
        Agreement May Not Compel Arbitration Excepted Under
        Very Limited Circumstances............................................... 10

IV.  ARGUMENT ................................................................................. 11

    A.  As Non-Parties to the Arbitration Agreement, Defendants
        Have Not Met Their Burden of Establishing an Exception
        Permits Them to Compel Arbitration.................................. 11

i

**PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION**

B.  Snyder and Gruber Did Not Have an Agency
    Relationship with Defendants ........................................................ 11

C.  Defendants Were Not Third-Party Beneficiaries
    to the Retainer Agreements ............................................................ 12

    1.  Defendants Cannot Claim Third-Party Beneficiary
        Status Under the Plain Language of the Retainer
        Agreements ............................................................................ 14

    2.  The Parties Did Not Intend Defendants to Be
        Third-Party Beneficiaries ..................................................... 15

D.  Defendants Cannot Compel Arbitration
    Under the Doctrine Of Equitable Estoppel .................................... 16

E.  Defendants' Proposed Construction of the Arbitration
    Clause Would Render It Unconscionable ...................................... 19

    1.  The Arbitration Clause in the Retainer Agreement,
        as Interpreted by Defendants, Would Be
        Procedurally Unconscionable ................................................ 19

    2.  The Arbitration Clause, as Interpreted by Defendants,
        Would Be Substantively Unconscionable .............................. 20

F.  Snyder and Gruber Are Not Necessary Parties ............................. 22

V.  CONCLUSION ........................................................................................ 23

**PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION**

# TABLE OF AUTHORITIES

**FEDERAL CASES:**                                                    **PAGE(S)**

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
     513 U.S. 265, 281 (1995) ........................................................... 8

*Arthur Andersen LLP v. Carlisle*,
     556 U.S. 624, 632 (2009) ......................................................... 10

*Chavarria v. Ralphs Grocery Co.*
     733 F.3d 916, 921 (9th Cir. 2013) ........................................... 19

*Chrion Corp. v. Ortho Diagnostic Systems, Inc.*,
     207 F.3d 1126, 1130 (9th Cir. 2000) ......................................... 8

*Comedy Club, Inc. v. Improv W. Assocs.*,
     553 F.3d 1277, 1287 (9th Cir. 2009) ......................................... 9

*County of Santa Clara v. Astra USA, Inc.*,
     401 F. Supp. 2s 1022, 1031(N.D. Cal. 2009) ......................... 22

*Doctor's Assocs., Inc. v. Casarotto*,
     517 U.S. 681, 687 (1996) ........................................................... 9

*Goldman, Sachs & Co. v. City of Reno*,
     2014 WL 1272784 (9th Cir. 2014) ........................................... 9

*Kramer v. Toyota Motor Corp.*,
     705 F. 3d 1122, 1126 (9th Cir. 2013) ........................... 10, 16, 17

*Larson v. Speetjens*,
     2006 WL 2567873 (N.D. Cal. 2006) ....................................... 18

*Sphere Drake Insurance Company Ltd. v. All American Life Insurance Co.*,
     307 F.3d 617 (7th Cir. 2002) ................................................... 20

**STATE CASES:**

*Armendariz v. Found. Health Physchcare Servs., Inc.*
     24 Cal. 4th 83, 114 (2000) ....................................................... 19

*Artista Films, Inc. v. Gilford Securities, Inc.*
     43 Cal. App. 4th 495, 501 (1996) ........................................... 12

iii

**PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION**

# TABLE OF AUTHORITIES

**STATE CASES:** **PAGE(S)**

*Burch v. Premier Homes, LLC.*
      199 Cal. App. 4th 730, 742 (2011) ........................................ 13

*City of Hope v. Cave*
      102 Cal. App. 4th 1356 (2002) ............................................ 10

*DMS Services, Inc. v. Superior Court*
      205 Cal. App. 4th 1346, 1355 (2012) .................................. 17

*Dryer v. Los Angeles Rams*
      40 Cal. 3d 406, 418 (1985) .................................................. 11

*Garcia v. Truck Ins. Exchange*
      36 Cal. 3d 426, 440 (1984) .................................................. 13

*Goldman v. KPMG LLP*
      173 Cal. App. 4th 209, 230 (2009) ...................................... 16

*Jones v. Jacobson*
      195 Cal. App. 4th 1, 20 (2011) ...................................... 10, 16

*Kramer v. Toyota Motor Corp.*
      705 F. 3d 1122, 1128 (9th Cir. 2013) .................................. 16

*Lawerence v. Walzer & Gabrielson*
      207 Cal. App. 3d 1501, 1507 (1989) .................................... 13

*Little v. Auto Steigler, Inc.*
      29 Cal. 4th 1064, 1071 (2007) ............................................. 20

*Macaulay v. Norlander*
      12 Cal. App. 4th 1, 8 (1992) ................................................ 14

*Mayhew v. Benninghoff*
      53 Cal. App. 4th 1365, 1370 (1997) .................................... 13

*Neverkovec v. Fredericks*
      74 Cal. App. 4th 337, 349 (1999) ........................................ 11

*Prakashpalan v. Engstrom, Lipscomb and Lack*
      223 Cal. App. 4th 1105, 1126 (2014) ..................................... 1

**PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION**

# TABLE OF AUTHORITIES

**STATE CASES:**                                                          **PAGE(S)**

*Parada v. Superior Court*
     176 Cal. App. 4th 1554 (2009) ............................................................. 19

*Sanchez v. Western Pizza Enterprises, Inc.*
     172 Cal. App. 4th 154, 177 (2009) ....................................................... 20

*Sphere Drake Insurance Company Ltd. v. All American Life Insurance Co.*
     307 F.3d 617 (7th Cir. 2002) .................................................................. 20

*Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co., Inc.*
     129 Cal. App. 4th 759, 763 (2005) ....................................................... 10

*Violette v. Shoup*
     16 Cal. App. 4th 611, 620 (1993) ......................................................... 12

**FEDERAL RULES**

     Federal Rules of Civ. Proc. 19................................................................ 22

# I.     INTRODUCTION

Plaintiffs are 24 elderly women who took hormone replacement therapy ("HRT") and subsequently developed breast cancer.  Defendants Girardi | Keese, Thomas V. Girardi and James G. O'Callahan (collectively, "Defendants") represented Plaintiffs in individual personal injury actions against the pharmaceutical companies that manufactured HRT.

