Jeffrey B. Isaacs, Esq., SBN 117104
Jerome H. Friedberg, Esq., SBN 125663
Amanda R. Touchton, Esq., SBN 220430
**ISAACS FRIEDBERG & LABATON LLP**
555 South Flower Street, Ste. 4250
Los Angeles, California 90071
Telephone (213) 929-5550/Facsimile (213) 929-5541
jisaacs@ifcounsel.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH ALLEN, et. al., | Case No.  14-CV-02721-MWF-FFM |
| Plaintiffs, | **DECLARATION OF AMANDA R. TOUCHTON IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION** |
| vs. | |
| GIRARDI \| KEESE, et. al. | |
| Defendants. | **Date: June 9, 2013**<br>**Time: 10:00 a.m.**<br>**Location:  Courtroom 1600** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DECLARATION OF AMANDA R. TOUCHTON

I, Amanda R. Touchton, declare:

1.     I am an attorney licensed to practice law in the State of California and an associate with Isaacs Friedberg & Labaton LLP, which is counsel for Plaintiffs in the matter *Allen et. al., v. Girardi | Keese, et. al.*, Case No. 14-CV-02721-MWF-FFM.  I make this declaration in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss and Compel Arbitration.

2.     I have personal knowledge of the facts contained in this Declaration, and could and would testify to them if called as a witness in this matter.

**A.     Plaintiffs' Counsel's Communications with Defendants Related to the HRT Litigation.**

3.     On January 9, 2014, on behalf of Plaintiffs, Jeffrey Isaacs, Esq. sent a letter to Thomas Girardi, Esq. indicating that we represented a number of individuals that he had previously represented in connection with the Multi-District Litigation, *In re Prempro Products Liability Action,* (MDL 1507) (the "HRT Litigation"), attaching client authorizations, and requesting our clients' files.  Attached as Exhibit 1 is a true and correct copy of Mr. Isaacs's January 9, 2014 letter to Mr. Girardi without attachments.

4.     On January 23, 2014, Mr. Thomas G. O'Callahan, Esq. from Girardi |Keese responded to Mr. Isaacs's letter and produced minimal documents.  Attached as Exhibit 2 is a true and correct copy of Mr. O'Callahan's January 23, 2014 correspondence.

5.     On February 6, 2014, Mr. Isaacs wrote to Mr. Girardi and Mr. O'Callahan indicating that the client files were incomplete.  Mr. Isaacs also asked for an explanation of the basis for Mr. O'Callahan's claim that Justice Panelli had been appointed as a Special Master as I had conducted a review of the docket for the HRT Litigation and could find no order appointing Justice Panelli for any purpose.  Attached as Exhibit 3 is a true and correct copy of Mr. Isaac's February 6, 2014 letter.

**DECLARATION OF AMANDA TOUCHTON IN SUPPORT OF OPPOSITION**

6.      On February 13, 2014, Mr. O'Callahan responded to Mr. Isaacs's letter and stated that the clients' files were available for pick up from Girardi | Keese's offices. He further stated: "It seemed to me that you took umbrage with my statement that Justice Panelli was the special master for our HRT cases.  I admit that it was the wrong phrase."  Mr. O'Callahan attached the redacted portion of the "Confidential Release Indemnity and Assignment" (the "Release") reflecting Justice Panelli's role in the HRT Litigation.  Attached as Exhibit 4 is a copy of Mr. O'Callahan's February 13, 2014 letter without attachments.

7.      On February 25, 2014, I picked up our client's files from Mr. O'Callahan. On February 26, 2014, I spoke with Mr. O'Callahan regarding my review of the client files he had produced.  I explained that the client files were incomplete and did not contain critical documents.  I requested: (1) correspondence between Girardi | Keese and defense counsel; (2) communications relating to the PPO 6; (3) communications with Justice Panelli (ret.), (4) correspondence with various third-parties, including co-counsel and the Garretson Resolution Group; (5) internal Girardi | Keese communications, (6) files and reports of experts; and (7) all settlement agreements and releases."

8.      On March 5, 2014, Mr. Isaacs's wrote to Mr. O'Callahan on behalf of additional Plaintiffs' in this action, requesting the client files and an accounting. Attached as Exhibit 5 is a true and correct copy of Mr. Isaac's March 5, 2014 letter without attachments.

9.      Defendants subsequently provided the same categories of documents as those they had provided for the other Plaintiffs.

**B.     The Client Files Provided to Plaintiffs By Defendants.**

10.     I have reviewed all of the documents provided to Plaintiffs by Defendants as their "client files."  These files do not include the following: (1) correspondence with counsel for the defendant pharmaceutical corporation in the underlying litigation that would have reflected the amount of Plaintiffs' settlements (such as document called the Policy and Procedure Order 6); (2) communications with Justice Edward Panelli (ret.);

(3) documents reflecting the gross settlement amount for each of the Plaintiffs' cases; and (4) documents related to the receipt and disbursement of settlement funds.

11.     Based on my review of the documents provided by Defendants, the materials provided are patently insufficient to conduct an analysis of whether the aggregate settlement funds were appropriately distributed.  For example, none of the documents reveal the actual aggregate amount of the HRT Litigation settlement and none of the documents reveal the amount that the Plaintiffs' (and their co-plaintiffs in the HRT Litigation) individual cases were allocated in settlement by Justice Panelli.

**C.     The HRT Litigation Release.**

12.     Contained within the files produced by Defendants, is correspondence reflecting that Defendants sent all of the Plaintiffs the Release by Defendants and requested they sign and return it.

13.     The Release indicates that certain plaintiffs would receive a small flat fee award.  The remaining plaintiffs would receive a minimum award.  It further stated: "Justice Edward Panelli (retired) will allocate additional sums above [the minimum award] in his sole discretion."  This is the only reference to Justice Panelli in the Release.

14.     The Release contains a location for the Plaintiff to sign and have her signature notarized.  The last page is titled, "Counsel Signature Page."  The Counsel Signature Page indicates that counsel for the plaintiff is agreeing to be bound by the Release.

15.     The Release contains a clause that provides for arbitration in New York to determine the pharmaceutical companies damages if Plaintiffs were to breach the confidentiality provision of the Release.

**D.     Defendants Correspondence Related to the Distribution of Settlement Proceeds.**

16.     Based on my review of Plaintiffs' client files as produced by Defendants, Defendants sent each Plaintiff a document titled "Consent to Settlement and Authorization to Make Disbursements" (the "Consent"), which read: "I, [Plaintiff],

3

**DECLARATION OF AMANDA TOUCHTON IN SUPPORT OF OPPOSITION**

hereby authorize my attorneys, Girardi and Keese, to settle all of my claims arising out of the [HRT Litigation], for the ***total amount*** of [dollar figure]."

17.     In Plaintiffs' client files are also copies of the checks that were sent to Plaintiffs after the signed Consents were returned.  All of the checks have the phrase "***HRT Final Settlement Payment***" printed on the face of the check.

18.     It appears from the Plaintiffs' client files that all of their HRT Settlement checks were accompanied by a letter from Defendant O'Callahan.  The letter is largely a form letter, which appears to vary slightly from Plaintiff to Plaintiff.  All of the letters, however, represented that the enclosed HRT settlement check "represents settlement of the above captioned matter."

19.     In certain cases, such as that of Plaintiff Fortunato Solis, where the original plaintiff was deceased, Mr. O'Callahan's letter included the phrase: "We hope that in some way this helps represent a closure to an unfortunate situation."

20.     All of the letters from O'Callahan accompanying the HRT Settlement checks concluded with the following or nearly identical phrase: "It has been a pleasure representing you in this case.  If you have any future needs, please do not hesitate to give me a call."

**E.     Defendants' Relationship with Justice Panelli.**

21.     In the *Avandia Drug Cases*, JCCP 4578, proceeding in Superior Court in the County of Los Angeles in front of Judge Elihu Berle, Justice Panelli and Justice John Trotter (ret.) are responsible for determining the eligibility of the plaintiffs to receive a portion of aggregate settlement funds.  From my review of the docket, it appears that Defendants represent a substantial number of plaintiffs in the *Avandia Drug Cases*.

22.     In the *Avandia Drug Cases*, Defendants, through Defendant O'Callahan, filed an *ex parte*  application requesting, *inter alia*, that Judge Berle order that all fee disputes, including disputes between Girardi | Keese and referring counsel be ordered to be heard by Justice Panelli and Justice Trotter.  Attached as Exhibit 7 is a true and correct copy of this ex parte application, which was denied.

**DECLARATION OF AMANDA TOUCHTON IN SUPPORT OF OPPOSITION**

**F.    Meet and Confer Conference.**

23.    Counsel for Defendants', Celene Chan, Esq. of Girardi | Keese contacted me in a timely manner to conduct the meet and confer pursuant to Local Rule.  The meet and confer was conducted on May 1, 2014 between myself and Ms. Chan.

24.    Initially, Ms. Chan explained that Defendants' intended to move to compel arbitration.  We discussed the basis for the motion, which Ms. Chan said was Plaintiffs' retainer agreements with the Law Offices of Howard Snyder and Gruber & Gruber.  I asked Ms. Chan if she was aware of any retainer agreement between Girardi | Keese and Plaintiffs.  Ms. Chan explained that she was unaware of any other retainer agreement.

