1  GIRARDI | KEESE
   THOMAS V. GIRARDI (SBN 36603)
2  tgirardi@girardikeese.com
   JAMES G. O'CALLAHAN (SBN 126975)
3  jgocallahan@girardikeese.com
   CELENE S. CHAN (SBN 260267)
4  cchan@girardikeese.com
   1126 Wilshire Boulevard
5  Los Angeles, California 90017
   Phone: (213) 977-0211
6  Facsimile: (213) 481-1554

7  Attorneys for Defendants

8

9

10

11

12          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**

13

14  JUDITH ALLEN, *et al.*,              CASE NO.: 14-CV-02721-MWF-FFM

15          Plaintiffs,                  **DEFENDANTS' REPLY IN**
                                         **SUPPORT OF MOTION TO**
16                                       **DISMISS AND COMPEL**
    vs.                                  **ARBITRATION; MEMORANDUM**
17                                       **OF POINTS AND AUTHORITIES**

18  GIRARDI | KEESE, THOMAS V.
    GIRARDI, and JAMES G.               Hon. Michael W. Fitzgerald
19  O'CALLAHAN,
20                                       Date:      June 30, 2014
            Defendants.                  Time:      10:00 a.m.
21                                       Location:  Courtroom 1600
22

23

24

25

26

27

28

─────────────────────────────────────────────────────────────
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................. 1

II.   APPLICABLE LAW ............................................................ 2

III.  PLAINTIFFS FAIL TO MEET THEIR BURDEN TO SHOW THE
AGREEMENT IS UNENFORCEABLE ................................ 2

IV.  DEFENDANTS CAN COMPEL ARBITRATION AS NON-SIGNATORIES ...... 3

    A.   Under Federal and State Law, Non-Signatories Can Compel Arbitration ..... 3

    B.   Relationship Between Snyder/Gruber and Defendants .................................. 6

    C.   Defendants Were Third Party Beneficiaries of the Retainer Agreement ........ 8

V.   EQUITABLE ESTOPPEL REQUIRES ARBITRATION .................................... 12

    A.   Plaintiffs' Claims Are Intimately Founded In and Intertwined with the
Attorney-Client Relationship Established in the Retainer Agreement ......... 13

    B.   Equity Dictates that Plaintiffs Must Arbitrate Since They Sought the
Benefits of the Retainer Agreement ................................................ 14

VI.  ARBITRATION IS NOT UNCONSCIONABLE ................................................. 16

    A.   Arbitration Is Not Procedurally Unconscionable ......................................... 17

    B.   Arbitration Is Not Substantively Unconscionable ........................................ 19

VII. DISMISSAL IS WARRANTED BECAUSE PLAINTIFFS FAIL TO JOIN
NECESSARY PARTIES GRUBER/SNYDER ...................................... 21

    A.   Plaintiffs Fail to Explain the Absence of the Three California Plaintiffs ..... 22

VIII. IF THE COURT DOES NOT DISMISS PLAINTIFFS' CLAIMS, IT
SHOULD STAY THE ENTIRE ACTION PENDING ARBITRATION ............. 23

IX.  CONCLUSION.................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Abramson v. Juniper Networks, Inc.*,
   115 Cal. App. 4th 638 (2004) ....................................................................19

*Aguilar v. Lerner*,
   32 Cal. 4th 974 (2004) ...............................................................................4

*Armendariz v. Found. Health Psychcare Servs.*,
   24 Cal. 4th 83 (2000) ..................................................................16, 19, 20

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009).................................................................................3, 24

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. —, 131 S. Ct. 1740, 179 L. Ed. 2d 742(2011) ....................................20

*Berke v. Murphy*,
   274 N.W. 356 (Mich. 1937)........................................................................7

*Berman v. Dean Witter & Co., Inc.*,
   44 Cal. App. 3d 999 (1975) ........................................................................13

*Boucher v. Alliance Title Co., Inc.*,
   127 Cal. App. 4th 262 (2005) .....................................................................12

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
   622 F.3d 996 (9th Cir. 2010) ......................................................................16

*Buckhorn v. St. Jude Heritage Med. Grp.*,
   121 Cal. App. 4th 1401 (2004) ...................................................................13

*Carideo v. Dell, Inc.*,
   520 F. Supp. 2d 1241 (D. Wash. 2007) .......................................................2

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

## <u>TABLE OF AUTHORITIES, continued</u>

<u>Page</u>

**Cases**

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ...................................................................2, 3

*Circuit City Stores v. Adams*,
   279 F.3d 889 (9th Cir. 2002) .......................................................................16

*Circuit City Stores, Inc. v. Mantor*,
   335 F.3d 1101 (9th Cir. 2003) .....................................................................16

*City of Hope v. Bryan Cave, LLP*,
   102 Cal. App. 4th 1356 (2002) ................................................................8, 12

*Cnty. of Riverside v. Loma Linda Univ.*,
   173 Cal. Rptr. 371 (1981) ..............................................................................6

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) .....................................................................15

*Davis v. O'Melveny & Myers*,
   485 F.3d 1066 (9th Cir. 2007) ...............................................................16, 19

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213, 218 (1985)...........................................................................3, 23

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*,
   269 F.3d 187 (3d Cir. 2001) .........................................................................12

*Effio v. FedEx Ground Package*,
   CV-08-1522-PHX-ROS, 2009 WL 775408 (D. Ariz. Mar. 20, 2009)............17

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

# <u>TABLE OF AUTHORITIES, continued</u>

<u>Page</u>

**Cases**

*Efund Capital Partners v. Pless*,
   150 Cal. App. 4th 1311 (2007) ...................................................................13

*Engalla v. Permanente Med. Grp., Inc.*,
   15 Cal. 4th 951 (1997) ..........................................................................3, 16

*Enters. Int'l, Inc. v. Pasaban*,
   2012 U.S. Dist. LEXIS 92205, 2012 WL 2576359 (W.D. Wash. July 3, 2012) ...............5

*Ervin, Cohen & Jessup, LLP v. Kassel*,
   147 Cal. App. 4th 821 (2007) ......................................................................4

*Exxon Mobil Corp. v. Allapattah Servs.*,
   545 U.S. 546 (2005)................................................................................23

*Fitzgibbon v. Henry A. Carey, P.C.*,
   688 P.2d 1367 (Or. Ct. App. 1984)...................................................................6

*Flores v. Transam. HomeFirst, Inc.*,
   93 Cal. App. 4th 846 (2001) ..................................................................17, 19

*Gentry v. Superior Court*, 42 Cal.4th 443 (2007)................................................16

*Goldman v. KPMG, LLP*
   173 Cal. App. 4th 209 (2009) .................................................................13, 14

*Graham Oil Co. v. ARCO Prods. Co.*,
   43 F. 3d 1244 (9th Cir. 1994) .....................................................................19

