UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM                    Date:  July 1, 2014
Title:    Judith Allen, et al. -v- Girardi Keese, et al.

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION [16]

    This matter is before the Court on Defendants' Motion to Dismiss and Compel Arbitration (the "Motion").  (Docket No. 16).  The Court reviewed and considered the papers on the Motion, and held a hearing on **June 30, 2014**.  For the reasons set forth below, the Court **DENIES** the Motion.

    Defendants Girardi | Keese ("Girardi Keese"), Thomas V. Girardi ("Girardi"), and James G. O'Callahan ("O'Callahan") advance two positions.  Defendants' main argument is that the Court should dismiss or stay this action and compel arbitration, pursuant to Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*  (Mot. at 13-14).  Defendants also argue that the Court must dismiss the Complaint pursuant to Federal Rule of Procedure 12(b)(7) for Plaintiffs' failure to join necessary parties under Federal Rule of Civil Procedure 19. (Mot. at 12-13).

    This Motion is aimed at "who decides," not "what is the right decision."  In denying the Motion, this Court offers no opinion on the merits of the Justice-Panelli-made-me-do-it argument, or any other argument on the merits.  That argument might ultimately be persuasive to the trier of fact, perhaps, could be the basis for a prompt motion for summary judgment.  The Court is also sympathetic to the argument – Defendants' position boiled down to its essence – that, if Plaintiffs had been asked, they would likely have agreed to arbitration with Defendants, as they had previously agreed with their other lawyers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM				Date:  July 1, 2014
Title:     Judith Allen, et al. -v- Girardi Keese, et al.

But the clients were not asked.  This Court analyzes each of Defendants' arguments and explains why no one of them compels arbitration.  No one of the arguments is frivolous; some are clever; others appear at first blush to have legal or factual support.  Ultimately, however, each of the arguments fails for the same reason – the clients were not asked.  Girardi Keese could easily have entered into its own retainer agreement with its clients.

I.     **BACKGROUND**

On April 9, 2014, Plaintiffs filed the Complaint.  (Docket No. 1).  The Complaint alleges that from 2005 to 2011, Defendants represented Plaintiffs in a personal injury action against pharmaceutical manufacturers for injuries suffered during hormone replacement therapy ("HRT").  (*See* Compl. ¶¶ 1-2, 51).  Plaintiffs assert that Defendants breached their fiduciary duties when they settled the HRT litigation, on behalf of Plaintiffs.  (Compl. ¶¶ 3-9, 43-74).  In particular, the Complaint alleges that Defendants failed to disclose to Plaintiffs the terms of the settlement; misrepresented the amount of settlement for each Plaintiff; misrepresented the status of the distribution of settlement funds; and failed to provide Plaintiffs with their client files and an accounting of their settlement proceeds.  (Compl. ¶¶ 3-9, 43-74).  The Complaint asserts six claims for relief: breach of fiduciary duty, conversion, violation of California's Unfair Competition Law ("UCL"), money had and received, accounting, and declaratory relief.  (Compl. ¶¶ 75-83, 84-96, 97-105, 106-111, 112-119, 120-122).

On May 12, 2014, Defendants filed the instant Motion.  (Docket No. 16).  On May 23, 2014 Plaintiffs filed Plaintiffs' Opposition to Defendants' Motion to Dismiss and Compel Arbitration (the "Opposition").  (Docket No. 17).  On June 16, 2014, Defendants filed Defendants' Reply in Support of Motion to Dismiss and compel Arbitration (the "Reply").  (Docket No. 21).  On June 26, 2014, Plaintiffs filed a Notice of Supplemental Authorities Relating to Defendants' Motion to Dismiss and Compel Arbitration.  (Docket No. 22).

Based on the record before the Court, the relevant facts are as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM				Date:  July 1, 2014
Title:    Judith Allen, et al. -v- Girardi Keese, et al.

