Jeffrey B. Isaacs, Esq., SBN 117104
Jerome H. Friedberg, Esq., SBN 125663
Amanda R. Touchton, Esq., SBN 220430
**ISAACS FRIEDBERG & LABATON LLP**
555 South Flower Street, Suite 4250
Los Angeles, California 90071
Telephone (213) 929-5550/Facsimile (213) 955-5794
Email: jisaacs@iflcounsel.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH ALLEN,<br> an individual;<br>KAREN AWALD,<br> an individual;<br>PHYLLIS BARNES,<br> an individual;<br>JUANITA BROUWER,<br> an individual;<br>JOYCE BURPEE,<br> an individual;<br>NATA CARGAN,<br> an individual;<br>ADRIANNA CARRERA,<br> an individual;<br>PEGGY CLEMONS,<br> an individual;<br>MARIAN CONNER,<br> an individual;<br>ALBA CORDON,<br> an individual;<br>ANGELA DRAUGHN,<br> as Legal Guardian for<br> Patricia Rogers;<br>HORACE GILLIAM,<br> as Executor of the Estate of<br> Gail Gilliam;<br>RITA HREN,<br> an individual; | Case No. 14-CV-02721-MWF-FFM<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1) **BREACH OF FIDUCIARY DUTY;**<br><br>2) **CONVERSION;**<br><br>3) **UNFAIR BUSINESS PRACTICES (CAL BUS. & PROF. CODE § 17200);**<br><br>4) **MONEY HAD AND RECEIVED;**<br><br>5) **ACCOUNTING; and**<br><br>6) **UNJUST ENRICHMENT.**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Assigned to Hon. Michael W. Fitzgerald<br>Room 1600<br><br>Complaint filed:  April 9, 2014<br>Trial Date:       Aug. 11, 2014 |

ISAACS FRIEDBERG
& LABATON LLP

**FIRST AMENDED COMPLAINT**

130616.2

DONNA LEHNHARDT,
  an individual;
DOROTHY MALLETTE,
  an individual;
NAN MAURY,
  an individual;
LILLIAN MEEKS,
  an individual;
BARBARA NORVELL,
  an individual;
REVA ORR,
  an individual;
PATRICIA PEASE,
  an individual;
DONNA PETERS,
  an individual;
MURIEL PITSINGER,
  an individual;
VIOLA PLIESEIS,
  an individual;
JOYCE PODHAYSKI,
  an individual;
FORTUNATO SOLIS,
  as Executor for the Estate of
  Mary Solis;
ANNA SOLOMON,
  an individual;
SUE STRANDRIFF,
  an individual;
TENA VALENTINE,
  an individual; and
CHARLENE WEINMANN,
  an individual,

                    Plaintiffs,

         vs.

1  GIRARDI | KEESE,
    a California partnership;
2  THOMAS V. GIRARDI;
    an individual; and
3  JAMES G. O'CALLAHAN,
    an individual,
4
5              Defendants.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Isaacs Friedberg
& Labaton LLP

-3-

**FIRST AMENDED COMPLAINT**

130616.2

Plaintiffs Judith Allen; Karen Awald; Phyllis Barnes; Juanita Brouwer; Joyce Burpee; Nata Cargan; Adrianna Carrera; Peggy Clemons; Marian Conner; Alba Cordon; Angela Draughn as Legal Guardian of Patricia Rogers; Rita Hren; Horace Gilliam, as Executor of the Estate of Gail Gilliam; Donna Lehnhardt; Dorothy Mallette; Nan Maury; Lillian Meeks; Barbara Norvell; Reva Orr; Patricia Pease; Donna Peters, Muriel Pitsinger; Viola Plieseis; Joyce Podhayski; Fortunato Solis as Executor for the Estate of Mary Solis; Anna Solomon; Sue Strandriff; Tena Valentine and Charlene Weinmann (collectively, "Plaintiffs"), complaining of the above-named Defendants, allege as follows:

## I.      INTRODUCTION

1.      Plaintiffs are elderly women who were prescribed pharmaceutical medications by their physicians and subsequently developed cancer, and the representatives of the estates of women who were similarly situated and are now deceased.

2.      Between in or about 2005 and December 2013, Plaintiffs were represented in individual personal injury actions against manufacturers of the pharmaceuticals (the "Personal Injury Actions") by Defendants, the Los Angeles, California law firm of Girardi | Keese and attorneys Thomas V. Girardi and James G. O'Callahan (collectively, "Defendants"), both of whom are partners in Girardi | Keese.  These cases were consolidated with other similar lawsuits in a Multi-District Litigation ("MDL") proceeding entitled, *In Re Prempro Products Liability Action*, Case Number 03-CV-01507–BRW, MDL 1507 (the "HRT Litigation").  Defendants represented a total of 138 individuals in the HRT Litigation.

3.      In connection with their representation of Plaintiffs in the HRT Litigation and in breach of their fiduciary and ethical duties to Plaintiffs, Defendants engaged in the following wrongdoing:

(a)      Falsely stated that each Plaintiff's case had settled for a lesser

1                  amount than for which it had actually settled;

2        (b)     Made false representations regarding the status of each Plaintiff's

3                  case;

4        (c)     Falsely stated the amount of costs Defendants had paid relating

5                  to the HRT Litigation;

6        (d)     Charged costs not related to the HRT Litigation to Plaintiffs;

7        (e)     Concealed from Plaintiffs the true value of their cases and the

8                  true amounts of their recoveries;

9        (f)     Converted Plaintiffs' settlement funds; and

10       (g)     Unjustly enriched themselves by taking attorney's fees to which

11                  they were not entitled.

12     4.      In or around late 2013 and 2014, Plaintiffs, through new counsel, sent

13 multiple written demands to Defendants for Plaintiffs' client files and for an

14 accounting of the settlement proceeds.

15     5.      In violation of their legal and ethical duties to Plaintiffs, Defendants

16 refused to provide Plaintiffs with either the documents they had requested or an

17 accounting of their settlement proceeds.