After settling Plaintiffs' personal injury actions, Defendants: (1) failed to disclose to Plaintiffs the terms of the settlement or the key settlement documents; (2) misrepresented to Plaintiffs the amounts that their personal injury actions had settled for; (3) untruthfully claimed that they were distributing to Plaintiffs their "final" settlement proceeds; and (4) wrongfully withheld a portion of Plaintiffs' settlement proceeds.

Because they were unable to get satisfactory answers regarding the settlement from Defendants, Plaintiffs retained new counsel who requested an accounting from Defendants and certain key documents only in Defendants' possession.  After receiving the request from Plaintiffs' new counsel, Defendants admitted that they had misrepresented the amounts of Plaintiffs' settlements and had withheld six percent of their proceeds.  Furthermore, Defendants have still not paid the six percent, refuse to provide an accounting and continue to withhold documents from their former clients in violation of their ethical duties.  Plaintiffs, therefore, believe that Defendants may be improperly withholding well more than six percent.  *See Prakashpalan v. Engstrom, Lipscomb and Lack,* 223 Cal. App. 4th 1105, 1126 (2014) (recognizing that the "device of aggregate settlement could provide a shield for an attorney to misappropriate or improperly distribute funds").  Plaintiffs filed this action on April 14, 2014, seeking damages and an accounting.

Defendants now move to compel arbitration under an agreement to which they are not a signatory, not a party and not an express or implied beneficiary.  The general rule is that defendants who were not parties to an arbitration agreement may not compel

1

arbitration.  There are limited exceptions to this rule, but Defendants have failed to satisfy their burden of establishing that an exception applies in this case.  Defendants do not even offer a particular theory on which this Court could compel arbitration.

Furthermore, Defendants' proposed interpretation of the subject arbitration clause would render it unconscionable.  Accordingly, Defendants' motion should be denied.

## II.   STATEMENT OF FACTS

### A.   Plaintiffs' Legal Representation in the HRT Litigation.

In or around 2004 and 2005, Plaintiffs filed individual personal injury actions that were consolidated pre-trial in Multi District Litigation entitled *In re Prempro Products Liability Action*, Case No. 03-cv-01507-BRW, MDL 1507 (the "HRT Litigation").  (Motion, p. 1.)

### 1.   Plaintiffs' Retainer Agreements with Snyder and Gruber.

Initially, Plaintiffs contacted The Law Offices of Howard A. Snyder ("Snyder") and Gruber & Gruber ("Gruber") to represent them in the HRT Litigation.  (Snyder Decl., ¶ 4; Gruber Decl., ¶ 4.)   Snyder and Gruber sent each Plaintiff a form retainer agreement that had been drafted by Snyder (the "Retainer Agreement").  (*Id.*, ¶ 4; O'Callahan Decl., Exh. 1.)[1]

When Snyder drafted the Retainer Agreement, he intended it to govern the relationship between Snyder and Gruber, on the one hand, and their clients on the other. (Snyder Decl. at ¶ 6.)  To reflect this, he put the names and addresses of both firms at the top of the agreement and drafted the opening phrase of the Retainer Agreement to reads as follows: "This ATTORNEY-CLIENT RETAINER AGREEMENT ('Agreement') is entered into between [Plaintiff] (Client) and the Law Offices of Howard A. Snyder and Gruber & Gruber ('Attorneys')."  (*Id.*)   He created signature blocks for himself, Daniel Gruber and the client.  (*Id.*)

---

[1]  Snyder and Gruber have independent law practices.  (Snyder Decl., ¶ 3, Gruber Decl., ¶ 3.)  In certain cases, such as the HRT Litigation, they represent clients jointly. (*Id.*)

2

The Retainer Agreements contained a form arbitration clause.  (Snyder Decl., ¶ 7.)  It read as follows:

> AGREEMENT TO ARBITRATE.  In the event a dispute which arises out of or in connection with the Firms representation of you with respect to this matter, the parties both agree and herein stipulate to arbitrate any and all such disputes including any claims for professional malpractice, negligence or errors and omissions.  The law Firm further agrees to maintain professional liability insurance during the pendency of this matter.  Attorneys agreement to handle this matter is contingent upon clients agreement to arbitration.

(*Id.*)

The arbitration clause, like the rest of the Retainer Agreement, was drafted with the intention that it would apply to the relationship between Snyder, Gruber and the clients.  (Snyder Decl., ¶ 7.)  Snyder did not draft the arbitration clause with the intention that it would apply to Defendants or any "associated counsel" (*Id.*)

Snyder and Gruber did not and would not have left the question of which firms were to be included in and bound by a retainer agreement to a subjective interpretation of the parties "intent."  (Snyder Decl., ¶ 8; Gruber Decl., ¶ 6.)  If Girardi | Keese were intended to have been bound by the Retainer Agreement, that issue would have been discussed and specifically addressed with the Girardi firm.  (*Id.*)  This is because neither Snyder nor Gruber would have included Girardi | Keese in their retainer agreement without the express permission of Girardi.  (*Id.*)

Snyder and Gruber had a standard form retainer agreement which they used in cases in which Snyder, Gruber and Girardi | Keese represented clients jointly.  (Snyder Decl., ¶ 9, Exh.1; Gruber Decl., ¶ 7, Exh. 1.)  This three firm retainer agreement includes the names of all three firms in the header and all three firms in the definition of "Attorneys."  (*Id.*)  Notably, the three firm retainer agreement was not used for the HRT Litigation.  (*Id.*)

When the Plaintiffs signed the retainer agreement, they thought that it only applied to Snyder and Gruber: "I did not intend nor did I understand that the retainer agreement I had with Snyder and Gruber would apply to any of the other lawyers involved in the case, including Girardi | Keese, Thomas Girardi or James O'Callahan." (Allen Decl., ¶ 5; Barnes Decl., ¶ 5; Gilliam Decl., ¶ 5; Hren Decl., ¶ 5; Lehnhardt Decl., ¶ 5; Mallette Decl., ¶ 5; Maury Decl., ¶ 5; Podhayski Decl., ¶ 5; Orr Decl., ¶ 5; Valentine Decl., ¶ 5 (collectively, "Plaintiffs' Decls.") [2]