25.    I indicated that I had researched this issue sometime in the past and that the outcome of my research was that the Retainer Agreement did not apply to this litigation and that the arbitration clause could not be enforced.  I offered to look for the cases.  Ms. Chan said that she would appreciate the cases, but that Defendants had also researched the issue and believed that they could compel arbitration and, therefore, were unlikely to change their position.

26.    Ms. Chan also asked me to provide further explanation as to the role of Snyder and Gruber in the instant litigation.  I told her that I believed that our disclosure of interested parties was sufficient and that additional information would have to be developed through normal discovery process.  Ms. Chan did not raise the issue of Snyder and Gruber being "Necessary Parties" under Federal Rule of Civil Procedure 19.  Our discussion was centered solely on the sufficiency of Plaintiffs' Notice of Interested Parties.

//
//
//
//
//
//
//

**DECLARATION OF AMANDA TOUCHTON IN SUPPORT OF OPPOSITION**

1     27.    Over the next week, I looked back over my research and was not sure
2  which cases would be relevant or responsive.  I determined to call Ms. Chan again.  I
3  called Ms. Chan and indicated I had looked at the issue and that we continued to take
4  the position that Defendants could not enforce the arbitration clauses in the Retainer
5  Agreements.  Ms. Chan did not return this call to discuss the matter further.

6
7        I declare under penalty of perjury that the foregoing is true and correct.  Executed
8  this 23rd day of May 2014, in Los Angeles, California.

9
10                                                Amanda R. Touchton
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DECLARATION OF AMANDA TOUCHTON IN SUPPORT OF OPPOSITION**

# EXHIBIT 1

EXHIBIT 1

# ISAACS | FRIEDBERG

## A LIMITED LIABILITY PARTNERSHIP

Jeffrey B. Isaacs, Esq.
Direct: 213-223-2296
E-mail: jisaacs@ifcounsel.com

633 West 5th Street, 28th Floor
Los Angeles, California 90071
Office: (213) 223-2299
Fax: (213) 223-2298

January 9, 2014

**VIA HAND DELIVERY**

Thomas V. Girardi, Esq.
Girardi | Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017

Re:   *In Re Prempro Products Liability Action (MDL 1507)*

Dear Mr. Girardi:

The law firm of Isaacs | Friedberg LLP ("Isaacs | Friedberg") has been retained to represent the following nine individuals (collectively, the "Referenced Plaintiffs"), each of whom was represented by Girardi | Keese in the *In Re Prempro Products Liability Action (MDL 1507)* (the "HRT Litigation").

Isaacs | Friedberg represents the Referenced Plaintiffs in connection with obtaining their client files pursuant to California Rules of Professional Conduct, Rule 3-700 ("Rule 3-700"), and requesting a detailed accounting of all funds received and distributed on their matters pursuant to California Rules of Professional Conduct, Rule 4-100(b)(3) ("Rule 4-100").

The nine Referenced Plaintiffs and information about each of their cases is as follows:

**(1) Lloyd Anderson.**

    (a) Case Name:  *Lloyd Anderson as Executor of the Estate of Decedent Patsy Anderson v. Wyeth, et. al.*
    (b) Transferor Case Number:  05-cv-04887
    (c) Eastern District of Arkansas Case Number:  4:05-cv-01821
    (d) Release:  Attached as Exhibit 1.



Mr. Thomas Girardi, Esq.
January 9, 2014
Page **2** of **7**

**(2) Helen Penny Aros.**

    (a) Case Name:  *Helen Penny Aros v. Wyeth, et. al.*
    (b) Transferor Case Number:  0-05-cv-0645
    (c) Eastern District of Arkansas Case Number:  4:05-cv-01772
    (d) Release:  Attached as Exhibit 2.

**(3) Alba Cordon.**

    (a) Case Name: *Alba Cordon v. Wyeth, et al.*
    (b) Transferor Case Number:  05-cv-4873
    (c) Eastern District of Arkansas Case Number:  4:05-cv-01736
    (d) Release: Attached as Exhibit 3.

**(4) Horace Gilliam.**

    (a) Case Name:  *Horace Gilliam as Executor of the Estate of Decedent Gail Gilliam v. Wyeth, et. al.*
    (b) Transferor Case Number:  05-cv-04480
    (c) Eastern District of Arkansas Case Number:  4:05-cv-01327, 4:10-cv-01587
    (d) Release:  Attached as Exhibit 4.

**(5) Patricia Kruse.**

    (a) Case Name:  *Patricia Kruse v. Wyeth, et. al.*
    (b) Transferor Case Number:  05-cv-04883
    (c) Eastern District of Arkansas Case Number:  4:05-cv-01783
    (d) Release:  Attached as Exhibit 5.

**(6) Donna Lehnhardt.**

    (a) Case Name:  *Donna Lehnhardt v. Wyeth, et. al.*
    (b) Transferor Case Number:  0-06-cv-00136
    (c) Eastern District of Arkansas Case Number:  4:06-CV-00314
    (d) Release:  Attached as Exhibit 6.

**(7) Nan Maury.**

    (a) Case Name:  *Nan Maury v. Wyeth, et. al.*
    (b) Transferor Case Number:  05-cv-04988
    (c) Eastern District of Arkansas Case Number:  4:05-cv-01800
    (d) Release:  Attached as Exhibit 7.

Mr. Thomas Girardi, Esq.
January 9, 2014
Page **3** of **7**

### (8) Patricia Pease.

    (a) Case Name:  *Patricia Pease v. Wyeth, et. al.*
    (b) Transferor Case Number:  4:06-Ccv-00140
    (c) Eastern District of Arkansas Case Number:  4:06-cv-00417
    (d) Release:  Attached as Exhibit 8.

### (9) Muriel Pitsinger.

    (a) Case Name:  *Muriel Pitsinger v. Wyeth, et al.*
    (b) Transferor Case Number:  05-cv-4935
    (c) Eastern District of Arkansas Case Number:  4:05-cv-01721
    (d) Release:  Attached as Exhibit 9.

Please be advised that, by this correspondence, the Referenced Plaintiffs terminate Girardi | Keese as their counsel and decline any further representation by Girardi | Keese in each Referenced Plaintiff's case.

**A.   Background.**

The Referenced Plaintiffs all used hormone replacement therapy ("HRT") and subsequently developed breast cancer.  In or about 2005, the Referenced Plaintiffs retained counsel to represent them in litigation against the manufacturers of HRT.  The cases were transferred to the Eastern District of Arkansas where they became part of the multi-district HRT Litigation.

In or about 2011, the HRT Litigation was settled pursuant to a Master Settlement Agreement ("MSA").  Each of the Referenced Plaintiffs was informed of the settlement and sent a Confidential Release Indemnity and Assignment Agreement by Girardi | Keese ("Release Agreement").  The Release Agreement was accompanied by a cover letter.  For some, but not all, of the Referenced Plaintiffs, the cover letter accompanying the Release Agreement set forth the gross settlement amount of their matter.  At a later date, the Referenced Plaintiffs received a Consent to Settlement and Authorization to Make Disbursements ("Consent Agreement") from Girardi | Keese that indicated the amount of their settlement proceeds and the distribution of those proceeds.

Certain of the Referenced Plaintiffs noticed a discrepancy between the settlement amount indicated on the cover letter accompanying the Release Agreement and the settlement amount indicated on the Consent Agreement.  Apparently, inquiries to Girardi | Keese by certain of the Referenced Plaintiffs regarding this discrepancy were ignored.

The Referenced Plaintiffs have, therefore, decided to terminate Girardi | Keese

as their counsel and have retained us to obtain their client files and an accounting of the receipt and distribution of their settlement proceeds, both of which, as explained below, they are entitled to under the California Rules of Professional Conduct.

## B.   Release of Referenced Plaintiffs' Client Files.

Rule 3-700 provides:  "Subject to any protective order or non-disclosure agreement, [a member shall] promptly release to the client, at the request of the client, all the client papers and property."  The Rule defines client papers and property to include "correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not."  Cal. Rule Prof. Conduct 3-700(D)(1).

Case law is in accord:  "[T]here can be no doubt that the balance of an attorney's litigation file is the property of the client and must be surrendered promptly upon request to the client or the client's new counsel once the representation has terminated." *Rose v. State Bar*, 49 Cal. 3d 646, 655 (1989).  Under Arkansas law as well, the client is the owner of the attorney's file.  *See Sexton Law Firm, P.A. v. Milligan*, 329 Ark. 285, 299, 948 S.W. 2d 388 (1997) ("Unquestionably, the client owns his file.").