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000).................................................................................2

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

<u>**TABLE OF AUTHORITIES, continued**</u>

<u>Page</u>

**Cases**

*Grigson v. Creative Artists Agency LLC*,
   210 F.3d 524 (5th Cir. 2000) ...................................................................15

*Harris v. Green Tree Fin. Corp.*,
   183 F.3d 173 (3d Cir. 1999) ...................................................................17

*Harris v. Superior Court*,
   188 Cal. App. 3d 475 (1986) ...................................................................3

*Holstein v. Grossman*,
   616 N.E.2d 1224 (Ill. App. Ct 1993) ...................................................................7

*Jackson v. E. Bay Hosp.*,
   246 F.3d 1248 (9th Cir. 2001) ...................................................................6

*In re Johnson*,
   552 N.E.2d 703 (Ill. 1989) ...................................................................7

*Jones v. Humanscale Corp.*,
   130 Cal. App. 4th 401 (2005) ...................................................................20

*Jones v. Jacobson*,
   195 Cal. Rptr. 3d 522 (2011) ...................................................................13

*JSM Tuscany, LLC v. Superior Court*,
   193 Cal. App. 4th 1222 (2011) ...................................................................12

*Keller Constr. Co. v. Kashani*,
   220 Cal. App. 3d 222 (1990) ...................................................................8

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

### TABLE OF AUTHORITIES, continued

<u>Page</u>

**Cases**

*Kramer v. Toyota Motor Corp.*
705 F.3d 1122 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 62 (2013) .................................6, 13

*Larry Karchmar, Ltd. v. Nevoral,*
707 N.E.2d 223 (Ill. App. Ct. 1999) ...................................................................................7

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004) ..........................................................................................21

*Metalclad Corp. v. Ventana Envtl. Org'l P'ship*,
109 Cal. App. 4th 1705 (2003) ........................................................ 12, 13, 14, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)................................................................................................................2

*Mundi v. Union Sec. Life Ins., Co.*,
555 F.3d 1042 (9th Cir. 2009) ..........................................................................................12

*Nevada v. L.A. Pac. Ctr., Inc.*,
144 Cal. App. 4th 754 (2006) .............................................................................................3

*NORCAL Mut. Ins. Co. v. Newton*,
84 Cal. App. 4th 64 (2000) ...............................................................................................14

*Parada v. Superior Court*,
176 Cal. App. 4th 1554 (2009) .........................................................................................18

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967)............................................................................................................2

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

## <u>TABLE OF AUTHORITIES, continued</u>

<u>Page</u>

**Cases**

*Rogers v. Peinado*,
   85 Cal. App. 4th 1 (2000) ....................................................................12

*Rosenthal v. Great W. Fin. Secs. Corp.*,
   14 Cal. 4th 394 (1996) .........................................................................3

*Ruiz v. Sysco Food Servs.*,
   122 Cal. App. 4th 520 (2004) ..............................................................13

*Sanders v. Swift Transp. Co. of Arizona, LLC*,
   843 F. Supp. 2d 1033 (N.D. Cal. 2012) ...............................................16

*Snell v. Cleveland, Inc.*,
   316 F.3d 822 (9th Cir. 2002) ...............................................................22

*Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*,
   42 F.3d 1292 (9th Cir. 1994) ..................................................................2

*United Life Ins. Co. v. Waddell & Reed, Inc.*,
   360 F.3d 960 (9th Cir. 2004). ..............................................................22

*Vianna v. Doctors' Mgmt. Co.*,
   27 Cal. App. 4th 1186 (1994) ..............................................................13

**Statutes**

Cal. Bus. & Prof. Code § 6200......................................................................4

Cal. Civ. Code § 3521 .................................................................................15

Cal. Code Civ. Proc. § 1280..........................................................................4

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

# TABLE OF AUTHORITIES, continued

**Page**

**Treatises**

31-904 Moore's Federal Practice - Civil § 904.03 ........................................................2, 24

73 A.L.R. 2d 991.....................................................................................................................6

**Rules**

Fed. R. Civ. P. 19(a)(2)(i) .....................................................................................................21

Fed. R. Civ. P. 19(a)(2)(ii) ....................................................................................................21

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs Judith Allen, *et al*. (collectively "Plaintiffs") agreed to arbitrate any and all disputes arising out of legal representation in their hormone replacement therapy ("HRT") litigation.  Plaintiffs also agreed that retired California Supreme Court Justice Edward A. Panelli had sole authority to allocate settlement monies when they signed and notarized release agreements in the HRT litigation.

Instead of assenting to arbitration that they agreed to in the first instance, Plaintiffs now claim that only part of the Retainer Agreement is enforceable (Paragraph 7 providing for association of Defendants as counsel), while the arbitration provision in Paragraph 9 is somehow invalid.  The Court should hold Plaintiffs to their legal obligation to perform what is required within the contract they signed, *i.e.,* arbitration.  It would be patently unjust to allow Plaintiffs to bring claims arising from and in reliance upon the Retainer Agreement, but to dodge the Retainer Agreement's mandatory arbitration clause.

As the party opposing arbitration, Plaintiffs bear the burden to show that the arbitration provision in their signed Retainer Agreements is unenforceable.  Despite setting forth multiple assertions in an attempt to invalidate the arbitration clause, Plaintiffs fail to demonstrate any justifiable grounds upon which the Court can deny Defendants Girardi | Keese, Thomas V. Girardi, and James G. O'Callahan's (collectively "Defendants") Motion to Dismiss and Motion to Compel Arbitration.

There is no basis to question the validity of the arbitration provision here. Although Defendants were not signatories to the Retainer Agreements, they were expressly incorporated into the agreements in Paragraph 7 and have standing to compel arbitration.  Since Plaintiffs fail to meet their burden to demonstrate that the arbitration provision is in any way unenforceable, this Court must grant Defendants' Motion to Dismiss and Motion to Compel Arbitration in its entirety.

## II.    APPLICABLE LAW

The Federal Arbitration Act ("FAA") applies in diversity cases and governs enforcement of arbitration contracts that evidence a transaction in interstate commerce. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404-405 (1967). Although state contract law generally governs whether an arbitration agreement is valid as a contract, once it is determined that the agreement is valid, it must be enforced under the FAA by federal courts even in diversity cases. *Id.*  State law is implicated in the context of an arbitration agreement only to the extent that it provides the background principles of contract formation.  31-904 Moore's Federal Practice - Civil § 904.03.

The scope of an arbitration agreement is governed by federal substantive law. *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

While Plaintiffs criticize Defendants for citing federal authority, Plaintiffs concede that the FAA governs enforceability of the arbitration provision here.  Opp. at 8. Although Plaintiffs point to state law contract defenses (*e.g.*, fraud, duress, or unconscionability) to invalidate the arbitration agreement in this case, none of those defenses exists here, rendering the arbitration provision enforceable.