      In 2004, before Defendants represented Plaintiffs in the HRT Litigation, Plaintiffs each entered into a retainer agreement (the "Retainer Agreement") with the Law Offices of Howard A. Snyder (the "Snyder Firm") and Gruber & Gruber (the "Gruber Firm") to represent Plaintiffs in the potential HRT litigation.  (*See* Declaration of James G. O'Callahan, Ex. 1 (Docket No. 16-1)).  (Collectively, both firms will be referred to as the "Snyder/Gruber Firms.")  Paragraph 7 of the Retainer Agreement provided that Gruber and Snyder may associate outside law firms and that legal fees would be "split amongst the attorneys by separate agreement."  (Retainer Agreement ¶ 7; Mot. at 2-3).  Paragraph 9 also included an arbitration provision, stating:

> In the event of a dispute which arises out of or in connection with the Firms [sic] representation of you with respect to this matter, the parties both agree and do herein stipulate to arbitrate any and all such disputes including any claims for professional malpractice, negligence or errors and omissions.  The law Firm further agrees to maintain professional liability insurance during the pendency of this matter.  Attorneys [sic] agreement to handle this matter is contingent upon clients [sic] agreement to arbitrate.

(Retainer Agreement ¶ 9) (emphasis in original).

      Later, the Snyder/Gruber Firms associated in Defendants as counsel in the HRT litigation.  (*See* Mot. at 3).  Defendants contend that Plaintiffs' claims in this action are subject to the arbitration provision in the Retainer Agreement, despite the fact that Defendants were non-signatories to the Retainer Agreement.  (Mot. at 6-9).

## II.   MOTION TO DISMISS ACTION AND COMPEL ARBITRATION

      Based on the arbitration provision in the Retainer Agreements, Defendants argue that Plaintiffs' claims must be submitted to arbitration.  (Mot. at 5-12; Reply 2-16). Defendants bring their motion under Federal Rule of Civil Procedure 12(b)(3) and the FAA.  (Mot. at 5-6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM					Date:  July 1, 2014
Title:	Judith Allen, et al. -v- Girardi Keese, et al.

Defendants argue that this action should be dismissed under Rule 12(b)(3) because this Court is the improper venue, in light of the arbitration provision. (Mot. at 5). "[A]n agreement to arbitrate is actually a specialized forum selection clause." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.4 (9th Cir. 1988). Therefore, some courts have applied Rule 12(b)(3) to determine whether an action should be dismissed because of an arbitration clause. *See, e.g.*, *Metro. Life Ins. Co. v. O'Malley*, 392 F. Supp. 2d 1042, 1044 (N.D. Ill. 2005) (dismissing the complaint for improper venue because the claims were the subject of a written arbitration agreement). "A motion to enforce a forum selection clause is treated as a motion to dismiss pursuant to Rule 12(b)(3); pleadings need not be as accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

Moreover, the FAA applies to written arbitration agreements in "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2. Both parties agree that the FAA governs the enforceability of the arbitration provision within the Retainer Agreement. (*See* Mot. at 6; Opp. at 9). "[T]he FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)).

The parties' arguments center on whether Defendants can invoke the Retainer Agreement's arbitration provision, despite being non-signatories to that agreement. A non-party to an arbitration agreement "may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632, 129 S. Ct. 1896, 173 L.Ed.2d 832 (2009)). The parties do not dispute that California law applies to the contracts. Under California law, a non-signatory can enforce an arbitration provision under five theories: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing or alter-ego,

---

**CIVIL MINUTES—GENERAL**                                                              4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM                     Date:  July 1, 2014
Title:    Judith Allen, et al. -v- Girardi Keese, et al.

and (5) equitable estoppel.  *See Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219-20, 92 Cal. Rptr. 3d 534 (2009).

"In such cases, where the question is whether a particular party is bound by the arbitration agreement, the liberal federal policy favoring arbitration agreements, which is 'best understood as concerning "the scope of arbitrable issues," [citation],' is inapposite."  *Id.* at 220 (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.1 (9th Cir. 2006)); *see also Kramer*, 705 F. 3d at 1126 ("Accordingly, [t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement.") (internal quotations marks and citation omitted).

Whether Defendants can compel arbitration is properly decided by the Court, as opposed to the arbitrator.  Questions about whether parties have agreed to submit a particular dispute to arbitration and issues regarding contract formation are disputes for the courts to decide.  *See Kramer*, 705 F.3d at 1127 (finding that the court properly decided whether the defendant could compel arbitration as a non-signatory).