18     6.      Stonewalled by Defendants in their efforts to obtain their complete

19 client files and a full accounting of their settlement proceeds, and concerned that

20 Defendants had misrepresented the amounts and status of their settlements,

21 Plaintiffs terminated Defendants as their counsel.  Even after they were terminated,

22 however, Defendants refused to give Plaintiffs their complete client files,

23 withholding the documents necessary for Plaintiffs to determine the amounts for

24 which their actions had settled and whether the settlement funds had been properly

25 distributed.

26     7.      In this action, Plaintiffs are seeking their complete client files, an

27 accounting of the allocation and distribution of the settlement funds, restitution of

28 misappropriated settlement funds, disgorgement of legal fees Defendants paid

themselves from the settlement funds, compensatory damages, punitive damages and trebling of punitive damages based on their age and medical conditions.

## II.   THE PARTIES

11.   Plaintiff Judith Allen ("Allen") is an individual and a citizen of Mentor, Ohio.

12.   Plaintiff Karen Awald ("Awald") is an individual and a citizen of Walkerton, Indiana.

13.   Plaintiff Phyllis Barnes ("Barnes") is an individual and a citizen of Warren, Arkansas.

14.   Plaintiff Juanita Brouwer ("Brouwer") is an individual and a citizen of Nottingham, Maryland.

15.   Plaintiff Joyce Burpee ("Burpee") is an individual and a citizen of Longview, Washington.

16.   Plaintiff Nata Cargan ("Cargan") is an individual and a citizen of Dracut, Massachusetts.

17.   Plaintiff Adrianne Carrera ("Carrera") is an individual and a citizen of Sebring, Florida.

18.   Plaintiff Peggy Clemons ("Clemons") is an individual and a citizen of New Concord, Kentucky.

19.   Plaintiff Marian Conner ("Conner") is an individual and a citizen of Morgantown, West Virginia.

20.   Plaintiff Alba Cordon ("Cordon") is an individual and a citizen of Youngstown, Ohio.

21.   Plaintiff Angela Draughn ("Draughn") is the legal guardian of Patricia Rogers and a citizen of Asheboro, North Carolina.  Patricia Rogers also is a citizen of Asheboro, North Carolina.

22.   Plaintiff Horace Gilliam ("Gilliam") is the executor of the estate of decedent Gail Gilliam and a citizen of Cleburne, Texas.  The deceased was also a

1    citizen of Cleburne, Texas during all relevant time periods.

2         23.   Plaintiff Rita Hren ("Hren") is an individual and a citizen of

3    Homosassa, Florida.

4         24.   Plaintiff Donna Lehnhardt ("Lehnhardt") is an individual and a citizen

5    of Medford, Oregon.

6         25.   Plaintiff Dorothy Mallette ("Mallette") is an individual and a citizen of

7    Anderson Island, Washington.

8         26.   Plaintiff Nan Maury ("Maury") is an individual and a citizen of

9    Dover, New Hampshire.

10        27.   Plaintiff Lillian Meeks ("Meeks") is an individual and a citizen of

11   Farmville, North Carolina.

12        28.   Plaintiff Barbara Norvell ("Norvell") is an individual and a citizen of

13   Pasco, Washington.

14        29.   Plaintiff Reva Orr ("Orr") is an individual and a citizen of

15   Marion, Ohio.

16        30.   Plaintiff Patricia Pease ("Pease") is an individual and a citizen of

17   Denver, Colorado.

18        31.   Plaintiff Donna Peters ("Peters") is an individual and a citizen of

19   Racine, Wisconsin.

20        32.   Plaintiff Muriel Pitsinger ("Pitsinger") is an individual and a citizen of

21   Dayton, Ohio.

22        33.   Plaintiff Viola Plieseis ("Plieseis") is an individual and a citizen of

23   Marcell, Minnesota.

24        34.   Plaintiff Joyce Podhoyski ("Podhoyski") is an individual and a citizen

25   of Mount Upton, New York.

26        35.   Plaintiff Fortunato Solis ("Solis") is the executor of the estate of Mary

27   Solis and a citizen of Kirkland, Washington.  The deceased was also a citizen of

28   Kirkland, Washington during all relevant time periods.

ISAACS FRIEDBERG
& LABATON LLP

-7-

**FIRST AMENDED COMPLAINT**

130616.2

36.    Plaintiff Anna Solomon ("Solomon") is an individual and a citizen of Lake Grove, New York.

37.    Plaintiff Sue Standriff ("Standriff") is an individual and a citizen of Dudley, North Carolina.

38.    Plaintiff Tena Valentine ("Valentine") is an individual and a citizen of Albany, Indiana.

39.    Plaintiff Charlene Weinmann ("Weinmann") is an individual and a citizen of Kailua, Hawaii.

40.    Defendant Girardi | Keese ("GK") is a law firm and a California partnership with its principal place of business in Los Angeles, California.

41.    Defendant Thomas V. Girardi ("Girardi") is an attorney licensed to practice law in the state of California, a founding partner of GK and a citizen of California.

42.    Defendant James G. O'Callahan ("O'Callahan") is an attorney licensed to practice law in the state of California, a partner at GK and a citizen of California.

43.    Plaintiffs are informed and believe, and based thereon allege, that, at all times relevant hereto, each Defendant was the agent, partner, joint venturer and/or co-conspirator of each other, and that each of them was acting within the course and scope of that agency, partnership, joint venture, or conspiracy.

44.    Plaintiffs are informed and believe, and based thereon allege, that in committing the wrongful acts and omissions alleged herein, each Defendant caused, aided, abetted, encouraged, facilitated, permitted and/or ratified the wrongful acts and/or omissions of the other Defendants.

## III.    JURISDICTION AND VENUE

45.    Pursuant to Title 28, United States Code, section 1332, this Court has subject matter jurisdiction over this matter in that the amount in controversy exceeds $75,000, exclusive of costs and interest, and all Plaintiffs are citizens of different states than all Defendants.