### 2. Snyder and Gruber Refer Plaintiffs' Cases to Girardi | Keese for Settlement.

In large multi-plaintiff personal injury actions, Snyder and Gruber will frequently work with outside counsel or refer the matter to larger law firms. (Snyder Decl., ¶ 3; Gruber Decl., ¶ 3.) In the HRT Litigation, Snyder and Gruber determined to work with Girardi | Keese. (Snyder Decl., ¶ 10; Gruber Decl., ¶ 8.) Snyder and Gruber did not have a written agreement governing their relationship with Girardi | Keese in the HRT Litigation, but operated on a long-standing oral agreement. (*Id.*)

Snyder and Gruber's practices are completely separate and independent from Defendants' law practices. (Snyder Decl., ¶ 15; Gruber Decl. ¶ 13.) Snyder and Gruber did not act at the direction or at the control of Defendants. (Snyder Decl., ¶ 13; Gruber Decl. ¶ 11 .) Further, they did not direct or control Defendants actions. (*Id.*) Defendants did not have the authority to appear in court for Snyder and Gruber and Snyder and Gruber did not appear in court for Defendants. (*Id.*) They maintained separate offices, separate insurance, separate trust accounts and separate client files.

---

[2] Indeed, the Retainer Agreement makes plain that any relationship with any "outside attorney or law firm" would be by a "separate agreement": "Clients will not incur any additional legal fees as a result of any legal association. Client acknowledges that legal fees shall be split amongst the attorneys by separate agreement …." (O'Callahan Decl., Exh. 2.)

**OPPOSITION TO MOTION TO COMPEL**

(Snyder Decl., ¶ 15; Gruber Decl. ¶ 13.)  They had independent relationships with their clients and owed them independent legal and ethical duties.  (*Id.*)

Although the timing varied for each Plaintiff, all of Plaintiffs' cases were referred to Girardi | Keese for settlement.  (Snyder Decl., ¶ 10; Gruber Decl., ¶ 8.)  Defendants alone represented Plaintiffs in connection with the HRT settlement and subsequent distribution of their settlement proceeds.  (Snyder Decl., ¶ 11; Gruber Decl. ¶ 9.)  Snyder and Gruber did not participate in the settlement of the HRT Litigation or the distribution of Plaintiffs' settlement proceeds.  (*Id.*)

### 3.  Defendants Settle Plaintiffs' Cases and Distribute Plaintiffs' Settlement Funds.

In 2011, on behalf of all Plaintiffs and 114 other similarly situated clients, Defendants negotiated a global settlement of the HRT Litigation (the "HRT Settlement").  (Motion, p. 1.)  At that time, Defendants sent the Plaintiffs a document titled "Confidential Release Indemnity and Assignment" (the "Release").  (Plaintiffs' Decls., ¶ 7, Touchton Decl., ¶ 12. )  The Release provided that "Justice Edward Panelli (retired) will allocate additional sums above [the minimum award] in his sole discretion."  (*Id.*)  This is the only reference to Justice Panelli in the Release.  (Touchton Decl. at ¶ 13.)

Plaintiffs signed and returned the Release, which contained a signature block for Defendants.  (Plaintiffs' Decls., ¶ 7; Touchton Decl., ¶ 14)  To Plaintiffs' knowledge, this is their only written agreement with Defendants.  (Plaintiffs' Decls., ¶ 7.)  The Release contains a clause that provides for arbitration in New York to determine the pharmaceutical companies' damages if Plaintiffs were to breach the confidentiality provision of the Release.  (Touchton Decl., ¶ 15.)  The arbitration provision in the Release—the only written agreement that Plaintiffs and Defendants were both parties to—is irrelevant to the dispute at hand.  (*Id.*)

Defendants then received and distributed the HRT Settlement funds.  (Touchton Decl., ¶¶ 16 – 18.)  Defendants sent each Plaintiff a document titled "Consent to

5

Settlement and Authorization to Make Disbursements" (the "Consent"), which read: "I, [Plaintiff], hereby authorize my attorneys, Girardi and Keese, to settle all of my claims arising out of the [HRT Litigation], for the **total amount** of [dollar figure]."  (*Id.*, ¶ 16.) (emphasis added.)  After the Plaintiffs signed and returned the Consents, they received a check from Girardi | Keese for their purported settlement proceeds with the phrase "**HRT Final Settlement Payment**" printed on the face of the check.  (*Id.*, ¶ 17.) (emphasis added.)  The checks were accompanied by a letter from Defendant O'Callahan, which indicated that the enclosed check "represents settlement of the above captioned matter."  (*Id.*, ¶ 18.)  In certain cases, where the original plaintiff was deceased, he included the phrase: "We hope that in some way this helps represent a closure to an unfortunate situation."  (*Id.*, ¶ 19.)  He concluded the letters with the following: "It has been a pleasure representing you in this case.  If you have any future needs, please do not hesitate to give me a call."  (*Id.*, ¶ 20.)

**B.    Defendants Refuse to Provide Plaintiffs with their Complete Client Files and an Accounting.**

Plaintiffs' retained new counsel to investigate Defendants' distribution of their HRT settlement funds.  New counsel wrote to Defendants requesting that they provide Plaintiffs' with their client files, with the documents necessary to determine whether the aggregate settlement had been appropriately distributed and with an accounting. (Touchton Decl., ¶ 3, Exh.1.)  Defendants responded by producing a very small portion of Plaintiffs' client files and with a letter drafted by Defendant O'Callahan, which acknowledged for the first time that Defendants had withheld six percent of the entire settlement proceeds – not only for Plaintiffs – but for all 138 individuals.  (Touchton Decl. 4, Exh. 2.)  According to O'Callahan, Justice Panelli, who he claimed had been "appointed as Special Master for the purpose of allocating the settlement monies in this matter" had "instructed" Defendants to "hold back 6% of every plaintiffs' settlement . . . ."  (*Id.*)

After additional back and forth written and oral communications, Defendants have continued to refuse to produce an accounting or even a single piece of paper that reflects the settlement amount allocated to their case by Justice Panelli.[3]  (Touchton Decl., ¶ 3 – 9, Exhs., 1 – 5.)