Pursuant to Rule 3-700, the Referenced Plaintiffs request that Girardi | Keese promptly release their client files to us including, but not limited to, the following materials:

1.   All written and electronic communications and records of such communications ("communications") relating to each of the Referenced Plaintiffs' case, including, but not limited to, the following:

   a.   All communications between Girardi | Keese and the Referenced Plaintiffs regarding the nature of their claims and the settlement of the Referenced Plaintiffs' cases;

   b.   All internal communications between persons working with or for Girardi | Keese relating to the Referenced Plaintiffs' cases;

   c.   All communications to or from defense counsel relating to the Policy and Procedure Order ("PPO") 6";

   d.   All communications with third-parties, such as counsel for co-plaintiffs in the HRT Litigation, defendant's counsel, the Court and/or any mediator involved in the HRT Litigation that relates in any way to the Referenced Plaintiffs' cases;

Mr. Thomas Girardi, Esq.
January 9, 2014
Page **5** of **7**

    e. All communications with any mediator, including Judicial Arbitration and Mediation Services ("JAMS") and the Honorable Edward Panelli or the Honorable John Trotter and any of their employees or agents regarding the Referenced Plaintiffs' cases;

    f. The Master Settlement Agreement entered into on behalf of the Referenced Plaintiffs with defendants in the HRT Litigation;

    g. All communications with James Street; and

    h. All communications with Garretson Resolution Group.

2. All records, files or reports generated that relate to the Referenced Plaintiffs' cases.

3. All materials related to the settlement of the Referenced Plaintiffs' cases, including, but not limited to, the following:

    a. The gross settlement amount for the each of the Referenced Plaintiffs' cases;

    b. All communications with defense counsel identifying the amount of the settlement for each of the Referenced Plaintiffs' cases;

    c. All communications with defense counsel relating to the Policy and Procedure Order ("PPO") 6;

    d. All release, and settlement agreements, including, but not limited to, The Confidential Release and Indemnity and Assignment Agreement relating to the Referenced Plaintiffs' cases; and

    e. All authorizations to disburse Referenced Plaintiffs' settlement funds, including, but not limited to, The Consent To Settlement and Authorization To Make Disbursements.

4. All materials that relate to the receipt and disbursement of the funds received in the Referenced Plaintiffs' cases including, but not limited to, the following:

    a. The amounts received from any sources;

    b. A detailed breakdown of any and all costs and expenses related to the Referenced Plaintiffs' cases and any other costs that were charged to the Referenced Plaintiffs' as part of a "pro-rata" distribution of costs;

Mr. Thomas Girardi, Esq.
January 9, 2014
Page **6** of **7**

    c.  The date, manner and amount of any distribution of any funds received on the Referenced Plaintiffs' cases;

    d.  The amount of any proceeds related to the Referenced Plaintiffs' cases retained by Girardi | Keese and the trust account in which those funds are presently maintained.

**C.**    **Accounting of All Funds Received and Distributed Relating to the Referenced Plaintiffs' Cases.**

Rule 4-100 provides:  "A member shall  . . . . [m]aintain complete records of all funds, securities, and other properties of a client coming into the possession of the member or law firm and render appropriate accounts to the client regarding them; preserve such records for a period of no less than five years after final appropriate distribution of such funds or properties; and comply with any order for an audit of such records issued pursuant to the Rules of Procedure of the State Bar."  Cal. Rule of Prof. Conduct 4-100(B)(3).

The standards adopted by the California State Bar interpreting Rule 4-100 require a member to maintain "a written ledger for each client on whose behalf funds are held that sets forth: (i) the name of such client, (ii) the date, amount and source of all funds received on behalf of such client, (iii) the date, amount, payee and purpose of each disbursement made on behalf of such client, and (iv) the current balance for such client."  *Standard.* Cal. Rule Professional Conduct 4-100 (2012).

Under the Arkansas Rules of Professional Conduct, attorneys have a similar obligation to render a full accounting to the client upon written request.  Arkansas Rules of Professional Conduct 1.15(b)(3) ("[U]pon request by the client  . . . [a lawyer] shall promptly render a full written accounting regarding such property to the client.").

A client who has received a statement setting forth the total settlement amount and the amount deducted for attorney's fees, medical liens and other associated costs is entitled to a complete accounting, including relevant supporting documentation, upon request.  *See Matter of Kroff*, 3 Cal. State Bar Ct. Rptr. 838, 849 (1988) (holding that attorney's initial provision of a statement showing the amount of settlement and the amounts deducted for attorney's fees and medical liens did not satisfy attorney's obligation to render a more detailed accounting, including providing a breakdown of each category and supporting documentation, upon request).

Pursuant to Rule 4-100 and the relevant standards adopted thereto, the Referenced Plaintiffs request that Girardi | Keese provide a detailed accounting of all funds associated with the Referenced Plaintiffs' cases, with a breakdown of all of the categories set forth on the Consent Agreement and supporting documentation of each

Mr. Thomas Girardi, Esq.
January 9, 2014
Page **7** of **7**

expense contained therein, including, but not limited to, the following:

1. All funds received by Girardi | Keese in in connection with the Referenced Plaintiffs' cases, including the date that the funds were received and the source of those funds;

2. All documents that reflect the amount of any funds received by Girardi | Keese in connection with the HRT Litigation and the date those funds were received;

3. A statement of the disbursement of any funds made in connection with the Referenced Plaintiffs' cases, including the date of the disbursement, the payee and the purpose of the disbursement;

4. An itemized statement of all costs that were charged by Girardi | Keese to the Referenced Plaintiffs' cases; and

5. Any current balance of funds owing to Referenced Plaintiffs' cases and the trust account in which those funds are maintained.

Please provide the requested materials within ten business days of the date of this letter, that is or on or before January 23, 2013.  We can send a messenger to collect the materials or they can be delivered by certified mail to my attention at the address above.

Thank you for your prompt attention to these requests and your anticipated cooperation.

Very Truly Yours,

Jeffrey B. Isaacs, Esq.
ISAACS | FRIEDBERG LLP

Attorneys for the Referenced Plaintiffs

cc:  Jerome Friedberg, Esq. (with attachments)
     Amanda Touchton, Esq. (with attachements)

# EXHIBIT 2

EXHIBIT 2



January 23, 2014

VIA HAND DELIVERY

Jeffrey B. Isaacs
Isaacs Friedberg
633 West 5th Street, 28th Floor
Los Angeles, CA 90071

    Re:  **HRT Litigation**

Dear Mr. Isaacs:

Thank you for your letter of January 9, 2014.  I am responding on behalf of the firm.

As you may be aware, retired California Supreme Court Justice Edward Panelli was appointed as Special Master for purposes of allocating the settlement monies in this matter.  His appointment was incorporated into the settlement agreement which all the plaintiffs signed.  Any plaintiff who felt that there were special circumstances associated with their claim was offered the opportunity to meet with Justice Panelli to tell him what was out of the ordinary about their claim.  A small number of the plaintiffs took advantage of this opportunity.

After conducting the hearings, Justice Panelli allocated the settlement monies among the plaintiffs.  While he was in the process of allocating the settlements, the Medicare claims were being negotiated.  As of last week, CMS (the agency responsible for handling Medicare and State Medicaid claims) was still correcting or recalculating Medicare lien settlement amounts.

As you may know from experience, dealing with Medicare liens can be a nightmare.  In this case, we started the process in mid-2011 and it isn't over yet.

Apart from Medicare, we have also had other delays in obtaining signed consent forms. We received one last week but there are still two cases in which we do not have signed consents and cannot send out checks to the claimants or their heirs.

The reason that the Medicare and signed consent issues are important in responding to your letter is this:  Justice Panelli instructed us to hold back 6% of every plaintiffs settlement until all lien issues were resolved, all consents had been received and the

Jeffrey B. Isaacs
January 23, 2014
Page 2


final accounting had been completed.  This is the reason that the consents for Lehnhardt and Pease were sent out as $23,500 rather than $25,000.  Likewise, the other plaintiffs who you represent will be receiving additional funds.

Finally, but of great importance to all of the plaintiffs in this case, is the confidential nature of the settlement.  We do not want to place any of the plaintiffs in legal or financial jeopardy by breaching the confidentiality clause of the settlement, and I am sure that you have the same concern.  I am enclosing correspondence between our firm and the clients who asked you to contact us.

I am copying Justice Panelli on this letter and I suggest that we meet with Justice Panelli so that you can verify the 6% "hold back" with him.

Please call me if you have any questions.

With kind regards,

James G. O'Callahan

JGO:cat

Enclosures

cc:  Honorable Edward Panelli, Retired

# EXHIBIT 3

EXHIBIT 3

# ISAACS | FRIEDBERG

### A LIMITED LIABILITY PARTNERSHIP

Jeffrey B. Isaacs, Esq.
Direct: 213-223-2296
E-mail: jisaacs@ifcounsel.com

633 West 5th Street, 28th Floor
Los Angeles, California 90071
Office: (213) 223-2299
Fax: (213) 223-2298

February 6, 2014

**VIA HAND DELIVERY**

Thomas V. Girardi, Esq.
James G. O'Callahan, Esq.
Girardi | Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017

Re:   *In Re Prempro Products Liability Action (MDL 1507)*

Dear Messrs. Girardi and O'Callahan:

We are in receipt of your January 23, 2014 response to my request for the client files and an accounting for the following individuals represented by this firm: (1) Lloyd Anderson; (2) Helen Penny Aros; (3) Alba Cordon; (4) Horace Gilliam; (5) Patricia Kruse; (6) Donna Lehnhardt; (7) Nan Maury; (8) Patricia Pease; and (9) Muriel Pitsinger (collectively, the "Referenced Plaintiffs").