## III.    PLAINTIFFS FAIL TO MEET THEIR BURDEN TO SHOW THE AGREEMENT IS UNENFORCEABLE

"The party opposing arbitration bears the burden of showing that the agreement is not enforceable." *Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241, 1244 (D. Wash. 2007) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)); *see also*

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

*Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997); *Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394, 413 (1996); *Hotels Nevada v. L.A. Pac. Ctr., Inc.*, 144 Cal. App. 4th 754, 758, 761 (2006) (if the party opposing the petition to compel arbitration raises a defense to its enforcement, that party bears the burden of proving by a preponderance of the evidence, any fact necessary to the defense).

Under the FAA, a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citation omitted). Plaintiffs fail to demonstrate how the answer to both of the Court's inquiries is "no," and therefore, the Court must compel arbitration. The Act "leaves no place for the exercise of discretion by a district court" and instead mandates "that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id*. (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original).

## IV.   DEFENDANTS CAN COMPEL ARBITRATION AS NON-SIGNATORIES

### A.   Under Federal and State Law, Non-Signatories Can Compel Arbitration

Simply because Defendants did not sign an arbitration agreement with Plaintiffs does not mean that the parties cannot arbitrate the instant dispute. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (nonsignatory can invoke arbitration under FAA if relevant state contract law will allow enforcement of original contract); *see also Harris v. Superior Court*, 188 Cal. App. 3d 475, 477-79 (1986) (physician bound to arbitrate patient's medical malpractice claim even though physician is non-signatory to agreement because physician accepts patients through enrollments in employer hospital's medical services agreement). Under Section 4 of the FAA,

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction

3

under Title 28[1] … for an order directing that such arbitration proceed in the manner provided for in such agreement.

Arbitration provisions in written attorney-client retainer agreements are generally enforceable under the California Arbitration Act (Cal. Code Civ. Proc. § 1280 *et seq.*), absent the client's exercise of the statutory right to mandatory fee arbitration in accordance with Cal. Bus. & Prof. Code § 6200 *et seq.* (Mandatory Fee Arbitration Act or "MFAA").  A client also waives his or her rights under the MFAA by filing a malpractice action against the former attorney.  Thus, a client who files a malpractice action against a former attorney can be compelled to arbitrate the fee dispute or malpractice claim in accordance with the arbitration provision in the retainer agreement and California Code Civ. Proc. § 1280 *et seq.  Aguilar v. Lerner,* 32 Cal. 4th 974, 984-90 (2004); *Ervin, Cohen & Jessup, LLP v. Kassel,* 147 Cal. App. 4th 821, 826-30 (2007).

Plaintiffs' position—that Defendants lack standing to enforce the arbitration clause—is entirely untenable.  The dispute between the parties falls within the scope of the arbitration provision.  Both Plaintiffs and Defendants agree that Plaintiffs and Gruber/Snyder—parties that Plaintiffs noticeably omitted from this suit—entered into Retainer Agreements containing an express arbitration provision.  However, the parties disagree on applicability of arbitration under the current circumstances.  Plaintiffs do not challenge the validity of the arbitration provision itself.  Rather, Plaintiffs dispute whether Defendants have standing to compel arbitration and argue that the arbitration provision is inapplicable to their claims against Defendants.  Therefore, as the very existence of the arbitration provision of the Retainer Agreements is not in dispute by either party, the Court should find that a valid agreement to arbitrate exists.

The Court should refer to the language in Plaintiffs' complaint noting Defendants' alleged role, as the Retainer Agreement provides Defendants' standing to compel arbitration under these circumstances.  The language of the Retainer Agreement is broad and allows Defendants to compel arbitration, even though not expressly named in the

---

[1] See *infra* § VII.A regarding Court's jurisdiction.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

Agreement, as involved third parties given their roles as associated counsel to signatory Gruber/Snyder and counsel for signatory Plaintiffs.  Furthermore, the Retainer Agreement states any dispute, regardless of by or against whom the claim is made, "which arises out of or in connection with the Firms [sic] representation of you with respect to this matter . . ." shall be subject to arbitration.

Plaintiffs' claims in the complaint directly arise from their attorney-client relationship with Defendants.  Specifically, Defendants' alleged nonpayment of settlement funds and Plaintiffs' attempts to collect the balance due arise from the attorney-client relationship established in the Retainer Agreement through Paragraph 7. As much as Plaintiffs attempt to claim that their claims are not derived from the Retainer Agreement ("Plaintiffs' claims are entirely independent of the Retainer Agreement" (Opp. at 18-19)) and rather derive from "fiduciary duties that were created by statute and by the California ethical rules governing the conduct of attorneys" (Opp. at 17), Defendants' alleged wrong is breaching the underlying contractual obligation set forth in the Retainer Agreement to act as counsel for Plaintiffs in the HRT litigation.  As such, Plaintiffs' express and unequivocal agreement to arbitrate claims includes those claims asserted by Plaintiffs against Defendants.

Even if the Court considers Plaintiffs' claims as derivative or secondary to the attorney-client relationship established in the Retainer Agreement, Plaintiffs' alleged wrongs are intimately linked to Defendants' duties under the Retainer Agreement.  Even Plaintiffs' claims for money had and received, accounting, and declaratory relief fall within the arbitration clause.  *See Enters. Int'l, Inc. v. Pasaban*, 2012 U.S. Dist. LEXIS 92205, 2012 WL 2576359 (W.D. Wash. July 3, 2012) (finding that plaintiffs' claims for accounting, declaratory judgment, violation of Washington Consumer Protection Act, and derivative shareholder claims are ancillary and all "concern" the underlying agreement and fall within arbitration clause).  Thus, it is proper for the Court to order that Plaintiffs arbitrate all of their claims, as agreed upon in the Retainer Agreement.

Ultimately, Plaintiffs cannot have it both ways.  On one hand, Plaintiffs

acknowledge that an agreement to arbitrate exists between Plaintiffs and Gruber/Snyder in the Retainer Agreement.  Plaintiffs do not contest that Defendants were their counsel in the HRT litigation that resulted in various monies allocated to Plaintiffs.  On the other hand, Plaintiffs challenge Defendants' standing to compel arbitration based upon alleged acts directly pertaining to the terms of the arbitration provision because Defendants are non-signatories to the Retainer Agreement.  Plaintiffs cannot simultaneously claim that Defendants violated duties arising from the Retainer Agreement and in the same breath argue that there is no basis for arbitration provided for in the Retainer Agreement.  If Defendants are bound by the Retainer Agreement to act as associated counsel for Plaintiffs, then Plaintiffs are equally bound by the arbitration clause in that same agreement.