### A. Standing Through Joint Venture

In the Opposition, Plaintiffs argue that Defendants cannot compel arbitration under the agency doctrine because the Snyder/Gruber Firms did not have an agency relationship with Defendants.  (Opp. at 11-12).  Defendants do not dispute this assertion, but argue that an agency relationship was unnecessary.  (Reply at 6-7). Defendants argue that they have standing to compel arbitration because, as co-counsel, they participated in a joint venture with the Snyder/Gruber Firms, owed the same duties to Plaintiffs as the Snyder/Gruber Firms, and were in privity with the Snyder/Gruber Firms.  (Reply at 6-7).  However, Defendants have not cited any case law supporting the proposition that standing to compel arbitration results simply by virtue of being co-counsel, part of a joint venture, or in privity with a signatory to the arbitration provision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM                           Date:  July 1, 2014
Title:    Judith Allen, et al. -v- Girardi Keese, et al.

### B. Third-Party Beneficiaries

Defendants argue that they may compel arbitration as third-party beneficiaries to the Retainer Agreement. (*See* Reply at 8-12). "To prove intended beneficiary status, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012); *see also City of Hope v. Cave*, 102 Cal. App. 4th 1356, 1370, 126 Cal. Rptr. 2d 283 (2002) (rejecting a motion to compel arbitration because defendants could not prove that they were the intended beneficiaries of the agreement). "The fact that a third party may incidentally benefit under [a] contract does not confer on him the right to sue." *JPMorgan Chase*, 671 F.3d at 1033.

Defendants argue that they were intended beneficiaries because associated counsel was contemplated by Paragraph 7 of the Retainer Agreement. (Reply at 8). Moreover, Defendants argue that they received attorney's fees derived from the settlement of the HRT litigation, in exchange for representing Plaintiffs. (Reply at 8).

However, Paragraph 7 did not explicitly name Defendants as associated counsel. Rather, it preserved the Snyder/Gruber Firms' ability to associate with other counsel and split fees with associated counsel, pursuant to California Rule of Professional Conduct 2-200. Rule 2-200 makes clear that Paragraph 7 was inserted for the benefit of Plaintiffs, so that they would be fully apprised of the possibility of associated counsel. *See* Cal. Rules of Prof'l Conduct R. 2-200 ("A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless . . . [t]he client has consented in writing thereto after a full disclosure . . . that a division of fees will be made. . . ."). While Defendants may have benefited from Paragraph 7, that benefit was only incidental. Paragraph 7 was drafted in an open-ended way, so that the Snyder/Gruber Firms could have associated counsel other than Defendants or not associate any counsel at all. Therefore, it cannot be said that Defendants were the intended beneficiaries of Paragraph 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 14-02721-MWF-FFM**                     **Date:  July 1, 2014**
**Title:**      Judith Allen, et al. -v- Girardi Keese, et al.

Defendants also argue that the terms of the arbitration clauses were not expressly limited to claims between Plaintiffs and the Snyder/Gruber Firms.  (Reply at 8).  They argue, instead, that "it is apparent from the face of the Retainer Agreement that Defendants would be incorporated within the terms of the arbitration clause."  (Reply at 10-11).  This argument is unpersuasive.

"Arbitration agreements are to be construed like other contracts to give effect to the intention of the parties."  *In re Tobacco Cases I*, JCCP 4041, 124 Cal. App. 4th 1095, 1104, 21 Cal. Rptr. 3d 875 (2004) (internal quotation marks omitted).   Courts must ascertain the intention of the parties "as it existed at the time of contracting."  Cal. Civ. Code §1636.   The meaning of contractual language should be "obtained from the entire contract, and not from any one or more isolated portions thereof."  *Ontiveros v. Zamora*, CIV. S-08-567 LKK, 2013 WL 593403, at *4 (E.D. Cal. Feb. 14, 2013) (quoting *Lemm v. Stillwater Land & Cattle Co.*, 217 Cal. 474, 480, 19 P.2d 785 (1933)).

At the top of the Retainer Agreement is the following text: "This [Retainer Agreement] is entered into by and between [client] and Law Offices of Howard A. Snyder and Gruber & Gruber ('Attorneys')."  (Retainer Agreement at 1).  Therefore, the Retainer Agreement uses "Attorneys" as the defined term to refer to the Snyder/Gruber Firms.  However, the arbitration provision states that "the parties both agree" to arbitrate a "dispute which arises out of or in connection with the *Firms* [sic] representation of [the client] with respect to this matter." (Retainer Agreement ¶ 9) (emphasis added).  The word "Firms" in Paragraph 9 appears to be missing an apostrophe either after the "m" or after the "s."