46.     This Court has personal jurisdiction over the parties to this action in that Defendants, and each of them, have the requisite minimum contacts with the State of California such that maintenance of this suit in this jurisdiction does not offend traditional notions of fair play and substantial justice.

47.     Pursuant to Title 28, United States Code, section 1391(b)(1), venue for this matter properly lies within the Central District of California in that at least one defendant is a resident of the Central District and all Defendants are residents of California.

48.     Pursuant to Title 28, United States Code, section 1391(b)(2) venue for this matter also properly lies within the Central District of California in that a substantial part of the events, acts and/or omissions giving rise to Plaintiffs' claims occurred within this judicial district; one or more Defendants are found, have an agent and/or transact their affairs within this judicial district; and process served in this district is required by the ends of justice.

## IV.     GENERAL ALLEGATIONS

**A.     Defendants' Fiduciary and Ethical Obligations to Plaintiffs.**

49.     Attorneys are fiduciaries who owe certain legal duties to their clients, which include the duty of undivided loyalty; the duty of full disclosure of material information; the duty to keep clients reasonably informed of significant developments in their cases; the duty to communicate settlement offers; the duty to provide an accounting; and the duty, upon the conclusion of the representation and request, to provide clients with their client files.

50.     Attorneys also owe certain ethical duties to their clients.  Pursuant to California Business and Professions Code section 6076 *et seq.*, the State Bar of California has adopted rules of professional conduct that are binding on all members of the State Bar, known as the "California Rules of Professional Conduct."  As attorneys licensed to practice law in California, Girardi and O'Callahan are required to comply with these rules.

51.     The legal and ethical duties of attorneys are further set forth in the California Business and Professions Code and related case law.  *See, e.g.,* Cal. Business and Prof. Code § 6068; *Rader v. Thrasher*, 57 Cal. 2d 244 (1962).

### 1.     Duty of Loyalty and Good Faith to Clients.

52.     Attorneys owe a duty of undivided loyalty to their clients. *Commercial Standard Title Co. v. Superior Court*, 92 Cal. App. 3d 934, 945 (1979).

53.     Attorneys also have a duty to act with the utmost good faith for the benefit of each client and to be honest in all of their dealings with them.  *Rader,* 57 Cal. 2d at 250; *Mayo v. State Bar,* 23 Cal. 3d 72, 75 (1978).

### 2.     Duty of Candor to Clients.

54.     "The relationship of attorney and client by its very nature is one in which the attorney assumes, and owes to his client, the exercise of the highest good faith." *Rader*, 57 Cal. 2d at 250.  "Complete candor and honesty by [attorney] both to his client . . . and to the . . . court [is] a minimum prerequisite to satisfying this fiduciary duty." *Mayo*, 23 Cal. 3d at 75.

### 3.     Duty to Keep Clients Informed.

55.     California Business and Professions Code section 6068(m) requires attorneys to keep their clients reasonably informed of significant developments in their cases.

### 4.     Duty to Communicate with Clients Regarding Settlement Terms.

56.     California Rule of Professional Conduct 3-510 ("Rule 3-510"), entitled "Communication of Settlement Offer," requires attorneys to promptly communicate to the client "all amounts, terms, and conditions of any written offer of settlement made to the client."

57.     California Rule of Professional Conduct 3-310 ("Rule 3-310") further requires that "[a] member who enters into an aggregate settlement of two or more clients shall not enter into an aggregate settlement of the claims of or against the

clients without the informed written consent of each client." This Rule requires attorneys to provide their clients with "sufficient information to permit the aggregate settlement plaintiffs to determine whether the settlement funds have been appropriately distributed." *Prakashpala v. Engstrom, Lipscomb & Lack,* 223 Cal. App. 4th 1105, 1126 (2014).

**5.      Duty to Maintain Client Funds in a Separate
Account and to Promptly Distribute Such Funds.**

58.     California Rule of Professional Conduct 4-100 ("Rule 4-100") requires attorneys to hold a client's funds in an attorney trust account and not to comingle the client's funds with any funds belonging to the attorney.

59.     Rule 4-100 further requires attorneys to promptly pay every client any funds in the possession of the attorney that the client is entitled to receive.

**6.      Duty to Provide Files and an Accounting to Clients.**

60.     California Rule of Professional Conduct 3-700 ("Rule 3-700) requires an attorney, upon the conclusion or termination of representation of a client, to "promptly release to the client, at the request of the client, all the client papers and property." Under Rule 3-700, "[c]lient papers and property includes correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not."

61.     Rule 4-100 requires an attorney to "[m]aintain complete records of all funds, securities, and other properties of a client coming into the possession of the member or law firm *and render appropriate accounts to the client regarding them*." (emphasis added.)

62.     California Business and Professions Code section 6091 requires an attorney, upon written request from a client, "to furnish the client with a complete statement of the funds received and disbursed and any charges upon the trust account, within 10 calendar days after receipt of the request."

**B.    Factual Background Regarding All Claims.**

### 1.    Defendants' Representation of Plaintiffs in the Personal Injury Actions.

63.    Between 2005 and 2011, Defendants became counsel for approximately 138 elderly cancer survivors, including Plaintiffs, in the HRT Litigation.

64.    In or around 2011, Defendants negotiated with the pharmaceutical manufacturers a global settlement of Plaintiffs' Personal Injury Actions, pursuant to a Master Settlement Agreement ("MSA").  The MSA provided that the pharmaceutical manufacturers would pay a lump sum settlement to Defendants.

65.    In violation of their legal and ethical duties, Defendants did not provide Plaintiffs with a copy of the MSA or otherwise explain its terms to them.

66.    In or around 2011, Defendants sent each Plaintiff a release of liability and instructed them to sign and return it to them.  In violation of their legal and ethical duties, Defendants did not provide Plaintiffs with information regarding the value of the aggregate settlement, the number of persons entitled to receive settlement funds, or the settlement value of each Plaintiff's Personal Injury Action.