## C. Defendants' Relationship to and Misleading Representations Regarding Justice Panelli's Role in the HRT Litigation.

Defendants contend that this Court should compel arbitration of this case before Justice Panelli.  (Motion, pp. 1-2.)  This argument fails because Plaintiffs have never agreed that Justice Panelli can arbitrate any disputes between them and any of their counsel, including Defendants.

In their Motion, Defendants represent that Justice Panelli "was appointed for the purposes of allocating the settlement funds."  (*Id.*, p. 8.)  They further claim that he is the "sole arbiter of the settlement award allocations" and has "sole discretion" to make awards in the underlying HRT litigation.  (*Id.*, pp. 1, 5.)  In addition, Defendant O'Callahan has previously claimed in his correspondence with Plaintiffs' counsel that Justice Panelli had been "appointed Special Master" in the HRT Litigation. (O'Callahan Decl., Exh. 2.)

To Plaintiffs' knowledge and based on counsel's investigation, Justice Panelli has never been appointed by any court for any purpose in the HRT Litigation.  (Touchton Decl., ¶ 5.)  Defendants claims regarding Justice Panelli's authority all arise from the Release and settlement agreement in the HRT Litigation, which has not been adopted or approved by a court.  (*Id.*)  Under the terms of the Release, Justice Panelli has the

---

[3]  Defendants did eventually produce a purported file for each Plaintiff.  (Touchton Decl., ¶ 6.)  The files, however, did not include critical documents, as set forth in Plaintiffs' correspondence to Defendants.  (*Id.* ¶ 7.)  For example, the files did not include any documents or correspondence with Justice Panelli, any indication of the final settlement value of Plaintiffs' case, or any documents or materials that would permit Plaintiffs to determine if the aggregate settlement had been appropriately distributed.  (*Id.*)

**OPPOSITION TO MOTION TO COMPEL**

authority to allocate HRT settlement funds among Girardi | Keese's HRT clients, including Plaintiffs, and, as the funds have been allocated, his role is concluded. (*Id.*, ¶ 6, Exh. 4.)  There is nothing in the HRT Release that would make him the "sole arbiter" of all (or any) disputes between Defendants and Plaintiffs.  When Defendants' counsel inquired as to the basis for this "Special Master" designation and requested to be provided with the court order appointing Justice Panelli "Special Master," Defendant O'Callahan responded: "I admit that was the wrong phrase." (*Id.*)  Regardless, Justice Panelli's role under the settlement agreement does not support Defendants' claim that he has been appointed as the arbitrator in this dispute.

Furthermore, Defendants financial relationship with Justice Panelli would give Plaintiffs the right to object to his serving as an arbitrator in this dispute.  (Touchton Decl., ¶ 21.)  In at least one other case, and likely many more, Defendants have used Justice Panelli in connection other litigation to determine the eligibility of personal injury plaintiffs to receive a portion of an aggregate settlement fund.  (*Id.*)  Justice Panelli, therefore, receives significant compensation – compensation likely charged against the plaintiffs in the underlying cases as costs – from his relationship with Defendants.[4]

## III.   APPLICABLE LAW

### A.   The Federal Arbitration Act Governs, But California Law Determines Whether the Arbitration Clause Extends to Defendants.

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in transactions involving interstate commerce.  *Alied-Bruve Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 281 (1995).  Under the FAA, the court must decide whether there is a valid agreement to arbitrate, and, if so, whether it encompasses the current dispute.  *Chrion Corp. v. Ortho Diagnostic Systems, Inc.*, 207

---

[4]  In addition, as discussed below, Justice Panelli is a witness in this case based on Defendants' contentions that Defendants secretly withheld funds from the Plaintiffs at his direction.  (O'Callahan Decl., Exh. 2.)

**OPPOSITION TO MOTION TO COMPEL**

F.3d 1126, 1130 (9th Cir. 2000).  State contract law governs whether (1) a non-signatory can enforce an arbitration agreement only to the extent, and (2) whether the arbitration agreement is enforceable.  *Kramer,* 705 F. 3d at 1126 *citing Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).   Arbitration agreements are subject to the same defenses as all contracts, "such as fraud, duress, or unconscionability."  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

**B.  There Is No Policy or Preference Favoring Arbitration of This Dispute.**

"The FAA reflects the fundamental principle that arbitration is a matter of contract."  *Rent-A-Center, West v. Jackson*, 561 U.S. 63, 67 (2010).  Therefore, although the FAA encompasses a liberal federal policy favoring arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  As recently explained by the Ninth Circuit: "[W]e do not apply the so called 'presumption in favor of arbitrability' in every case. Where the arbitrability of a dispute is contested, we must decide whether the parties are contesting the *existence* or the *scope* of an arbitration agreement.  If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply."  *Goldman, Sachs & Co. v. City of Reno*, 2014 WL 1272784 (9th Cir. 2014) (finding that, because the parties disputed whether there was an agreement to arbitrate, the presumption in favor of arbitration did not apply).

"The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement."  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009).  Indeed, "where the question is whether a particular party is bound by the arbitration agreement, the liberal federal policy favoring arbitration agreements . . . is inapposite."  *Goldman v. KPMG LLP,* 173 Cal. App. 4th 209, 219 (2009).  In this case, Plaintiffs vehemently dispute that there is an arbitration agreement between themselves and Defendants because Defendants are not signatories

9

or parties to the Retainer Agreement. Accordingly, the "strong public policy" in favor of arbitration does not extend to them.

**C.     Under California Law, A Non-Party to an Arbitration Agreement May Not Compel Arbitration Excepted Under Very Limited Circumstances.**

"Generally, the contractual right to compel arbitration 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'" *Kramer v. Toyota Motor Corp.*, 705 F. 3d 1122, 1126 (9th Cir. 2013) *quoting Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993). Thus, a non-signatory can enforce an arbitration agreement only to the extent "the relevant state contract law allows the litigant to enforce the agreement." *Kramer,* 705 F. 3d at 1126 *citing Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).