Thank you for your response. For the reasons detailed below, however, it is unacceptable; it was materially incomplete and not in compliance with the California Rules of Professional Responsibility.

## A.   Production of Client Files.

Pursuant to California Rule of Professional Conduct Rule 3-700 ("Rule 3-700"), we requested that Girardi | Keese ("GK") produce the Referenced Plaintiffs' client files. You responded by producing only GK's correspondence with the Referenced Plaintiffs and correspondence related to Medicare/Medi-Cal liens. This production was substantially incomplete. In particular, GK failed to produce:

1.   All written and electronic communications and records of such communications ("communications") relating to each of the Referenced Plaintiffs' case, including, but not limited to, the following:

Mr. Thomas Girardi, Esq.
February 6, 2014
Page **2** of **6**

    a.    All internal communications between persons working with or for GK relating to the Referenced Plaintiffs' cases;

    b.    All communications to or from defense counsel relating to the Policy and Procedure Order ("PPO") 6";

    c.    All communications with third-parties, such as counsel for co-plaintiffs in the HRT Litigation, defendant's counsel, the Court and/or any mediator involved in the HRT Litigation that relates in any way to the Referenced Plaintiffs' cases;

    d.    All communications with any mediator, including Judicial Arbitration and Mediation Services ("JAMS") and the Honorable Edward Panelli (ret.) or the Honorable John Trotter (ret.) and any of their employees or agents regarding the Referenced Plaintiffs' cases;

    e.    The Master Settlement Agreement entered into on behalf of the Referenced Plaintiffs with defendants in the HRT Litigation; and

    f.    All communications with Garretson Resolution Group.

2.    All records, files or reports generated that relate to the Referenced Plaintiffs' cases.

3.    All materials related to the settlement of the Referenced Plaintiffs' cases, including, but not limited to, the following:

    a.    The gross settlement amount for the each of the Referenced Plaintiffs' cases;

    b.    All communications with defense counsel identifying the amount of the settlement for each of the Referenced Plaintiffs' cases;

    c.    All communications with defense counsel relating to the Policy and Procedure Order ("PPO") 6; and

    d.    All release, and settlement agreements, including, but not limited to, The Confidential Release and Indemnity and Assignment Agreement relating to the Referenced Plaintiffs' cases.

4.    All materials that relate to the receipt and disbursement of the funds received in the Referenced Plaintiffs' cases including, but not limited to, the documents reflecting the following:

Mr. Thomas Girardi, Esq.
February 6, 2014
Page **3** of **6**

     a.     The amounts received from any sources;

     b.     A detailed breakdown of any and all costs and expenses related to the Referenced Plaintiffs' cases and any other costs that were charged to the Referenced Plaintiffs' as part of a "pro-rata" distribution of costs;

     c.     The date, manner and amount of any distribution of any funds received on the Referenced Plaintiffs' cases; and

     d.     The amount of any proceeds related to the Referenced Plaintiffs' cases retained by GK and the trust account in which those funds are presently maintained.

Under California law, these files belong to the Referenced Plaintiffs and must be produced in their entirety forthwith.  Moreover, the fact that these settlements may have been confidential does not relieve GK of its ethical duty to produce these files to us, as counsel for the Referenced Plaintiffs.

Accordingly, pursuant to Rule 3-700, we request that you produce the entire client file for each Referenced Plaintiff, to include the above described materials, within five (5) business days of the date of this letter; that is, on or before February 13, 2014.

## B.    Production of an Accounting of All Funds Received and Distributed.

As counsel for the Referenced Plaintiffs, we further requested that GK produce a detailed accounting pursuant to California Rule of Professional Responsibility Rule 4-100 ("Rule 4-100).

The materials produced by you did not include an accounting and did not provide any legitimate justification for the failure to comply with the Referenced Plaintiffs' Rule 4-100 request. *See Matter of Kroff*, 3 Cal. State Bar Ct. Rptr. 838, 849 (1988) (holding that attorney's initial provision of a statement showing the amount of settlement and the amounts deducted for attorney's fees and medical liens did not satisfy attorney's obligation to render a more detailed accounting, including providing a breakdown of each category of disbursements and expenses and supporting documentation, upon request).  More specifically, GK failed to produce the following:

     1.     All documents referencing funds received by GK in connection with the Referenced Plaintiffs' cases, including the date that the funds were received and the source of those funds;

     2.     All documents that reflect the amount of any funds received by GK in

Mr. Thomas Girardi, Esq.
February 6, 2014
Page **4** of **6**

connection with the HRT Litigation and the date those funds were received;

3.      A statement of the disbursement of any funds made in connection with the Referenced Plaintiffs' cases, including the date of the disbursement, the payee and the purpose of the disbursement;

4.      An itemized statement of all costs that were charged by GK to the Referenced Plaintiffs' cases; and

5.      Any current balance of funds owing to Referenced Plaintiffs' cases and the trust account in which those funds are maintained.

Your response that GK is "still correcting or recalculating Medicare lien settlement amounts," does not relieve GK of its obligation to produce the requested accounting.  Pursuant to Rule 4-100, a client can request an accounting at any point in the litigation and the refusal to provide one justifies a finding of willful misconduct.  *See Brody v. State Bar*, 11 Cal. 3d 347, 350 (1974) ("The evidence that petitioner persistently refused to account to his client in the face of repeated demands to do so justifies the board's finding of wilful misappropriation.").

Accordingly, pursuant to Rule 4-100, we request that you produce the required accounting, to include the above described materials, within five (5) business days of the date of this letter; that is, on or before February 13, 2014.

**C.     Purported Appointment of Justice Edward Panelli (Ret.) as "Special Master."**

Your January 23, 2013 letter indicates that "retired Supreme Court Justice Edward Panelli was appointed as Special Master for purposes of allocating the settlement monies in this matter."  You further state that "Justice Panelli instructed us to hold back 6% of every plaintiffs [sic] settlement until all lien issues were resolved, all consents had been received and final accounting had been completed.  This is the reason that the consents for Lehnhardt and Pease were sent out as $23,500 rather than $25,000.  Likewise, the other plaintiffs who you represent will be receiving additional funds."

Pursuant to Federal Rule of Civil Procedure 53, special masters may only be appointed by the court under limited circumstances.  Having reviewed the docket in the HRT Litigation, we can find no order that "appointed" Justice Panelli as a "Special Master" in that litigation, or that appointed a Special Master for the purposes of "allocating settlement monies in this matter."

Mr. Thomas Girardi, Esq.
February 6, 2014
Page 5 of 6

The only Special Master appointed in the HRT Litigation was the Honorable James Rosenbaum (ret.) of Minneapolis.  According to the documents related to his appointment, Justice Rosenbaum was appointed for the limited purpose of resolving disputes related to the allocation of the common benefit fund amongst plaintiff's counsel.  *See* October 30, 2013 Order in HRT Litigation, Docket No. 3230.  As appears to be the case, therefore, the appointment of the Minnesota Special Master was unrelated to the distribution of the Referenced Plaintiffs' settlement funds.

Moreover, nothing in your previous correspondence with the Referenced Plaintiffs indicated that GK had withheld 6% of their settlement proceeds at the direction of Justice Panelli, or anyone else.  In fact, it appears that all of GK's prior correspondence to the Referenced Plaintiffs stated that their matters had been concluded and that they were receiving a full and final settlement.  For example, in a letter dated May 9, 2013 to one of the Referenced Plaintiffs, Mr. O'Callahan stated that: "Please find enclosed the settlement check . . . which represents settlement of the above-captioned matter.  We hope that in some way this helps represent closure to an unfortunate situation. . . . It has been a pleasure representing you in this case.  If you have any future needs, please do not hesitate to give me a call." Similarly, the settlement checks sent to each of the Referenced Plaintiffs by GK had the note "HRT Final Settlement Payment" on the face of the check.

Accordingly, please produce the court order appointing Justice Panelli as a "Special Master" in the HRT Litigation, or provide an explanation of how he came to be appointed as a Special Master in that litigation and the details of his authority and responsibilities in that role.  We further request that you provide us with a copy of any document in which Justice Panelli instructed GK to withhold part of the Referenced Plaintiffs' settlement funds and any authorization by Justice Panelli (or otherwise) allowing GK to retain 6% of the settlement funds without advising the Referenced Plaintiffs of this fact.

Finally, as Justice Panelli may have an interest in this matter and since you previously copied him on your correspondence, we are copying him and including with his copy our prior letter to you and your response.

//
//
//
//
//
//
//
//
//
//

Mr. Thomas Girardi, Esq.
February 6, 2014
Page **6** of **6**


       Thank you for your prompt attention to these requests and your anticipated
cooperation.

Sincerely,


Jeffrey B. Isaacs, Esq.
ISAACS | FRIEDBERG LLP

Attorneys for the Referenced Plaintiffs

cc:   Justice Edward Panelli (ret.) (w/ enclosures)
      Jerome H. Friedberg, Esq.
      Amanda R. Touchton, Esq.