### B.    Relationship Between Snyder/Gruber and Defendants

"Looking to California contract law, the correct analysis is whether Plaintiffs would have a claim independent of the existence of the [agreement containing the arbitration provision]."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1131 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 62, 187 (2013).  Under California law, a joint venture "exists when there is agreement between parties under which they have community of interests, *i.e.*, a joint interest, in common business undertaking, an understanding as to sharing of profits and losses, and a right of joint control."  *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1261 (9th Cir. 2001) (quoting *Cnty. of Riverside v. Loma Linda Univ.*, 173 Cal. Rptr. 371, 376 n.3 (1981)).  There is strong support for the proposition that attorneys acting as co-counsel are participating in a joint venture.  *See* 73 A.L.R. 2d 991 (originally published 1960) (stating presumption that attorneys acting as co-counsel are participating in a joint venture); *Duggins v. Guardianship of Washington*, 632 So. 2d 420, 426-28 (Miss. 1993) (finding a joint venture between plaintiffs' lawyers based on shared responsibility for representation and division of contingent fee); *Fitzgibbon v. Henry A. Carey, P.C.*, 688 P.2d 1367, 1371 (Or. Ct. App. 1984) (affirming trial court finding that

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

1   class counsel were joint venturers); *Berke v. Murphy*, 274 N.W. 356 (Mich. 1937); *Larry*

2   *Karchmar, Ltd. v. Nevoral*, 707 N.E.2d 223, 226 (Ill. App. Ct. 1999); *Holstein v.*

3   *Grossman*, 616 N.E.2d 1224 (Ill. App. Ct 1993); *In re Johnson*, 552 N.E.2d 703, 707 (Ill.

4   1989).

5          Evidence that the parties intended the Retainer Agreement to govern disputes

6   arising from legal representation in the HRT litigation is clear from the face of the

7   agreement itself.  The language of the arbitration clause is not in dispute:  "In the event of

8   a dispute which arises out of or in connection with the Firms [sic] representation of you

9   with respect to this matter, the parties both agree and do herein stipulate to arbitrate any

10  and all such disputes including any claims for professional malpractice, negligence or

11  errors and omissions…."  While Plaintiffs' complaint raises claims of alleged breaches of

12  fiduciary duties, they specifically challenge alleged acts of Defendants regarding their

13  legal services, which falls within the scope of the arbitration provision by a plain reading

14  of the language of the agreement.  Plaintiffs' claims rely upon the existence of the

15  Retainer Agreement.  For illustration, a plaintiff in the HRT litigation could not properly

16  state a claim for which relief could be granted against Defendants absent the Retainer

17  Agreement.  The Retainer Agreement is the only authority that Plaintiffs can point to that

18  provides the basis of Defendants' former attorney-client relationship with Plaintiffs.

19  Therefore, Plaintiffs' argument that there is no claim arising from the Retainer

20  Agreement is without merit.

21          It is not necessary for Gruber/Snyder to be agents or principals of Defendants, or

22  *vice versa*, in order for the Court to order Plaintiffs to arbitrate their dispute with

23  Defendants.  *See infra* §§ IV.C, V.  Gruber/Snyder and Defendants jointly represented

24  Plaintiffs.  Defendants and Gruber/Snyder had the same responsibilities to Plaintiffs as

25  their attorneys.  Given the unique nature of the fiduciary duty of attorneys who act as co-

26  counsel for mutual clients, Defendants are certainly in privity with Gruber/Snyder and

27  have standing to compel arbitration.

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

### C.   Defendants Were Third Party Beneficiaries of the Retainer Agreement

For a nonsignatory to invoke an arbitration provision in an agreement based on a third party beneficiary theory, the nonsignatory beneficiary first must establish the agreement was applicable to the controversy.  *See, e.g., Keller Constr. Co. v. Kashani*, 220 Cal. App. 3d 222, 229 (1990).  Plaintiffs' cited case, *City of Hope v. Bryan Cave, LLP*, 102 Cal. App. 4th 1356 (2002), is easily distinguishable from the facts here.  In *City of Hope*, law firms sought to compel arbitration based on a settlement release between their former client and their former clients' employees who sued them—not a retainer agreement with an arbitration provision.  *See id*. at 1370.  Upon termination from the City of Hope facility, the chief operating officer claimed she was sexually harassed.  *Id*.  City of Hope settled the matter by paying money in exchange for a release.  *Id*.  at 1359.  The employees who allegedly harassed the COO departed the company.  *Id*.  Their claims against City of Hope also settled.  *Id*. at 1360.  Later, City of Hope filed a complaint against the law firms it retained, who claimed they were party beneficiaries of the settlement agreements between the City of Hope and its former employees which contained arbitration provisions.  *Id*. at 1367-68.  The law firms could not prove they were intended beneficiaries of the settlement release agreements.  *Id*. at 1368.

Defendants were third party beneficiaries of the Retainer Agreement.  In exchange for representing Plaintiffs throughout litigation, Defendants received attorney fees derived from settlement of the HRT litigation.  Defendants' attorney-client relationships were specifically contemplated in Paragraph 7 of the Retainer Agreement.  The terms of the arbitration clauses are not expressly limited to Plaintiffs and Gruber/Snyder.  Paragraph 9 refers to the "Firms [sic] representation of [Plaintiffs] with respect to this matter…including any claims for professional malpractice, negligence or errors and omissions."

Gruber and Snyder each file declarations purporting to suggest, in hindsight, what they would have done if they intended Defendants to be included in the arbitration provision.  [ECF No. 17-4 ] ¶ 6.  Plaintiffs signed the Retainer Agreements beginning ten

8

years ago, in 2004.  The MDL was initiated in 2003 (*In Re Prempro Products Liability Action*, Case No. 03-CV-01507-BRW, MDL 1507).  Though the HRT litigation settled in 2011, ongoing medical liens have resulted in delayed distributions of the settlement funds.  Defendants represented approximately 138 individuals.  Throughout the decade that Defendants have litigated—and continue to litigate—this case on behalf of Plaintiffs, due to the complexity of the underlying HRT litigation and volume of claims, there remain unresolved issues with respect to distribution of settlement funds.  Declaration of James G. O'Callahan ("O'Callahan Dec.") ¶ 2.  As such, Justice Panelli has not yet ordered Defendants to make further allocations of the settlement monies—undermining Plaintiffs' claims that they were damaged from not obtaining funds that they may not even be entitled to receive.  *Id*.