Defendants suggest that "Firms" should be read to encompass Defendants as associated counsel in light of Paragraph 7.  (*See* Reply at 5, 8).  In support of this argument, defense counsel noted, at the hearing, that the only other place that the Retainer Agreement uses the word "firms" is in Paragraph 7, which provides for "the association of outside attorney or law *firms* whom Howard A. Snyder deems necessary."  (Retainer Agreement ¶ 7) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 14-02721-MWF-FFM**            **Date:  July 1, 2014**
**Title:**      Judith Allen, et al. -*v*- Girardi Keese, et al.

---

      Despite defense counsel's argument at the hearing, the meaning of the term "Firms" is still ambiguous within the context of the Retainer Agreement.  The term "Firms" is capitalized in the arbitration provision, which would usually indicate that it is a defined term, but it is not defined in the Retainer Agreement.  Moreover, the capitalized term "Firms" only appears in the arbitration provision.  Although Paragraph 7 also refers to outside "law firms," it does so interchangeably with the word "attorney."  Therefore, there is no indication that Paragraph 7 uses the word "firms" to refer specifically to associated counsel.  Nor does Paragraph 7 capitalize the word "firms" in the same way that the arbitration provision does.  While Paragraph 7 uses the term "firms," it simply does not resolve the ambiguity in the arbitration provision.  Similarly, although an apostrophe is clearly missing from the word "Firms," the fact that "Firms" may refer to multiple firms provides no assistance because multiple firms, the Snyder/Gruber Firms, were signatories to the Retainer Agreement.  Therefore, the text of the arbitration provision is ambiguous.

      "If a contract is reasonably susceptible to more than one interpretation or if it contains latent or patent ambiguities, the court may use extrinsic evidence to clarify the uncertainties." *Moss Dev. Co. v. Geary*, 41 Cal. App. 3d 1, 9, 115 Cal. Rptr. 736 (1974).

      Plaintiffs submitted declarations from ten Plaintiffs.  (Docket No. 17-1).  Each declaration states: "When I signed the retainer agreement, I thought that it only applied to me, [the] Snyder [Firm] and [the] Gruber [Firm].  I did not intend nor did I understand that the retainer agreement I had with [the] Snyder [Firm] and [the] Gruber [Firm] would apply to any of the other lawyers involved in the case, including [Defendants]."  (Declaration of Judith Allen ¶ 5 (Docket No. 17-1, Ex. 1); Declaration of Phyllis Barnes ¶ 5 (Docket No. 17-1, Ex. 2); Declaration of Horace Gilliam ¶ 5 (Docket No. 17-1, Ex. 3); Declaration of Rita Hren ¶ 5 (Docket No. 17-1, Ex. 4); Declaration of Donna Lehnhardt ¶ 5 (Docket No. 17-1, Ex. 5); Declaration of Dorothy Mallette ¶ 5 (Docket No. 17-1, Ex. 6); Declaration of Nan Maury ¶ 5 (Docket No. 17-1, Ex. 7); Declaration of Joyce Podhayski ¶ 5 (Docket No. 17-1, Ex. 8); Declaration of

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM                    Date:  July 1, 2014
Title:      Judith Allen, et al. -v- Girardi Keese, et al.

Reva Orr ¶ 5 (Docket No. 17-1, Ex. 9); Declaration of Tena Valentine ¶ 5 (Docket No. 17-1, Ex. 10)).

     Plaintiffs also submitted the Declaration of Howard A. Snyder ("Snyder Decl.") (Docket No. 17-3), in which he explains that the "boilerplate arbitration clause" that he used in drafting the Retainer Agreement "was included in the [R]etainer [A]greement with the intention that it would apply to the relationship between [the Snyder Firm], [the Gruber Firm], and [Plaintiffs]."  (Snyder Decl. ¶ 7).  He further states that he "would not have presumed to include [Girardi Keese] in [his] retainer agreement without Mr. Girardi's express permission."  (Snyder Decl. ¶ 8).  Plaintiffs contend that in cases when "[the Snyder/Gruber Firms] have thought it best to includes [sic] [Girardi Keese] within the terms of the retainer agreement with a client . . . they have used a retainer agreement that lists all three firms at the top and included [Girardi Keese] within the definition of 'Attorneys.'"  (Opp. at 15-16).  Attached to the Snyder Declaration is the front page of one such retainer agreement which is undated (the "Joint Retainer Agreement").  (*See* Snyder Decl., Ex. 1).