67.    In or about June 2012, Defendants received the bulk of Plaintiffs' settlement funds from the pharmaceutical manufacturers in the HRT Litigation.

68.    In or about early 2013, Defendants sent Plaintiffs purported consent forms that misrepresented the amounts for which Plaintiffs' cases had settled and the amount of costs properly deducted from their settlement proceeds.

69.    Without the knowledge or consent of Plaintiffs, and contrary to Defendants' written representations, Defendants wrongfully retained more than $1,000,0000 of the entire settlement funds.

70.    Defendants received and reviewed Plaintiffs' medical records, and therefore knew, or should have known, that Plaintiffs had been diagnosed with cancer and, with the exception of Plaintiff Weinmann, were senior citizens within

1    the meaning of California Civil Code  section 1761(f).

2         **2.**    ***Defendants' False and Misleading Communications.***

3         71.    During 2013, Defendants prepared and sent each Plaintiff a Consent

4    and Authorization to Settlement (the "Consent").

5         72.    Each Consent was accompanied by a cover letter from Defendant

6    O'Callahan, which instructed each Plaintiff to sign and return the Consent.

7    Defendant O'Callahan represented: "Upon our receipt of the signed Consent, we

8    will forward your portion of the settlement to you."

9         73.    The cover letters did not explain how the settlement value of each

10   Plaintiff's Personal Injury Action had been determined.  Nor did they state that

11   Defendants were still in the process of calculating costs, were negotiating the

12   settlement of medical liens, or would only be forwarding a partial settlement

13   payment until certain purported outstanding issues were resolved.

14        74.    Each Consent stated what was represented to be the "total amount" of

15   each Plaintiff's settlement.  It read: "I, [plaintiff], hereby authorize my attorneys,

16   Girardi and Keese, to settle all of my claims arising out the [Personal Injury

17   Actions], and to dismiss with prejudice my lawsuit . . . . for *the total amount of*

18   [dollar figure]."  (emphasis added).

19        75.    The Consent was the first and only time that Defendants told the

20   majority of Plaintiffs the purported amount of their Personal Injury Action

21   settlement.  In fact, the Consents falsely understated the amount of each Plaintiff's

22   settlement, as each Plaintiff's Personal Injury Action had settled for a different and

23   greater amount than Defendants represented in the Consents.

24        76.    The Consent further required each Plaintiff to authorize payments and

25   distributions for the following reasons:  (a) 40% for attorney's fees; (b) 5.64% for

26   each Plaintiff's pro rata share of costs and expenses; (c) varying amounts to settle

27   medical liens; and (d) varying amounts for partial distributions that had previously

28   been made.  In fact, the Consents further misrepresented the amount of costs

**FIRST AMENDED COMPLAINT**

1  properly deducted from each Plaintiff's settlement.

2      77.    Defendants made no mention of any withholding of some percentage

3  of the settlement funds; nor was there was any indication in their communications

4  with Plaintiffs that there were any settlement funds remaining to be distributed.

5      78.    In or around 2013, each Plaintiff executed her Consent and returned it

6  to Defendants.

7      79.    After receiving the Consents from Plaintiffs, Defendants sent each

8  Plaintiff a check with a letter authored by Defendant O'Callahan.  Each letter stated

9  that the enclosed check "represent[ed] settlement of the above captioned matter"

10  and indicated that it had "been a pleasure representing [the plaintiff] in this case."

11  It concluded, "[i]f you have any future needs, please do not hesitate to call."

12  Printed on the face of the check was the statement "***Final Settlement Payment***."

13  (emphasis added).

14      80.    In the case of at least one Plaintiff, Defendant O'Callahan included the

15  following additional language: "We hope that in some way this helps represent a

16  closure to an unfortunate situation."

17      81.    The clear message of the cover letter and the notation on the check was

18  that each Plaintiff's Personal Injury Action was concluded and that she was

19  receiving the final distribution of her settlement proceeds.

20      82.    Subsequently, in January 2014, after Plaintiffs had retained new

21  counsel and raised issues regarding the allocation of their settlement funds,

22  Defendants claimed for the first time that they had retained six (6) percent of the

23  entire HRT Litigation settlement fund.  Defendants advised Plaintiffs' counsel that

24  they had held back "6% of every plaintiffs' settlement until all lien issues were

25  resolved, all consents had been received and the final accounting had been

26  completed," and that they were retaining the six (6) percent until "all lien issues

27  were resolved, all consents had been received and the final accounting had been

28  completed."  Defendants further represented that, "[a]s of last week, CMS (the

**FIRST AMENDED COMPLAINT**

1    agency responsible for handling Medicare and State Medicaid claims) was still

2    correcting or recalculating Medicare and Medicaid lien settlement amounts."

3        83.    These representations were false and misleading.  In fact, over six

4    months prior, Defendants had represented to the pharmaceutical manufacturers that

5    all but three of the 138 liens had been resolved and that those three remaining liens

6    were "being finalized."  One of those three individuals is a Plaintiff in this matter,

7    and her Medicare or Medicaid claim had been fully resolved – and a refund issued –

8    months before Defendants' January 2014 letter to Plaintiffs' new counsel.

9        84.    In sum, Defendants made false and misleading representations to each

10   Plaintiff that materially understated the amount of each settlement, misrepresented

11   the amount of costs properly deducted from each Plaintiff's settlement,

12   misrepresented the status of the distribution of each Plaintiff's settlement funds, and

13   misrepresented the status of the resolution of Plaintiffs' Medicare and Medicaid

14   liens.

15             ***3.     Plaintiffs' Unsuccessful Efforts to Obtain Their Client***
16             ***Files and an Accounting of Their Settlement Funds.***

17       85.    In or around December 2013, Plaintiffs Cordon, Gilliam, Lehnhardt,

18   Maury, Pease and Pitsinger retained new counsel to assist them in investigating the

19   disposition of their settlement funds.  On January 9, 2014, their new counsel sent a

20   written demand to Defendants for the complete client files of these Plaintiffs and

21   an accounting of their settlement proceeds.  The January 9, 2014 correspondence

22   stated specifically which documents these Plaintiffs were entitled to receive.