Under California law, "[g]enerally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it." *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co., Inc.*, 129 Cal. App. 4th 759, 763 (2005). California contract law permits non-signatories to an arbitration agreement to enforce it in three limited circumstances: where the non-party can establish that they are (1) a third-party beneficiary to the arbitration agreement; (2) in an agency relationship with a signatory; or (3) that principles of equitable estoppel entitle them to enforce the arbitration agreement. *Jones v. Jacobson*, 195 Cal. App. 4th 1, 16 (2011).

Furthermore, the non-signatory bears the burden both legally and factually of establishing that one of these "*limited* exceptions" applies. *Jones*, 195 Cal. App. 4th at 16 (denying motion to compel arbitration where the non-signatory failed to carry its burden of establishing that it was a party to the arbitration agreement) (emphasis in original).

In *City of Hope v. Cave,* 102 Cal. App. 4th 1356 (2002), for example, defendants WGM and Bryan Cave sought to compel arbitration contending that rules of equitable estoppel applied. *Id.* at 1370. In an effort to avoid making admissions that might impact other defenses, WGW and Bryan Cave attempted to skirt the burden of proving

that they were entitled to enforce the arbitration provision. *Id.* The court held: "because WGM and Bryan Cave were claiming rights under the contract, it was their duty to demonstrate that the promises applied to them personally." *Id.* at 1369. Having failed to meet their burden, the court denied their petition. *Id.* at 1371.

## IV.   ARGUMENT

**A.   As Non-Parties to the Arbitration Agreement, Defendants Have Not Met Their Burden of Establishing an Exception Permits Them to Compel Arbitration.**

Defendants acknowledge that they are not signatories or parties to the Retainer Agreements. (Motion, p. 9.) Instead, they cite generally to federal authority listing "ordinary contract and agency principles" under which a non-signatory "may be bound" by an arbitration agreement. Defendants, however, fail to identify which of these general principles applies in this case. In fact, as Defendants cite to federal authority and not the applicable California law, they do not even identify the correct exceptions. Defendants also fail to cite to any facts or extrinsic evidence that would support their proposed interpretation of the Retainer Agreement. *Neverkovec v. Fredericks,* 74 Cal. App. 4th 337, 349 (1999) ([I]t will seldom be sufficient for the third party simply to rely on a literal application of the terms of the release"). As demonstrated below, Defendants have failed to carry their burden of establishing standing to compel arbitration.

**B.   Snyder and Gruber Did Not Have an Agency Relationship with Defendants.**

Evidence of a preexisting agency relationship between the non-signatory and the signatory to an arbitration agreement may be sufficient to permit a non-signatory to enforce the arbitration provision. *Dryer v. Los Angeles Rams,* 40 Cal. 3d 406, 418 (1985) (holding that agents of defendants could enforce arbitration clause). "An agent is one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295. The primary characteristics of an agency relationship include: (1) the authority of the agent to act for and in the place of the principal to bring the

principal into binding legal relationships; and (2) control by the principal over the actions of the agent.  *See Violette v. Shoup*, 16 Cal. App. 4th 611, 620 (1993).

Defendants do not allege that they were agents of Snyder and Gruber or that Snyder and Gruber were their agents—nor could they.  Snyder and Gruber, as independent law firms, had their own relationship with and owed independent legal and ethical duties to Plaintiffs separate and apart from any relationship between Defendants and Plaintiffs.  Snyder and Gruber did not direct or control Defendants actions and Defendants did not direct or control the actions of Snyder or Gruber.  (Snyder Decl., ¶ 13; Gruber Decl., ¶ 11.)  Thus, there is no basis for a finding that Defendants can enforce the arbitration clause as either agents or principals of Snyder and Gruber.

## C.   Defendants Were Not Third-Party Beneficiaries to the Retainer Agreements.

"The fundamental canon of interpreting written contracts is the ascertainment of the intent of the parties."  *Jones*, 195 Cal. App. 4th at 17.  To enforce the arbitration clause in the Retainer Agreements as third-party beneficiaries, Defendants must establish that Snyder, Gruber and the Plaintiffs intended them to benefit from the arbitration clause at the time the Agreements were executed.  *Artista Films, Inc. v. Gilford Securities, Inc.*, 43 Cal. App. 4th 495, 501 (1996) (holding that without evidence that the signatories, by the act of signing the agreement, intended to confer a benefit on the third-party, the third-party could be no more than an incidental beneficiary without standing to enforce an arbitration agreement); *City of Hope*, 102 Cal. App. 4th at 1370 (For a third-party to enforce an arbitration provision, "[i]t is not enough that a literal interpretation of the contract would result in a benefit to the third party").

The rules for ascertaining the intent of the parties are well established in California law.  First, where possible, the parties' intent is inferred from the written provisions of the contract alone.  Cal. Civ. Code § 1639.

**OPPOSITION TO MOTION TO COMPEL**

1    Second, to the extent that there is any ambiguity in the terms of contract, it must

2    be construed against the drafter.  Cal. Civ. Code, § 1654 ("[T]he language of a contract

3    should be interpreted most strongly against the party who caused the uncertainty to

4    exist.")  Moreover, this is particularly true where the agreement was drafted by an

5    attorney.  *Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365, 1370 (1997) (finding that if

6    the defendant attorney had wanted the arbitration agreement to extend more broadly

7    than a close reading of its terms permitted "it was his responsibility to draft a clear and

8    explicit agreement to that effect."); *Lawerence v. Walzer & Gabrielson*, 207 Cal. App.

9    3d 1501, 1507 (1989) (despite expansive language, an arbitration clause in a retainer

10   agreement was limited in scope to what a reasonable client would construe it to

11   include).

12   Third, a narrow reading of the contract terms is required where the proposed

13   interpretation results in the waiver of a "substantial right," such as the right to a jury

14   trial.  *Lawerence*, 207 Cal. App. 3d at 1507 ("[T]he right to select a judicial forum, vis-

15   a-vis arbitration, is a "substantial right," not lightly to be deemed waived.") (internal

16   citations omitted).