# EXHIBIT 4

EXHIBIT 4



# GIRARDI | KEESE
## LAWYERS

February 13, 2014

                              VIA HAND DELIVERY

Jeffrey B. Isaacs
Isaacs Friedberg
633 West 5th Street, 28th Floor
Los Angeles, CA 90071

      Re:   **HRT Litigation**

Dear Mr. Isaacs:

In response to your most recent request, the plaintiff files in question are available to copy at our offices. Please have your copy service contact our office this afternoon so we may set up a time for the copy service to come and copy the files. There are individual files for each plaintiff as well as more generalized files and I do not want needless expenses to be incurred. You can decide what you need to copy.

With regard to a final accounting in this matter, as the settlement payments have not yet been finalized, we do not have a final accounting in the matter so those documents cannot be produced at this time. I estimate that our costs in the case to date are over $700,000 and I estimate there is at least an additional $100,000 in costs from the referring attorneys.

It seemed to me that you took umbrage with my statement that Justice Panelli was the special master for our HRT cases. I admit that it was the wrong phrase. I am enclosing a redacted release which identifies Justice Panelli as having sole discretion to make the awards in the HRT cases. I have also copied the portion of the release which describes the extent of the confidentiality of the release. Each of the plaintiffs signed a release with these confidentiality provisions.

With kind regards,

James G. O'Callahan

JGO:cat

Enclosure

1126 WILSHIRE BOULEVARD • LOS ANGELES, CALIFORNIA • 90017-1904
TELEPHONE: 213-977-0211 • FACSIMILE: 213-481-1554
WWW.GIRARDIKEESE.COM

# EXHIBIT 5

EXHIBIT 5

# ISAACS | FRIEDBERG

### A LIMITED LIABILITY PARTNERSHIP

Jeffrey B. Isaacs, Esq.
Direct: 213-223-2296
E-mail: jisaacs@ifcounsel.com

633 West 5th Street, 28th Floor
Los Angeles, California 90071
Office: (213) 223-2299
Fax: (213) 223-2298

March 5, 2014

**VIA HAND DELIVERY**

Thomas V. Girardi, Esq.
James G. O'Callahan, Esq.
Girardi | Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017

Re:     *In Re Prempro Products Liability Action (MDL 1507)*

Dear Messrs. Girardi and O'Callahan:

As you are aware, we represent the following individuals in connection with the above referenced matter: (1) Lloyd Anderson; (2) Helen Penny Aros; (3) Alba Cordon; (4) Horace Gilliam; (5) Patricia Kruse; (6) Donna Lehnhardt; (7) Nan Maury; (8) Patricia Pease; and (9) Muriel Pitsinger.

By this letter, we are advising you that our firm has now been retained to represent the following additional twenty individuals in connection with this matter: (1) Judith Allen; (2) Karen Awald; (3) Phyllis Barnes; (4) Adrianna Carrera; (5) Marian Conner; (6) Mary Dawson; (7) Rita Hren; (8) Dorothy Mallette; (9) Lillian Meeks; (10) Barbara Norvell; (11) Reva Orr; (12) Donna Peters; (13) Viola Plieseis; (14) Joyce Podhayski; (15) Angela Draughn (On Behalf of Patricia Rogers); (16) Fortunato Solis; (17) Anna Solomon; (18) Sue Standriff; (19) Tena Valentine; and (20) Charlene Weinmann (collectively, the "Referenced Plaintiffs"). These clients were represented by Girardi | Keese ("GK") in *In Re Prempro Products Liability Action (MDL 1507)* (the "HRT Litigation").

The twenty Referenced Plaintiffs and information about each of their cases is as follows:

Mr. Thomas Girardi, Esq.
March 5, 2014
Page **2** of **9**

    **(1)**   **Judith Allen.**

       (a) Case Name:  *Judith Allen v. Wyeth, et. al.*
       (b) Transferor Case Number:  08-cv-4827
       (c) Eastern District of Arkansas Case Number:  4:09-cv-00104
       (d) Release:  Attached as Exhibit 1.

    **(2)**   **Karen Awald.**

       (a) Case Name:  *Karen Awald v. Wyeth, et. al.*
       (b) Transferor Case Number: 05-cv-01417 and 10-cv-03470
       (c) Eastern District of Arkansas Case Number: 10-cv-01470 and 05-cv-00766
       (d) Release:  Attached as Exhibit 2.

    **(3)**   **Phyllis Barnes.**

       (a) Case Name:  *Phyllis Barnes v. Wyeth, et. al.*
       (b) Transferor Case Number: 05-cv-02023 and 10-cv-03468
       (c) Eastern District of Arkansas Case Number: 10-cv-01463 and 05-cv-00837
       (d) Release: Attached as Exhibit 3.

    **(4)**   **Adrianne Carrera.**

       (a) Case Name: *Adrianne Carrera v. Wyeth, et. al.*
       (b) Transferor Case Number:  05-cv-02732
       (c) Eastern District of Arkansas Case Number:  05-cv-01225
       (d) Release:  Attached as Exhibit 4.

    **(5)**   **Marian Conner.**

       (a) Case Name:  *Marian Conner v. Wyeth, et. al.*
       (b) Transferor Case Number: 05-cv-04914 and 10-cv-03505
       (c) Eastern District of Arkansas Case Number: 10-cv-01480 and 05-cv-01827
       (d) Release:  Attached as Exhibit 5.

    **(6)**   **Mary Dawson.**

       (a) Case Name: *Mary Dawson v. Wyeth, et al.*
       (b) Transferor Case Number:  05-cv-00905 and 10-cv-03501
       (c) Eastern District of Arkansas Case Number:  05-cv-0680 and 10-cv-01476
       (d) Release: Attached as Exhibit 6.

    **(7)**   **Rita Hren.**

       (a) Case Name: *Rita Hren v. Wyeth, et. al.*

Mr. Thomas Girardi, Esq.
March 5, 2014
Page 3 of 9

      (b) Transferor Case Number: 05-cv-02391 and 10-cv-03441
      (c) Eastern District of Arkansas Case Number: 05-cv-01548 and 10-cv-01715
      (d) Release: Attached as Exhibit 7.

  **(8)**    **Dorothy Mallette.**

      (a) Case Name: *Dorothy Mallette v. Wyeth, et. al.*
      (b) Transferor Case Number:05-cv-04157 and 10-cv-03459
      (c) Eastern District of Arkansas Case Number: 05-cv-01275 and 10-cv-01593
      (d) Release: Attached as Exhibit 8.

  **(9)**    **Lillian Meeks.**

      (a) Case Name: *Lillian Meeks v. Wyeth, et. al.*
      (b) Transferor Case Number: 2:04-cv-10019
      (c) Eastern District of Arkansas Case Number: 4:05-cv-00479
      (d) Release: Attached as Exhibit 9.

  **(10)**    **Barbara Norvell.**

      (a) Case Name: *Barbara Norvell v. Wyeth, et. al.*
      (b) Transferor Case Number: 05-cv-01739,10-cv-03530, and 08-cv-04826
      (c) Eastern District of Arkansas Case Number: 4:05-cv-00842 and 4:10-cv-01704
      (d) Release: Attached as Exhibit 10.

  **(11)**    **Reva Orr.**

      (a) Case Name: *Reva Orr v. Wyeth, et. al.*
      (b) Transferor Case Number: 05-cv-03977 and 10-cv-03462
      (c) Eastern District of Arkansas Case Number: 05-cv-01228 and 10-cv-01596
      (d) Release: Attached as Exhibit 11.

  **(12)**    **Donna Peters.**

      (a) Case Name: *Donna Peters v. Wyeth, et, al.*
      (b) Transferor Case Number: 05-cv-04851 and 10-cv-03538
      (c) Eastern District of Arkansas Case Number: 05-cv-01608 and 10-cv-01684
      (d) Release: Attached as Exhibit 12.

  **(13)**    **Viola Plieseis.**

      (a) Case Name: *Viola Plieseis v. Wyeth, et. al.*
      (b) Transferor Case Number: 05-cv-03804 and 10-cv-03535

Mr. Thomas Girardi, Esq.
March 5, 2014
Page **4** of **9**

      (c) Eastern District of Arkansas Case Number: 05-cv-01196 and 10-cv-01691
      (d) Release: Attached as Exhibit 13.

  **(14)**  **Joyce Podhayski.**

      (a) Case Name:  *Joyce Podhayski v. Wyeth, et. al.*
      (b) Transferor Case Number:  04-cv-10018
      (c) Eastern District of Arkansas Case Number:  05-cv-00478
      (d) Release:  Attached as Exhibit 14.

  **(15)**  **Angela Draughn (On Behalf of Patricia Rogers).**

      (a) Case Name:  *Patricia Rogers v. Wyeth, et. al.*
      (b) Transferor Case Number: 05-cv-04916
      (c) Eastern District of Arkansas Case Number: 06-cv-00549
      (d) Release: Attached as Exhibit 15.