Plaintiffs also place significant emphasis on the intent of Plaintiffs, Gruber, and Snyder, but fail to explain the alleged "extrinsic evidence" they cite in support of their contention that Defendants were not third-party beneficiaries of the Retainer Agreements.  Opp. at 13, 15-16.  Plaintiffs only discuss other undated, incomplete retainer agreements between Gruber/Snyder and Defendants.  *Id*.  It is likely that Plaintiffs are referring to retainer agreements that were drafted and entered into well after the Retainer Agreements in this case, which were signed and dated as early as ten years ago, in 2004.  *See* O'Callahan Dec. Ex. 1.  Even considering other extrinsic evidence of these agreements, it is clear that the parties contemplated arbitration in circumstances where Gruber/Snyder and Defendants had a retainer bearing all three firms' names.  *See id*. Ex. 3.

Plaintiffs offer a purported retainer agreement bearing the names of Gruber, Snyder, and Defendants which is undated and incomplete.  [ECF Nos. 17-3; 17-4].  According to the document itself, it is only one of four pages and not the whole agreement.  It is entirely unclear whether this Retainer Agreement was drafted subsequent to the Retainer Agreements in this case, which were signed in 2004.  It is also questionable because the agreement fails to include other portions of the retainer.  Accordingly, there is no indication of whether there is an arbitration provision in this

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

purported retainer agreement bearing the names of the three Gruber, Snyder, and Girardi | Keese firms.  In contrast, in another case involving Gruber/Snyder and Defendants, the retainer agreement therein contained an arbitration provision which is identical to the arbitration provision in Paragraph 9 of the Retainer Agreements in the HRT litigation, except it states "Agreement to Arbitrate" twice, capitalizes the word "Client," and adds three apostrophes as follows:

> In the event of a dispute which arises out of or in connection with the Firms**'** representation of you with respect to this matter, the parties both agree and do herein stipulate to arbitrate any and all such disputes including any claims for professional malpractice, negligence or errors and omissions.  The law Firm further agrees to maintain professional liability insurance during the pendency of this matter.  Attorney**'**s agreement to handle this matter is contingent upon **C**lient**'**s agreement to arbitrate.

O'Callahan Dec. Ex. 3 (emphasis added).

Plaintiffs also offer ten declarations with identical language claiming that Plaintiffs "…thought that [the Retainer Agreement] only applied to [Plaintiffs], Snyder and Gruber. [Plaintiffs] did not intend nor did [Plaintiffs] understand that the retainer agreement [Plaintiffs] had with Snyder and Gruber would apply to any of the other lawyers involved in the case, including [Defendants]."  [ECF No. 17-1].  These declarations contain boilerplate language drafted by counsel.  Plaintiffs were clearly aware that Defendants represented them in their HRT litigation when they received correspondence from Defendants regarding the settlements.  Notably, the declarations do not purport to represent all 24 Plaintiffs' views on the relationship between Plaintiffs, Gruber/Snyder, and Defendants.  Also, as discussed *infra* § VII.A, Plaintiffs fail to oppose, let alone address, the fact that they did not file on behalf of three California residents who would destroy this Court's diversity jurisdiction.

Irrespective of whatever intent Plaintiffs, Gruber, and Snyder now assert in hindsight in seeking to avoid arbitration, it is apparent from the face of the Retainer

1  Agreement that Defendants would be incorporated within the terms of the arbitration

2  clause.  Although Plaintiffs attempt to characterize their claims as involving only their

3  independent attorney-client relationship with Defendants, their complaint necessarily ties

4  Defendants to Gruber/Snyder, who were parties to the arbitration agreement.  All the

5  counts in the complaint stem from legal representation of Plaintiffs in the HRT litigation

6  and Defendants' alleged efforts to conceal the truth from Plaintiffs.

7          Plaintiffs also claim the Release Agreement "is their only written agreement with

8  Defendants."  Opp. at 5.  The Release Agreement is not an agreement between Plaintiffs

9  and Defendants, but rather, a document that was necessary for Plaintiffs to understand,

10  sign, and notarize in order to release Defendants from any further liability and for

11  Plaintiffs to receive their settlement funds.  The Release Agreement governs only the

12  terms of the settlement and release between Plaintiffs and the defendants in the HRT

13  litigation.  Plaintiffs do not claim that Defendants herein breached the Release

14  Agreement, nor do Plaintiffs attempt to enforce any specific provision in the Release

15  Agreement.  Indeed, there is no provision in the Release Agreement governing attorney

16  fees that Plaintiffs could seek to enforce against Defendants.  Accordingly, there is no

17  provision in the Release Agreement out of which Plaintiffs' claims arise.  Plaintiffs'

18  attempts to point to the Release Agreement as a contract between Plaintiffs and

19  Defendants fails.  With respect to Defendants, Plaintiffs' claims arise directly out of the

20  Retainer Agreement.

21          Plaintiffs argue that "the Retainer Agreement makes plain that any relationship

22  with any 'outside attorney or law firm' [e.g., Defendants] would be by a 'separate

23  agreement[.]'"  Opp. at p. 4, n. 2.  However, as Plaintiffs acknowledge, this "separate

24  agreement" only concerned legal fees between Gruber/Snyder and Defendants.

25  O'Callahan Dec. Ex. 1 ¶ 7 ("Client acknowledges that legal fees shall be split amongst

26  the attorneys by separate agreement and consents to same.").  The "separate agreement"

27  did not refer to any other provisions of the Retainer Agreement concerning Defendants

28  and Gruber/Snyder's legal representation of Plaintiffs in the HRT litigation.  Plaintiffs

erroneously equate a separate agreement for attorney fees between Gruber/Snyder and Defendants with the Retainer Agreement providing for legal representation by Gruber/Snyder and Defendants on behalf of Plaintiffs.

## V.   EQUITABLE ESTOPPEL REQUIRES ARBITRATION

"[T]he linchpin of equitable estoppel is fairness." *City of Hope*, 102 Cal. App. 4th at 1370 (citing *Rogers v. Peinado*, 85 Cal. App. 4th 1, 9, n. 6 (2000)) (discussing equitable estoppel in the context of allowing nonsignatories to a contract to demand arbitration).  Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins., Co.*, 555 F.3d 1042 (9th Cir. 2009).

"[T]he equitable estoppel doctrine applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *Metalclad Corp. v. Ventana Envtl. Org'l P'ship*, 109 Cal. App. 4th 1705, 1713 (2003) (internal citations and quotations omitted).  "[A] signatory may be required to arbitrate a claim brought by a nonsignatory 'because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations." *Id*. at 1046 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir. 2001)).

"[A] nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." *Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 271 (2005); *see also JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1237 (2011).  "This requirement comports with, and indeed derives from, the very purposes of the doctrine:

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." *Goldman v. KPMG, LLP* 173 Cal. App. 4th 209, 221, (2009).