     Defendants contend that because the Joint Retainer Agreement is undated, it may have been created after the Retainer Agreement, which was drafted in 2004.  (Reply at 9-10).  Defendants thus argue that the Joint Retainer Agreement may not offer any insight into the Gruber Firm, the Snyder Firm, and Girardi Keese's conduct prior to signing the Retainer Agreement. (Reply at 9-10).  In support of their position, Defendants append a 2009 retainer agreement from a case other than the HRT litigation, which defines the Gruber Firm, the Snyder Firm, and Girardi Keese as the "Attorneys."  (Declaration of James G. O'Callahan (the "O'Callahan Reply Declaration"), Ex. 3 (Docket No. 21-1)).  Defendants note that the arbitration clause in the 2009 agreement is identical to the one in the Retainer Agreement except that the grammatical errors are corrected.  (Reply at 10).  Defendants append the 2009 retainer agreement to prove that "it is clear that the parties contemplated arbitration in circumstances where Gruber/Snyder and Defendants had a retainer bearing all three firms' names."  (Reply at 9).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM                    Date:  July 1, 2014
Title:       Judith Allen, et al. -v- Girardi Keese, et al.

    Defendants' contention proves too much.  The existence of the Joint Retainer Agreement and the 2009 retainer agreement supports the inference that when the Snyder/Gruber Firms and Girardi Keese intend for Girardi Keese to be a signatory to a retainer agreement and to be covered by an arbitration provision, they make that intention explicit.  Here, that intention was not made explicit.  Girardi Keese was not a signatory to the Retainer Agreement, and the arbitration provision in question did not clearly extend to Girardi Keese.

    Moreover, "[i]n cases of uncertainty . . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."  Cal. Civ. Code § 1654.  It appears that the Snyder/Gruber Firms, not Girardi Keese, caused the uncertainty in the Retainer Agreement by using the undefined term "Firms" in the arbitration provision.  Nonetheless, the underlying principle of § 1654 indicates that the ambiguity in the Retainer Agreement should not be construed against Plaintiffs.  A layperson in Plaintiffs' positions would not have read the arbitration provision to extend beyond them and the Snyder/Gruber Firms.  The arbitration provision stated that "the parties" agree to arbitrate their claims.  (Retainer Agreement ¶ 7).  A reasonable person would have understood "parties" to include the signatories to the Retainer Agreement, not an unnamed law firm that may be associated in the future.  Furthermore, Defendants were in a better position than Plaintiffs to eliminate any uncertainty as to who could be compelled to arbitrate.  Defendants could have entered into their own retainer agreement with Plaintiffs, which contained an arbitration provision or incorporated the Retainer Agreement by reference.

    The Court finds that the Defendants' construction of the Retainer Agreement would not "give effect to the intention of the parties."  *See In re Tobacco Cases I*, 124 Cal.App.4th at 1104.  Accordingly, Defendants were not intended third-party beneficiaries of the Retainer Agreement.

    C.    **Equitable Estoppel**

    Defendants argue that Plaintiffs should be equitably estopped from challenging Defendants' standing under the Retainer Agreement, because their claims "are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM                          Date:  July 1, 2014
Title:       Judith Allen, et al. -v- Girardi Keese, et al.

dependent on and intimately founded in and intertwined with the underlying Retainer Agreement." (*See* Reply at 13).

The rationale behind equitable estoppel in contract law is built on the principle that it "would be inequitable for [plaintiffs], as parties to arbitration agreements with [defendants], to use the substantive terms of those agreements as a foundation for their claims against nonsignator[y] [defendants], and at the same time to disavow the arbitration clauses of those very agreements." *See Goldman*, 173 Cal. App. 4th at 221.

The Ninth Circuit has outlined the requirements of equitable estoppel as follows:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract . . . and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Kramer*, 705 F.3d at 1128 (citations and internal quotation marks omitted).

Because Plaintiffs bring no claims against signatories to the Retainer Agreement, the second circumstance does not apply.  *See id.*  The only issue to resolve therefore is whether Plaintiffs "must rely on the terms of the written agreement in asserting its claims against [Defendants] or the claims are intimately founded in and intertwined with the [Retainer Agreement]." *Id.*

Defendants contend that Plaintiffs' claims are inextricably bound up with the Retainer Agreement because they arise from Defendants' representation of Plaintiffs in the HRT litigation and Defendants' negotiation of settlement agreements on Plaintiffs' behalf.  (Reply at 13-14).  Defendants further point to Plaintiffs' allegations based on Defendants' fiduciary duties to Plaintiffs.  (*Id.* at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM                Date:  July 1, 2014
Title:     Judith Allen, et al. -v- Girardi Keese, et al.