23       86.    As the remaining Plaintiffs became aware of these issues and retained

24   new counsel, they, through counsel, sent similar requests for their client files and

25   an accounting to Defendants.

26       87.    In response, Defendants refused to produce Plaintiffs' complete client

27   files or provide an accounting.

28       88.    Plaintiffs are informed and believe, and on that basis allege, that

ISAACS FRIEDBERG
& LABATON LLP

-15-
**FIRST AMENDED COMPLAINT**

130616.2

1   additional settlement funds have been wrongfully withheld and misappropriated by

2   Defendants, but, due to Defendants' repeated and willful failure to comply with

3   their fiduciary and ethical duties to produce complete client files and provide a

4   detailed accounting, Plaintiffs have been unable to ascertain the full extent of

5   Defendants' wrongful actions.

6   **FIRST CAUSE OF ACTION**

7   **(By All Plaintiffs Against All Defendants**

8   **For Breach of Fiduciary Duty)**

9   89.    Plaintiffs reallege and incorporate by reference herein the allegations

10  of paragraphs 1 through 88, above, of this First Amended Complaint.

11  90.    Defendants acted as attorneys for each Plaintiff in connection with

12  negotiating and executing the MSA and distributing the aggregate settlement in the

13  Personal Injury Actions.

14  91.    Defendants continued to serve as legal counsel for Plaintiffs Cordon,

15  Gilliam, Lehnhardt, Maury, Pease and Pitsinger until at least on or around

16  January 9, 2014, when these Plaintiffs attempted to terminate Defendants'

17  representation and demanded the return of their client files and an accounting of the

18  settlement proceeds they were supposed to receive.   However, in or around July

19  2014, Defendants stated that they still represented Plaintiffs in the HRT Litigation.

20  92.    Defendants continued to serve as legal counsel for Plaintiffs Allen,

21  Awald, Barnes, Carrera, Conner, Draughn, Hren, Mallette, Meeks, Norvell, Orr,

22  Peters, Plieseis, Podhayski, Solis, Solomon, Standriff, Valentine and Weinmann

23  until on or around March 5, 2014, when these Plaintiffs attempted to terminate

24  Defendants' representation and demanded the return of their client files and an

25  accounting of the settlement proceeds they were supposed to receive.  However, in

26  or around July 2014, Defendants stated that they still represented Plaintiffs in the

27  HRT Litigation.

28  93.    Defendants continued to serve as legal counsel for Plaintiffs Burpee,

Cargan and Clemons until on or around November 20, 2014, when these Plaintiffs terminated Defendants' representation and demanded the return of their files and an accounting of the settlement proceeds they were supposed to receive.

94.     Defendants continued to serve as legal counsel for Plaintiff Brouwer until on or about December 8, 2014, when she terminated Defendants' representation and demanded the return of her client files and an accounting of the settlement proceeds she was supposed to receive.

95.     Because Defendants affirmatively misstated the amount of each Plaintiff's settlement and failed to comply with their obligation to provide Plaintiffs with the sufficient information to evaluate whether the aggregate settlement funds were properly distributed, Plaintiffs did not discover the facts constituting Defendants' wrongful actions and omissions until within the past year.

96.     As their attorneys, Defendants owed Plaintiffs all of the duties and obligations of a fiduciary, which include, but are not limited to, the duties described above.

97.     Plaintiffs are informed and believe, and on that basis allege, that Defendants breached their fiduciary duties to each Plaintiff in the following respects, among others:

        a.     By making false and misleading representations to each Plaintiff materially understating the amount of her settlement in the Personal Injury Action;

        b.     By making false and misleading representations to each Plaintiff that her settlement check represented the final distribution of her settlement proceeds;

        c.     By making false and misleading representations to each Plaintiff regarding the amount of costs that were properly deducted from her settlement funds;

        d.     By making false and misleading representations to each Plaintiff regarding the status of the distribution of her settlement funds;

**FIRST AMENDED COMPLAINT**

ISAACS FRIEDBERG & LABATON LLP

130616.2

1        e.       By making false and misleading representations to each Plaintiff

2   regarding the status of the resolution of her Medicare or Medicaid lien:

3        f.       By making false and misleading representations to each Plaintiff

4   regarding Defendants' basis for withholding her settlement funds;

5        g.      By concealing material information regarding the terms of each

6   Plaintiff's settlement;

7        h.      By wrongfully withholding and secreting a portion of each

8   Plaintiff's settlement funds and using those funds for Defendants' own purposes;

9        i.       By failing to promptly disburse to each Plaintiff her share of the

10  settlement proceeds from the Personal Injury Actions to which she was entitled;

11        j.       By failing to deal honestly with each Plaintiff and to

12  communicate with her truthfully;

13        k.      By failing to maintain each Plaintiff's settlement funds in an

14  interest bearing trust account and not to comingle those funds with Defendants'

15  own funds or apply them to Defendants' own purposes;

16        l.       By refusing to provide an accounting of each Plaintiff's

17  settlement funds that reflected the gross amount of the settlement of each Plaintiff's

18  case, the manner in which each Plaintiff's share was calculated and other necessary

19  information to allow Plaintiffs to determine if the settlement proceeds had been

20  appropriately distributed; and

21        m.     By refusing to provide each Plaintiff with her complete client

22  file upon termination of Defendants' representation and upon the Plaintiff's request.

23     98.    As a direct and proximate result of Defendants' breaches of their

24  fiduciary duties, Plaintiffs have been damaged in an amount to be proven at trial.

25     99.    Plaintiffs are entitled to compound interest on all damages resulting

26  from Defendants' breaches of their fiduciary duties.

27     100.  In breaching their fiduciary duties to Plaintiffs, Defendants acted

28  fraudulently, oppressively and maliciously, with a willful and conscious disregard

ISAACS FRIEDBERG & LABATON LLP

-18-

**FIRST AMENDED COMPLAINT**

130616.2

1    of Plaintiffs' rights.  Accordingly, Plaintiffs are entitled to exemplary and punitive

2    damages pursuant to California Civil Code section 3294.