17   Fourth, if the ambiguity cannot be resolved by reference to the terms of the

18   contract, courts can consider extrinsic evidence of the parties' intent.  *Burch v. Premier*

19   *Homes, LLC.*, 199 Cal. App. 4th 730, 742 (2011) (admitting extrinsic evidence to

20   determine the scope of an arbitration agreement).  Such evidence includes statements

21   from the contracting parties reflecting the circumstances of the negotiations and their

22   intentions on entering into the contract.  *Garcia v. Truck Ins. Exchange*, 36 Cal. 3d 426,

23   440 (1984) (In considering whether a third-party can benefit from a contract, "the

24   parties should be allowed to testify as to their actual intention") (internal citations

25   omitted).

26   In this case, both the plain language of the Retainer Agreements and extrinsic

27   evidence clearly demonstrate that Defendants' were not intended third-party

28   beneficiaries.

**OPPOSITION TO MOTION TO COMPEL**

### 1.   Defendants Cannot Claim Third-Party Beneficiary Status Under the Plain Language of the Retainer Agreements.

The Retainer Agreements were entered into "by and between [Plaintiffs] and Law Offices of Howard A. Snyder and Gruber & Gruber ("Attorneys"). (O'Callahan Decl., Exh. 2.) The only signatories to the Retainer Agreements were the Snyder and Gruber and their clients. (*Id.*)

In the "Association of Counsel" provision, the Retainer Agreement indicates that Howard Snyder has the sole discretion to associate in additional attorneys as he sees necessary. (*Id.*) The Association of Counsel provision neither states nor contemplates that associated counsel will be bound by the terms of the Retainer Agreement generally or by the arbitration clause specifically. Instead, it indicates that the relationship between associated counsel and Snyder and Gruber will be governed by a separate agreement. (*Id.* ("Client acknowledges that legal fees shall be split by the attorneys by separate agreement and consents to the same."); *cf. Macaulay v. Norlander*, 12 Cal. App. 4th 1, 8 (1992) (finding third-party beneficiary status based on express language reading: "the terms and conditions hereof, *including the arbitration provision* . . . , shall be applicable to all such matters between such [third-party] and you.") (emphasis added). Notably, there is no written agreement governing the relationship between Defendants and Snyder and Gruber. (Snyder Decl., ¶ 12, Gruber Decl., ¶ 10.)

The arbitration clause, by its terms, is agreed to only by the two parties to the Retainer Agreement, "Attorneys" (Gruber and Snyder) and "Client" (Plaintiffs). It reads as follows:

> In the event of a dispute that arises out of or in connection with the Firms representation of you with respect to this matter, ***the parties both agree*** and do herein stipulate to arbitrate any and all such disputes including claims for professional malpractice, negligence or errors and omissions. . . .

---

14

**OPPOSITION TO MOTION TO COMPEL**

(O'Callahan Decl., Exh. 1.) (emphasis added).  The provision does not incorporate, reference or otherwise encompass any other parties or persons and makes no reference to Defendants specifically or "associated counsel" generally.[5]

In sum, the Retainer Agreement is unambiguously limited to the contracting parties.  Moreover, to the extent that there is any ambiguity as to whether the parties intended "associated counsel" to be included in the arbitration clause, any such ambiguity would have to be resolved in Plaintiffs' favor, as laypersons presented with a contract drafted by attorneys.

### 2. The Parties Did Not Intend Defendants to Be Third-Party Beneficiaries.

The Retainer Agreement is clear and unambiguous on its face.  But even if Defendants could show ambiguity, all extrinsic evidence supports a finding that they were not intended third-party beneficiaries.

Attorney Snyder drafted the Retainer Agreement as a form agreement to be used in those cases his firm handled with Gruber.  (Snyder Decl. at ¶ 5.)  He intended the Retainer Agreement to govern his and Gruber's relationships with their clients.  (*Id.* at ¶ 6.)  The arbitration clause was boilerplate language and Snyder did not intend that it would cover attorneys that were later associated into the matter.  (*Id.* at ¶ 7.)

In contrast, where Snyder and Gruber have thought it best to includes Girardi | Keese within the terms of the retainer agreement with a client, they obtained the

---

[5]  In those cases where the court has found third-party beneficiary status in the arbitration context, the result has been clearly dictated by the language of the agreement.  In *Michaelis v. Schori*, 20 Cal. App. 4th 133 (1993), for example, a physician's associate was held to be a third-party beneficiary where the arbitration clause included "the physician's partners, associates, association, corporation or partnership and the employees, agents and estates of any of them."  *Id.* at 139.  And in *Macaulay*, the court permitted the third-party to enforce the arbitration agreement where the clause referencing the third-party specifically indicated that it would be bound by the contract *and,* specifically, by the arbitration provision.  12 Cal. App. 4th at 8.

**OPPOSITION TO MOTION TO COMPEL**

agreement of Girardi and expressly included Girardi | Keese as a party to the agreement. (Snyder Decl. at ¶ 9 Exh., 1 ; Gruber Decl. at ¶ 7, Exh. 1.)  In those cases, they have a used a retainer agreement that lists all three firms at the top and included Girardi | Keese within the definition of "Attorneys."  (*Id.*)

As regard Plaintiffs' intent when they executed the Retainer Agreement, they understood that it governed their relationship with Snyder and Gruber and only those attorneys.  (Plaintiffs Decls., ¶ 5.)   They did not intend nor did they understand that the retainer agreement would apply to any of the other lawyers involved in the case, including Girardi | Keese.  (*Id.*)

Defendants have failed to submit any evidence that they were third-party beneficiaries.  Given that all available extrinsic evidence supports the plain language of the contract, any claim by Defendants that they were third-party beneficiaries of the arbitration clause would be meritless.

**D.    Defendants Cannot Compel Arbitration Under the Doctrine of Equitable Estoppel.**

Under California law, a non-signatory to a contract containing an arbitration clause can compel arbitration against a signatory in very limited circumstances under the doctrine of equitable estoppel.  In particular, where the *signatory* is seeking to enforce contractual obligations against the *non-signatory*, courts have held that it is unfair for the *signatory* to claim the benefits of a contract while "simultaneously attempting to avoid the burdens the contract imposes."  *Kramer v. Toyota Motor Corp.*, 705 F. 3d 1122, 1128 (9th Cir. 2013).