  **(16)**  **Fortunato Solis.**

      (a) Case Name:  *Fortunato Solis v. Wyeth, et. al.*
      (b) Transferor Case Number:  05-cv-04153 and 10-cv-03558
      (c) Eastern District of Arkansas Case Number:  05-cv-01211 and 10-cv-01667
      (d) Release:  Attached as Exhibit 16.

  **(17)**  **Anna Solomon.**

      (a) Case Name: *Anna Solomon v. Wyeth, et. al.*
      (b) Transferor Case Number: 08-cv-04826
      (c) Eastern District of Arkansas Case Number: 08-cv-04196
      (d) Release: Attached as Exhibit 17.

  **(18)**  **Sue Standriff.**

      (a) Case Name: *Sue Standriff v. Wyeth, et. al.*
      (b) Transferor Case Number: 05-cv-03979 and 10-cv-03555
      (c) Eastern District of Arkansas Case Number: 05-cv-01180 and 10-cv-01670
      (d) Release: Attached as Exhibit 18.

  **(19)**  **Tena Valentine.**

      (a) Case Name: *Tena Valentine v. Wyeth, et. al.*
      (b) Transferor Case Number:  2:05-cv-00900
      (c) Eastern District of Arkansas Case Number:  4:05-cv-00699
      (d) Release:  Attached as Exhibit 19.

Mr. Thomas Girardi, Esq.
March 5, 2014
Page **5** of **9**

    **(20)   Charlene Weinmann.**

        (a) Case Name:  *Charlene Weinmann v. Wyeth, et. al.*
        (b) Transferor Case Number:  2:05-cv-04845
        (c) Eastern District of Arkansas Case Number:  4:05-cv-01613
        (d) Release:  Attached as Exhibit 20.

    Please be advised that, by this correspondence, the Referenced Plaintiffs terminate GK as their counsel and decline any further representation by GK in each Referenced Plaintiff's case.

**A.**    **Background.**

    The Referenced Plaintiffs all used hormone replacement therapy ("HRT") and subsequently developed breast cancer.  In or about 2005, the Referenced Plaintiffs retained counsel to represent them in litigation against the manufacturers of HRT.  The cases were transferred to the Eastern District of Arkansas where they became part of the multi-district HRT Litigation.

    In or about 2011, the HRT Litigation was settled pursuant to a Master Settlement Agreement ("MSA").  Each of the Referenced Plaintiffs was informed of the settlement and sent a Confidential Release Indemnity and Assignment Agreement by GK (the "Release Agreement").  The Release Agreement was accompanied by a cover letter.  At a later date, the Referenced Plaintiffs received a Consent to Settlement and Authorization to Make Disbursements ("Consent Agreement") from GK that indicated the amount of their settlement proceeds and the distribution of those proceeds.

    On January 23, 2014, GK informed us that it had, without the knowledge or consent of the Referenced Plaintiffs and in contradiction to prior representations, withheld six (6) percent of their settlements.  The Referenced Plaintiffs have, therefore, decided to terminate GK as their counsel and have retained us to obtain their client files and an accounting of the receipt and distribution of their settlement proceeds, both of which, as explained below, they are entitled to under the California Rules of Professional Conduct.

**B.**    **Release of Referenced Plaintiffs' Client Files.**

    California Rules of Professional Conduct, Rule 3-700 provides: "Subject to any protective order or non-disclosure agreement, [a member shall] promptly release to the client, at the request of the client, all the client papers and property."  The Rule defines client papers and property to include "correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not."  Cal. Rule Prof. Conduct 3-700(D)(1).

Mr. Thomas Girardi, Esq.
March 5, 2014
Page **6** of **9**

Case law is in accord:  "[T]here can be no doubt that the balance of an attorney's litigation file is the property of the client and must be surrendered promptly upon request to the client or the client's new counsel once the representation has terminated." *Rose v. State Bar*, 49 Cal. 3d 646, 655 (1989).   Under Arkansas law as well, the client is the owner of the attorney's file.  *See Sexton Law Firm, P.A. v. Milligan*, 329 Ark. 285, 299, 948 S.W. 2d 388 (1997) ("Unquestionably, the client owns his file.").

Pursuant to Rule 3-700, the Referenced Plaintiffs request that GK promptly release their client files to us including, but not limited to, the following materials:

1. All written and electronic communications and records of such communications ("communications") relating to each of the Referenced Plaintiffs' case, including, but not limited to, the following:

    a. All communications between GK and the Referenced Plaintiffs regarding the nature of their claims and the settlement of the Referenced Plaintiffs' cases;

    b. All internal communications between persons working with or for GK relating to the Referenced Plaintiffs' cases;

    c. All communications to or from defense counsel relating to the Policy and Procedure Order ("PPO") 6";

    d. All communications with third-parties, such as counsel for co-plaintiffs in the HRT Litigation, defendant's counsel, the Court and/or any mediator involved in the HRT Litigation that relates in any way to the Referenced Plaintiffs' cases;

    e. All communications with any mediator, including Judicial Arbitration and Mediation Services ("JAMS") and the Honorable Edward Panelli or the Honorable John Trotter and any of their employees or agents regarding the Referenced Plaintiffs' cases;

    f. The Master Settlement Agreement entered into on behalf of the Referenced Plaintiffs with defendants in the HRT Litigation;

    g. All communications with James Street; and

    h. All communications with Garretson Resolution Group.

2. All records, files or reports generated that relate to the Referenced Plaintiffs' cases.

Mr. Thomas Girardi, Esq.
March 5, 2014
Page **7** of **9**

3. All materials related to the settlement of the Referenced Plaintiffs' cases, including, but not limited to, the following:

    a. The gross settlement amount for the each of the Referenced Plaintiffs' cases;

    b. All communications with defense counsel identifying the amount of the settlement for each of the Referenced Plaintiffs' cases;

    c. All communications with defense counsel relating to the Policy and Procedure Order ("PPO") 6;

    d. All release, and settlement agreements, including, but not limited to, The Confidential Release and Indemnity and Assignment Agreement relating to the Referenced Plaintiffs' cases; and

    e. All authorizations to disburse Referenced Plaintiffs' settlement funds, including, but not limited to, The Consent To Settlement and Authorization To Make Disbursements.

4. All materials that relate to the receipt and disbursement of the funds received in the Referenced Plaintiffs' cases including, but not limited to, the following:

    a. The amounts received from any sources;

    b. A detailed breakdown of any and all costs and expenses related to the Referenced Plaintiffs' cases and any other costs that were charged to the Referenced Plaintiffs' as part of a "pro-rata" distribution of costs;

    c. The date, manner and amount of any distribution of any funds received on the Referenced Plaintiffs' cases;

    d. The amount of any proceeds related to the Referenced Plaintiffs' cases retained by GK and the trust account in which those funds are presently maintained.

**C.**    **Accounting of All Funds Received and Distributed Relating to the Referenced Plaintiffs' Cases.**

California Rule of Professional Responsibility 4-100 ("Rule 4-100") provides: "A member shall . . . . [m]aintain complete records of all funds, securities, and other properties of a client coming into the possession of the member or law firm and render appropriate accounts to the client regarding them; preserve such records for a period of no less than five years after final appropriate distribution of such funds or properties;

Mr. Thomas Girardi, Esq.
March 5, 2014
Page **8** of **9**

and comply with any order for an audit of such records issued pursuant to the Rules of Procedure of the State Bar."  Cal. Rule of Prof. Conduct 4-100(B)(3).

The standards adopted by the California State Bar interpreting Rule 4-100 require a member to maintain "a written ledger for each client on whose behalf funds are held that sets forth: (i) the name of such client, (ii) the date, amount and source of all funds received on behalf of such client, (iii) the date, amount, payee and purpose of each disbursement made on behalf of such client, and (iv) the current balance for such client."  *Standard.* Cal. Rule Professional Conduct 4-100 (2012).

Under the Arkansas Rules of Professional Conduct, attorneys have a similar obligation to render a full accounting to the client upon written request.  Arkansas Rules of Professional Conduct 1.15(b)(3) ("[U]pon request by the client . . . [a lawyer] shall promptly render a full written accounting regarding such property to the client.").

A client who has received a statement setting forth the total settlement amount and the amount deducted for attorney's fees, medical liens and other associated costs is entitled to a complete accounting, including relevant supporting documentation, upon request.  *See Matter of Kroff*, 3 Cal. State Bar Ct. Rptr. 838, 849 (1988) (holding that attorney's initial provision of a statement showing the amount of settlement and the amounts deducted for attorney's fees and medical liens did not satisfy attorney's obligation to render a more detailed accounting, including providing a breakdown of each category and supporting documentation, upon request).

Pursuant to Rule 4-100 and the relevant standards adopted thereto, the Referenced Plaintiffs request that GK provide a detailed accounting of all funds associated with the Referenced Plaintiffs' cases, with a breakdown of all of the categories set forth on the Consent Agreement and supporting documentation of each expense contained therein, including, but not limited to, the following:

1. All funds received by GK in in connection with the Referenced Plaintiffs' cases, including the date that the funds were received and the source of those funds;

2. All documents that reflect the amount of any funds received by GK in connection with the HRT Litigation and the date those funds were received;

3. A statement of the disbursement of any funds made in connection with the Referenced Plaintiffs' cases, including the date of the disbursement, the payee and the purpose of the disbursement;

4. An itemized statement of all costs that were charged by GK to the Referenced Plaintiffs' cases; and

Mr. Thomas Girardi, Esq.
March 5, 2014
Page **9** of **9**

5. Any current balance of funds owing to Referenced Plaintiffs' cases and the trust account in which those funds are maintained.