A.   **Plaintiffs' Claims Are Intimately Founded In and Intertwined with the Attorney-Client Relationship Established in the Retainer Agreement**

"[A] party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract." *Metalclad*, 109 Cal. App. 4th at 1717-18 (internal citations and quotations omitted).  A provision in an agreement for arbitration of any dispute arising out of the contract is broad enough to include arbitration of tort, as well as contractual questions when the tort claims arose in connection with and were inextricable from the subject matter of the contract claims.  *See e.g., Efund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1321-30 (2007); *Ruiz v. Sysco Food Servs.*, 122 Cal. App. 4th 520, 531, 539-41 (2004); *Buckhorn v. St. Jude Heritage Med. Grp.*, 121 Cal. App. 4th 1401, 1406-1408 (2004); *Vianna v. Doctors' Mgmt. Co.*, 27 Cal. App. 4th 1186, 1189-90 (1994); *Berman v. Dean Witter & Co., Inc.*, 44 Cal. App. 3d 999, 1003, 1005 (1975).

Plaintiffs' claims against Defendants are dependent on and intimately founded in and intertwined with the underlying Retainer Agreement.  *See Kramer,* 705 F. 3d at 1128; *see also Jones v. Jacobson*, 195 Cal. Rptr. 3d 522, 538 (2011) (holding claims that rely upon, make reference to, or are intertwined with claims under the subject contract containing an arbitration agreement are arbitrable).  Plaintiffs' allegations trigger equitable estoppel under California contract law.  They allege six causes of action:  (1) Breach of Fiduciary Duty; (2) Conversion; (3) Unfair Business Practices (California Business & Professions Code § 17200); (4) Money Had and Received; (5) Accounting; and (6) Declaratory Relief.  The bases for these claims are that Defendants represented Plaintiffs in the HRT litigation (Complaint ¶¶ 2, 51), Defendants negotiated settlement

13

agreements on behalf of Plaintiffs (*id*. ¶¶ 3, 52), Plaintiffs seek, *inter alia*, disgorgement of legal fees paid to Defendants (*id*. ¶ 9), and Defendants allegedly violated fiduciary duties owed to Plaintiffs (*id*. ¶ 73).

The Retainer Agreement specifically contemplates Defendants' representation of Plaintiffs in Paragraph 7.  Plaintiffs' allegations are based on their complaints of Defendants' legal representation of them provided for in Paragraph 7.  While Plaintiffs may have made a conscious decision to avoid referring to the Retainer Agreement in their complaint, there is clearly a sufficient nexus between the attorney-client relationship established through the Retainer Agreement and Plaintiffs' allegations of wrongdoing. Plaintiffs' alleged claims and damages in their complaint are "founded in and inextricably bound up with" the obligations imposed under the account agreement.  *See Goldman v. KPMG, LLP*, 173 Cal. App. 4th at p. 219.

The nexus between Plaintiffs' allegations and the Retainer Agreement is clear. Plaintiffs claim that Defendants failed to inform them regarding specific details of their settlements, duties arising out of the Retainer Agreement.  Without the Retainer Agreement, Defendants could not have represented Plaintiffs.  Gruber and Snyder were only permitted to associate Defendants in as counsel pursuant to the Retainer Agreement. Thus, Plaintiffs' instant claims are directly intertwined with the Retainer Agreement containing the arbitration provision.

**B.     Equity Dictates that Plaintiffs Must Arbitrate Since They Sought the Benefits of the Retainer Agreement**

Plaintiffs are not entitled to make use of the Retainer Agreements containing an arbitration clause as long as it works to their advantage, then attempt to avoid its application in defining the forum in which Plaintiffs' dispute should be resolved.  *See Metalclad*, 109 Cal. App. 4th 1705, 1714 (citing *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 84 (2000)).  "The doctrine [of equitable estoppel] thus prevents a party from playing fast and loose with its commitment to arbitrate, honoring it when

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

advantageous and circumventing it to gain undue advantage." *Id*.  As the court in *Metalclad* concluded, "He who takes the benefit must bear the burden."  109 Cal. App. 4th at 1719 (citing Cal. Civ. Code § 3521).

A party may not claim the benefit of a contract while at the same time attempting to avoid that contract's burden.  In the arbitration context, this means that a party "cannot, on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a nonsignatory." *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 528 (5th Cir. 2000).  "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotations and citation omitted).

Plaintiffs want to pick and choose select portions of the Retainer Agreement that they want to enforce and ignore the arbitration provision.   Plaintiffs cannot deny that a valid arbitration agreement existed as to legal representation of Plaintiffs and that the appropriate forum for their claims, pursuant to Paragraph 9, is arbitration.  After Plaintiffs signed the contract, Gruber/Snyder and Defendants proceeded with legal representation in accordance with terms of the Retainer Agreement through over ten years of litigation. The parties' actions make it clear that they intended to be bound by the terms of the written Retainer Agreement.  There is no other reasonable interpretation of the provision that Plaintiffs have been able to establish.  Plaintiffs have not met their burden to show they were excused from the arbitration agreement.

Plaintiffs entered into Retainer Agreements with Gruber/Snyder.  The Retainer Agreements provided for arbitration and that Gruber/Snyder could associate Defendants as counsel to prosecute Plaintiffs' claims.  It is not unreasonably out of the bounds of sensibility that Defendants as associated counsel are also subject to arbitration.  Plaintiffs expressly and voluntary contracted to arbitrate claims stemming from legal representation of their HRT cases.  As such, Plaintiffs are equitably estopped from claiming that

arbitration is inappropriate under these circumstances.

## VI.  ARBITRATION IS NOT UNCONSCIONABLE

Both procedural and substantive unconscionability must be present in order for a court to refuse to enforce a contract based on unconscionability.  *See Circuit City Stores v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) (citing *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83 (2000)); *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 (9th Cir. 2003) ("[A] contract to arbitrate is unenforceable under the doctrine of unconscionability when there is 'both a procedural and substantive element of unconscionability.'"); *Gentry v. Superior Court*, 42 Cal.4th 443, 469 (2007) ("[t]he prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability") (internal quotation marks omitted) *overruled on other grounds as recognized in Sanders v. Swift Transp. Co. of Arizona, LLC*, 843 F. Supp. 2d 1033, 1037 (N.D. Cal. 2012).

Although both procedural and substantive unconscionability must be present, they need not be present in the same degree.  "Courts apply a sliding scale: the more substantively oppressive the contractual term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (citation omitted).  Under California law, Plaintiffs bears the burden of proving unconscionability by a preponderance of the evidence.  *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th at 972; *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (quoting *Engalla*).