14).  In short, Defendants contend that the "nexus between Plaintiffs' allegations and the Retainer Agreement" is established because Defendants "could not have represented Plaintiffs" without the Retainer Agreement.  (*Id.*).

The Ninth Circuit's decision in *Kramer* is instructive.  In *Kramer*, the plaintiffs were owners of Toyota vehicles, who brought a class action against the car manufacturer, Toyota Motor Corp. ("Toyota").  705 F.3d at 1124.  The plaintiffs brought false advertising and breach of warranty claims relating to alleged defects in the vehicles.  *Id.* at 1130-31.  Toyota was a non-signatory to purchase agreements between the plaintiffs and car dealerships, which contained arbitration provisions.  *See id.* at 1126.  Toyota invoked the equitable estoppel doctrine, arguing that the plaintiffs' claims were "intertwined" with the purchase agreements because they "rel[ied] on the existence of [p]laintiffs' vehicle purchase transactions."  *Id.* at 1130.  The Ninth Circuit found that none of the claims relied on the terms of the purchase agreements, but rather on independent relationships between Toyota and the purchasers of its vehicles.  *Id.*

The Court agrees with Defendants' contention that Plaintiffs' claims depend on the existence of an attorney-client relationship between Defendants and Plaintiffs.  But as in *Kramer*, where the plaintiffs' claims depended on a relationship between car owners and car manufacturers rather than the purchase agreements by which ownership relationship was established, the attorney-client relationship here does not itself depend on the Retainer Agreement.  *See Kramer*, 705 F.3d at 1131-32.

An attorney-client relationship "usually arises from an express contract between the attorney and the client."  *Streit v. Covington & Crowe*, 82 Cal. App. 4th 441, 444, 98 Cal. Rptr. 2d 193 (2000).  However, "[n]either contractual formality nor compensation nor expectation of compensation is required."  *Id.* (internal quotation marks and citations omitted).  Accordingly, an attorney-client relationship can be formed through "a simple *association* for a particular case."  *Id.* at 445 (internal quotation marks and citation omitted) (emphasis in original).  Here, the Retainer Agreement is evidence of an attorney-client relationship between

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM                    Date:  July 1, 2014
Title:    Judith Allen, et al. -v- Girardi Keese, et al.

Plaintiffs and the Snyder/Gruber Firms. While Paragraph 7 of the Retainer Agreement permitted the Snyder/Gruber Firms to associate Defendants as outside counsel and split fees with them under California Rule of Professional Conduct 2-200 (Retainer Agreement ¶ 7), it did not itself create an attorney-client relationship between Defendants and Plaintiffs. In fact, Defendants had no involvement with the HRT litigation or Plaintiffs when the Retainer Agreement was created. Rather, Defendants' attorney-client relationship with Plaintiffs arose when Defendants were associated as counsel on the HRT litigation.

Therefore, Plaintiffs' claims do not rely on the terms of the Retainer Agreement, but on the fact that Defendants were associated as counsel, pursuant to a long-standing oral agreement between Defendants and the Snyder/Gruber Firms. (Declaration of Daniel S. Gruber ¶ 10 (Docket No. 17-4)). That association can be proven by testimony from the Snyder/Gruber Firms and Defendants. There is also other proof of Defendants' attorney-client relationship with Plaintiffs such as the Confidential Release Indemnity and Assignment, which Plaintiffs signed in order to receive their settlement proceeds. (*See* Opp. at 5). In this respect, this action is distinguishable from *Larson v. Speetjens*, C05-3176 SBA, 2006 WL 2567873 (N.D. Cal. Sept. 5, 2006) *order clarified*, C05-3176 SBA, 2006 WL 3365589 (N.D. Cal. Nov. 17, 2006), on which Defendants rely. *See id.* at *6-7 (finding that the plaintiff, acting in her capacity as a trustee, was equitably estopped from avoiding the arbitration provision in retainer agreements because she benefited from the attorney-client relationship, and that relationship was created by the retainer agreements, as opposed to a separate oral agreement).