3        101.   Defendants' actions constituted unfair and deceptive acts and practices

4    against Plaintiffs.  Defendants knew, or should have known, that Plaintiffs, who

5    were all diagnosed with breast cancer, and who, with the exception of Plaintiff

6    Weinmann, were all senior citizens as defined in California Civil Code section

7    1761(f) were substantially more vulnerable than other members of the public to

8    Defendants' conduct because of their poor health.   Plaintiffs are therefore eligible

9    to receive treble punitive damages pursuant to California Civil Code  section 3345.

## SECOND CAUSE OF ACTION

### (By All Plaintiffs Against All Defendants

### For Conversion)

13       102.   Plaintiffs reallege and incorporate by reference herein the allegations

14   of paragraphs 1 through 101, above, of this First Amended Complaint.

15       103.   Defendants settled the Personal Injury Actions on each Plaintiff's

16   behalf in or around 2011.

17       104.   In or around 2011, the pharmaceutical manufacturers in the Personal

18   Injury Actions provided Defendants with a lump sum payment to be distributed to

19   the individual Plaintiffs and others similarly situated.

20       105.   Each Plaintiff had an immediate and vested property right in her

21   portion of the settlement funds that Defendants received.

22       106.   Defendants were required by law to maintain each Plaintiff's

23   settlement funds in an attorney trust account until the settlement funds were

24   distributed to each Plaintiff.

25       107.   Defendants falsely represented to each Plaintiff that they were

26   distributing to each Plaintiff the full amount of her settlement funds, when, in fact,

27   Defendants had wrongfully, and without Plaintiffs' knowledge or consent, retained

28   approximately $1,000,000 from the settlement funds.

108.   Defendants converted between approximately $1,500 and $10,000 of each Plaintiff's settlement funds by wrongfully withholding such sums and using them for Defendants' own purposes.

109.   Defendants, by willfully and repeatedly refusing to provide Plaintiffs with the accounting to which they are legally entitled, have prevented Plaintiffs from ascertaining the true amount of their settlements, and therefore the exact sums that Defendants have wrongfully converted.  The amount of each Plaintiff's settlement that Defendants wrongfully converted is specific and identifiable, and can be ascertained by each Plaintiff from documents presently in Defendants' possession.

110.   Defendants substantially interfered with each Plaintiff's right to possess her funds by Defendants continuing to exercise dominion over her funds and refusing to release custody and control of those funds to her.

111.   Plaintiffs are informed and believe, and based thereon allege, that Defendants have additionally converted each Plaintiff's funds by removing them from an interest bearing trust account and applying them to their own uses.

112.   Plaintiffs did not consent to Defendants' use and conversion of Plaintiff' funds.

113.   As a direct and proximate result of Defendants' conversion of Plaintiffs' settlement proceeds, each Plaintiff has been damaged in an amount to be proven at trial.

114.   In wrongfully converting each Plaintiff's settlement funds to their own uses, Defendants acted fraudulently, oppressively and maliciously, with a willful and conscious disregard of Plaintiffs' rights.  Accordingly, Plaintiffs are entitled to exemplary and punitive damages pursuant to California Civil Code section 3294.

115.   Defendants' actions constituted unfair and deceptive acts and practices against Plaintiffs.  Defendants knew or should have known that Plaintiffs, who were all diagnosed with breast cancer, and who were, with the exception of Plaintiff

Weinmann, senior citizens within the meaning of California Civil Code section 1761(f), were substantially more vulnerable than other members of the public to Defendants' conduct.  Plaintiffs, with the exception of Plaintiff Weinmann, are therefore eligible to receive treble punitive damages pursuant to California Civil Code  section 3345.

**THIRD CAUSE OF ACTION**

**(By Plaintiffs Against All Defendants**

**For Unfair Business Practices)**

116.   Plaintiffs reallege and incorporate by reference herein the allegations of paragraphs 1 through 115, above, of this First Amended Complaint.

117.   This cause of action applies to Defendants' business practices in representing personal injury clients in cases involving multiple plaintiffs whose claims are settled as part of an aggregate settlement agreement.

118.   The California Unfair Competition Law ("UCL"), California Business and Professions Code section 17200 *et seq.*, prohibits "persons" from engaging in unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice."

119.   At all relevant times, Defendants comprised an "organization of persons" within the meaning of the UCL, in that they associated together for the common purpose of engaging in a course of unlawful, unfair and fraudulent business acts and practices related to their representation of and relationship with Plaintiffs.

120.   Beginning in or around 2011, if not earlier, Defendants, and each of them, violated, conspired to violate and aided and abetted the violation of the UCL by engaging 111in one or more of the following *unlawful* business acts and practices, among others:

a.      Committed the tort of conversion by wrongfully, and without Plaintiffs' knowledge or consent, retaining approximately $1,000,000 from the

Isaacs Friedberg
& Labaton LLP

**FIRST AMENDED COMPLAINT**

1  settlement funds, removing these funds from an interest bearing trust account and

2  applying them to Defendants' own purposes;

3        b.    Violated their fiduciary duties to Plaintiffs, including their duties

4  of loyalty, honesty, candor and good faith;

5        c.    Breached their ethical duty to Plaintiffs by failing to keep

6  Plaintiffs reasonably informed of significant developments in their Personal Injury

7  Actions, in violation of California Business and Professions Code section 6068(m);

8        d.    Breached their ethical duty to Plaintiffs by concealing and

9  failing to disclose the amounts, terms and conditions of any written offer of

10  settlement made to each Plaintiff, in violation of Rule 3-510;

11        e.    Breached their ethical duty to Plaintiffs by concealing and

12  failing to disclose sufficient information regarding the settlement of each Plaintiff's

13  Personal Injury Action to permit each Plaintiff to determine whether the aggregate

14  settlement funds were properly distributed, in violation of Rule 3-310 and Rule 4-