To invoke this doctrine, Defendants must prove that Plaintiffs claims, as pled in the complaint, are "dependent upon or inextricably bound up with the obligations imposed by the [Retainer Agreements]."  *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 230 (2009); *see also Jones v. Jacobson*, 195 Cal. App. 4th 1, 20 (2011) (invoking equitable estoppel where the claims are "intimately founded in and intertwined with the

underlying contract obligations.").[6]  Thus, if "plaintiffs would have a claim independent of the existence of the [contract]," equitable estoppel does not apply.  *Kramer*, 705 F.3d at 1131.

The applicability of the doctrine in this case, therefore, requires an analysis of the Complaint to determine whether Plaintiffs have pled the substantive terms of Retainer Agreement as the foundation for their claims against Defendants.  *See DMS Services, Inc. v. Superior Court*, 205 Cal. App. 4th 1346 , 1355 (2012) (conducting a close analysis of the terms in the complaint to determine the applicability of the equitable estoppel doctrine).

Here, the operative allegations of the Complaint do not rely on or reference the Retainer Agreement or its terms.  There is no cause of action for breach of contract and none of the obligations to Plaintiffs that Defendants allegedly breached were created by the terms of the Retainer Agreement.  Instead, the Complaint alleges that Defendants violated fiduciary duties that were created by statute and by the California ethical rules governing the conduct of attorneys.  *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1131 (9th Cir. 2013) (Plaintiffs claims for violation California consumer protection law and unfair competition not founded in the purchase agreements containing the arbitration clause).  For example, the Complaint alleges that the Defendants had a duty under California Business and Professions Code section 6091 to provide them with an accounting.  (Complaint, ¶ 50.)  The Retainer Agreement does not have any provision

---

[6] *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 is the leading California case on the application of the equitable estoppel doctrine to allow a non-signatory to enforce an arbitration agreement.  In *Goldman*, the court denied third-party accountants and attorneys who attempted to compel arbitration as third-party beneficiaries.  *Id.* at 216.  The court found that the plaintiffs' allegations: (1) did not rely on the terms of the agreement; (2) were not founded in or bound up with the obligations created by the agreement; and (3) depended solely on the independent actions of the third-parties.  *Id.* at 230.  Defendants fail to cite *Goldman* or any other California authority and rely instead solely on inapposite federal cases.  (Motion, p. 9.)  As the question is governed by state law, Defendants' analysis should be disregarded.

**OPPOSITION TO MOTION TO COMPEL**

or term that relates to, references or otherwise obligates the Defendants to produce an accounting. Therefore, the Retainer Agreement, far from being "inextricably bound up" with Plaintiffs' claims, is wholly irrelevant to them. *Goldman,* 173 Cal. App. 4th at 230.

Because the Complaint does not rely on or reference the Retainer Agreement and because Defendants obligations to Plaintiffs were created by statute, common law tort principles, and ethical rules – and not by the operative terms of the Retainer Agreement – there is no basis to apply the doctrine of equitable estoppel. *Goldman*, 173 Cal. App. 4th at 235 ("Unless a party to an arbitration agreement has used the substantive terms of that agreement as the foundation for his claims against a non-signatory, there is no reason in equity why he should be forced to arbitrate his claims against a non-signatory").

Defendants fail to demonstrate that Plaintiffs' claims rely on the terms of the Retainer Agreement and instead place their sole reliance on an unpublished, district court case from the Northern District of California. (Motion, pg. 9. *citing Larson v. Speetjens*, 2006 WL 2567873 (N.D. Cal. 2006).)[7] That case, however, is both non-binding and inapposite. *Id.* at *5 (finding estoppel applied where "[t]he principal allegation of the paragraphs showing the formation of an attorney-client relationship between the parties [was] the written Agreements . . . . Likewise, the second cause of action for breach of oral and implied contract . . . incorporate[d] and relie[d] on the existence of the written agreements").

This is not a case where Plaintiffs are basing their claims on certain provisions in the Retainer Agreement making it only be fair for Defendants to be able to enforce the arbitration clause of the Agreement against Plaintiffs. To the contrary, Plaintiffs claims

---

[7] *Larson* also incorrectly applied federal substantive law, instead of California law, which may well have compelled a different result. *See Goldman*, 173 Cal. App. 4th at 218 (finding that the tax shelter agreements were "merely a procedural and collateral step.").

18

are entirely independent of the Retainer Agreement.  Thus, there is no basis to apply the doctrine of equitable estoppel against Plaintiffs.

**E.     Defendants' Proposed Construction of the Arbitration Clause Would Render It Unconscionable.**

Defendants contend that the Retainer Agreements should be interpreted by this Court to permit them, as third-parties, to enforce the arbitration clause and to require that Plaintiffs' claims be referred to an arbitrator chosen by Defendants and with whom they have a strong financial relationship.  That construction, however, would render the arbitration clause unconscionable under applicable state law.  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 921 (9th Cir. 2013) (applying California law to find arbitration clause unconscionable).

**1.     The Arbitration Clause in the Retainer Agreement, as Interpreted by Defendants, Would Be Procedurally Unconscionable.**

In order to invalidate an arbitration provision as unconscionable, California law requires a showing of both procedural and substantive unconscionability.  *Armendariz v. Found. Health Physchcare Servs., Inc.,* 24 Cal. 4th 83, 114 (2000).

The procedural unconscionability inquiry focuses on the level of oppression and surprise present in the contract.  *Chavarria,* 733 F.3d at 921.  "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party."  *Id.*

In *Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009), for example, the arbitration clause was not hidden within the terms of a lengthy contract, but, because it required arbitration in a manner not reasonably aligned with the weaker parties expectations, the court found the element of "surprise"  had been satisfied.  *Id.* at 1571. The court concluded that "[t]he weaker party would not reasonably expect any dispute arising under the [agreement] to be arbitrated before a panel of *three* arbitrators, the fees for whom are not expressly set forth in the agreements."  *Id.* (emphasis in original.)  The

**OPPOSITION TO MOTION TO COMPEL**

court made this finding despite the fact that the agreement specifically referenced a panel of three arbitrators.  *Id.*

The arbitration clauses in Plaintiffs' Retainer Agreements state only that *both* parties are agreeing to arbitrate disputes.  (O'Callahan Decl., Exh. 2.) (emphasis added.) Likewise, the "Association of Counsel" provision does not inform Plaintiffs that third-party associated counsel will be governed by the Retainer Agreement or that the arbitration clause will to disputes with Defendants as well as Snyder and Gruber.  (*Id.*)

In short, the ability of Defendants – third-parties brought into the HRT Litigation at Snyder's sole discretion – to deny Plaintiffs access to a judicial form by compelling arbitration is far beyond anything that Plaintiffs could have reasonably expected when they entered into the Retainer Agreements.  Thus, the arbitration clause would be procedurally unconscionable under Defendants' proffered construction of it.