Additionally, California Business and Professions Code section 6091 provides: "At the client's written request, the attorney shall furnish the client with a complete statement of the funds received and disbursed and any charges upon the trust account, within 10 calendar days after receipt of the request." By this letter, the Referenced Plaintiffs request that GK also provide the accounting required under section 6091, including supporting documents.

Please provide the requested materials within ten (10) business days of the date of this letter, that is or on or before March 19, 2014. We can send a messenger to collect the materials or they can be delivered by certified mail to my attention at the address above.

Thank you for your prompt attention to these requests and your anticipated cooperation.

Very Truly Yours,

Jeffrey B. Isaacs, Esq.
ISAACS | FRIEDBERG LLP

Attorneys for the Referenced Plaintiffs

cc:  Jerome Friedberg, Esq. (with attachments)
     Amanda Touchton, Esq. (with attachements)

# EXHIBIT 6

EXHIBIT 6

1 | GIRARDI | KEESE
2 | 1126 Wilshire Boulevard
    Los Angeles, California 90017
3 | (213) 977-0211
    THOMAS V. GIRARDI - BAR NO. 36603
4 | JAMES G. O'CALLAHAN, Bar No. 126975
    KEITH D. GRIFFIN - BAR NO. 204388
5 | Attorneys For: Plaintiffs

FILED
Superior Court of California
County of Los Angeles

DEC 03 2013

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Lore M'Greene

7 |       SUPERIOR COURT OF THE STATE OF CALIFORNIA
8 |                   COUNTY OF LOS ANGELES

9 | Coordination Proceeding              ) Judicial Council Coordination Proceeding
    Special Title (Rule 3.550)           ) CASE NO. JCCP NO. 4578
10 |                                      )
    **AVANDIA DRUG CASES**               ) **The Honorable Elihu M. Berle**
11 |                                      ) **Department 323**
12 |                                      )
                                         ) **PLAINTIFF'S *EX PARTE***
13 |                                      ) **APPLICATION FOR AN ORDER TO**
                                         ) **EXPEDITE TIME ON A HEARING**
14 |                                      ) **DATE AND TO MAKE ALL FEE**
                                         ) **DISPUTES HANDLED BY GIRARDI &**
15 |                                      ) **KEESE BE HEARD BY JUSTICE**
                                         ) **PANELLI AND JUSTICE TROTTER;**
16 | _____ ) **DECLARATION OF JAMES G.**
17 |                                        **O'CALLAHAN**
18 |
19 |
20 |                       Hearing Date: December 6, 2013
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

1

**TO ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs hereby bring an Ex Parte Application for an order for this Court to expedite time on a hearing date and to make all fee disputes regarding Avandia Drug cases handled by Girardi & Keese be heard by Justice Panelli and Justice Trotter.

This Application is made pursuant to *California Rules of Court*, Rule 3.1201 and is based upon this notice, the attached Memorandum of Points and Authorities and Declaration, all records on file in this action, and upon such other evidence and oral argument as may be presented at a hearing of this Ex Parte Application.

DATED:  December 4, 2013                                    GIRARDI | KEESE

By:  _____
        THOMAS V. GIRARDI
        JAMES G. O'CALLAHAN
        KEITH D. GRIFFIN
        Attorneys for Plaintiffs

2

**PLAINTIFF'S EX PARTE APPLICATION FOR ORDER TO EXPEDITE TIME ON A HEARING DATE AND TO MAKE ALL FEE DISPUTES HANDLED BY GIRARDI & KEESE BE HEARD BY JUSTICE PANELLI AND JUSTICE TROTTER**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The Court is very familiar with this litigation that has gone on for years.  Plaintiffs have alleged that Defendant, GlaxoSmithKline ("GSK"), manufactured and sold the drug Avandia which has serious side effects, and that GSK knew of these side effects but hid them from the public, medical community and patients, including Plaintiffs in this litigation.

### II.     UNCONTESTED FACTUAL BACKGROUND

Plaintiffs contend that Avandia, manufactured by GSK, causes a significantly increased risk of ischemic cardiac injury, including myocardial infarction, congestive heart failure, and stroke.  Plaintiffs further contend that GSK failed to adequately warn physicians and patients about the true risks of Avandia, and that GSK fraudulently asserted that Avandia was safe when they knew that it was dangerous and harmful to the heart.   Plaintiffs allege that Avandia was a contributory and substantial factor in causing Plaintiffs to suffer several injuries.

On April 9, 2012, two days before trial in this matter was set to commence, the parties informally agreed upon terms to settle the entire Girardi & Keese inventory of approximately 4300 Plaintiffs.  This agreement had specific provisions as to qualifying claims, assessment of claims, and the dispersing of funds.  Due to this initial agreement, the trial and all pending pre-trial matters were stayed.

After four months of negotiating the language of the settlement agreement, the parties signed a Master Settlement Agreement between Girardi & Keese and GSK LLC.  Justice Edward Panelli, retired from the California Supreme Court, and Justice John Trotter, retired from the California Court of Appeals, were appointed to determine eligibility under the guidelines agreed to by the parties.  The Court approved the appointment.  Their work was absolutely independent of any input from the Plaintiffs' lawyers.  It was felt that having these two most respected jurists to indicate eligibility would quicken the process so the people could get their funds.

It should be pointed out that the Plaintiffs' counsel agreed to separate allocations of settlement funds to the claimants, with a fifty percent (50%) holdback while Plaintiffs' counsel negotiates and resolves any medical liens.  The Plaintiffs' counsel agreed to hold the defense counsel harmless from any other claim.

3

**PLAINTIFF'S EX PARTE APPLICATION FOR ORDER TO EXPEDITE TIME ON A HEARING DATE AND TO MAKE ALL FEE DISPUTES HANDLED BY GIRARDI & KEESE BE HEARD BY JUSTICE PANELLI AND JUSTICE TROTTER**

1  Since the settlement, Justice Panelli and Justice Trotter have reviewed thousands of pages of
2  medical records in order to determine whether each individual Plaintiff meets the eligibility requirements.
3  Combined, they have determined over 2200 Plaintiffs eligible for the settlement. Their determinations,
4  along with a fully executed release, have been provided to Defendants. Plaintiffs believed that their
5  findings were detailed and more than sufficient for purposes of determining eligibility to participate in the
6  settlement.

7  Presently, it is inevitable that disputes will arise in the individual cases of Plaintiffs' regarding
8  attorney fees, the distribution of fees and the allocation of fees. Because there are thousands of Plaintiffs in
9  the Avandia litigation from multiple jurisdictions, any dispute could delay Plaintiffs from receiving their
10 settlement money. If Justices Panelli and Trotter are appointed by the Court to mediate any fee dispute and
11 recommend the apportionment of fees, any dispute could be expeditiously resolved. This would also
12 insulate the individual Plaintiffs from the effect of any dispute and insure that their recovery was not
13 delayed.

14 **III.   AN EX PARTE APPLICATION SHALL BE GRANTED ON A SHOWING OF**
15 **IRREPARABLE HARM, IMMEDIATE DANGER, OR OTHER GOOD CAUSE**

16 California Rule of Court 3.1200 et sec. requires that a party make a showing of good cause in order
17 to obtain *ex parte* relief. As set forth in the application, this Memorandum of Points and Authorities, and in
18 the attached Declaration of Plaintiff's counsel, James G. O'Callahan, good causes exists and the furtherance
19 of justice necessitates granting this *ex parte* application. An immediate hearing on Plaintiff's motion will
20 afford substantial justice to the parties while delaying a hearing on the motion will greatly prejudice
21 Plaintiffs.

22 The ex parte application for an order must be supported by an affidavit or declaration showing good
23 cause. C.R.C. 3.1200 et sec. As set forth in the Declaration of James G. O'Callahan, filed concurrently
24 herewith, good cause exists for this court to grant Plaintiff's *ex parte* application for an order to expedite
25 time on a hearing date and to make all fee disputes in cases handled by Girardi & Keese be heard by Justice
26 Panelli and Justice Trotter.

27 **IV.   THE COURT HAS DISCRETION TO SHORTEN TIME FOR HEARING**
28 Section 1005(b) of the California Code of Civil Procedure states, in pertinent part:

4

**PLAINTIFF'S EX PARTE APPLICATION FOR ORDER TO EXPEDITE TIME ON A HEARING DATE AND TO MAKE ALL FEE DISPUTES HANDLED BY GIRARDI & KEESE BE HEARD BY JUSTICE PANELLI AND JUSTICE TROTTER**

Unless otherwise ordered or specifically provided by law, all moving and supporting papers shall be served and filed at least 16 court days before the hearing. The Court, or a judge thereof, may prescribe a shorter time.