Notably, Plaintiffs appear to argue that the arbitration clause is unconscionable only if Justice Panelli is the arbitrator.  *See* Opp. at 19-20 ("Defendants' Proposed Construction of the Arbitration Clause Would Render It Unconscionable … The Arbitration Clause in the Retainer Agreement, as Interpreted by Defendants, Would be

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

Procedurally Unconscionable … The Arbitration Clause in the Retainer Agreement, as Interpreted by Defendants, Would be Substantively Unconscionable …").  Plaintiffs do not contest the unconscionability of the arbitration provision itself.  On this basis, if the Court is not inclined to compel arbitration before Justice Panelli, Defendants respectfully request that the Court compel arbitration since Plaintiffs' only opposition to the conscionability of the arbitration provision is that Justice Panelli is inappropriate as an arbitrator—though Defendants disagree with this assertion.

The Retainer Agreement's arbitration clause is neither procedurally nor substantively unconscionable.  The arbitration clause was conspicuous and printed directly above the signature line for plaintiffs.  There is no absence of mutuality.  Even if there was, the arbitration provision is not substantively unconscionable because "inequality in bargaining power, alone, is not a valid basis upon which to invalidate an arbitration agreement."  *See Effio v. FedEx Ground Package*, CV-08-1522-PHX-ROS, 2009 WL 775408 (D. Ariz. Mar. 20, 2009) (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir. 1999)).  The arbitration clause is silent as to the payment of arbitrator's fees and venue for arbitration.  The arbitration clause does not state that Plaintiffs must pay costs and fees for arbitration or that they are required to arbitrate in an inconvenient location.  As discussed further *infra*, there is neither procedural nor substantive unconscionability here.

## A.    Arbitration Is Not Procedurally Unconscionable

Procedural unconscionability refers how the contract was negotiated and its form, such as use of fine print or obscure language.   Procedural unconscionability focuses on oppression and surprise.  "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice.  Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Flores v. Transam. HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

Plaintiffs claim that arbitration "is far beyond anything that Plaintiffs could have reasonably expected when they entered into Retainer Agreements." Opp. at 20. This is an outlandish position for Plaintiffs to take for several reasons. First, the reference to "both" parties refers to "the Firms [sic] representation of [Plaintiffs] with respect to this [HRT] matter." O'Callahan Dec. Ex. 1 ¶ 9. "Firms," though capitalized, is never defined in the Retainer Agreement. Indeed, the only instance in which the word "firm" arises outside of the arbitration clause in the Retainer Agreement is in Paragraph 7, Association of Counsel: "Client herein consents to the association of outside attorney or law **firms** whom Howard A. Snyder deems necessary and proper for the handling of the case." *Id.* ¶ 7 (emphasis added). The agreement does not refer to Gruber/Snyder as "firms," and instead defines them as "Attorneys" in the sentence preceding Paragraph 1. *Id.* at 1. The arbitration provision also fails to include an apostrophe where it discusses disputes arising out of or in connection with "the Firms [sic] representation of you." *Id.* ¶ 9. Since both Gruber and Snyder appear on the Retainer Agreement, along with associated counsel in Paragraph 7, it cannot be determined with certainty that the arbitration provision only applies to one of the "Firms," an undefined term.

Plaintiffs similarly fail to demonstrate how there is any element of surprise in the arbitration clause. They merely cite *Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009) because it involved three arbitrators. *Compare, e.g., Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1242-43, 1252 (2006) (finding surprise where five orphaned siblings signed agreement with 24 single-spaced pages and 72 numbered paragraphs drafted by television network; buried at end of agreement was section titled "MISCELLANEOUS," which included 12 numbered subparagraphs, one of which was an arbitration provision). Plaintiffs clearly would not be surprised by arbitration with Gruber/Snyder, and Plaintiffs have failed to show how they would be surprised or oppressed by arbitrating their claims with Gruber/Snyder's associated counsel, Defendants.

Plaintiffs consented to arbitration and were never coerced into agreeing to

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

arbitration.  By signing the Retainer Agreements and agreeing to arbitration, Plaintiffs simply agreed to a form of forum selection clause, *i.e.*, pursuing their claims in arbitration rather than before this Court.  Arbitration here will facilitate goals of expediting dispute resolution and allow the parties to give primacy to considerations of economic efficiency. Since there is procedural unconscionability, the Court need not even address substantive unconscionability.  For the sake of completeness, Defendants address substantive unconscionability below.

## B.     Arbitration Is Not Substantively Unconscionable

Substantive unconscionability refers to intrinsically unfair contract terms that are unreasonably or grossly favorable to one side.  Substantive unconscionability focuses on "the effects of the contractual terms and whether they are overly harsh or one-sided." *Flores*, 93 Cal. App. 4th at 853.  California courts have found substantive unconscionability where an arbitration clause limits types of remedies available, violating the "principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees." *Armendariz*, 24 Cal. 4th at 83, 103; *see also Graham Oil Co. v. ARCO Prods. Co.*, 43 F. 3d 1244, 1248 (9th Cir. 1994) (rejecting arbitration clause that deprived plaintiff of its statutory right to punitive damages and attorney' fees, and limited statute of limitations).  "But the paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 651-57 (2004).

Even is Plaintiffs established some degree of procedural unconscionability, their claim of unconscionability would fail because they are unable to establish substantive unconscionability.  Since no procedural unconscionability exists, Plaintiffs must establish more than minimal substantive unconscionability in order to find the contract unenforceable.  *See Davis*, 485 F.3d at 1072 ("the more substantively oppressive the contractual term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa").  However, Plaintiffs are

unable to do so.

The only argument Plaintiffs make regarding substantive unconscionability is the fact that Justice Panelli is somehow one-sided because he allocated the settlement monies.  They do not claim that there is a contract of adhesion.  *Armendariz*, 24 Cal. 4th at 83 ("The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates the subscribing party only [to] the opportunity to adhere to the contract or reject it.").  Even so, an agreement to arbitrate is not rendered unenforceable merely because it was entered into as a contract of adhesion.  *See e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. —, 131 S. Ct. 1740, 179 L. Ed. 2d 742, 755 (2011) (adhesive contracts were standard and established practice in consumer transactions and legitimate and enforceable vehicles for sale and purchase of goods between individual consumers and retailers).

The arbitration clause here satisfies the requirement of mutuality.  It applies to "any and all" "dispute[s] which arises out of or in connection with the Firms [sic] representation of you with respect to this matter…."  The provision binds both Plaintiffs and their counsel.  Nothing in the arbitration clause gives one party greater rights or protections than those provided to the other.  *See Jones v. Humanscale Corp.*, 130 Cal. App. 4th 401, 415-16 (2005).