Accordingly Plaintiffs neither rely on the terms of the Retainer Agreement in asserting their claims, nor are those claims "intimately founded in and intertwined with the [Retainer Agreement]." *Kramer*, 705 F.3d at 1128; *see also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1230 (9th Cir. 2013) (rejecting defendants' equitable estoppel argument because the agreement at issue was "factually irrelevant to Plaintiffs' claims against [defendant]"); *cf. Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1185 (N.D. Cal. 2013) (finding that plaintiffs' claims were "intimately founded and intertwined with the underlying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM                    Date:  July 1, 2014
Title:      Judith Allen, et al. -v- Girardi Keese, et al.

contract obligations . . . because the complaint [was] replete with implicit references to that contract").

  Defendants also argue that Plaintiffs' prayer for damages are intertwined with the Retainer Agreement because Plaintiffs seek disgorgement of legal fees paid to Defendants.  (Reply at 14).  In *Kramer*, the Ninth Circuit rejected the argument that the plaintiffs' claims were "intertwined" with the purchase agreements because the relief sought depended on the purchase agreements.  705 F.3d at 1131-32.  The Ninth Circuit found that the "correct analysis" was whether "the *causes of action* against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations, not whether the court must look to the [p]urchase [a]greement to ascertain the requested relief."  *Id.* (emphasis in original) (citations and internal quotation marks omitted).  Therefore, Defendants have not demonstrated that equitable estoppel compels arbitration.

  Because the Court does not find that Defendants can invoke the Retainer Agreement's arbitration provision, it need not address Plaintiffs' arguments that such a reading would render the arbitration provision unconscionable.  (Opp. at 19-21).

## III. MOTION TO DISMISS FOR FAILURE TO JOIN

  Federal Rule of Civil Procedure 12(b)(7) permits a defendant to challenge the complaint's "failure to join a party under Rule 19."  Fed. R. Civ. P. 12(b)(7).  "Such objection to non-joinder of parties usually requires an evidentiary showing (e.g. affidavits) as to the reasons why the absent party's presence is necessary for a just adjudication."  *Ocean Marine Ins. Co., Ltd. v. Wickland Corp.*, C94-2384 MHP, 1995 WL 125478, at *7 (N.D. Cal. Mar. 8, 1995).  "The burden of proof is on the party moving to dismiss for failure to join an indispensable party."  *Id.*  "It is not sufficient for there to be a vague possibility that persons who are not parties may have an interest in the action."  *Id.*

  As set forth in *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999), the analysis under Rule 19 proceeds in three steps.

---

**CIVIL MINUTES—GENERAL**      14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM                         Date:  July 1, 2014
Title:       Judith Allen, et al. -v- Girardi Keese, et al.

*First*, the Court determines whether the absent persons are necessary.  Federal Rule of Civil Procedure 19(a) requires joinder of parties if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

*Second*, if the absent party is necessary, the Court must determine whether joinder is "feasible."  Fed. R. Civ. P. 19(a) & (b).

*Third*, if joinder is not "feasible," the Court must determine whether the absent party is indispensable—that is, whether in "equity and good conscience" the action can continue without that party.  Fed. R. Civ. P. 19(b).

Defendants argue that this action must be dismissed because Plaintiffs failed to join the Snyder/Gruber Firms, which are necessary parties to this action.  (Mot. at 12-13; Reply at 21-23).

Defendants first argue that "[t]he current parties cannot receive the complete relief sought without the presence of" the Snyder/Gruber Firms.  (Mot. at 13).  In the Reply, Defendants explain that complete relief is not available because Defendants and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM				Date:  July 1, 2014
Title:	Judith Allen, et al. -v- Girardi Keese, et al.

the Snyder/Gruber Firms split fees and costs generated by Plaintiffs' settlement, but if Plaintiffs prevail, they can only disgorge the portion of fees collected by Defendants. (Reply at 21).  This argument is unpersuasive.  As Plaintiffs explain in their Opposition, all of the Complaint's allegations relate only to Defendants' actions, and the Snyder/Gruber Firms have no relationship to these allegations.  (Opp. at 22). Therefore, Plaintiffs only seek disgorgement from Defendants.  Such relief can be completely accorded without joining the Snyder/Gruber Firms.  Defendants have failed to meet their burden on this issue.

Defendants also argue that (1) Defendants are exposed to the risk of multiple liability, and (2) that a judgment in this action would adjudicate rights adverse to the Snyder/Gruber Firms.  (Mot. at 13; Reply at 21-22).

However, the prongs under Rule 19(a)(1)(B) only apply if the absent party "claims an interest relating to the subject of the action."  Fed. R. Civ. P. 19(a)(1)(B). "Joinder is 'contingent . . . upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action." *Bowen*, 172 F.3d at 689 (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)).  Therefore, in *Bowen*, the Ninth Circuit found that the trial court did not err in finding that joinder was unnecessary, where the absent party "was aware of th[e] action and chose not to claim an interest."  *Id.*  The Snyder/Gruber Firms are clearly aware of this action, given that partners from both firms filed declarations in support of the Opposition.  (Docket Nos. 17-3, 17-4).  Moreover, being law firms, they are in the best possible position to claim an interest in this action if they thought it necessary to protect their interests.  But they have not done so.

Defendants appear to argue that the Snyder/Gruber Firms claimed an interest in this action when Plaintiffs listed them in their Notice of Interested Parties.  (Mot. at 13).  However, that action was not taken by the Snyder/Gruber Firms, but by Plaintiffs. Moreover, the purpose of filing the Notice of Interested Parties is to "enable the Court to evaluate possible disqualification or recusal," Local Rule 7.1-1, not to actually claim

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-02721-MWF-FFM				Date:  July 1, 2014
Title:	Judith Allen, et al. -v- Girardi Keese, et al.

an interest in the litigation.  Therefore, the Snyder/Gruber Firms are not necessary parties because they have not claimed an interest in this matter.

Moreover, Defendants' arguments as to the two prongs under Rule 19(a)(1)(B) fail on the merits.

Defendants argue that because the Snyder/Gruber Firms received their costs from the settlement proceeds, their absence exposes Defendants to a substantial risk of incurring multiple liability.  (Mot. at 13).  However, it does not automatically follow from the fact that the Snyder/Gruber Firms received costs from the settlement proceeds that Defendants risk incurring multiple liability.  (Mot. at 13).  Defendants simply have not explained how there is a real threat of multiple liability.

Defendants' other argument is that a judgment rendered in the Snyder/Gruber Firms' absence would adjudicate rights adverse to them.  (Mot. at 13).  In particular, Defendants argue that because the Snyder/Gruber Firms were in privity with Defendants, a judgment entered against Defendants could preclude the Snyder/Gruber Firms from defending against future claims of breach of fiduciary duty, and disputing any determination regarding their joint failure to disclose critical information to their clients.  (Reply at 22).

It is unclear who Defendants contemplate bringing future claims against the Snyder/Gruber Firms.  Plaintiffs would be barred under res judicata from bringing future claims against the Snyder/Gruber Firms because they should have raised those claims in this action.  If other clients were to bring suit against the Snyder/Gruber Firms, they would most likely be unable to use a judgment obtained in this action in their favor because offensive non-mutual collateral estoppel is disfavored.  *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) (discussing the defects of offensive use of collateral estoppel and stating that where "the application of offensive collateral estoppel would be unfair to a defendant, a trial judge *should not* allow the use of collateral estoppel").  Additionally, to the extent that Defendants argue that Defendants and the Snyder/Gruber Firms are jointly liable, joint liability is insufficient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 14-02721-MWF-FFM  **Date:  July 1, 2014**
**Title:**   Judith Allen, et al. -*v*- Girardi Keese, et al.

to establish that a party is necessary.  *See Lopez v. Fed. Nat. Mortgage Ass'n*, CV 13-04782 MMM AGRX, 2013 WL 7098634, at *5 (C.D. Cal. Oct. 8, 2013) ("Simply because a party may be jointly liable, however, does not render it a necessary party.").

    Accordingly, Defendants have not demonstrated that the Snyder/Gruber Firms are necessary parties, let alone indispensable parties, as required for dismissal.

    Defendants repeatedly point out that Plaintiffs' counsel purports to represent 27 former clients of Defendants, but have only filed this action on behalf of 24 clients, because the other 3 clients are California citizens who would destroy diversity jurisdiction.  (Mot.at 1 n.1; Reply at 22-23).  However, Defendants have not argued that these other potential Plaintiffs are indispensable parties.  Therefore, the Court does not address the absent Plaintiffs.

    Accordingly, the Motion is **DENIED.**

    IT IS SO ORDERED.