15  100;

16        f.    Breached their ethical duty to Plaintiffs by failing to maintain

17  each Plaintiff's settlement funds in an attorney trust account, in violation of

18  Rule 4-100;

19        g.    Breached their ethical duty to Plaintiffs by comingling each

20  Plaintiff's settlement funds with Defendants' own funds, in violation of Rule 4-100;

21        h.    Breached their ethical duty to Plaintiffs by failing to promptly

22  pay each Plaintiff her settlement funds, in violation of Rule 4-100;

23        i.    Breached their ethical duty to Plaintiffs by failing to provide

24  each Plaintiff with an accounting of her settlement proceeds, in violation of

25  Rule 4-100; and

26        j.    Breached their ethical duty to Plaintiffs by failing to provide

27  each Plaintiff with a complete accounting of all funds received and distributed in

28  her case, which should have been maintained and distributed from Defendants' trust

**FIRST AMENDED COMPLAINT**

Isaacs Friedberg
& Labaton LLP

130616.2

account, in violation California Business and Professions Code section 6091.

121.   Defendants, and each of them, have further violated, conspired to violate and aided and abetted the violation of the UCL by engaging in one or more of the following *unfair* business acts and practices, among others:

a.   Defendants threatened incipient violations of the aforementioned fiduciary duties and sections of the California Business and Professions Code and California Rules of Professional Conduct and the public policy embodied in those statutes and Rules;

b.   Defendants violated the established public policy of the State of California, which, among other things, seeks to ensure that California attorneys provide loyal and honest services to their clients and inform their clients about significant developments in their cases (including settlement offers), and prevent them from converting clients' funds and unjustly enriching themselves at their clients' expense;

c.   Defendants' acts as described in this Frist Amended Complaint were immoral, unethical, oppressive and unscrupulous in that Defendants lied to and concealed material facts from their clients, who were elderly cancer survivors who had already been victimized once; violated the trust and confidence of their clients; and converted settlement funds belonging to their clients to their own purposes;

d.   Although no claim is asserted in this action under the Federal Trade Commission Act, the provision of section 5 of that law codified at Title 15, United States Code, section 45 (n), set forth factors of equal applicability to claims of unfairness under the UCL.  Applying and balancing those factors: (i) the injury to Plaintiffs from Defendants' conduct as described in this First Amended Complaint is substantial; (ii) this injury is not outweighed by any counterveiling benefits to Plaintiffs from such conduct; and (iii) the injury is not one that Plaintiffs or others similarly situated could have reasonably avoided given that Defendants'

1  conduct involved deception, concealment, breaches of fiduciary and ethical duties

2  of candor and disclosure and the refusal to provide an accounting.

3       122.   Defendants, and each of them, have further violated, conspired to

4  violate and aided and abetted the violation of the UCL by engaging in one or more

5  of the following *fraudulent* business acts and practices, among others:

6            a.     Making false and misleading representations regarding the

7  amount each Plaintiff was entitled to receive in settlement of their claims;

8            b.     Making false and misleading representations regarding the

9  distribution of Plaintiffs' settlement funds; and

10           c.     Making false and misleading representations regarding

11 Defendants' ability to distribute Plaintiffs' settlement funds.

12      123.   Plaintiffs have suffered an injury in fact and have lost, and continue to

13 lose, money and property as a result of Defendants' unlawful, unfair and fraudulent

14 business acts and practices.

15      124.   In addition to restitution, Plaintiffs seek injunctive relief with respect

16 to Defendants' refusal to produce their client files and to provide a complete and

17 accurate accounting of their settlement funds in violation of Defendants' legal and

18 ethical duties to Plaintiffs.  In particular, Plaintiffs seek an injunction requiring

19 Defendants to produce each Plaintiff's complete client file, and to provide

20 Plaintiffs, at Defendants' expense, an accounting by appointing a qualified

21 accountant to perform such accounting and ordering that Defendants make

22 available and permit the accountant to inspect and copy all books and records in

23 Defendants' possession custody and control necessary to produce a complete and

24 accurate accounting of Plaintiffs' settlement funds.

25                    **FOURTH CAUSE OF ACTION**

26               **(By All Plaintiffs Against All Defendants**

27                    **For Money Had And Received)**

28      125.   Plaintiffs reallege and incorporate by reference herein the allegations

of paragraphs 1 through 124, above, of this First Amended Complaint.

126.   In or around 2011, Defendants had and received settlement funds in the Personal Injury Actions that were intended for the use and benefit of each Plaintiff.

127.   Defendants have not paid Plaintiffs the full amount of the settlement funds that are due and owing them.

128.   Each Plaintiff cannot ascertain the sum certain that Defendants retained from her settlement funds from the documents presently in Plaintiffs possession.

129.   Defendants, by willfully and repeatedly failing to provide Plaintiffs with the accounting to which they are legally entitled, have prevented Plaintiffs from ascertaining the true amount of their individual settlements, and therefore the exact sums that Defendants have wrongfully retained.

130.   As a direct and proximate result of Defendants' wrongful retention of each Plaintiff's settlement funds, each Plaintiff has been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (By All Plaintiffs Against All Defendants

### For An Accounting)

131.   Plaintiffs reallege and incorporate by reference herein the allegations of paragraphs 1 through 130, above, of this First Amended Complaint.

132.   Rule 4-100 requires attorneys to "[m]aintain complete records of all funds, securities, and other properties of a client coming into the possession of the member or law firm and render appropriate accounts to the client regarding them."

133.   California Business and Professions Code section 6091 requires attorneys, upon written request by the client, "to furnish the client with a complete statement of the funds received and disbursed and any charges upon the trust account, within 10 calendar days after receipt of the request."

134.   Defendants acted as each Plaintiff's attorneys in the Personal Injury Actions and received, on each Plaintiff's behalf, settlement funds from the pharmaceutical manufacturers to compensate each Plaintiff for her injuries.

135.   Defendants have refused to provide Plaintiffs with sufficient information relating to the settlement for Plaintiffs to ascertain the amounts they are owed and the status of their individual settlements.

136.   Defendants have further refused to provide Plaintiffs with information relating to the aggregate settlement sufficient to allow them to determine if the settlement funds were properly allocated and distributed.

137.   The amount of money due and owing to Plaintiffs is unknown at this time and cannot be determined without an accounting of the settlement proceeds.

138.   Plaintiffs, through counsel, have made multiple written requests to Defendants for an accounting pursuant to Rule 4-100 and California Business and Professions Code section 6091, but Defendants have failed and refused, and continue to fail and refuse, to provide such an accounting.

139.   Based on the foregoing, the Court should order Defendants to provide to Plaintiffs a complete and accurate accounting of the settlement funds.

## SIXTH CAUSE OF ACTION

### (By All Plaintiffs Against All Defendants

### For Unjust Enrichment)

140.   Plaintiffs reallege and incorporate by reference herein the allegations of paragraphs 1 through 139, above, of this First Amended Complaint.

141.   Defendants made material misrepresentations to Plaintiffs regarding the terms of each Plaintiff's settlement, the amount of each Plaintiff's settlement and the status of each Plaintiff's settlement.

142.   Defendants wrongfully, and without the knowledge or consent of Plaintiffs, retained Plaintiffs' settlement funds and applied those funds to Defendants' own purposes.

143.   Defendants deducted from Plaintiffs' settlement funds the costs of goods and services that were not properly deducted as costs because they were not sufficiently related to the HRT Litigation.

144.   Defendants retained forty (40) percent of each Plaintiff's settlement as attorney's fees despite having engaged in egregious breaches of their fiduciary and ethical duties to Plaintiffs.

145.   As a result of Defendants' wrongful actions, Defendants received a benefit at the expense of Plaintiffs in the form of a portion of each Plaintiff's settlement funds to which they were not entitled; the costs of goods and services that were not properly charged to Plaintiffs; and attorney's fees that were deducted from Plaintiffs' settlement funds that should not have been.

146.   Defendants have retained these benefits unjustly and, as a result, have been unjustly enriched at Plaintiffs' expense.

147.   As a direct and proximate result of Defendants' wrongful retention of each Plaintiff's settlement funds, and unjust enrichment thereby, each Plaintiff has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

Therefore, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

**As to the First Cause of Action for Breach of Fiduciary Duties:**

1.    For disgorgement of all attorney's fees received or retained by Defendants in Plaintiffs' Personal Injury Actions;

2.    For the production of each Plaintiff's complete client file;

3.    For compensatory damages in an amount to be determined at trial;

4.    For a constructive trust over all money and property belonging to Plaintiffs that has been wrongfully retained by Defendants;

5.    For prejudgment interest at the maximum rate permitted by law and

1  compounded to the extent permitted by law;

2      6.      For punitive and exemplary damages to the extent permitted by

3  law; and

4      7.      For trebling of punitive damages under California Civil Code section

5  3345 for all Plaintiffs except Plaintiff Weinmann.

6  **As to the Second Cause of Action for Conversion:**

7      1.      For compensatory and special damages;

8      2.      For a constructive trust over all money and property belonging to

9  Plaintiffs that has been wrongfully converted by Defendants;

10      3.      For prejudgment interest at the maximum rate permitted by law;

11      4.      For punitive and exemplary damages to the extent permitted by

12  law; and

13      5.      For trebling of punitive damages under California Civil Code section

14  3345 for all Plaintiffs except Plaintiff Weinmann.

15  **As to the Third Cause of Action for Unfair Business Practices:**

16      1.      For restitution to restore to each Plaintiff all money and property

17  obtained by Defendants, and each of them, as a result of Defendants' unlawful,

18  unfair and fraudulent business acts and practices, including, but not limited to, all

19  such settlement funds in which Plaintiffs have a vested interest and Plaintiffs' client

20  files; and

21      2.      For disgorgement of any money and property obtained by Defendants,

22  and each of them, as a result of their unlawful, unfair and fraudulent business acts

23  and practices, including, but not limited to, money retained by Defendants as

24  attorney's fees; and

25      3.      For an injunction requiring Defendants to produce each Plaintiff's

26  complete client file, and to provide to Plaintiffs, at Defendants' expense, an

27  accounting by appointing a qualified accountant and ordering that Defendants make

28  available and permit the inspection of all books and records in Defendants'

1   possession, custody and control necessary to produce a complete and accurate
2   accounting of Plaintiffs' settlement funds.

3   **As to the Fourth Cause of Action for Money Had and Received:**

4        1.     For restitution to restore to Plaintiffs all money and property
5   wrongfully retained by Defendants;

6        2.     For a constructive trust over all money and property belonging to
7   Plaintiffs that has been wrongfully retained by Defendants; and

8        3.     For prejudgment interest at the maximum rate permitted by law.

9   **As to the Fifth Cause of Action for an Accounting:**

10       1.     For an accounting at Defendants' expense by a certified
11  public accountant.

12  **As to the Sixth Cause of Action for Unjust Enrichment:**

13       1.     For disgorgement of any money and property by which Defendants
14  unjustly enriched themselves as a result of their unlawful conduct, including, but
15  not limited to, attorney's fees retained by Defendants from the settlement funds.

16  **As to All Causes of Action:**

17       1.     For costs of suit incurred herein; and

18       2.     For such other and further relief as the Court may deem just
19  and proper.

20  Dated:  January 23, 2015       ISAACS FRIEDBERG & LABATON LLP
21

22

23                  /s/ Amanda Touchton
24                  AMANDA R. TOUCHTON, ESQ.
                    *Attorneys for Plaintiffs*

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a jury trial on all issues properly triable to a jury.

3

Dated:  January 23, 2015          ISAACS FRIEDBERG & LABATON LLP

4

5

_____/s/ Amanda Touchton_____

6

AMANDA R. TOUCHTON, ESQ.
*Attorneys for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28