## 2.  The Arbitration Clause, as Interpreted by Defendants, Would Be Substantively Unconscionable.

"Substantive unconscionability centers on the terms of the agreement and whether those terms are so one-sided as to shock the conscience."  *Ingle,* 328 F. 3d at 1172; *Little v. Auto Steigler, Inc.* 29 Cal. 4th 1064, 1071 ("Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided.").  An arbitration agreement that fails to provide for a neutral arbitrator is substantively unconscionable.  *Sanchez v. Western Pizza Enterprises, Inc.*, 172 Cal. App. 4th 154, 177 (2009) (holding that an arbitration agreement that purported to designate a "panel" of arbitrators but which in practice consisted of a single arbitrator selected by the employer was unconscionable).

Defendants' proposed construction of the arbitration clause would require that arbitration be conducted before Justice Panelli.  In fact, Defendants maintain that Justice Panelli was "***appointed*** for purposes of allocating settlement monies in this case"; that he is the "sole arbiter" of the settlement award allocation; and that his "appointment" gives him "sole discretion" to make settlement awards.  (Motion, pp. 1,

OPPOSITION TO MOTION TO COMPEL

8.) (emphasis added.)  Defendants thus assert that "the Court should compel arbitration before Justice Panelli."  (*Id.*, pg. 9.)

Justice Panelli, however, was not appointed by any court for any purpose related to the HRT Litigation.  (Touchton Decl., ¶ 5.)  He is not a special master and he was not selected as an arbitrator.  (*Id.*)  Instead, he was selected by Defendants to allocate the settlement monies from that litigation.  (*Id.*, ¶ 6.)  He has certainly never been appointed to arbitrate disputes between the parties in this action.

Moreover, Justice Panelli would plainly not qualify as a "neutral" arbitrator in this case.  To begin with, Defendants claim that he "instructed" them to withhold the six percent in settlement funds from Plaintiffs. (O'Callahan Decl., Exh. 2)  Thus, there is no escaping that Justice Panelli will be a witness as to the existence, timing and nature of this purported instruction.

Further, the manner in which Justice Panelli is being compensated for his "allocation of the settlement funds" has not been disclosed to Plaintiffs.  More precisely, Plaintiffs are unaware of the full extent of Justice Panelli's relationship with Defendants, but have reason to believe that Defendants have an on-going relationship with him in which Defendants have chosen him to allocate settlement funds among plaintiffs in multiple cases involving aggregate settlements in the hundreds of millions of dollars.  (Touchton Decl., ¶ 21.)  In addition to the misrepresented and substantially undisclosed nature of his involvement in the HRT Litigation, Justice Panelli has not made any of the disclosures that are usually required of arbitrators.  *See Sphere Drake Insurance Company Ltd. v. All American Life Insurance Co.,* 307 F.3d 617 (7th Cir. 2002) (discussing disclosures in the context of the FAA).

Compelling Plaintiffs to arbitrate this dispute before Defendants' unilaterally selected arbitrator under the foregoing circumstances would shock the conscience.  In summary, Defendants' proposed construction of the arbitration clause would be procedurally and substantively unconscionable and, therefore, unenforceable.

**F.      Snyder and Gruber Are Not Necessary Parties.**

Defendants claim that Snyder and Gruber are "necessary parties" under Federal Rule of Civil Procedure 19 because Defendants paid them for costs incurred in connection with the HRT Litigation is spurious.  (Motion, p. 12 – 13.)

> The heart of Rule 19(a) is a disjunctive analysis.  If either of two prongs is satisfied, joinder is mandatory.  First, if complete relief cannot be had between the parties, joinder is required.  Second, the court must join the non-party if it has a legally protected interest in the subject of the action and disposition in its absence would either (1) impede or destroy its ability to protect that interest or (2) leave the parties subject to a substantial risk of multiple or inconsistent obligations.

*County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1031 (N.D. Cal. 2005).

Defendants do not explain their conclusory assertion that the failure to join Snyder and Gruber would expose them to a risk of incurring multiple liabilities or how a judgment rendered in the absence of Snyder and Gruber could possibly be adverse to them.

Plaintiffs' seek to recover from Defendants' for breach of their fiduciary duties and their unfair business practices.  Plaintiffs have also included a common law count for money had and received and an accounting.  All of Plaintiffs' allegations relate to Defendants actions taken in connection with the receipt and disbursement of their settlement funds – actions that Plaintiffs do not claim Snyder and Gruber participated in and which, in fact, Snyder and Gruber did not participate it.  (Snyder Decl. ¶ 11, Gruber Decl. ¶ 9.)  Snyder and Gruber, therefore, have no relationship to the allegations in the Complaint.

Defendants also assert that their payment of costs to Snyder and Gruber render Snyder and Gruber necessary parties.  (Motion, p. 13.)  However, Defendants do not

1  explain how the payment of costs to Snyder and Gruber would implicate Rule 19.

2  Snyder and Gruber were not involved in the receipt, allocation or distribution of the

3  HRT Settlement funds, which is the crux of the allegations in this matter.  (*Id.*)  Instead,

4  they stand in the same position as a whole host of persons receiving payment from

5  Defendants distribution of those funds, including court clerks, copy services, court

6  reporters and expert witnesses—and Justice Panelli, who is undoubtedly being

7  compensated for his services in allocating the HRT settlement.

8  ## V.    CONCLUSION

9        For the reasons stated above, Plaintiffs respectfully request that this Court deny

10  Defendants' motion and require Defendants to answer or otherwise respond to the

11  Complaint.

12                          Respectfully submitted,

13

14  Dated: May 23, 2014            ISAACS FRIEDBERG & LABATON LLP

15

16

17                          _____/S/_____

18                          Amanda R. Touchton
                            Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO COMPEL**