Plaintiffs seek that the Court shorten time for a hearing because delaying a hearing on the motion will prejudice Plaintiffs as a result of Plaintiffs' attorneys being unable to expeditiously resolve the outcomes of Plaintiffs' individual cases. This Court has discretion to grant this application for an order to shorten time for a hearing.

## V. THE COURT HAS DISCRETION TO ORDER ANY ISSUE OR DEFENSE TO BE TRIED SEPARATELY AND BEFORE TRIAL OF THE REMAINING ISSUES WHEN IT APPEARS THAT THE DISPOSITION OF ANY OF THE COORDINATED ACTIONS MIGHT THEREBY BE EXPEDITED

The coordination trial judge must assume an active role in managing all steps of the pretrial, discovery, and trial proceedings to expedite the just determination of the coordinated actions without delay. Under California Rules of Court, the judge may, for the purpose of coordination and to serve the ends of justice:

(1) Order any coordinated action transferred to another court under rule 3.543; (2) Schedule and conduct hearings, conferences, and a trial or trials. . .; and (3) Order any issue or defense to be tried separately and before trial of the remaining issues when it appears that the disposition of any of the coordinated actions might thereby be expedited. *Cal. Rules of Court, Rule 3.540.*

California courts have historically appointed a special master to hear portions of cases involving dispute resolution. *See generally In re Attorney Discipline System* (1998) 19 Cal.4th 582.

Here, because Justice Panelli and Justice Trotter have spent long hours reviewing portions of Avandia cases and are very familiar with all aspects of these cases, they would serve to expedite a just determination without delay. By ordering that fee disputes arising out of Girardi & Keese cases in this coordinated action be heard by Justice Panelli and Justice Trotter, the disposition of these cases will certainly be expedited. Further, by staving off filing of lawsuits in the handling of disputes, the order to mediate fee disputes will contribute to the efficient handling of these cases, making it also likely to save the Court system time and resources. Plaintiffs respectfully request that this Court order to make all fee disputes regarding Avandia Drug cases handled by Girardi & Keese be heard by Justice Panelli and Justice

5

Trotter.  In addition to having these cases mediated by Justice Panelli and Justice Trotter, Plaintiffs request that these jurists be able to recommend to the Court determination of the fee dispute cases at issue, or alternatively, determine the fee dispute cases themselves.

**IV.     ALL PARTIES WERE PROVIDED TIMELY NOTICE OF THIS EX PARTE APPLICATION.**

Pursuant to California Rule of Court 3.1204, Plaintiff's counsel made a good faith effort to provide timely notice of this *ex parte* application to counsel for Defendants.  As set forth in the Declaration of Brenda N. Galván, Defendant was advised of Plaintiff's intent to apply *ex parte* for an order to expedite time on a hearing date and to make all fee disputes handled by Girardi & Keese be heard by Justice Panelli and Justice Trotter, at 8:45 a.m., the day before the appearance in this matter.

**V.     CONCLUSION**

For the foregoing reasons, Girardi & Keese Plaintiffs respectfully request that the Court grant Plaintiffs' Ex Parte Application for an order for this Court to expedite time on a hearing date and to make all fee disputes regarding Avandia Drug cases handled by Girardi & Keese be heard by Justice Panelli and Justice Trotter.

Dated:  December 4, 2013

GIRARDI | KEESE

THOMAS V. GIRARDI
JAMES G. O'CALLAHAN
KEITH D. GRIFFIN

6

**PLAINTIFF'S EX PARTE APPLICATION FOR ORDER TO EXPEDITE TIME ON A HEARING DATE AND TO MAKE ALL FEE DISPUTES HANDLED BY GIRARDI & KEESE BE HEARD BY JUSTICE PANELLI AND JUSTICE TROTTER**

## DECLARATION OF JAMES G. O'CALLAHAN

I, James G. O'Callahan, hereby declare as follows:

1. I am an attorney duly licensed to practice before all the Courts in the State of California. I am a partner of the law firm Girardi & Keese and counsel of record for Plaintiffs in the above-entitled action.

2. The factual and procedural background in this matter is known to me personally. If called as a witness, I could and would competently testify to the statements made herein. Those facts state upon information and belief are so identified.

3. Plaintiffs seek that the Court shorten time for a hearing because delaying a hearing on the motion will prejudice Plaintiffs as a result of Plaintiffs' attorneys being unable to expeditiously resolve the outcomes of Plaintiffs' individual cases. This Court has discretion to grant this application for an order to shorten time for a hearing.

4. Justice Panelli and Justice Trotter have spent long hours reviewing portions of Avandia cases and are very familiar with all aspects of these cases. Both Justice Panelli and Justice Trotter have the knowledge and understanding of the cases and their handling would provide an efficient and fair forum to resolve any disputes.

5. It is inevitable that disputes will arise in the individual cases of Plaintiffs' regarding attorney fees, the distribution of fees and the allocation of fees. Because there are thousands of Plaintiffs in the Avandia litigation from multiple jurisdictions, any dispute could delay Plaintiffs from receiving their settlement money. Having Justice Panelli and Justice Trotter mediate fee dispute issues involved in these cases will only expedite the outcome of these cases and contribute to Court efficiency.

6. On November 12, 2013, Hutton & Hutton LLC filed a lawsuit against Girardi & Keese and Thomas V. Girardi in Kansas District Court for a breach of contract case claiming that they are entitled to attorney fees for fifty-four cases in the Avandia Litigation. Fleeson, Gooing, Coulson & Kitch LLC are representing Hutton & Hutton LLC.

//

//

//

//

7

**PLAINTIFF'S EX PARTE APPLICATION FOR ORDER TO EXPEDITE TIME ON A HEARING DATE AND TO MAKE ALL FEE DISPUTES HANDLED BY GIRARDI & KEESE BE HEARD BY JUSTICE PANELLI AND JUSTICE TROTTER**

1       Under the penalty of perjury of the laws of the State of California, I declare that the foregoing is

2 true and correct to the best of my abilities.

3 Dated:  December 5, 2013                     GIRARDI | KEESE

4

5

6                                   JAMES G. O'CALLAHAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S EX PARTE APPLICATION FOR ORDER TO EXPEDITE TIME ON A HEARING
DATE AND TO MAKE ALL FEE DISPUTES HANDLED BY GIRARDI & KEESE BE HEARD
BY JUSTICE PANELLI AND JUSTICE TROTTER**

## DECLARATION OF BRENDA N. GALVÁN

I, Brenda N. Galván, hereby declare as follows:

1. I am a law clerk at the law firm of Girardi | Keese. I have personal knowledge of the facts set forth hereinafter and if called upon as a witness I would be competent to testify thereto.

2. On December 5, 2013, at approximately 8:45 a.m., I called Mr. Ron Campbell, Esq. of Fleeson, Gooing, Coulson & Kitch LLC, giving him notice of Plaintiffs' *ex parte* application for an order to expedite time on a hearing date and to make all fee disputes in cases handled by Girardi & Keese be mediated by Justice Panelli and Justice Trotter. I spoke with Mr. Campbell directly. At 9:05 a.m., I emailed him a letter confirming that Plaintiff's notice was given.

3. On December 5, 2013, at approximately 8:45 a.m., I called Mr. Andrew Hutton, Esq. of Hutton & Hutton, giving him notice of Plaintiffs' *ex parte* application for an order to expedite time on a hearing date and to make all fee disputes in cases handled by Girardi & Keese be mediated by Justice Panelli and Justice Trotter . I spoke with Ms. Sharon Fornshell of Hutton & Hutton and she indicated that she would forward him the information. At 9:03 a.m., I emailed Mr. Hutton a letter confirming that Plaintiff's notice was given.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 5, 2013 at Los Angeles, California.

_____

BRENDA N. GALVÁN

9

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1126 Wilshire Boulevard, Los Angeles, California 90017.

On **December 5, 2013**, I served the foregoing document described as: **Plaintiffs' Ex Parte Application for an Order to Expedite Time on a Hearing Date to Make All fee disputes handled by Girardi & Keese be Mediated by Justice Panelli and Justice Trotter; Declaration of James G. O'Callahan** on interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:  SEE MAILING LIST ATTACHED

[]  **(BY MAIL)**

[]  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with U.S. Postal Service on that day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

[X]  **BY FACIMILE (C.C.P. §§1012.4 et seq):**  I faxed said document to each addressee's telecopier ("fax") number.  The facsimile machine that I utilized (213) 481-1554, complied with California Rules of Court, Rule 2003 (3), and no error was reported by the machine.  Pursuant to Rule 2005(I), I caused the machine to print a record of the transmission, a copy of which is attached to the original of this declaration.

Executed on **December 5, 2013**, at Los Angeles, California.

[X]  **(STATE)**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Brenda N. Galván

-1-

MAILING LIST

Ron Campbell, Esq.
Fleeson, Gooing, Coulson & Kitch LLC
1900 Epic Center
301 North Main
P.O. Box 997
Wichita, Kansas
(316) 267-7361-- phone
(316) 267-1754-- fax

Andrew W. Hutton ·
Hutton & Hutton
8100 East Twenty-Second Street North, Building 1200
Wichita, Kansas 67226-2312
(316) 688-1166—phone
(316) 686-1077—fax