It is not clear how the arbitration provision is one-sided simply because Defendants propose that Justice Panelli arbitrate Plaintiffs' dispute.  He is familiar with the facts of the underlying HRT litigation, the confidential settlement agreement and release, and the procedures implemented for distributing the settlement funds.  To the extent that Plaintiffs claim that "Justice Panelli is a witness in this case based on Defendants' contentions that Defendants secretly withheld funds …," (Opp. at 8, n. 4), Defendants make no such contentions.  Plaintiffs' speculative and thinly-veiled accusations of corruption are undermined by Justice Panelli's knowledge of the facts of the case, amount of awards, and distribution of settlement monies.  Further, the disclosures that Plaintiffs claim that are required of arbitrators are not even required at this stage.  *See* Opp. at 21

(citing out-of-Circuit authority).  Plaintiffs even admit that they were aware of Justice Panelli's authority because Defendants sent Plaintiffs the Release, which provided that Justice Panelli would allocated additional sums in his sole discretion.  Opp. at 5.  Accordingly, any claims by Plaintiffs of substantive unconscionability are dubious because they fail to articulate how the arbitration provision is so one-sided to eliminate fairness and equity.

## VII.   DISMISSAL IS WARRANTED BECAUSE PLAINTIFFS FAIL TO JOIN NECESSARY PARTIES GRUBER/SNYDER

Defendants have adequately raised the issue of failure to join a necessary and indispensable party to alert the Court to potential Rule 19 problems.  Gruber/Snyder are necessary parties if either the litigation would "impair or impede" their ability to protect their interests, Fed. R. Civ. P. 19(a)(2)(i), or if the case would leave Defendants subject to multiple obligations as explained in Fed. R. Civ. P. 19(a)(2)(ii).  There is a public interest in avoiding multiple litigation on the same essential subject.  Further, "[a]rbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation."  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004) (internal citations omitted).

While Gruber and Snyder claim that they "did not participate in the settlement of the HRT Litigation or the distribution of Plaintiffs' settlement proceeds," ([ECF No. 17-4 ] ¶ 9), at a minimum, Gruber was aware of the six percent holdback.  O'Callahan Dec. ¶ 3.  Indeed, Defendants specifically told Gruber of Justice Panelli's instruction to hold back six percent of the settlement funds.  *Id*.  This settlement detail was definitely known to Gruber and may have been communicated to Snyder.  *Id*. ¶ 4.  Furthermore, Gruber/Snyder claimed and received $102,024.11 and $63,606.01 in costs, respectively, for a total of $165,630.12.  As such, complete relief is not available because Gruber/Snyder and Defendants split fees and costs generated by Plaintiffs' settlement.  If Plaintiffs prove a breach of fiduciary duty for alleged non-disclosure, they presumably

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

could only compel disgorgement from Defendants of the portion of the fees Defendants collected.

Defendants and Gruber/Snyder jointly owed fiduciary duties to Plaintiffs. They share an interest relating to subject of action. Trial in Gruber/Snyder's absence would, as a practical matter, impair and impede their ability to protect their financial and professional interests. Such piecemeal litigation is the exact type of scenario the Federal Rules seek to avoid.

Gruber/Snyder have concrete, tangible interests, and intangible but profoundly significant professional interests, relating to the subject matter of the pending action. Trial in their absence would, as a practical matter, impair and impede their ability to protect their financial and professional interests. This is because Gruber/Snyder are in privity with Defendants in performance of their jointly owed fiduciary duties to their mutual clients, Plaintiffs. Judgment entered against Defendants could preclude Gruber/Snyder from defending against any future claims for liability for breach of fiduciary duty, and from disputing any determination regarding their joint failure to disclose critical information to their clients.

### A. Plaintiffs Fail to Explain the Absence of the Three California Plaintiffs

As long as there is a basis for exercising federal jurisdiction, a party may file a request to compel arbitration under Section 4 of the FAA. It is a well-established rule that a court may, indeed must, *sua sponte* raise matters affecting the court's subject matter jurisdiction. *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002); *see also United Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 966 (9th Cir. 2004)

Plaintiffs claim the Court has jurisdiction pursuant to section 1332, based on diversity jurisdiction. Complaint ¶ 39. Section 1332 requires "complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah*

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

*Servs.*, 545 U.S. 546, 553 (2005).  It also requires that there be a minimum amount in controversy.  *Id*. at 552.  The burden of establishing jurisdiction is always on the proponent of jurisdiction, *i.e.*, plaintiff in a case originally filed in federal court.

Notably, nowhere in Plaintiffs' Opposition do they address the fact that though Plaintiffs' counsel purports to represent 27 former clients of Defendants, they have only filed on behalf of 24 clients in the instant case.  Despite filing numerous declarations and exhibits in support of their Opposition, Plaintiffs conveniently overlook the fact that there are three purported California residents who counsel for Plaintiffs reportedly represent.  Plaintiffs fail to respond to the assumption that they omitted these plaintiffs so in order to preserve diversity jurisdiction, as the 3 clients who are not included as Plaintiffs in this action are California residents, which would destroy the Court's diversity jurisdiction.

## VIII.  IF THE COURT DOES NOT DISMISS PLAINTIFFS' CLAIMS, IT SHOULD STAY THE ENTIRE ACTION PENDING ARBITRATION

Plaintiffs do not dispute that a stay is warranted if the Court does not dismiss Plaintiffs' claims outright.  When a valid arbitration agreement exists, a federal district court lacks authority to decide the dispute; instead, the court must stay the proceedings in favor of arbitration on the motion of any party.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. at 218 (FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis in original).

Non-signatory parties have the right to invoke the right to a stay under FAA § 3 and the corresponding right to the interlocutory appeal under FAA § 16 of any denial of a stay.  The non-signatory parties must have a close connection to the specific document and transaction containing the arbitration agreement.  They must have a suitable basis for asserting their standing as nonsignatory but affected parties.  As a consequence, non-signatory parties may seek to force signatory parties to arbitrate claims relating to the implicated transaction. …

31-904 Moore's Federal Practice - Civil § 904.03.

Section 3 of the FAA states that "one of the parties" may move for a stay pending arbitration.  This language refers to parties to the *action*, and not parties to the arbitration agreement.  *See Arthur Andersen LLP v. Carlisle*, 556 U.S. at 624 n.4.  Accordingly, any named party, such as Defendants herein, may file a motion to stay pending arbitration.  *Id*.  State contract law may permit nonsignatory to invoke arbitration agreement on several grounds, so court of appeals erred in holding categorically that movant could not be eligible for stay under Section 3 of the FAA.  *Id*. at 173 L. Ed. 2d 832, 839-41.

## IX.   CONCLUSION

For the aforementioned reasons, Defendants respectfully request that the Court dismiss the complaint in its entirety with prejudice and compel arbitration before Justice Panelli, or in the alternative, stay this matter pending arbitration.

Dated:  June 16, 2014                           GIRARDI | KEESE

By:   _____/s/ Celene S. Chan_____
THOMAS V. GIRARDI
JAMES G. O'CALLAHAN
CELENE S. CHAN
Attorney for Defendants

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION