Jeffrey B. Isaacs, Esq., SBN 117104
Jerome H. Friedberg, Esq., SBN 125663
John T. Sheehan, Esq., SBN 273944
**ISAACS FRIEDBERG & LABATON LLP**
555 South Flower Street, Suite 4250
Los Angeles, California 90071
Telephone: (213) 929-5550
Facsimile: (213) 955-5794
Email: jisaacs@ifcounsel.com

*Attorneys for Plaintiffs Judith Allen, et al.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH ALLEN, *et al*., <br><br> Plaintiffs, <br><br> vs. <br><br> GIRARDI \| KEESE, *et al*., <br><br> Defendants. | Case No.: 14-CV-02721-MWF-FFM <br><br> Hon. Fredrick F. Mumm <br><br> **JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL NET WORTH DISCOVERY IN CONNECTION WITH UPCOMING DEPOSITIONS AND FOR MONETARY SANCTIONS** <br><br> **[PLAINTIFFS' DISCOVERY MOTION NO. 6]** <br><br> [Filed concurrently with Notice of Motion; Declaration of John Sheehan; Declaration of Jerome Friedberg; Declaration of Phillip Baker] <br><br> Hearing Date:  January 5, 2016 <br> Hearing Time:  10:00 a.m. <br> Room:  580, 5th Floor <br><br> Complaint Filed:  Apr. 9, 2014 <br> FAC Filed:  Jan. 23, 2015 <br> Pretrial Conf.:  Jan. 25, 2016 <br> Trial Date:  Feb. 2, 2016 |

# TABLE OF CONTENTS

**Page**

I.   **PLAINTIFFS' INTRODUCTION.** ...................................................1

    A.   **Nature of the Case.** .......................................................1

    B.   **Nature of this Discovery Dispute.** ...............................3

II.   **DEFENDANTS' INTRODUCTION.** ..........................................6

    A.   **Nature of the Case.** .......................................................6

    B.   **Nature of this Discovery Dispute.** ...............................6

        1.   *Plaintiffs' Motion Should Be Denied Because It Is Untimely.* ............................................................7

III.   **LOCAL RULE 37 MEET AND CONFER EFFORTS** ..................9

    A.   **Plaintiffs' Position.** ......................................................9

    B.   **Defendants' Position.** ..................................................10

IV.   **DISCOVERY AT ISSUE.** .........................................................12

    A.   **Plaintiffs' Contentions in Support of Compelling GK to Produce a PMK on Topic Nos. 53 and 54.** .................12

    B.   **GK's Contentions in Opposition to Compelling GK to Produce a PMK on Topic Nos. 53 and 54.** .................15

        1.   *Plaintiffs' Motion Is Untimely.* ...............................15

        c.   **The Court Should Exercise Its Broad Discretion Under the Federal Rules And Require Plaintiffs To Establish A "Compelling Need" For Defendants' Private Personal And Financial Information.** ..................................................21

**DEPOSITION OF GIRARDI | KEESE – RULE 30(b)(2) DOCUMENT REQUESTS** ......................................22

    A.   **Plaintiffs' Contentions in Support of Compelling GK to Produce Documents in Response to Requests 50 to 61.** ...................24

        1.   *GK's Objections Should Be Disregarded as Failing to Comply with the Federal Rules.* .............................25

        2.   *GK's Boilerplate Objections Are Meritless.* ..............25

            a.   **GK's "Relevance" Objections Are Meritless.** .............26

            b.   **GK's "Privacy" Objections Are Meritless.** ................28

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

# TABLE OF CONTENTS

Page

    c.    **GK's Section 3295-Based Objections Are
Meritless.** ...........................................................30

    d.    **GK's "Unduly Broad" Objections Are
Meritless.** ...........................................................30

    e.    **GK's "Overly Burdensome" Objections
Are Meritless.** ....................................................31

    f.    **GK's "Equally Available" Objections
Are Meritless.** ....................................................31

    g.    **GK's "Previously Produced Responsive
Document" Objections Are Meritless.** ...............32

   3.    *The Evidence Sought Is in GK's Possession, Custody,
or Control.* ..................................................................32

B.    **GK's Contentions in Opposition to Compelling Further
Response.** ............................................................................33

   1.    *The Information Plaintiffs Seek Here Violates the
Court's Order Of October 8, 2015  Denying Plaintiffs'
Request To Serve Additional Discovery* ..........................34

    a.    **Plaintiffs Seek Information The Court Found
Inappropriate to Investigate Through This
Litigation** ...........................................................36

   2.    *GK's "Relevance" Objections Are Well-Founded.* ...................39

    a.    **Defendants' Financial Condition Is Entirely
Irrelevant to Plaintiffs' Claims Against
Defendants and Plaintiffs' Claim for Punitive
Damages.** ...........................................................39

3.    **GK's "Privacy" Objections Are Well-Founded** ...............................41

    a.    **Because Mr. Girardi and Mr. O'Callahan Have
a Protectable Privacy Interest Under California
Law, Plaintiffs Must Establish A "Compelling
Need" For GK's Private Financial Information.** .........41

    b.    **Because GK Has a Protectable Privacy Interest
Under California Law, Plaintiffs Must Establish
A "Compelling Need" For GK's Private
Financial Information** ..........................................42

   4.    *GK's Section 3295-Based Objections Are Well-
Founded.* ....................................................................43

# TABLE OF CONTENTS

**Page**

     5.    *GK's "Unduly Broad" Objections Are Well-Taken.* ................ 43

           a.    Plaintiffs' Requests Are Overly Broad For the Award of Punitive Damages, If Any .............................. 44

     8.    *GK's "Previously Produced Responsive Documents" Objections Are Well-Taken.* ........................................ 49

           a.    GK Has Previously Produced Documents Non-Privileged, Relevant Documents Responsive to Plaintiffs Requests At Issue Here. ................................. 49

           b.    The Court Had Previously Advised Plaintiffs That They Have "Plenty" of Documents and They Cannot "Limitlessly" Pursue Discovery. ............ 51

**DEPOSITION OF THOMAS GIRARDI – RULE 30(B)(2) DOCUMENT REQUESTS** ................................... 52

A.    **Plaintiffs' Contentions in Support of Compelling Mr. Girardi to Produce Documents in Response to Requests 1 Through 3** ................................................................... 53

     1.    *Mr. Girardi's "Relevance" Objections Are Meritless.* .............. 53

     2.    *Mr. Girardi's "Privacy" Objections Are Meritless.* ................... 54

     3.    *Mr. Girardi's Section 3295-Based Objections Are Meritless.* ...................................................................... 54

B.    **Mr. Girardi's Contentions in Opposition to Compelling Further Response.** ...................................................... 54

V.    **SANCTIONS.** ............................................................... 55

A.    **Plaintiffs' Contentions in Support of Imposing Monetary Sanctions.** .................................................. 55

B.    **Defendants' Contentions in Opposition to The Imposition of Monetary Sanctions.** ............................................ 57

VI.    **CONCLUSION** ........................................................... 59

A.    **Plaintiffs' Conclusion.** ............................................... 59

B.    **Defendants' Conclusion.** ............................................. 59

# I.    PLAINTIFFS' INTRODUCTION.

Plaintiffs seek an order compelling Defendant Girardi | Keese ("GK") to provide deposition testimony and GK and Defendant Thomas Girardi to produce documents related to Defendants' net worth and financial condition at their upcoming depositions (to be scheduled).  Plaintiffs also ask the Court to impose monetary sanctions for this latest of Defendants' discovery abuses.

## A.    Nature of the Case.

Plaintiffs are 29 elderly women (or their heirs) who developed breast cancer after taking hormone replacement therapy ("HRT") prescription medications. Defendants are the law firm of Girardi | Keese and two of its partners, attorneys Thomas Girardi and James O'Callahan.  GK represented Plaintiffs, together with another 110 similarly situated women (collectively, the "HRT Claimants"), in individual personal injury actions against the manufacturers of the HRT medications, which became part of a federal multi-district litigation proceeding in the Eastern District of Arkansas (the "HRT Litigation").

The present case arises out of a scheme by Defendants to misappropriate millions of dollars in HRT settlement funds belonging to the HRT Claimants ("Settlement Funds").  Plaintiffs post-filing investigation has revealed that Defendants misappropriated the settlement proceeds through various dishonest and deceitful means.

***First***, from the first tranche of Settlement Funds the HRT Defendants transferred to the GK Client Trust Account in June 2012, it appears that Defendants transferred approximately $10.5 million to themselves and third parties without the HRT Claimants' consent or knowledge.  In fact, it appears that Defendants transferred over $5.8 million of the Settlement Funds to themselves prior to distributing any funds to the HRT Claimants, and that by January 2013, Defendants' unauthorized depletion of the GK Client Trust Account caused the account balance to fall below GK's

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL**
**NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

outstanding obligations to the HRT Claimants *by almost $10.5 million*.[1]

**Second**, Defendants paid themselves a 40% contingency fee, which equated to approximately $6,950,000, even though they did not have a written retainer agreement with any of the HRT Claimants.  As a result, Defendants are entitled, if anything, to *quantum meruit*, which is likely minimal as Defendants have admitted to having no time records to support any of the attorney's fees they paid themselves.

**Third**, Defendants, in fact, paid themselves substantially in excess of 40% of the settlement amount by converting more than $1.0 million (approximately six percent) of the Settlement Funds to which they had no claim.[2]

**Fourth**, Defendants charged the HRT Claimants approximately $980,000 in costs that were not paid; that were excessive, unreasonable and unrelated to the HRT Litigation; and that were for work that should have been included in the attorney's fees that Defendants paid themselves.

To carry out and conceal their scheme, Defendants made numerous false representations to the HRT Claimants and withheld material information in violation of their ethical and fiduciary duties of disclosures.  Additionally, Defendants refused to produce a complete and accurate accounting of the disposition the settlement proceeds despite repeated requests by Plaintiffs and in violation of their legal duty to

---

[1] *Guzzetta v. State Bar*, 43 Cal. 3d 962, 976 (1987) ("[t]he mere fact that the balance in an attorney's trust account has fallen below the total amounts deposited in and purportedly held in trust, supports the conclusion of misappropriation").

[2] Defendants distributed these sums only after Plaintiffs filed this lawsuit and after Defendants lost their motion to compel arbitration of the case before Justice Panelli. Plaintiffs believe Defendants used monies other than Settlement Funds to make these payments.  *Cf. U.S. v. Cunningham*, 679 F.3d 355 (6th Cir. 2012) (affirming prison sentences for attorneys who converted clients' aggregate settlement funds and attempted to cover up the conversions by distributing the shortfall from their personal accounts after they came under investigation).

do so.[3]  Moreover, the limited information that Defendants have provided in this

litigation has proven to be inaccurate, unsubstantiated and, in many instances, false.

As a result, Plaintiffs still do not know the full extent of Defendants' wrongdoing or

the disposition of their Settlement Funds.

**B.     Nature of this Discovery Dispute.**

        This motion was necessitated by Defendants' objections to two deposition

notices for upcoming depositions of GK and Mr. Girardi.  The notice to GK requested

deposition testimony from the person most knowledgeable regarding distributions,

loans and other payments to Mr. Girardi (Topic 53) and Mr. O'Callahan (Topic 54).

The notice also requested that GK produce documents at the deposition concerning

GK's financial condition and net worth for the time period 2012 to 2014, including

profit and loss statements (Request 51); income and expense statements (Request 52);

and documents showing its assets (Requests 53-55) and net worth (Request 50).  The

notice also requested documents concerning distributions, loans and other payments to

Mr. Girardi and Mr. O'Callahan (Request 56 to 61).

        The deposition notice to Mr. Girardi requested documents sufficient to show,

for the time period 2011 to 2014: (1) his assets, liabilities and net worth (Request 1);

(2) his income and expenses (Request 2); and (3) the income he received from GK

(Request 3).

        This evidence is undeniably relevant to Plaintiffs' claims for at least three

separate reasons.  *First*, Plaintiffs are seeking punitive damages for Defendants'

conversions and breaches of fiduciary duty, and evidence of Defendants' net worth is

relevant to the jury's determination of the appropriate amount of such damages.

*Second*, the information sought – particularly evidence of distributions, loans and

other payments to Messrs. Girardi and O'Callahan – is necessary to determine the

---

[3] *See* Cal. Bus. & Prof. Code § 6091 ("attorney shall furnish client with a complete
statement of funds received and disbursed and any charges upon the trust account,
within 10 calendar days").

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

ultimate disposition of the misappropriated Settlement Funds.  *Third*, Defendants' financial condition, expenses and asset purchases during the relevant time will show that Mr. Girardi's significant financial obligations, exorbitant spending and extravagant lifestyle provided the motivation for him to misappropriate settlement funds from GK's Client Trust Account.

Defendants have objected to providing all net worth and financial condition discovery, asserting the following meritless boilerplate objections, many of which have been overruled by this Court previously:

- *Relevance.*  Defendants do not state any basis for this objection because they cannot.  As explained above, net worth discovery is relevant here for multiple reasons.

- *Privacy.*  Defendants ignore that this Court has already overruled their privacy objections to financial discovery.  *See* Dkt. Nos. 79, 94 & 127.  Further, Plaintiffs' interests, including exposing the full extent of Defendants' wrongdoing, what they did with the Settlement Funds and recovering misappropriated monies, outweigh any privacy interests Defendants might have, especially since any such interests are more than adequately safe-guarded by the protective order that has been entered in this case.

- *California Civil Code Section 3295.*  Defendants object that "Plaintiffs have not moved for an order regarding financial discovery," a reference to the California procedure that requires a party to obtain a court order before seeking punitive damages discovery pre-trial.  This objection has no place in this federal lawsuit because, as numerous district courts have held, this is a state procedural rule that does not apply in federal court proceedings.

- *Equally Available.*  Defendants object that the requested information is "equally available" to Plaintiffs.  This claim is clearly not true: Defendants are the only source for the information and documents sought.

- *Unduly Broad.*  Defendants fail to explain how any request is purportedly

1  "unduly" broad, and, in fact, none are.  Each request is limited to testimony and

2  documents necessary to determine each Defendant's net worth and financial condition

3  for the period during which Defendants were engaged in misappropriating Settlement

4  Funds.

5  •  *Overly Burdensome*.  Defendants assert that producing electronically

6  stored information ("ESI") is too burdensome, but have made no showing whatsoever

7  to support this claim.  Nor is it apparent why this would be the case.

8  Because these objections were raised without substantial justification, Plaintiffs

9  also ask the Court to award them their reasonable attorney's fees for having to bring

10  this motion.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

## II.   DEFENDANTS' INTRODUCTION.[4]

### A.   Nature of the Case.

As the court is well-aware by now, Plaintiffs Judith Allen *et al.* (collectively "Plaintiffs") are 28 former clients of Defendants Girardi | Keese ("GK"), Thomas V. Girardi, and James G. O'Callahan (collectively "Defendants").  Mr. Girardi and Mr. O'Callahan are attorneys at the law firm of Girardi | Keese.  Defendants represented approximately 138 individuals, including the 28 Plaintiffs herein (collectively, the "HRT Claimants") in individual personal injury actions against the manufacturers of hormone replacement therapy ("HRT")  prescription medications. These individual actions were consolidated  into a Multi-District Litigation ("MDL") entitled *In Re Prempro Products Liability Action*, Case No. 03-CV-01507-BRW, MDL 1507 (the "HRT Litigation").  This MDL concerned HRT wherein Plaintiffs ingested certain hormone therapy medications that allegedly caused cancer and other injuries.

Since the inception of this lawsuit in early 2014, up through the present day, it is Defendants' position that  Plaintiffs were misled into pursuing this lawsuit against Defendants.  To date, Plaintiffs have been unable to articulate their damages.

### B.   Nature of this Discovery Dispute.

Defendants oppose Plaintiffs' "Motion To Compel Net Worth Discovery in Connection with Upcoming Depositions and for Monetary Sanctions" (the "Motion" or the "instant motion") on several grounds.

- *First*, Plaintiffs' Motion is untimely. As will be discussed below, Plaintiffs' Motion was filed after the operative discovery cut-off (December 2, 2015) and the last day to hear motions (December 7, 2015). Declaration of Phillip A. Baker ("Baker Decl."), ¶ 4, Exhibits 1 and 2.
- *Second,* Defendants' objections to the deposition notices of GK and Mr.

---

[4] Plaintiffs' five (5) page introduction directly violates Local Rule 37-2.1, which provides, "no party's introductory statement shall exceed three (3) pages in length."

Girardi are well-founded and should be sustained (Defendants asserted objections on the following bases: relevance, privacy, California Civil Code Section 3295, the information is equally available to Plaintiffs, the requests are unduly broad, and the requests are overly burdensome).

- **Third,** the discovery issues Plaintiffs request the Magistrate Judge to determine have already been ruled upon by Judge Fitzgerald in his Order of October 8, 2015 granting, in part, Plaintiffs' *Ex Parte* Application to Continue trial dates and serve additional discovery (hereinafter the "October 8 Order").  *Id.,* ¶ 4, Ex. 2. In the October 8 Order, the Court made the following findings that should be dispositive here: 1) the Court denied Plaintiffs' request for leave to serve additional discovery concerning Defendants' financial information, which is information that is nearly identical to that which would be obtained should Plaintiffs' Motion be granted;  2) the Court advised Plaintiffs that they were already in possession of ample documents, and thus, were well-equipped to present their case to the jury;  3) the Court informed Plaintiffs that discovery is not limitless; and 4) the Court reminded the parties of the importance of strict adherence to the deadlines set by the Court.

- **Fourth**, Plaintiffs' request for the imposition of monetary sanctions should be denied because Defendants' objections to Plaintiffs' discovery requests were substantially justified under FRCP 37(a)(4)(A).

Based on the foregoing, and for the reasons discussed in detail below, Defendants request the Court deny Plaintiffs' Motion in its entirety and deny Plaintiffs' request to impose monetary sanctions on Defendants.

### 1.    *Plaintiffs' Motion Should Be Denied Because It Is Untimely.*

Plaintiffs' Motion may be denied solely on the basis that it is not timely. The Court's initial set the schedule for this matter in its order entered on September 29, 2014 ("Initial Scheduling Order").  *Id.*, ¶ 4, Ex. 1.  The Court's Initial Scheduling

1   Order specifies, "[a]ll depositions shall commence sufficiently in advance of the

2   discovery cut-off date to permit their completion and to permit the deposing party

3   enough time to bring any discovery motions concerning the deposition before the cut-

4   off date." *Id.*.  The non-expert discovery cut-off date in this matter is December 2,

5   2015.  *Id.*, ¶ 4, Ex. 2.  Plaintiff's motion is set for hearing on December 29, 2015; thus,

6   the hearing date is 27 days after discovery cut-off date and 20 days after the last day to

7   hear motions.

8          In addition, the Initial Scheduling Order further dictates that, "[t]he Court has

9   established a cut-off date for the *hearing* of motions. All motions must be noticed so

10  that the *hearing* takes place on or before the motion cut-off date." *Id.*, ¶ 4, Ex. 1

11  (emphasis in the original).  The cut-off date for hearing of motions in this matter is

12  December 7, 2015. *Id.*, ¶ 4, Ex. 2.  Plaintiffs did not *file* the instant motion until

13  December 8, 2015, one day after the last day to *hear* motions. Therefore, not only is

14  the hearing on this motion late, but there would be no time for any response to be

15  obtained prior to the discovery cut-off.

16         As demonstrated above, because Plaintiffs' motion was filed after the discovery

17  cut-off and the last day to *hear* motions as set by the Court's operative Scheduling

18  Order, Plaintiffs' motion is untimely. Accordingly, Plaintiffs' motion should be denied.

19

20

21

22

23

24

25

26

27

28

- 8 -
**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

### III.   LOCAL RULE 37 MEET AND CONFER EFFORTS.

**A.    Plaintiffs' Position.**

In the course of discovery, Plaintiffs have served deposition notices on GK and Mr. Girardi seeking the net worth and financial condition discovery at issue in this motion.  Declaration of Jerome Friedberg ("Friedberg Decl."), ¶ 3.  Defendants timely served responses objecting to all such discovery.[5]  *Id.*

On October 2, 2015, Plaintiffs' counsel sent a detailed, six-page meet and confer letter to Defendants' counsel.  *Id.*, ¶ 8, Ex. 5.  The letter explained why Defendants' position was not well taken and requested that Defendants withdraw their objections or suggest times to meet and confer.  *Id.*  Defendants never provided a substantive response to Plaintiffs' letter or otherwise sought to justify their objections.  *Id.*, ¶ 9.

On October 23, 2015, Plaintiffs' counsel sent an email to Defendants' counsel discussing outstanding discovery and scheduling issues, which included the issues raised in the October 2 letter (a copy of which was attached to the email).  *Id.*, ¶ 10, Ex. 6.  Defendants never responded substantively to the points raised in the email.  *Id.*, ¶ 11.

On November 3, 2015, the parties met and conferred telephonically.  *Id.*, ¶ 12.  Defendants stood on their objections, necessitating the filing of this sixth motion to compel.  *Id.*, ¶¶ 12-13, Ex. 7.

At no time during this meet and confer process did Defendants explain the basis for their objections, cite contrary authority, propose that Plaintiffs narrow their requests, or claim that they did not possess responsive documents.  *See id.*, ¶¶ 8-13.

---

[5] The parties have agreed to continue the depositions of GK, Mr. Girardi and Mr. O'Callahan pending the resolution of outstanding motions, including motions to obtain the bank and accounting records and other  documents necessary for the depositions.  *Id.*

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

**B.**    **Defendants' Position.**

The present discovery disputes concern two depositions Plaintiffs seek to take: 1) Deposition of Person Most Knowledgeable to testify concerning financial transactions with Mr. Girardi and Mr. O'Callahan, and 2) Deposition of Mr. Girardi. Plaintiffs served deposition notices on GK and Mr. Girardi for the purpose of seeking information concerning their net worth and financial condition.

On September 18, 2015, Plaintiffs served their Second Amended Notice of Deposition of GK. Baker Decl., ¶ 8. On September 23, 2015, GK timely served its objections to the Second Amended Notice of Deposition of the Person Most Knowledgeable ("PMK") of GK ("GK Notice"). *Id.*, ¶ 8.

On October 2, 2015, Defendants received Plaintiffs' meet and confer letter regarding net worth and financial discovery, pursuant to Local Rules 7-3 and 7-1. *Id.*, ¶ 9, Ex. 3. The October 2, 2105 letter addressed Defendants' Objections to the GK PMK Notice, in particular Topics 53 and 54.

In Plaintiffs' letter of October 2, 2015, Plaintiffs contend there, as they do in the instant motion, that their requests for information concerning each defendant's net worth and financial condition are proper on the basis of relevance. Specifically, Plaintiffs' letter of October 2, 2015, offers three explanations as to why the requested discovery information is relevant: 1) Plaintiffs' claims for breach of fiduciary duty and conversion both seek damages; 2) tracing the disposition of the settlement funds; 3) Defendants' purported motive for Defendants' misappropriations. *Id*.

Notably, in the October 2, 2015 letter, Plaintiffs assert that information concerning net worth and financial condition is relevant to tracing the HRT settlements funds because, "based on information Plaintiffs recently obtained it appears that GK paid itself $5,830,653.33 of the first $14,455,209,74 in settlement funds…before making any payments to the HRT Claimants. Plaintiffs are entitled to discovery financial information that may expose what happened to that more than $5.8 million in misappropriated funds." *Id*. The importance of Plaintiffs' assertion on

1  October 2, 2015 is twofold: 1) it demonstrates Plaintiffs are still in search of a theory

2  of this case upon which Plaintiffs can demonstrate they sustained damages; and 2)

3  Plaintiffs could have filed timely filed the instant motion before the discovery cut-off

4  date (December 2, 2015) and the date for the last day to hear motions (December 7,

5  2015). *Id.*, ¶ 4, Ex. 2.

6  On November 18, 2015, Plaintiffs served the Fifth mended Notice of

7  Deposition of Girardi | Keese and Requests for Production of Documents and Things.

8  On November 23, 2015, Defendants served Defendant Girardi | Keese's Objection to

9  Fifth Amended Notice of Deposition of Giardi | Keese and Request for Production of

10  Documents and Things ("Objection to the GK Deposition Notice"). *Id.*, ¶ 10 Ex. 4.

11  On November 30, 2015, Defendants' counsel sent an email to Plaintiffs' counsel

12  confirming that three depositions – GK PMK, Mr. Girardi, and Mr. O'Callahan –

13  could be continued to a date past the operative discovery cut-off of December 2, 2015.

14  Significantly, Defendants' counsel sent this email on the morning of November, 30,

15  2015, at approximately 7:55 a.m. *Id.*, ¶ 11, Ex. 5. Later that evening, without any

16  further discussion between the parties, Plaintiffs' counsel served their Notice of this

17  Motion and their portion of the Joint Stipulation. *Id.*, ¶ 11, Ex. 6.

18  Notably, this continuance marks the second time that Defendants afforded

19  Plaintiffs more time to conduct these depositions. On September 16, 2015, counsel for

20  Defendants sent an email to Plaintiffs' counsel agreeing to Plaintiffs' request to

21  continue the depositions of Mr. Girardi and Mr. O'Callahan for up to thirty days after

22  the then-operative discovery cut-off of October 2, 2015.  *Id.*, ¶ 12, Ex. 7.

23

24

25

26

27

28

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

# IV.   DISCOVERY AT ISSUE.

The issues in dispute, and the contentions and points and authorities of each party with respect to each issue, are presented below.

## DEPOSITION OF GIRARDI | KEESE –

## RULE 30(b)(6) PMK TOPICS

**TOPIC NO. 53:**

Details concerning any distribution of profits, loans made, or other payments by [GK] to Thomas Girardi during 2012, 2013 and 2014.

**TOPIC NO. 54:**

Details concerning any distribution of profits, loans made, or other payments by [GK] to James O'Callahan during 2012, 2013 and 2014.

Friedberg Decl., Ex. 2 (Fifth Amended Depo. Notice to GK), Attachment A, p. 21.

**DEFENDANTS' RESPONSE TO TOPICS 53 AND 54:**

Topics 53 and 54:  Plaintiffs have not moved for an order regarding financial discovery as to Defendants Thomas Girardi and James O'Callahan and, as a result, said production will not occur.

Friedberg Decl., Ex. 4 (Objs. to Fifth Amended Depo. Notice to GK), p. 2.

**A.    Plaintiffs' Contentions in Support of Compelling GK to Produce a PMK on Topic Nos. 53 and 54.**

GK objects to Topics 53 and 54 on the ground that Plaintiffs have not "moved for an order regarding financial discovery . . . ."  Presumably, the "order" referenced in this objection is the one required by California Civil Code section 3295(c) ("Section 3295(c)"), prior to obtaining net worth and financial condition discovery in civil suits pending in California state courts.  Section 3295 provides, in relevant part:

(a)     The court may, for good cause, grant any defendant a protective order requiring the plaintiff to produce evidence of a prima facie case of liability for damages pursuant to Section 3294, prior to the introduction of evidence of:

(1)     The profits the defendant has gained by virtue of the wrongful course of conduct of the nature and type shown by the evidence.

(2)     The financial condition of the defendant.

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

1

2

(b)     Nothing in this section shall prohibit the introduction of prima facie evidence to establish a case for damages pursuant to Section 3294.

3

4

5

6

7

8

9

10

11

12

(c)     No pretrial discovery by the plaintiff shall be permitted with respect to the evidence referred to in paragraphs (1) and (2) of subdivision (a) ***unless the court enters an order permitting such discovery pursuant to this subdivision.***   However, the plaintiff may subpoena documents or witnesses to be available at the trial for the purpose of establishing the profits or financial condition referred to in subdivision (a), and the defendant may be required to identify documents in the defendant's possession which are relevant and admissible for that purpose and the witnesses employed by or related to the defendant who would be most competent to testify to those facts.   Upon motion by the plaintiff supported by appropriate affidavits and after a hearing, if the court deems a hearing to be necessary, the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294.   Such order shall not be considered to be a determination on the merits of the claim or any defense thereto and shall not be given in evidence or referred to at the trial.

13

Cal. Civ. Code § 3295(a)-(c) (emphasis added).

14

15

16

17

18

The procedural requirements of section 3295(c), however, do not apply in federal cases.  Section 3295(c) is "a state discovery and procedural law" that "establishes a discovery scheme fundamentally inconsistent with the discovery rules under the Federal Rules of Civil Procedure."  *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 285-86 (C.D. Cal. 1998) (Chapman, M.J.).  As the *Oakes* court explained:

19

20

21

22

Examining Civil Code Section 3295(a)-(c), this Court finds that it is clearly a procedural law.  That is, Section 3295(c) merely restricts when and how evidence of a defendant's financial condition is obtained.  Discovery "is a procedural matter governed in the federal courts by the Federal Rules of Civil Procedure.  Thus, state discovery practices are usually irrelevant."

23

*Id*. at 285 (citations omitted).

24

25

26

27

28

Indeed, every California federal court that has considered the applicability of Section 3295(c) has followed *Oakes*, holding that federal plaintiffs need not make a prima facie showing of entitlement to punitive damages.  *See, e.g.*, *Zuniga v. Western Apartments*, 2014 WL 2599919, *4 (C.D. Cal. 2014) (Chooljian, M.J.) ("When a punitive damage claim has been asserted, a majority of federal courts permit pretrial

- 13 -

1   discovery of financial information about defendants without requiring the plaintiff to

2   establish a prima facie case on the issue of punitive damages . . . .  This Court elects to

3   follow the majority practice."); *Vieste, LLC v. Hill Redwood Development*, 2011 WL

4   855831, *2 (N.D. Cal 2011) (ordering that "[e]ach Defendant shall immediately

5   produce documents and provide supplemental interrogatory responses to plaintiffs

6   sufficient to establish net profits on an annual basis"); *Brooks v. Motsenbocher*

7   *Advanced Developments, Inc*., 2008 WL 2446205 (S.D. Cal. 2008) ("the protection of

8   § 3295(c) is not available to Defendants . . . ."); *Charles O. Bradly Trust v. Zenith*

9   *Capital LLC*, 2005 WL 1030218, *3 (N.D. Cal. 2005) ("it is not appropriate to delay

10  discovery on punitive damages because . . . such information is valuable to both

11  parties in making a realistic appraisal of the case and may lead to settlement and avoid

12  protracted litigation.").[6]

13          Moreover, these cases are in line with the vast majority of federal cases from

14  districts with state laws similar to section 3295(c).  *See, e.g., United States v. Matusoff*

15  *Rental Co*., 204 F.R.D. 396, 399 (S.D. Ohio 2001); *Christy v. Ashkin*, 972 F. Supp.

16  253 (D. Vt. 1997); *CEH, Inc. v. FV "Seafarer,"* 153 F.R.D. 491, 498 (D.R.I. 1994);

17  *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 130 F.R.D. 149, 151

18  (D. Kan. 1990).[7]

19  _____

20  [6] In *Garcia v. City of Imperial*, 270 F.R.D. 566 (S.D. Cal. 2010), the court held that a
    party "seeking punitive damages is entitled to discover information relating to the
21  defendant's financial condition in advance of trial without making a prima facie
    showing that he is entitled to recover such damages," but "Plaintiff must make *some*
22  showing of entitlement to such damages . . . ."  *Id*. at 572-73 (original emphasis).
    However, that case has been distinguished on the ground that it was a section 1983
23  civil rights action against police officers that "implicate[d] an additional layer of
    liability analysis on the question of qualified immunity for police officers," thus
24  requiring "some showing of entitlement to punitive damages."  *Vieste, LLC*, 2011 WL
25  855831 at *2.

26  [7] Even if Section 3295 applied, Plaintiffs prior filings more than adequately
27  "established that there is a substantial probability that [they] will prevail on the
28  claim[s] [for punitive damages]."  Cal. Civ. Code § 3295(c).  *E.g.,* Dkt. No. 65 [Pls.' Ex

- 14 -

1    In sum, GK's objection that Plaintiffs have not "moved for an order regarding

2    financial discovery" is without merit because Section 3295(c) has no application to

3    this federal case.

4    **B.     GK's Contentions in Opposition to Compelling GK to Produce a**

5    **PMK on Topic Nos. 53 and 54.**

6    **1.     Plaintiffs' Motion Is Untimely.**

7    Plaintiffs have filed the instant motion **after** the date set by the Court for the

8    last day to hear motions, December 7, 2015. Baker Decl, ¶ 4, Exhibits 1 and 2. On

9    November 30, 2105, Plaintiffs' counsel sent Plaintiffs' Notice of Motion to Compel

10   Net Worth Discovery in Connection with the Upcoming Depositions and for

11   Monetary Sanctions ("the instant motion") and Plaintiffs' portion of the Joint

12   Stipulation to Defendants via email. *Id*., ¶ 11, Ex. 6.

13   **a.     Plaintiffs' Motion Is Untimely Pursuant to Local Rule 37.**

14   Pursuant to Local Rule 37-2.2., "within seven (7) days of receipt of the moving

15   party's material, counsel for the opposing party shall personally deliver, e-mail, or fax

16   to counsel for the moving party the opposing party's portion of the stipulation…"

17   Therefore, Defendants' portion of the Joint Stipulation was not due until December 7,

18   2015, the date the Court set for the last day to hear motions. Local Rule 37-2.2 further

19   provides that after the opposing party's material is added to the stipulation, the moving

20   party, Plaintiffs here, are to provide the Joint Stipulation to Defendants to sign and

21   "return it to counsel for the moving party no later than the end of the next business

22   day." Thus, pursuant to Local Rule 37-2.2., Plaintiffs could file the Joint Stipulation

23   on December 7, 2015, at the earliest, or by December 8, 2015, at the latest.

24

25

26   Parte Application to Continue Trial Deadlines] and supporting papers filed under seal

27   (Sept. 15 and 28, 2015); Dkt. Nos. 135 and 136 [Pls.' Ex Parte Application to Modify Torrey Pines Bank Protective Order] and supporting papers filed under seal (Sept. 28,

28   2015).

- 15 -

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL**
**NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

1   It makes no difference whether Plaintiffs file on December 7 or December 8,

2   2015. Either way, the instant motion will be untimely.  Pursuant to the Local Rules

3   and the Court's operative scheduling order, *before* Plaintiffs even sent their portion of

4   the Joint Stipulation to Defendants, Plaintiffs were aware that their Motion would be

5   filed late.  Given that the instant motion is Plaintiffs' sixth discovery motion in this

6   matter,  Plaintiffs are undoubtedly familiar with the deadlines for filing a motion to

7   compel, such as the instant motion.   Therefore, at the time they noticed the instant

8   motion, Plaintiffs knew or should have known, on account of their delay, this, their

9   sixth discovery motion, would be  untimely. Yet, unsurprisingly, nowhere in the

10  instant motion, or in the two accompanying declarations concurrently filed therewith,

11  have Plaintiffs provided any justification or explanation for their undue delay in filing

12  the instant motion nor do they acknowledge its indisputable untimely filing.

13  **b.**   **Plaintiffs' Motion Is Untimely Pursuant to the Court's**

14  **Scheduling Order.**

15  Since the Court issued the Initial Scheduling Order in this matter on September

16  29, 2014, the Court has made it unequivocally clear  that the cut-off date for the last

17  day to hear motions is *not* synonymous with the last day to file motions.  The Court's

18  Initial Scheduling Order plainly provides:

19  [T]he Court has established a cut-off date for the *hearing* of motions. All
    motions must be noticed so that the *hearing* takes place on or before the

20  motion cut-off date. Counsel are advised that the Court may close a

21  hearing date once the number of motions filed exceeds the maximum
    number of motions that reasonably can be heard on that date. Counsel

22  should anticipate that a preferred hearing date may be unavailable.
    Therefore, to avoid being unable to file a motion to be heard by the cut-

23  off date, counsel *should file motions sufficiently in advance of the*

24  *hearing cut-off date to ensure that a hearing date is available*.

25  *Id*., ¶ 4, Ex. 1. p. 4 (emphasis in original).

26  Given the deadlines set by Local Rule 37-2.2 and the Court, as described in the

27  previous section,  it is impossible for the hearing on the instant motion to take place

28  on or before the motion cut-off date, which the Court requires, as demonstrated above.

- 16 -

1  Clearly, by filing this motion on [FILING DATE] and noticing it for [HEARING

2  DATE], Plaintiffs' failed to file their Motion "sufficient in advance of the hearing cut-

3  off date" of December 7, 2015, per the Court's order. Consequently, the instant motion

4  to compel is untimely and should not be heard by the Court.[8]

5  The Court took another opportunity to emphasize the importance of strict

6  adherence to the dates set in its scheduling order. In the Court's order on Plaintiffs' *Ex*

7  *Parte Application* the Court reiterated the importance of adherence to the schedule set

8  for this matter.  *Id*., ¶ 16, Ex. 2.  There, in discussing the timing of  Defendant GK's

9  production of documents pending Plaintiffs outstanding motions to compel, the Court

10  made a deliberate and purposeful reference to its own scheduling order: "the

11  production would still violate the Court's Scheduling Order, which makes clear that

12  discovery cutoff "is the date by which all discovery, *including all hearings on any*

13  *related motions*, is to be completed." (Docket No. 34 (emphasis in the original))."

14  *Id*., ¶ 16, Ex. 2, p. 10.

15  The operative discovery cut-off date in this matter is December 2, 2015.

16  Plaintiffs filed the instant motion after the discovery cut-off date of December 2,

17  2015. As expressed by the Court, the instant motion and the hearing on that motion,

18  should have been "completed" by December 2, 2015.  It is indisputable that the instant

19  motion was not completed by that time and could not have been completed by that

20

21

22  [8] This position asserted by Defendants is supported by the Court of Appeals for the
    Ninth Circuit, which affirmed denials of motions to compel as untimely under similar

23  circumstances when parties failed to comply with the court's clear scheduling orders.

24  *See Carrell v. Rowland*, 1997 U.S. App. LEXIS 26520, at *3 (9th Cir. Sept. 22, 1997).
    *See also United States v. Bogard*, 846 F.2d 563, 567 (9th Cir. 1988) (affirming a

25  magistrate judge's denial of a pretrial motion to inspect records because it was made

26  after the original and extended deadlines for filing pretrial motions had expired); *U.S.
    Dominator, Inc. v. Factory Ship Robert E. Resoff* 768 F.2d 1099, 1104 (9th Cir. 1985)

27  (affirming denial of a pretrial motion as untimely because the deadline for filing

28  preliminary motions had passed).

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

1   time; Plaintiffs were plainly aware of these two realities at the time they noticed the

2   motion and sent Defendants Plaintiffs' portion of the Joint Stipulation.

3         Furthermore, it is irrefutable that the Court, on two separate occasions (i.e.

4   entering two written orders concerning Plaintiffs' two *Ex Parte* applications (*See* Dkt.

5   Nos. 34, 160)), has made certain to emphasize the  importance of strict adherence to

6   the schedule it sets and how such respect for deadlines is integral to the litigation

7   process. During the hearing on Plaintiffs' Application, the Court expressed the

8   interplay in federal court between filing a motion to compel and the discovery cut-off:

> "One of the differences between federal practice and state practice, there
> is not a deadline to bring the motions to compel, but that's in recognition
> of the fact that there is a **firm discovery deadline** and had it been
> brought sooner, then maybe there would be more time."

12  Baker Decl. ¶¶ 15-16, Ex. 9, p. 17 (emphasis added).

13        As demonstrated , Plaintiffs' Motion is untimely because it is noticed to be

14  heard *after* the "firm" discovery cut off (December 2, 2015) and was *filed after* the last

15  day to hear motions ( December 7, 2015), pursuant to the Court's Scheduling Order.

16        **2.    *Defendants' Section 3295-based Objections Are Well-Founded.***

17              **a.    Plaintiffs Misapply The Law: The Court has Broad Discretion
                to Apply Civil Code Section 3295(c) as A Rule of State-Law
                Privilege or Privacy Protection.**

20        Defendants objected to Topics 53 and 54 because Plaintiffs failed to move for

21  an order regarding financial discovery.  Plaintiffs presume the "order" referenced is

22  the one required by California Civil Code section 3295(c).  Relying on that

23  presumption, Plaintiffs incorrectly assert that they are not required to make a prima

24  facie showing of entitlement to punitive damages because *Oakes v. Halvorsen Marine*

25  *Ltd.*, 179 F.R.D. 281, 285-86 (C.D. Cal. 1998), and its progeny, categorically bar

26  California federal courts from imposing such a requirement.  *Cf. M.G. v. Metro.*

27  *Interpreters & Translators, Inc.*, No. 12CV0460-JM MDD, 2014 WL 5494910, at *1

28  (S.D. Cal. Oct. 30, 2014) ("[I]t should be noted that…the Ninth Circuit has not

1  defined the extent of financial discovery allowed in a case alleging punitive

2  damages.).  Most recently, however, the court in *Stella* departed from the "majority"

3  practice and declined to follow the bright-line rule articulated in *Oakes*, opting instead

4  for a more pragmatic approach to resolving disputes concerning financial discovery.

5          In *Stella*, the court correctly recognized that "'[i]n state court actions, plaintiff

6  cannot obtain discovery as to defendant's wealth without a court order; and such order

7  can be issued only after plaintiff has shown a 'substantial probability' of recovering

8  punitive damages.' [W. Schwarzer et al., Cal. Practice Guide: Fed. Civil Procedure

9  Before Trial § 1:1062 (Rutter Group 2014)] (citing Cal. Civ.Code § 3295(c))."'  *Stella*

10  *Sys., LLC v. MedeAnalytics, Inc.*, No. 14-CV-00880-LB, 2015 WL 850219, at *3

11  (N.D. Cal. Feb. 25, 2015). The court then articulated that, although "[t]his does not

12  bind the federal court,…*federal courts in diversity may apply the rule as one of state-*

13  *law privilege or privacy protection*. Schwarzer, § 1:1063."  *Id.* (emphasis added).

14  Indeed, this approach complies with the federal rules, "which confirm the court's

15  broad discretion to control the discovery, introduction, and timing of such evidence

16  when relevant to punitive damages.'"  *Id.*; *see, e.g.*, *id.* ("Taking all these facts into

17  consideration, the court declines to require [the defendant] to respond to these

18  discovery requests at this time. When other evidence has developed, if [the plaintiff]

19  can show a "substantial probability" that it will prevail on its punitive-damages

20  request, *see* Cal. Civ.Code § 3295(c), the court will entertain a motion to compel [the

21  defendant] to produce the requested information, as then seems appropriate."); *see*

22  *also Dichter-Mad Family Partners, LLP v. U.S.*, 709 F.3d 749, 751 (9th Cir. 2013).

23

24

25

26

27

28

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

### b.   The Court Should Exercise Its Broad Discretion Under the Federal Rules And Require Plaintiffs To Establish A "Substantial Probability" Of Prevailing On A Claim for Punitive Damages.

Here, the Court should exercise its broad discretion under the federal rules and deny Request Nos. 50-63, as Plaintiffs have failed to show a "substantial probability" of recovering general damages, let alone punitive damages. *See Stella Sys.*, 2015 WL 850219, at *3. Indeed, Plaintiffs do not contend that the underlying HRT Litigation settled for less than a favorable amount. Plaintiffs do not contend that Defendants' conduct fell outside of the professional standard of care in settling the HRT Litigation. And Plaintiffs do not contend that they received less than the full amount of the HRT Litigation settlement funds, which explains why they have asserted *no* theory of recovery, and have identified *no* damages, thus far. *See Fragale v. Faulkner*, 110 Cal.App.4th 229, 236 (2003) ("In the case of a negligent misrepresentation by a fiduciary, "a plaintiff is only entitled to its actual or 'out-of-pocket' losses suffered because of [the] fiduciary's negligent misrepresentation under section 3333."); *see, e.g.*, *Slovensky v. Friedman*, 142 Cal.App.4th 1518, 1536 (2006) ("[P]laintiff's disgorgement claim fails as a matter of law. Where an attorney's misrepresentation or concealment has caused the client no damage, disgorgement of fees is not warranted."). Even if the "broader' measure of damages provided by [California Civil Code] sections 1709 and 3333" apply, Plaintiffs' recovery will be, at best, minimal. *See Fragale* at 236 ("[T]he benefit-of-the-bargain measure places a defrauded plaintiff in the position he would have enjoyed had the false representation been true, awarding him the difference in value between what he actually received and what he was fraudulently led to believe he would receive."). Accordingly, the Court should stay financial discovery until Plaintiffs have sufficiently established liability and damages, or until Plaintiffs show a "substantial probability" of prevailing on its punitive damages claim.

185127.9

**c.**   **The Court Should Exercise Its Broad Discretion Under the Federal Rules And Require Plaintiffs To Establish A "Compelling Need" For Defendants' Private Personal And Financial Information.**

Moreover, Plaintiffs should be required to obtain a court order because the discovery sought "comes within the zone of privacy protected by article I, section 1 of the California Constitution." *Moskowitz v. Superior Court*, 137 Cal.App.3d 313, 316 (1982); *Albizo v. Wachovia Mortgage*, No. 2:11-CV-2991 AC C, 2013 WL 1087815, at *3 (E.D. Cal. Mar. 14, 2013) (citing *Moskowitz*); *see Stella Sys.*, 2015 WL 850219, at *3 (instructing that "federal courts in diversity may apply the [substantial probability] rule as one of state-law privilege or privacy protection"). "When an individual's right of privacy in his financial affairs conflicts with the public need for discovery in litigation, the competing interests must be carefully balanced." *Moskowitz* at 316.  Here, Plaintiffs seek to discover information "concerning distributions, loans and other payments" to Messrs. Girardi and O'Callahan for "2012, 2013, and 2014."  This information, however, clearly falls within the zone of privacy protected by article I, section 1, of the California constitution.  *See Moskowitz* at 316. Thus, it cannot be obtained without a court order.  *See id.*; *Valley Bank of Nevada v. Sup. Ct. (Barkett)*, 15 Cal.3d 652, 658 (1975) (instructing that prior to permitting discovery of information protected by article I, section 1 of the California Constitution, the court must consider, among other things, its ability to "make an *alternative order* which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances").

For these reasons, Plaintiffs cannot discover Defendants' financial condition without first establishing a "substantial probability" of recovering punitive damages or a compelling need for the information sought.

185127.9

## DEPOSITION OF GIRARDI | KEESE –

## RULE 30(b)(2) DOCUMENT REQUESTS

**REQUEST NO. 50:**

All DOCUMENTS stating, reporting, or otherwise reflecting [GK's] net worth as of December 31, 2012, December 21, 2013, and December 31, 2014.

**REQUEST NO. 51:**

[GK's] profit and loss statements or reports for 2012, 2013 and 2014.

**REQUEST NO. 52:**

[GK's] income and expense statements or reports for 2012, 2013 and 2014.

**REQUEST NO. 53:**

Any lists, reports, or other DOCUMENTS identifying [GK's] accounts payable and accounts receivable at year-end 2012, 2013 and 2014.

**REQUEST NO. 54:**

Any lists, reports, or other DOCUMENTS identifying any real property and/or any improvements thereon in which [GK] held an ownership or leasehold interest during 2012, 2013 and/or 2014, and the value of any such interest.

**REQUEST NO. 55:**

Any lists, reports, or other DOCUMENTS identifying any personal property that [GK] own that you purchased for more than $10,000.

**REQUEST NO. 56:**

All DOCUMENTS RELATING TO [GK's] distribution of any profits to Thomas Girardi during 2012, 2013 and/or 2014.

**REQUEST NO. 57:**

All DOCUMENTS RELATING TO any loans that [GK] made to Thomas Girardi during 2012, 2013 and/or 2014, or that Thomas Girardi made to YOU during any of those years.

**REQUEST NO. 58:**

All ACCOUNTING RECORDS RELATING TO any expenses that [GK] paid on behalf of Thomas Girardi, or that were incurred by Thomas Girardi

185127.9

on YOUR behalf, during 2012, 2013 and 2014.

**REQUEST NO. 59:**

All DOCUMENTS RELATING TO [GK's] distribution of any profits to James O'Callahan during 2012, 2013 and/or 2014.

**REQUEST NO. 60:**

All DOCUMENTS RELATING TO any loans that [GK] made to James O'Callahan during 2012, 2013 and/or 2014, or that James O'Callahan made to YOU during any of those years.

**REQUEST NO. 61:**

All ACCOUNTING RECORDS RELATING TO any expenses that [GK] paid on behalf of James O'Callahan, or that were incurred by James O'Callahan on YOUR behalf, during 2012, 2013 and 2014.

["ACCOUNTING RECORDS" is defined as "refer[ing], without limitation, to ledger and journal entries, financial statements and reports, internal memoranda, bulls, invoices, receipts, audits, review and agreed upon procedures plans and reports and work papers and COMMUNICATIONS between [GK] and any outside accountancy or bookkeeping firms."]

["DOCUMENTS" is defined as including "electronically stored information . . . ."]

Friedberg Decl., Ex. 2 (Fifth Amended Depo. Notice to GK), Attachment B, pp. 2-3 (Definitions), 12-13 (Requests 50-61).

**DEFENDANTS' RESPONSE:**

First, Defendants object on the ground of right to privacy. In California, the right to privacy is set forth in Article I, Section I of the California Constitution and "extends to financial privacy in litigation . . . ." *Saca* at *4 [**]. Though the right of privacy is not absolute, an individual may invoke it to oppose the discovery of information concerning his or her financial affairs. *See Hill v. Nat'l College Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *Saca* at *4; see, e.g., Schnabel v. Superior Court*, 5 Cal. 4th 704 (1993). Defendants object because this request is unnecessarily invasive into the privileges and privacy rights of Girardi | Keese [***]. The interests of the responding party in the instant action outweigh the Plaintiffs need for the requested documents. *See Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999) (The right of privacy in California extends to financial privacy in litigation, but is "subject to balancing the needs of the litigation with the sensitivity of the information/records sought."); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990). Moreover, Plaintiffs have not established any right to punitive damages (or damages in general). *See Oakes v. Halvorsen Marine, Ltd.*, 179 F.R.D. 281, 284; *see also Kerner v.*

- 23 -

*Superior Court*, 206 Cal.App.4th 84, 120 (2012).  Plaintiffs must, at least, show that they are entitled to such damages before discovering the information sought under this Request.  *See Oakes* at 284; *Kerner* at 120.

Second, to the extent that the discovery sought here is not subject to the privileges and protections discussed above, Defendants object because the discovery is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  The information sought is also equally available.  This Request is also unduly broad and overly burdensome as it seeks electronically-stored information from sources that are not reasonably accessible.  *See* Fed. R. Civ. P. 26(b)(2); *see generally City of Colton v. American Promotional Events*, 277 F.R.D. 578, 583-84 (C.D. Cal. 2013).  Moreover, Responding Party has previously produced Request responsive documents within Responding Party's possession, custody, or control.  Should additional responsive documents exist, Responding Party has no duty to obtain or produce them.  *See Nosal v. Granite Park LLC*, 269 F.R.D. 284, 290 (S.D.N.Y. 2010) (finding that a party *has no obligations to obtain records from nonparty independent contractors* (emphasis added)).

After diligent search and reasonable inquiry, Responding Party is currently unaware  of  any discoverable information within its possession, custody,  or control which has not been produced.. [*sic*]  For these reasons, Responding Party cannot comply with this Request.  Responding Party is willing to meet and confer to narrow the scope of the discovery under this Request.

*[GK's Responses to Requests 50 to 61 are substantively identical.  The only apparent variations were (1) in Response 54, Defendants added a citation to U.S. Constitution, Amendments I & IV (see [**] above) and in Responses 56 to 61, Defendants added references to Mr. Girardi or Mr. O'Callahan, depending on to whom records related (see [***] above).]*

Friedberg Decl., Ex. 4 (Objs. to Fifth Amended Depo. Notice to GK), pp. 117-32.

## A.   Plaintiffs' Contentions in Support of Compelling GK to Produce Documents in Response to Requests 50 to 61.

Requests 50 to 55 seek documents concerning GK's financial condition (*i.e.*, net worth, assets, profits and losses, and income and expenses).  Requests 56 to 58 seek documents showing distributions, loans and other payments by GK to Mr. Girardi.  Requests 59 to 61 seek documents showing distributions, loans and other payments to Mr. O'Callahan.  In addition to its "Section 3295(c)" objection, GK objects on relevance, privacy, over breadth, burdensomeness and other grounds.  GK also contends that GK possesses no "discoverable" documents responsive to any of

1   the requests.  For the reasons stated below, these objections should be overruled and

2   GK ordered to produce all responsive documents.

3       **1.      GK's Objections Should Be Disregarded as Failing to**

4              **Comply with the Federal Rules.**

5       As an initial matter, GK's objections are procedurally defective.  When

6   objecting to a document request, the responding party must "state with specificity the

7   grounds for objecting to the request, including the reasons."  Fed. R. Civ. P.

8   34(b)(2)(B); *see Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587

9   (C.D. Cal. 1999) (Nakazato, M.J.) ("Boilerplate, generalized objections are inadequate

10  and tantamount to not making any objection at all."); *Duran v. Cisco Sys., Inc*., 258

11  F.R.D. 375, 379 (C.D. Cal. 2009) (Chapman, M.J.); *Saca v. J.P. Molyneux Studio,*

12  *Ltd*., 2007 WL 2972842, *3 (E.D. Cal. 2007) ("objections asserted in the boilerplate

13  responses to plaintiff's requests are waived").

14      The responding party also must "state whether any responsive materials are

15  being withheld on the basis of that objection."  Fed. R. Civ. P. 34(b)(2)(C*); see Reddy*

16  *v. Precyse Sols., LLC*, 2015 WL 3797297, *5 (E.D. Cal. June 18, 2015) (objections

17  insufficient where party did not "indicate which documents are responsive to each

18  request"); *Weidenhamer v. Expedia, Inc.*, 2015 WL 1292978, *7 (W.D. Wash.

19  Mar. 23, 2015) (sanctioning defendant $1,000 per day for withholding documents and

20  other discovery based on a "laundry list" of general objections that failed to identify

21  whether documents were withheld on the basis of any particular objection).

22      GK's objections – repeated practically verbatim in response to each request –

23  are not stated with specificity.  Nor does GK state if any documents have been

24  withheld on the basis of a particular objection.  Each objection, therefore, should be

25  overruled as failing to comply with Rule 34(b)(2).

26      **2.     GK's Boilerplate Objections Are Meritless.**

27      It is GK that bears the burden of showing that its objections should be

28  sustained.  *See Blankenship v. Hearst Corp*., 519 F.2d 418, 429 (9th Cir. 1975)

- 25 -

185127.9

1   ("Under the liberal discovery principles of the Federal Rules defendants were required

2   to carry a heavy burden of showing why discovery was denied."); *Nat'l Acad. of*

3   *Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680

4   (C.D. Cal. 2009) (Chapman, M.J.) ("The party who resists discovery has the burden to

5   show discovery should not be allowed, and has the burden of clarifying, explaining,

6   and supporting its objections.").  GK fails to carry its burden here.

7              **a.**       **GK's "Relevance" Objections Are Meritless.**

8        The Federal Rules authorize parties to obtain discovery regarding "any

9   nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P.

10   26(b)(1).   Relevant information for discovery purposes includes any information

11   "reasonably calculated to lead to the discovery of admissible evidence," *id*., and

12   encompasses "any matter that bears on, or that reasonably could lead to other matter

13   that could bear on, any issue that is or may be [presented] in the case."  *Oppenheimer*

14   *Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

15        GK objects that the evidence sought is not relevant, but fails to state any

16   specific facts or law in support of its objection.  Rather, evidence of Defendants' net

17   worth is relevant for the following three separate and independent reasons:

18        ***First***, "evidence of a tortfeasor's wealth is traditionally admissible as a measure

19   of the amount of punitive damages that should be awarded . . . ."  *City of Newport v.*

20   *Fact Concerts, Inc*., 453 U.S. 247, 270 (1981); *see Vieste, LLC*, 2011 WL 855831 at

21   *1 ("Discovery of Defendants' net worth and financial condition is clearly relevant to

22   the issue of punitive damages.").  Plaintiffs have brought claims for breach of

23   fiduciary duty and conversion.  Punitive damages may be awarded in connection with

24   both causes of action.  *See Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1582 (1994)

25   ("punitive damages are appropriate for a breach of fiduciary duty"); *Cyrus v. Haveson*,

26

27

28

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

65 Cal. App. 3d 306, 316 (1976) ("Causes of action for conversion . . . also support the award of exemplary damages.").[9]

**Second**, this Court previously overruled Defendants' relevance objections to requests for other financial records, observing:

> Plaintiffs alleged that Defendants improperly withheld or withdrew various amounts from the settlement funds; breached their duty to distribute the settlement funds promptly; and charged excessive costs to Plaintiffs . . . . Plaintiffs seek, inter alia, disgorgement and a constructive trust over all wrongfully converted money and property. ***These claims and remedies necessitate tracing Defendants' retention, use, and distribution of the settlement funds.***

Dkt. No. 79, p. 9 (emphasis added). The information and documents sought by this motion are necessary for Plaintiffs to determine the ultimate use and disposition of Settlement Funds. *See Kreidler v. Pixler*, 2007 WL 3046213, *1 (W.D. Wash. 2007) ("financial documents will also assist plaintiff in tracing the funds"); *see also Cunningham*, 679 F.3d at 366-67 (transfers to defendant attorneys' private accounts and subsequent attempts to reverse the transactions supported criminal convictions for misappropriation of client settlement funds).

**Third**, "[e]vidence that tends to show that a defendant is living beyond his means is of probative value in a case involving a crime resulting in financial gain." *U.S. v. Feldman*, 788 F.2d 544, 557 (9th Cir. 1986). Evidence of Mr. Girardi's personal finances during the period in which Defendants were depleting the Client Trust Account of Settlement Funds, including, in particular, his significant financial obligations, exorbitant spending and extravagant lifestyle, is therefore relevant to his motives for committing the misappropriations. *See U.S. v. Fredericks*, 145 F.3d 1342 (9th Cir. 1998) ("evidence regarding Battles' financial situation [admissible] because the evidence showed motive"); *Ellis v. Pennsylvania Higher Educ. Assistance Agency*, 2008 WL 5458997, *11 (C.D. Cal. 2008) (Pregerson, J.) ("evidence of KeyBank's

---

[9] Moreover, Defendants have not requested that issues of punitive damages be bifurcated from issues of liability. *See* Dkt. No. 31 (Rule 26 Joint Report), p. 13.

1  2007 financials may be relevant to motive"); *Cohen v. Trump*, 2015 WL 3966140, *7

2  (S.D. Cal. 2015) ("questioning regarding the capital contributions [Donald Trump]

3  made directly or indirectly to Trump University, or the capital contributions he

4  received directly or indirectly from Trump University is relevant to showing

5  Defendants' motive and bias, is not equally-available from other sources, and is not

6  covered by a federal right to privacy"); *Pac. Coast Steel v. Leany*, 2013 WL 5476625,

7  *2 (D. Nev. 2013) (evidence of wealth, net worth, income, profit and economic

8  motive may be "relevant to Hunt's claims that . . . Defendants had intent and motive

9  contrary to or unfaithful to the purpose of the APA").

10  ### b. GK's "Privacy" Objections Are Meritless.

11  GK objects that net worth information is protected from discovery by

12  Defendants' privacy rights. This Court has repeatedly overruled Defendants' privacy

13  objections to discovery of similar financial records and information.[10] It should do so

14  again.

15  GK's objection raises the preliminary question of whether, in California, an

16  entity such as GK has a protectable privacy interest at all. Plaintiffs note that under

17  California law partnerships do not have a privacy interest. *See Roberts v. Gulf Oil*

18  *Corp.*, 147 Cal. App. 3d 770, 791 (1983); *Fleck & Associates, Inc. v. City of Phoenix*,

19  471 F.3d 1100, 1104 (9th Cir. 2006). However, this Court has previously "assume[d],

20  without deciding," that GK has a protectable privacy interest in its financial affairs.

21  Dkt. No. 79, p. 7 (overruling GK's privacy objections to banking records).

22

23

---

24  [10] *See* Dkt. No. 79 [Motion to Quash Torrey Pines Subpoena], pp. 6-8 (overruling
privacy objections to bank account records); Dkt. No. 94 [Discovery Motion One]
25  (overruling privacy objections to GK financial records); *see also* Dkt. No. 127
[Review of Order on Discovery Motion No. One], p. 9 ("To the extent those
26  objections encompassed financial documents discussed in the prior ruling, the
27  Magistrate Judge again chose not to revisit the [privacy] issue and simply referenced
the [Torrey Pines Bank] Order.").

28

1    To the extent Defendants, including GK, have a privacy interest applicable

2  here, Plaintiffs' interest in determining the disposition of the settlement funds and the

3  full extent of Defendants' wrongdoing outweigh any such privacy interest.  The right

4  to privacy, as this Court has held, is not absolute:

5         [T]he privacy interest must be measured against other competing or
          countervailing interests in a balancing test.  *Pioneer Electronics (USA), Inc.,*
6         *v. Super. Ct.*, 40 Cal. 4th 360, 371 (2007).  In balancing the competing
          interests, the court should consider the purpose of the information sought,
7         the effect that disclosure will have on the parties and on the trial, the nature
          of the objections urged by the party resisting disclosure, and availability of
8         the court to make an alternative order placing restrictions or conditions upon
          the disclosure.  *Valley Bank of Nevada v. Super. Ct.*, 15 Cal. 3d 652, 658
9         (1975).

10

11  Dkt. No. 79, pp. 6-8 (internal quotations and brackets omitted).

12    As discussed above, the requested discovery is relevant to fixing the amount of

13  punitive damages, determining the disposition of the settlement funds and establishing

14  Mr. Girardi's motives.  The discovery promotes Plaintiffs' interests in establishing the

15  truth of their allegations and validity of their claims, expositing Defendants'

16  wrongdoing and ensuring that Plaintiffs are appropriately compensated.  This Court

17  has already determined that "Plaintiffs' allegations of conversion and commingling

18  over a three-year period warrant discovery into Bank accounts into which, e.g.,

19  Defendants could have wrongfully transferred portions of the settlement funds."  *Id.*,

20  p. 8.  The same rationale applies here.

21    Further, there is a comprehensive protective order in place.  *See* Dkt. No. 93.

22  The existence of the protective order safeguards against any potential privacy

23  intrusion from the production of personal and other financial information.  *See*

24  *Pioneer Electronics v. Superior Court*, 40 Cal. 4th 360, 371 (2007) ("Protective

25  measures, safeguards and other alternatives may minimize the privacy intrusion.")

26  (internal quotation marks omitted).[11]  In fact, this Court has previously ruled that the

27

28  [11] *See Vieste, LLC*, 2011 WL 855831 at *2 (ordering net worth discovery: "there is a
    protective order in effect . . . , thereby accommodating Plaintiffs' need for [financial

185127.9

1  "Protective Order provides for this additional safeguard [and] is sufficient to assuage

2  Defendants' privacy concerns regarding the documents requested by the [Torrey Pines

3  Bank] subpoena."  Dkt. No. 79, p. 9.  GK's privacy concerns are insubstantial

4  considering the existence of the protective order and the countervailing interests

5  discussed above; its privacy objections should be overruled.

6  ### c.      GK's Section 3295-Based Objections Are Meritless.

7  GK objects that "Plaintiffs have not established any right to punitive

8  damages . . . ."  This objection is similar to the Section 3295(c) objection discussed

9  above.

10  In connection with this objection, GK cites two cases, neither of which supports

11  it: *Oakes v. Halvorsen Marine, Ltd.*, 179 F.R.D. 281 (C.D. Cal. 1998) (Chapman,

12  M.J.), and *Kerner v. Superior Court*, 206 Cal. App. 4th 84, 120 (2012).  *Kerner*

13  involved a state court proceeding, and thus has no relevance to the issue of whether

14  Section 3295(c) applies in this federal case.  *Oakes* did address that issue, but held that

15  an objection in a federal case based on Section 3295(c) "is without merit," and that

16  there is no requirement in federal court to establish a right to punitive damages prior

17  to seeking net worth discovery.  179 F.R.D. at 285-86.  If anything, therefore, *Oakes*

18  establishes just how baseless GK's objections are.

19  ### d.      GK's "Unduly Broad" Objections Are Meritless.

20  GK objects that each request is "unduly broad," but fails to state why.  *See* Fed.

21  R. Civ. P. 34(b) (1)(B) (requiring party to state the specific basis for an objection);

22

23  condition] information while protecting Defendant's privacy"); *Oakes*, 179 F.R.D. at

24  284 (ordering net worth discovery: "[w]hile a party does have an interest in

25  nondisclosure and confidentiality of its financial records, this interest can be

26  adequately protected by a protective order."); *Charles O. Bradley Trust*, 2005 WL

27  1030218 at *2 (ordering net worth discovery: "[d]efendants' interests in maintaining

28  their privacy can be protected through a protective order"); *Zuniga*, 2014 WL

2599919 at *3 (ordering net worth discovery: "such information can be adequately

protected by a protective order"); *CEH*, 153 F.R.D. at 499 (ordering net worth

discovery: "a protective order would provide defendants with adequate protection").

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

1  *Bank of Mongolia v. M & P Global Fin. Servs., Inc.*, 258 F.R.D. 514, 519 (S.D. Fla.

2  2009) ("A party objecting on these grounds must explain the specific and particular

3  way in which a request is . . . overly broad . . . ."). Nor did GK propose any

4  narrowing of any request during the meet and confer process. Moreover, as discussed

5  above, the requests are appropriately directed and limited to net worth and financial

6  condition discovery that is relevant to Plaintiffs' claims.

7        **e.**      **GK's "Overly Burdensome" Objections Are Meritless.**

8        GK objects that the requests are "overly burdensome" because they seek

9  "electronically-stored information from sources that are not reasonably accessible."

10        For a start, this objection is limited to ESI, and thus does not excuse production

11  of other responsive documents. More fundamentally, GK again fails to support its

12  objection with any facts or law, or make any effort to explain what burdens would be

13  involved in producing responsive ESI. Fed. R. Civ. P. 34(b)(1)(B); *see A. Farber &*

14  *Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (Chapman, M.J.)

15  ("general or boilerplate objections such as 'overly burdensome and harassing' are

16  improper – especially when a party fails to submit any evidentiary declarations").

17  Indeed, ESI is generally *easier* to access, making this objection particularly suspect.

18  In fact, GK has yet to produce *any* documents in native electronic format or provide

19  *any* meta-data in this case. This objection should be overruled as unsubstantiated

20  factually and flawed legally.

21        **f.**      **GK's "Equally Available" Objections Are Meritless.**

22        GK objects that the "information sought is equally available," without

23  indicating what specific information is available, to whom, or from what source. In

24  fact, the thrust of GK's responses is the opposite, that the requested information is

25  private (and therefore not publicly available). The truth in that the requested

26  information is not available to Plaintiffs; it is in the exclusive possession of

27  Defendants.

28

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**
185127.9

1

**g.    GK's "Previously Produced Responsive Document"**

2

**Objections Are Meritless.**

3       GK objects that it has "previously produced Request responsive

4  documents . . . ."  In fact, Plaintiffs are unaware of responsive documents having been

5  previously produced.  *See* Declaration of John Sheehan ("Sheehan Decl."), ¶ 3.  If a

6  previously produced document is responsive, GK need not produce it again; it may

7  reference the document by bates or other identifying number in its response.  *See*

8  *Reddy*, 2015 WL 3797297 at *5 (responding party's "statement that she has no other

9  responsive documents other than those that have already been produced in initial

10  disclosures and in support of her motion for summary judgment is insufficient to

11  comply with the Federal Rules."); *Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal.

12  2006) ("Defendant is entitled to individualized, complete responses to each of the

13  requests . . . accompanied by production of each of the documents responsive to the

14  request, regardless of whether the documents have already been produced").

15       *3.    The Evidence Sought Is in GK's Possession, Custody, or Control.*

16       Finally, GK claims that it "is currently unaware of any *discoverable*

17  *information* within its possession, custody, or control which has not been produced."

18  (Emphasis added.)  Because GK does not state what it means by "discoverable

19  information," this claim is all but meaningless.  To the extent that GK means to

20  suggest that all responsive documents have been produced, this is not true; few, if any,

21  responsive document have been provided to date.  *See* Sheehan Decl., ¶ 3.  To the

22  extent that it means to suggest that it is withholding responsive documents that are not

23  "discoverable information," as discussed above, it has no valid basis for withholding

24  the documents.  Nor has it provided a privilege log of any sort to identify the withheld

25  documents or justify not producing them.  *See Burlington N. & Santa Fe R. Co. v.*

26  *U.S. Dist. Court*, 408 F.3d 1142, 1148 (9th Cir. 2005) (district court's determination

27  that defendant waived its privilege objections when it failed to file a timely privilege

28  log was "well outside the realm of clear error"); *Burch v. Regents of Univ. of Cal.*,

- 32 -

1   2005 WL 6377313, *3 (E.D. Cal. 2005) (deeming privilege objections waived when

2   the defendants did not produce a privilege log until six months after requests at issue

3   were served); Dkt. No. 127, p. 8 ("the Magistrate Judge found waiver here, stating,

4   '[T]here is no privilege log, and that's not the way discovery is supposed to work.'").

5        GK no doubt possess records of distributions, loans and payments to its

6   partners, as well as records of its profits and losses, income, expenses, and accounts

7   payable and receivable.  GK could not operate without such records.  The Court

8   should order GK to timely produce them.

9   **B.    GK's Contentions in Opposition to Compelling Further Response.**

10       Defendant GK objects to producing documents responsive to Plaintiffs' requests

11  50 -61, which seek information concerning GK's financial condition (Requests 50 –

12  55), documents showing distributions, loans and other payments by GK to Mr. Griardi

13  (Requests 56 – 58), and documents showing distributions, loans and other payments to

14  Mr. O'Callahan. Plaintiffs fail to articulate why the documents and information it

15  seeks are within the scope of Rule 26(b)(1). "Rule 26(b) will not permit unlimited

16  discovery." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th

17  Cir. 2010). Rule 26(b)(1) permits discovery only of "[r]elevant information" and the

18  discovery must "appear[] reasonably calculated to lead to the discovery of admissible

19  evidence." Fed. R. Civ. P. 26(b)(1); *see also Food Lion, Inc. v. United Food &*

20  *Comm'l Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997)

21  ("the relevance standard of Rule 26 is not without bite").

22       Accordingly, discovery requests should not be granted "based on pure

23  speculation that amount to nothing more than a 'fishing expedition' into actions or

24  past wrongdoing not related to the alleged claims or defenses." *Colleens*, 222 F.R.D.

25  at 253. This is true because "Rule 26(b), although broad, has **never** been a license to

26  engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy* 619

27  F.3d at 1163; *see also* Fed. R. Civ. P. 26(b)(2) (protecting against overly burdensome

28  discovery requests, discovery of cumulative materials and overly costly discovery

185127.9

requests). In bringing a motion to compel further admissions or document production, the burden is on the moving party to demonstrate "actual and substantial prejudice resulting from the denial of discovery." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001). More importantly, "[t]he burden lies with the moving party to show clearly that the information sought is relevant to the case and would lead to admissible evidence." *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). "Courts have discretion to limit discovery of relevant information if the burden or expense of the proposed discovery outweighs its likely benefits. Fed. R. Civ. P. 26(b)(2).

1.    **The Information Plaintiffs Seek Here Violates the Court's Order Of October 8, 2015  Denying Plaintiffs' Request To Serve Additional Discover**y

On September 15, 2015, Plaintiffs filed their Ex Parte Application to Continue Trial Date and Pre Trial-Deadlines and for Leave to Serve Additional Discovery (the "Application"). *See* Dkt. No. 120. Defendants submitted an Opposition on September, 16, 2015. *See* Dkt No. 126.  The Court held a hearing on the Application on October 5, 2015. Baker Decl., ¶ 14, Ex. 8.  On October 8, 2015, the court issued an order granting, in part, and denying, in part, the Application.  *Id*., ¶ 16, Ex. 2. The Court granted Plaintiffs' request to continue all pre-trial deadlines, in order to "allow all pending discovery disputes to be resolved and the ordered discovery to be produced." *Id*.  The Court denied Plaintiffs' request to continue the trial date. Most importantly, in the October 8 Order, the Court denied Plaintiffs' request to serve additional discovery:

> "Because the outstanding discovery requests already encompass information necessary to trace the distribution of the HRT Settlement fund, the Court **DENIES** Plaintiffs' request to serve additional discovery. As the Court indicated at the hearing, Plaintiffs failed to establish good cause for reopening discovery since additional requests would advance Plaintiffs' claims only marginally while threatening to significantly prolong this action."

*Id.,* ¶ 16, Ex. 2, pg. 1.

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

Here, it is Defendant GK's position that the production requests at issue in the instant motion are duplicative of those sought by Plaintiffs in the Application. As a result, GK requests that the Magistrate Judge find that because the financial information sought here is duplicative of the additional discovery sought by Plaintiffs and denied by the Court, that to grant Plaintiffs' motion would amount to permitting Plaintiffs to violate the Court's October 8 Order.

> In the Application, Plaintiffs sought leave to serve the following discovery: Plaintiffs also request leave to serve the following discovery pertaining to Defendants' banking and accounting records: (1) subpoena for additional bank records to TPB; (2) deposition subpoena to the TPB Custodian of Records; (3) deposition notice to Defendant Girardi | Keese's CFO; and (4) requests for admission limited to receipt and disposition of settlement funds.

*Id.,* ¶ 16, Ex. 2, pg. 12.

Here, GK contends that the information responsive to the discovery at issue in the instant motion would have also been encompassed by the foregoing discovery requests sought by Plaintiffs in the Application and denied by the Court on October 8, 2015, two months prior to Plaintiffs' filing this Motion.   To illustrate, the following table shows which of the discovery requests sought by Plaintiffs in this Motion (right column) would have been responsive to the discovery sought by Plaintiffs and denied by the Court in the October 8 Order (left column):

| Plaintiffs' Additional Discovery Denied By The Court's October 8 Order (See Dkt. 160). | Plaintiffs' Requests for Production Sought Through The Instant Motion to Compel |
| --- | --- |
| Subpoena for additional bank records to TPB | Request Nos: 56, 57, 59, 60, 61 |
| Deposition subpoena to the TPB Custodian of Records | Request Nos: 56, 57, 59, 60, 61 |
| Deposition notice to Defendant Girardi | Keese's CFO | Request Nos: 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61 |

185127.9

| Requests for admission limited to receipt and disposition of settlement funds[12] | |
|---|---|
| | |

As the table shows, the similarities are obvious. The information sought by the discovery requests already denied and the production requests Plaintiffs seek to compel  here are indistinguishable. It is therefore indisputable that the information Plaintiffs seek through this Motion is encompassed by the discovery already denied by the Court in its October 8 Order.  At bottom, the information responsive to Plaintiffs' requests here would have also been responsive to Plaintiffs discovery requests the court denied. Granting Plaintiffs' Motion to compel would effectively authorize Plaintiffs to violate the Court's October 8 Order.

For the reasons stated above, Plaintiffs' Motion should be denied on the basis that the financial information sought is duplicative of the additional discovery previously sought and denied by Plaintiffs' in their Ex Parte Application For Leave to Serve Additional Discovery (*See* Dkt. Nos. 120, 160).

### a.   *Plaintiffs Seek Information The Court Found Inappropriate to Investigate Through This Litigation*

Plaintiffs continue to assert their position that they are entitled to the discovery at issue here as a result of newly obtained documents produced by Defendants in response to Plaintiffs' previous document requests. Plaintiffs assert this position notwithstanding the fact the Court already considered it and expressly denied it in the October 8 Order:

> "Plaintiffs argue that such limited requests are particularly appropriate in light of the newly-discovered evidence presented under seal. (Reply at 3). The Court finds, however, that additional discovery would advance

---

[12] Not surprisingly, because  all of the document requests Plaintiffs seek to compel here, Request Nos. 50 – 61, extend so far beyond the scope of the HRT Litigation out of which the instant litigation arises (notably, none of the requests make a single reference to the "HRT Claimants" or the "HRT Litigation"), none are encompassed by Plaintiffs proposed  "requests for admissions limited to receipt and disposition of settlement funds.

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**
185127.9

Plaintiffs' claims **only marginally** because the information necessary to trace the HRT Settlement funds is **already encompassed by Plaintiffs' pending requests**. This litigation is not the appropriate forum to investigate the allegations under seal."

Baker Decl., ¶ 16, Ex. 2, p.12 (emphasis added).

Perhaps the most important part of the Court's order cited to above is the Court's finding that the present litigation is not the forum to investigate the allegations under seal. The Court's finding directly bears on the discovery requests at issue in the instant motion. Here, Plaintiffs seek to compel GK to produce documents in response to requests Nos. 50 through 61. By requesting this information, and on the basis upon which Plaintiffs have done so, Plaintiffs are in violation of the Court's Order of October 8, 2015:

The chronology of events is important here in demonstrating how Plaintiffs' Motion violates the Court's order of October 8, 2015:

- October 2, 2015: Plaintiffs' counsel sends Defendants' counsel a meet and confer letter concerning the production requests for the deposition of the GK PMK. In this letter, Plaintiffs' counsel writes: "[b]ased on information Plaintiffs recently obtained it appears that GK paid itself $5,830,653.33 of the first $14,455,209,74 in settlement funds…before making any payments to the HRT Claimants. Plaintiffs are entitled to discovery financial information that may expose what happened to that more than $5.8 million in misappropriated funds." Baker Decl., ¶9, Ex. 3, pg. 3 (emphasis added).

- On October 5, 2015, the Court held a hearing on Plaintiffs' Application. *Id*., ¶¶ 14-15, Ex. 8. [13]

- On October 8, 2015, the Court issued an order denying Plaintiffs' request

---

[13] Plaintiffs' counsel Jeffrey B. Isaacs, who signed Plaintiffs' meet and confer letter did not appear at the hearing; instead, Jerome Friedberg and Paige Shen appeared on behalf of Plaintiffs. *Id*., ¶14.

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

1    for leave to serve additional discovery. In pertinent part, the Court's made

2    the following finding: "[t]his litigation is not the appropriate forum to

3    investigate the allegations under seal." *Id.*, ¶ 16, Ex 2, pg. 12.

4    Based on the chronology provided, *supra*, the Court's Order of October 8, 2015

5    rendered moot Plaintiffs' concerns regarding the purported "misappropriated funds."

6    As a result, Plaintiffs should have ceased their meet and confer efforts right then and

7    there. But they did not stop. Plaintiffs continued their meet and confer attempts with

8    Defendants concerning the very requests the Court deemed inappropriate in the

9    present litigation.[14]  Therefore, because Plaintiffs persisted in their meet and confer

10    efforts concerning GK's financial condition and served an amended notice of

11    deposition of GK *after* the Court ordered such information was inappropriate for the

12    present forum,  Plaintiffs' discovery requests were properly objectionable and

13    Defendant GK was substantially justified in making its objections.

14    In sum, Plaintiffs' motion seeks information the Court has deemed inappropriate

15    for this litigation, Plaintiffs motion directly violates the Court's Order of October 8,

16    2015. On that basis, Plaintiffs' Motion should be denied.

17

18

19

20

21

22

---

23    [14] In spite of the Court's order, Plaintiffs continued to meet and confer with

24    Defendants concerning request Nos. 50 – 61, which seek information the court

25    determined inappropriate to this litigation in its Order of October 8, 2015. Such efforts in violation of the October 8 Order include: 1) on October 23, 2015, sending

26    Defendants' counsel an email, including the October 2, 2015 letter as an attachment;

27    2) On November 3, 2015, conducting a telephonic meet and confer with Defendants' counsel; 3) On November 18, 2015, Plaintiffs served the Fifth Amended Notice of

28    Deposition of GK and Requests for Productions of Documents and Things. *Id.*, ¶ 10.

185127.9

**2.      GK's "Relevance" Objections Are Well-Founded.**

      **a.      <u>Defendants' Financial Condition Is Entirely Irrelevant to Plaintiffs' Claims Against Defendants and Plaintiffs' Claim for Punitive Damages</u>.**

Even if the Court permits Plaintiffs to discover information relating to Defendants' financial condition, two grounds independently compel the conclusion that Request Nos. 50-63 are *not* discoverable under Fed. R. Civ. P. 26(b)(1). First, "[o]nly *current* financial documents are relevant to a claim for punitive damages." *Fieldturf Int'l, Inc., Fieldturf, Inc. v. Triexe Mangement Grp., Inc.*, No. 03 C 3512, 2004 WL 866494, at *3 (N.D. Ill. Apr. 16, 2004) (emphasis added); *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* 1995 WL 625962, at *4 (D.Kan. Oct.5, 1995); *see, e.g.*, *Metro. Interpreters & Translators, Inc.*, 2014 WL 5494910, at *3. Here, Plaintiffs seek to discover evidence relating to Defendants' financial condition for 2012, 2013 and 2014. But such information is irrelevant under Fed. R. Civ. P. 26(b)(1) because it does not demonstrate Defendants' *current* financial condition. *See id.* Moreover, such information becomes relevant only after Plaintiffs have sufficiently established liability and damages, or only after Plaintiffs show a "substantial probability" of prevailing on its punitive damages claim. *See Hamm v. American Home Prods. Corp.*, 888 F.Supp. 1037, 1038 ("Fed.R.Civ.P. 42(b)grants district courts the discretion to bifurcate liability and damages issues in a single action."

Second, Defendants' motive is not relevant to the parties' claims or defenses. Here, Plaintiffs claim that evidence of Defendants' financial condition is relevant to Mr. Girardi's motives for committing the alleged misappropriations. However, "[c]onversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant....*Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial.*" *Welco Elecs., Inc. v. Mora*, 223 Cal.App.4th 202, 208 (2014) (emphasis added) (internal citations

- 39 -

and quotation marks omitted); *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (with regard to a claim for conversion, "[t]he foundation of the action rests neither in the knowledge nor the intent of the defendant).  Similarly, evidence of a defendant's motive or state of mind is not relevant to a claim for breach of fiduciary duty, regardless of whether the claim is based on negligent misrepresentation or fraud.  *See Stanley v. Richmond*, 35 Cal.App.4th 1070, 1087 ("The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach."); *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (2012) ("The California tort of "negligent misrepresentation" requires that the defendant "lacked any reasonable ground for believing [its] statement to be true," whereas California fraud requires that the defendant "made an intentionally false statement.").

Finally, as the cases cited by Plaintiffs show, evidence of a defendant's motive and state of mind is generally relevant only in criminal, not civil, proceedings. *See U.S. v. Feldman*, 788 F.2d 544, 557 (9th Cir. 1986) (concerning criminal charges of unarmed bank robbery); *U.S. Fredericks*, 145 F.3d 1342 (9th Cir. 1988) (defendants appealing convictions and sentences for possession with the intent to distribute crystal methamphetamine and aiding and abetting possession with intent to distribute crystal methamphetamine).  In addition, those cases are entirely indistinguishable from the present case.  *See id.*; *Cohen v. Trump*, 2015 WL 3966140, at *7 (S.D. Cal. 2015) (involving a discovery dispute a civil RICO claim where the plaintiff had already established a reasonable probability of prevailing on the merits in *Makaeff v. Trump*).

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

3. **GK's "Privacy" Objections Are Well-Founded**

a. **Because Mr. Girardi and Mr. O'Callahan Have a Protectable Privacy Interest Under California Law, Plaintiffs Must Establish A "Compelling Need" For GK's Private Financial Information.**

Plaintiffs should be required to obtain a court order because the discovery sought "comes within the zone of privacy protected by article I, section 1 of the California Constitution." *Moskowitz v. Superior Court*, 137 Cal.App.3d 313, 316 (1982); *Albizo v. Wachovia Mortgage*, No. 2:11-CV-2991 AC C, 2013 WL 1087815, at *3 (E.D. Cal. Mar. 14, 2013) (citing *Moskowitz*); *see Stella Sys.*, 2015 WL 850219, at *3 (instructing that "federal courts in diversity may apply the rule as one of state-law privilege or privacy protection"). "Even before the explicit incorporation of the right of privacy into our state Constitution, we recognized that 'the protection of one's personal financial affairs and those of his (or her) spouse and children against compulsory public disclosure is an aspect of the zone of privacy which is protected by the Fourth Amendment and which also falls within that penumbra of constitutional rights into which the government may not intrude absent a showing of compelling need and that the intrusion is not overly broad.'" *Internat. Fed. of Prof. & Tech. Engineers, Local 21, AFL-CIO v. Sup. Ct.*, 42 Cal.4th 319, 330; *see Moskowitz* at 316 ("When an individual's right of privacy in his financial affairs conflicts with the public need for discovery in litigation, the competing interests must be carefully balanced.").

Here, Plaintiffs seek to discover information concerning "GK's financial condition," as well as information concerning all distributions, loans and other payments by GK to Messrs. Girardi and O'Callahan for 2012, 2013 and 2014. This information, however, clearly falls within the zone of privacy protected by article I, section 1, of the California constitution. Thus, it cannot be obtained without a court order. *See Moskowitz*, 137 Cal.App.3d at 316; *Valley Bank of Nevada v. Sup. Ct. (Barkett)*, 15 Cal.3d 652, 658 (1975) (instructing that prior to permitting discovery of

- 41 -

1   information protected by article I, section 1 of the California Constitution, the court

2   must consider, among other things, its ability to "make an *alternative order* which

3   may grant partial disclosure, disclosure in another form, or disclosure only in the

4   event that the party seeking the information undertakes certain specified burdens

5   which appear just under the circumstances"); *see also Fortunato v. Sup. Ct.,* 114 Cal.

6   App. 4th 475, 481 (2003) ( "There is a right to privacy in confidential customer

7   information *whatever* form it takes, whether that form be tax returns, checks,

8   statements, or other account information." (emphasis in original)).

9        Moreover, Plaintiffs incorrectly claim that Defendants' privacy concerns are

10   meritless because there is a protective order in place. Both personal and financial

11   privacy interests are implicated when financial discovery is sought. *See Internat. Fed.*

12   *of Prof. & Tech. Engineers, Local 21, AFL-CIO*, 42 Cal.4th at 493; *see also See Cobb*

13   *v. Sup. Ct.*, 99 Cal.App.3d 543, 550 (1979). And while a "comprehensive" protective

14   order may suffice to protect a person's financial privacy interests, it may be

15   *insufficient* to protect his or her *personal privacy interests*, as financial information

16   may reveal personal, intimate details about a person's private affairs. Thus, Plaintiffs

17   must first establish that the need for the information sought outweighs, and justifies

18   abridging, the financial and personal privacy interests of Mr. Girardi and Mr.

19   O'Callahan.

20        **b.    Because GK Has a Protectable Privacy Interest Under**

21        **California Law, Plaintiffs Must Establish A "Compelling**

22        **Need" For GK's Private Financial Information**

23        With respect to GK, Plaintiffs incorrectly assert that partnerships do not have a

24   privacy interest under California law and rely on two cases in support of that

25   assertion. *See Roberts v. Gulf Oil Corp.,* 147 Cal. App. 3d 770, 790 (Ct. App. 1983)

26   and *Fleck & Associates, Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d

27   1100, 1103 (9th Cir. 2006). But neither of those cases applies here. *See Roberts* at

28   790 (holding that "Article I, section 1, should not be interpreted to preclude an agency

1   such as a county assessor or the Franchise Tax Board from inspecting records of a

2   taxpayer."); *Fleck* at 1103 (finding that a corporation has no *personal* right of privacy

3   and thus has no standing to challenge the constitutionality of a state ordinance

4   prohibiting "live sex act business[es]").  Further, as one California court of appeal

5   recently noted, "[t]he extent of any privacy rights of a business entity is unsettled."

6    *Nativi v. Deutsche Bank Nat'l Trust Co.* (2014) 223 CA4th 261, 314 (2014) (internal

7   quotation marks omitted); *United States v. Hubbard*, 650 F.2d 293, 304-07 (D.C. Cir.

8   1980) (privacy rights accorded artificial entities are not stagnant but depend on the

9   circumstances).

10      Here, Plaintiffs cannot discover financial information relating to, among other

11  things, GK's profits, losses and distributions for 2012, 2013 and 2014, by simply (and

12  incorrectly) stating that business entities have no private interest under California law.

13  Rather, Plaintiffs must demonstrate that the information sought is directly relevant to a

14  cause of action or defense and there is a compelling need that outweighs the

15  confidentiality or privacy of GK.  *See Hinshaw, Winkler, Draa, Marsh & Still v. Sup.*

16  *Ct.*, 51 Cal.App.4th 233, 237 (1996).  In other words, to obtain the discovery they

17  seek, Plaintiffs "must make a higher showing of relevance and materiality than would

18  be necessary for less sensitive material."  *Id.*  Because Plaintiffs have failed to make

19  such a showing, the Court should deny Request Nos. 50-63.

20          **4.      GK's Section 3295-Based Objections Are Well-Founded**.

21      As discussed above, Plaintiffs cannot discover Defendant's financial condition

22  without first establishing a "substantial probability" of recovering punitive damages or

23  a compelling need for the information sought,  which must be outweighed by

24  Defendants' competing personal and financial privacy interests.  Accordingly, Mr.

25  Girardi's objections based on Section 3295 objections should be sustained.

26          **5.      GK's "Unduly Broad" Objections Are Well-Taken**.

27      Defendant GK objects to Plaintiffs Requests Nos. 50 through 61 on the basis

28  that they are unduly broad because they are unquestionably overbroad and not

- 43 -

185127.9

1 reasonably calculated to lead to relevant evidence. Despite the present litigation

2 arising from Defendants having served as counsel for Plaintiffs in the underlying HRT

3 Litigation, none of these 12 requests refer specifically "HRT Litigation." *See* Request

4 Nos. 50 - 61, *supra*. Regardless of Plaintiffs' contentions to the contrary, these

5 requests, are not, in fact, narrowly tailored to the present litigation.[15] Instead, the

6 scope of these requests is so broad to include GK's cases, clients, personnel whom are

7 wholly unrelated and unaware of the litigation. Information responsive to these

8 requests, therefore, would encompass financial information concerning and relating to

9 persons and entities, thus impermissibly interfering with their guaranteed right to

10 privacy.

11 The Court should not permit Plaintiffs to have unfettered, unrestricted to

12 infringe on the privacy rights of individuals and entities that are neither implicated nor

13 affiliated by the present litigation. Clearly, these requests are meant to harass

14 Defendants given the sensitive nature of financial discovery. Moreover, Plaintiffs do

15 not cite any authority for such wide-ranging, limitless discovery. As such, the Court

16 should find that these requests are impermissibly overbroad.

17      a.    **Plaintiffs' Requests Are Overly Broad For the Award of**

18                **Punitive Damages, If Any**

19 While Plaintiffs contend Request Nos. 50-61 are relevant because punitive

20 damages may be awarded for Plaintiffs' alleged claims for breach of fiduciary duty

21 and conversion, Plaintiffs are incorrect in assuming such claims equip them with *carte*

22 *blanche* or free rein to make requests that are limitless in their nature and scope. "For

23 the purposes of punitive damages, Plaintiffs are entitled to discover only those

24 documents and information necessary to establish Defendants' current financial

25 condition and net worth." *See Vieste, LLC v. Hill Redwood Development*, No. C-09-

26 _____

27 [15] In particular, Request Nos. 53-55, are especially overbroad given that the language of all three requests, seeking "**any** lists, reports, or other DOCUMENTS…" (emphasis

28 added).

**JOINT STIPULATION RE: PLS.' MOTION TO COMPEL**
**NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

04024 JSW, 2011 WL 855831 at *3 (N.D. Cal. Mar. 9, 2011).  To that end, Plaintiffs' document requests Nos. 50-61 are overbroad. For example, Plaintiffs' requests 50 – 54 and 56 – 61 seek financial information for the years 2012, 2013, and 2014.[16]  These requests are too broad. Discovery of Defendant GK's net worth and financial condition should be limited to information about Defendant's current assets and liabilities, given that "past earnings and net worth cannot reasonably lead to relevant information on the issue of punitive damages." *Hughes v. Groves*, 47 F.R.D. 52, 55 (W.D. Mo. 1969); *see also S. Cal. Housing Rights Ctr. v. Krug*, 2006 U.S. Dist. LEXIS 65330, 2006 WL 4122147, at *2 (C.D. Cal. Sept. 5, 2006).

Moreover, the only period of time for which net worth might be relevant would be the year in which judgment is rendered against Defendant GK. Thus, each request seeking information for years 2012, 2013, 2014 is overly broad on its face because it is the year 2015 and judgment has not been rendered in this matter.  *See Vieste* at *3 (discovery of defendants' net worth and financial condition limited to current assets and liabilities, given that "past earnings and net worth cannot reasonably lead to relevant information on the issue of punitive damages"). Consequently, Plaintiffs' Request Nos. 50 - 61, are premature because the information sought would be applicable only if Plaintiffs were able to show they are entitled to punitive damages. That showing is not made simply because Plaintiffs filed a complaint alleging claims for which punitive damages can be awarded.  If it becomes evident that Defendant GK is likely to be subject to punitive damages in the instant litigation, at that time, the Court can order Defendant to produce "net worth" information.  Unless and until such time, however, Plaintiffs' request Nos. 50-61, should be withdrawn. *See Tyco Intern. Ltd. v. Walsh*, No. 02 Civ. 4633 (DLC), 2010 WL 3000179 (S.D.N.Y. 2010), at *1-2

---

[16] Request No. 55 provides no limit on time whatsoever, as it seeks, "[a]ny lists, reports, or other DOCUMENTS identifying any personal property that [GK] own that you purchased for more than $10,000."  Request No. 55 is limitless as to time, and, therefore, impermissibly overbroad.

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

1   ("A defendant's net worth is only relevant if there is a finding that punitive damages

2   should be awarded....Because the issue of punitive damages may never arise,

3   discovery on defendant's net worth is not yet strictly necessary. Furthermore, even if it

4   is determined at trial that punitive damages are warranted in this case, discovery

5   concerning defendant's net worth may not be required if defendant does not attempt to

6   use his financial circumstances to limit the size of the award....Thus, it would be

7   premature to force the defendant to produce his net worth information at this time. If

8   necessary, plaintiff will have an opportunity to obtain discovery on the defendant's

9   financial circumstances as part of any post-trial discovery.") (emphasis added).

10         **6.**     ***GK's "Overly Burdensome" Objections Are Well-Founded.***

11         To date, as Plaintiffs are aware, Defendants have already produced more than

12   30,000 pages of documents in response to Plaintiffs' discovery requests in the course

13   of this litigation. *See* Declaration of John Sheehan ("Sheehan Decl."), ¶ 3. In making a

14   decision regarding burdensomeness, a court should balance the burden on the

15   interrogated party against the benefit to the discovering party of having the

16   information. *Hoffman v. United Telecomms., Inc.,* 117 F.R.D. 436,438 (D. Kan. 1987).

17   Plaintiffs' Motion fails to explain the benefit they would obtain should the court order

18   production of the sought-after documents. Rather, from Plaintiffs' Motion it appears

19   that Plaintiffs seek to obtain the documents for no other purpose than to further search

20   for damages which, to date, they still have been unable to articulate. Baker Decl., ¶ 2.

21         A discovery request should normally be granted unless it is tendered in bad

22   faith and unduly burdensome. *St. Paul Reinsurance Co. v Commer, Fin. Corp.* 198

23   FRD 508 (2000, ND Iowa). In addition to Plaintiffs' requests being over burdensome,

24   Plaintiffs have not made them in good faith. On this point, Plaintiffs' own

25   representation to the Court is illustrative:

26           "Conceivably, some documents produced by GK might incidentally be
        responsive to these requests (such as documents showing a

27           "reimbursement" payment to Mr. Girardi for travel expenses that were
        not actually incurred). Practically speaking, however, Plaintiffs do not

28

185127.9

have the information and documents requested by this discovery."
Sheehan Decl., ¶ 3.  The statement contained within the parentheticals, above, while an obvious attempt by Plaintiffs to be derisive, to jab at Defendants and attack their veracity without including specific facts, actually backfires.  Defendant GK has previously produced documents showing Mr. Girardi's travel expenses.  What this statement actually shows, therefore, is that Plaintiffs' counsel has not been as diligent and thorough in reviewing the documents produced by Defendants as it would have the court believe. Given that Plaintiffs' have demonstrated their failure to review Defendants' documents, it is not only more burdensome for Defendants to continue to produce documents which are irrelevant to the allegations in Plaintiffs' complaint and invasive of the privacy rights of persons associated with and unassociated with this litigation, but also more than illusory to find that Plaintiffs' have made such requests in good faith.

Furthermore, Plaintiffs' counsel's statement that "practically speaking," Plaintiffs are not in possession of the documents sought here, is virtually meaningless. Without anything more, Defendants are at a loss as to what Plaintiffs would consider practical or impractical in the given circumstances. It is unimportant whether the documents are "practical." That Plaintiffs are in possession of documents that are responsive or not, is the only matter of importance.  Similarly, Plaintiffs' counsel's reference to Defendants' produced documents as "might incidentally be responsive" to Plaintiffs' requests, is also meaningless for the purpose of the considerations in the instant motion. Plaintiffs' use of language to quantify Defendants' previously produced documents is not persuasive in demonstrating in showing Defendants have not produced these documents to date. Rather, by classifying documents as "incidentally" responsive to these requests, it just shows that cumulative, duplicative nature of the requests sought here compared to those previously propounded and responded to.

Most importantly, Defendant GK has provided verified responses to Plaintiffs' discovery requests. Defendant GK has also provided Plaintiffs every relevant non-

JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS

185127.9

1    privileged document in response to Plaintiffs' requests and has provided them in the

2    same manner in which the records were kept during the ordinary course of business.

3    To reproduce these documents or do otherwise would be vastly burdensome.

4          **7.      *GK's "Equally Available" Objections Are Well-Founded.***

5          Put simply, the document requests at issue in the instant motion to compel

6    could have been and should have been sought earlier by Plaintiffs.  Indeed, Plaintiffs

7    knew of the source of the materials it now seeks *before* noticing the Instant Motion

8    and executing the Joint Stipulation after both the discovery cut-off and after the last

9    day to hear motions. Given the more than 30,000 pages of documents Defendants

10   have already produced during the course of this litigation in response to Plaintiffs'

11   discovery requests pertaining to financial information , Defendants contend that

12   Plaintiffs presently have responsive information in their possession, custody, or

13   control.  Defendants' position asserted here is in line with FRCP Rule 26's protections

14   against unreasonably cumulative or duplicative discovery as well as undue burden and

15   expense. Rule 26 (b)(2)(C)(i) and (iii).  *See MGP Ingredients, Inc. v. Mars, Inc.*, 2007

16   U.S. Dist. LEXIS 76853 (D. Kan. 2007) ("While the Court recognizes that [the

17   requesting party] now faces the formidable task of having to determine which

18   documents are responsive to each particular request, [the requesting party] was the

19   party who formulated the requests in the manner it did and [the requesting party] must

20   take responsibility for undertaking the task of determining which documents relate to

21   each set of its twenty-some requests."). As such, Defendants' objections asserted on

22   the basis that responsive documents are equally available to Plaintiffs at this point in

23   the litigation should be sustained.

24   / / /

25   / / /

26   / / /

27

28

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

**8.** **GK's "Previously Produced Responsive Documents" Objections Are Well-Taken.**

    **a.** <u>**GK Has Previously Produced Documents Non-Privileged, Relevant Documents Responsive to Plaintiffs Requests At Issue Here.**</u>

To date, Defendant GK has produced the following documents in response to Plaintiffs' discovery requests prior to the instant Motion:

- On August 4, 2015, GK served "GK's Supplemental Responses to Plaintiffs' Request for Production, Set One," on Plaintiffs, consisting of 3,549 total pages of documents. Baker Decl., ¶ 17. Included in this production, are the following documents that overlap with Plaintiffs' discovery requests at issue here:
  - GK's 31-page case cost report, showing costs incurred during the HRT Litigation, from the time GK became involved up through the time GK closed the case after all settlements funds had been distributed to the HRT Claimants (attached thereto as Exhibit 5); and
  - An allocation chart showing each plaintiff's recovery and total fees, costs, and liens (the chart also shows the gross recovery, the fees, and the costs paid on all the GK HRT cases) (attached thereto as Exhibit 4).
- On September 28, 2015, GK served, "GK's Further Supplemental Response to Plaintiffs' Request for Production, Set One" on Plaintiffs, consisting of 21,675 total pages of documents. *Id.*, ¶ 18. Included in this production, are the following documents that overlap with Plaintiffs' discovery requests at issue here:
  - Chart of the HRT Case List cost totals, showing the GK check number, the payee date, and the amount paid (*See* Bates Nos. GK-FSupp-RPD1-000015076-000015171); and
  - All GK's case cost reports produced prior to the year 2014 (*See* Bates Nos. GK-FSupp-RPD1-015172—15311). *Id.*

- On November 3, 2015, GK served, "GK's Supplemental Response to Plaintiffs' Request for Production, Set 2" on Plaintiffs, consisting of more than 5,745 total pages of documents. *Id.*, ¶ 19. Included in this production, are the following documents that overlap with Plaintiffs' discovery requests at issue here:
  - Chart showing identifying each payment made by GK to each HRT Claimant, including the Torrey Pines check number (See Bates Nos. GK-Supp-RPD2-8841-8924);
  - Case costs for personnel incurred by GK during the course of the HRT Litigation, including back up documentation (See Bates Nos. GK-Supp-RPD2-10453-10751); and
  - Travel expenses incurred by GK during the course of the HRT Litigation, including back up documentation (See Bates Nos. GK-Supp-RPD2-10752-70954). *Id.*

- On November 17, 2015 Defendant GK produced, "GK's Supplemental Responses to Interrogatories, Set 1," on Plaintiffs, consisting of 182 total pages of documents. *Id.*, ¶ 20. Included in this production, are the following documents that overlap with Plaintiffs' discovery requests at issue here:
  - Schedule of payments made to HRT Claimants ("HRT Case List Cost Totals") (attached thereto as Exhibit A);
  - Spreadsheet of payments made to HRT Plaintiffs, demonstrating the amount of each payment made and cross-referencing it with the financial records from Torrey Pines Bank (attached thereto as Exhibit C);
  - Payments made to HRT Claimants, showing date issued, payee, amount and Bates number (attached thereto as Exhibit D);
  - Chart showing Medicare lien payments with TPB check number (attached thereto as Exhibit E); and
  - Correspondence re: payment for Thomas V. Girardi's trip to NY and PA (attached thereto as Exhibit H). *Id.*

**JOINT STIPULATION RE: PLS.' MOTION TO COMPEL NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

**b.** <u>**The Court Had Previously Advised Plaintiffs That They Have "Plenty" of Documents and They Cannot "Limitlessly" Pursue Discovery.**</u>

At the hearing on Plaintiffs' Application on October 5, 2015, after hearing Plaintiffs' arguments to continue the trial and for leave to serve additional discovery (which Plaintiffs replicate here), the Court responded to Plaintiffs as follows:

> "You know, you have **plenty of ammunition** as things stand right now to argue things to the jury. It's up to the firm to have an explanation and, of course, that has to be consistent with the initial disclosures. It has to be consistent with the documents that have been produced."

Baker Decl., ¶¶ 15-16; Ex. 9, p. 17 (emphasis added).

Furthermore, in support of its position that Plaintiffs were not entitled to conduct additional discovery, the Court opined as follows:

> I **disagree with the position of the plaintiffs** that they are the avenging angels here and that if a fraud was going on, that the jury needs to know about it or frankly that that is something that can **be limitlessly pursued** to in order to bolster the case. However, there are those who are empowered and have an interest in those matters apart from plaintiffs and their lawyers.

Baker Decl., ¶¶ 15-16; Ex. 9, p. 16 (emphasis added).

The Court's record is clear: discovery is not limitless and Plaintiffs cannot limitlessly pursue discovery. As shown above, at the October 5, 2015 hearing on Plaintiffs' application, two months prior to Plaintiffs' filing of this motion, the Court informed the Plaintiffs that there discovery efforts must cease and, in its written order, denied Plaintiffs request for leave to serve additional discovery.  During that hearing, the Court also emphasized the importance of the strict adherence to the discovery deadlines. As of the time of this filing, the discovery cut-off has passed. Baker Decl., ¶ 4.  Based on the foregoing, Defendants objections on the basis that they had previously produced responsive documents are well-taken and should be sustained.

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

## DEPOSITION OF THOMAS GIRARDI –

## RULE 30(B)(2) DOCUMENT REQUESTS

### REQUEST NO. 1:

DOCUMENTS sufficient to show [Thomas Girardi's] assets, liabilities and net worth as of year end 2011, 2012, 2013 and 2014, exclusive of filed tax returns.

### REQUEST NO. 2:

DOCUMENTS sufficient to show [Thomas Girardi's] income and expenses during the calendar years 2011, 2012, 2013 and 2014, exclusive of filed tax returns.

### REQUEST NO. 3:

DOCUMENTS sufficient to show all income [Thomas Girardi] received, directly or indirectly, from Girardi | Keese during calendar years 2011, 2012, 2013 and 2014, exclusive of filed tax returns

Friedberg Decl., Ex. 1 (Amended Depo. Notice to Girardi), Attachment A, p. 3.

### MR. GIRARDI'S RESPONSE:

[*Responses to Requests 1 to 3 are substantively identical.*]

Defendants object as Plaintiffs seek to discover information that is (1) not relevant to the subject matter of this litigation; (2) not reasonably calculated to lead to the discovery of admissible evidence; (3) not discoverable because the information is privileged.

Defendants' object to the notice and document request as Plaintiffs seek information protected by the privilege afforded to financial information and by the right of privacy afforded to persons and entities under the United States and California Constitutions.  *See Griswold v. State of Connecticut,* 381 U.S. 479, 484 (1965); *Britt v. Superior Court (San Diego Unified Port Dist.),* 20 Cal. 3d 844, 855-56 (1978).  Defendants claim such privilege and invoke such protection.

Privilege is a valid objection to discovery under Fed. R. Civ. P. 26(b)(5). *Walt Disney Co. v. DeFabiis,* 168 F.R.D. 281, 283 (C.D. Cal. 1996). Discovery may not be obtained regarding matters which are privileged. *See* Fed. R. Civ. P. 26(b)(1). To the extent privacy is a matter of privilege under state law, federal courts will honor the privilege and protect the responding party from discovery. *See* Fed. R. Evid. 501; *Saca v. J.P. Molyneux Studio Ltd.,* No. CIVS06-2818 MCE EFB, 2008 WL 62181, at *1 (E.D. Cal. Jan. 4, 2008) ("[s]tate privilege law should apply to purely state claims brought in

185127.9

federal court pursuant to diversity jurisdiction"); *see also Bozzuto v. Cox, Castle & Nicholson, LLP,* 255 F.R.D. 673, 676 (C.D. Cal. 2009).  In California, the right to privacy is set forth in Article I, Section I of the California Constitution and "extends to financial privacy in litigation...." *Saca* at *4.  Though the right of privacy is not absolute, an individual may invoke it to oppose the discovery of information concerning his or her financial affairs.  *See Hill v. Nat'l College Athletic Ass'n,* 7 Cal. 4th 1, 37 (1994); *Saca* at *4; *see, e.g., Schnabel v. Superior Court,* 5 Cal. 4th 704 (1993).

Defendants object because this request is unnecessarily invasive into the privileges and privacy rights of Mr. Girardi and Girardi | Keese. The interests of the responding party in the instant action outweigh the Plaintiffs need for the requested documents.  *See Davis v. Leal,* 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999) (The right of privacy in California extends to financial privacy in litigation, but is "subject to balancing the needs of the litigation with the sensitivity of the information/records sought"); *Sanchez v. City of Santa Ana,* 936 F.2d 1027, 1033-34 (9th Cir. 1990).  Moreover, Plaintiffs have not established any right to punitive damages (or damages in general).  *See Oakes v. Halvorsen Marine, Ltd.,* 179 F.R.D. 281, 284; *see also Kerner v. Superior Court,* 206 Cal.App.4th 84, 120 (2012).  Plaintiffs must, at least, show that they are entitled to such damages before discovering the information sought under this Request.  *See Oakes* at 284; *Kerner* at 120.

Friedberg Decl., Ex. 3 (Objs. to Amended Depo. Notice to Girardi), pp. 2-6.

## A.    Plaintiffs' Contentions in Support of Compelling Mr. Girardi to Produce Documents in Response to Requests 1 Through 3.

Mr. Girardi objects to Plaintiffs' requests on relevance, privacy and Section 3295 grounds.  These are the same objections as addressed above and should be overruled for the same reasons discussed above.

### 1.    *Mr. Girardi's "Relevance" Objections Are Meritless.*

The documents sought pertaining to Mr. Girardi's finances are relevant to determining the use and disposition of the Settlement Funds, his motives for misappropriating those funds and the jury's assessment of punitive damages against him.  Moreover, the time period involved – calendar years 2011 to 2014 – corresponds to the period during which Defendants misappropriated the Settlement Funds.  *See* Sheehan Decl., ¶ 4, Ex. 1 (evidence of $800,000 in transfers to GK in March 2011 in anticipation of receiving Settlement Funds).

- 53 -

1    ### 2. Mr. Girardi's "Privacy" Objections Are Meritless.

2        Mr. Girardi's privacy objections have been addressed repeatedly in this and

3    other motions. It should be overruled for the reasons stated above and in this Court's

4    prior orders compelling financial discovery.

5    ### 3. Mr. Girardi's Section 3295-Based Objections Are Meritless.

6        Mr. Girardi repeats GK's objection that Plaintiffs must first establish a right to

7    punitive damages before obtaining financial condition discovery, citing *Oakes*. As

8    discussed above, *Oakes* and progeny hold that Section 3295(c) sets forth a state

9    *procedural* rule and there is no requirement in federal court to obtain an order before

10   seeking financial condition discovery. The objection should be overruled for the

11   reasons stated above.

12   ### B. Mr. Girardi's Contentions in Opposition to Compelling Further Response.

13   ### 1. Mr. Girardi's "Relevancy" Objections Are Well-Founded.

14       Plaintiffs have failed to rebut Defendants' objections and have not met their

15   burden to establish the relevance of the information they seek. *See 3Com Corp. v. D-*

16   *Link Sys., Inc.*, No. C 03-2177 VRW, 2007 WL 949596, at *2 (N.D. Cal. Mar. 27,

17   2007) ("Once an objection to the relevance of the information sought is raised, the

18   burden shifts to the party seeking the information to demonstrate that the requests are

19   relevant to the subject matter involved in the pending action."). For these reasons, and

20   for the reasons discussed above, Mr. Girardi's relevancy objections should be

21   sustained.

22   ### 2. Mr. Girardi's "Privacy" Objections Are Well-Founded.

23       Mr. Girardi objects to Plaintiffs requests to produce documents in response to

24   Request Nos. 1 – 3 on the basis that the discovery sought comes within the zone of

25   privacy protected by article I, section 1 of the California Constitution, and thus,

26   impermissibly implicates both his personal and financial privacy interests. For these

27   reasons, and for the reasons discussed above, Mr. Girardi's privacy objections should

28   be sustained.

**JOINT STIPULATION RE: PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

### 3. Mr. Girardi's Section 3295-Based Objections Are Well-Founded.

As discussed above, Plaintiffs cannot discover Defendant's financial condition without first establishing a "substantial probability" of recovering punitive damages or a compelling need for the information sought,  which must be outweighed by Defendants' competing personal and financial privacy interests.  Accordingly, Mr. Girardi's objections based on Section 3295 objections should be sustained.

## V.    SANCTIONS.

## A.    Plaintiffs' Contentions in Support of Imposing Monetary Sanctions.

Under the Federal Rules, when a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," Fed. R. Civ. P. 37(a)(5)(A), unless the Court finds that "(i) the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action; (ii) the opposing party's nondisclosure, response or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id*., 37(a)(5)(A)(i)-(iii).

This is now the sixth motion to compel that Plaintiffs have been required to file.[17]  Further, as this Court is well aware, Defendants have engaged in a pattern of discovery abuses that has included the deliberate disregard of discovery obligations, willful violations of court orders, and the failure to meet and confer or to meet and

---

[17] The previous five are: (1) Motion to Compel Withheld Documents and Further Responses to Plaintiffs' Request for Production, Set One (granted July 21, 2015; Defendant's motion for review denied September 17, 2015); (2) Motion to Compel Answers to Plaintiffs' Interrogatories, Set Two (granted September 17, 2015); (3) Motion to Compel Answers to Plaintiffs' Interrogatories, Set Three (granted October 9, 2015); (4) Motion to Compel Responses and to Produce Documents to Plaintiffs' Requests for Production, Set Two (granted October 13, 2015); (5) Motion to Compel Supplemental Responses to Plaintiffs' Interrogatories, Set One (granted November 3, 2015).

185127.9

1   confer in good faith.  *See, e.g.,* Dkt. No. 152-4 (Shen Decl. re Mot. To Compel No. 5),

2   ¶¶ 8-48 (summarizing discovery); Dkt. No. 160 (Order re Plaintiffs' Ex Parte to Cont.

3   Trial Dates), pp. 2-10 (summarizing discovery and concluding that "Plaintiffs have

4   experienced delays with respect to almost every set of served discovery requests").

5       Indeed, Defendants' conduct in this case is precisely the type of behavior that

6   warrants the imposition of monetary sanctions.  *See Roadway Exp., Inc. v. Piper*, 447

7   U.S. 752, 763-64 (1980) ("Rule 37 sanctions must be applied diligently both to

8   penalize those whose conduct may be deemed to warrant such a sanction, and to deter

9   those who might be tempted to such conduct in the absence of such a deterrent."); *In*

10  *re Heritage Bond Litig.*, 223 F.R.D. 527, 530 (C.D. Cal. 2004) (Chapman, M.J.) ("The

11  Court may, in deciding whether to grant a motion for sanctions, 'properly consider all

12  of a party's discovery misconduct . . . , including conduct which has been the subject

13  of earlier sanctions.'") (citation omitted).  As Magistrate Judge Hillman once aptly

14  observed:

> For the discovery system to function properly, the costs of resisting discovery
> must be sufficiently great so that the benefits to be gained from sharp or evasive
> discovery practices are outweighed by the sanctions imposed when those
> practices are discovered.  It is not enough that an offender belatedly comply
> with its discovery obligations; "[i]f the only sanction for failing to comply with
> the discovery rules is having to comply with the discovery rules if you are
> caught, the diligent are punished and the less than diligent, rewarded."

20  *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, 2007 WL 2758571, *16 (C.D.

21  Cal. 2007) (internal citation omitted).

22      Moreover, none of the three narrow grounds for excusing the imposition of

23  sanctions apply here.  *First*, Plaintiffs made every effort to resolve this dispute without

24  the need to file this motion, including sending a detailed meet and confer letter,

25  sending a follow up email and conducting a meet and confer conference, all to no

26  avail.  *Second*, there is no substantial justification for Defendants' refusal to provide

27  discovery:  Plaintiffs are entitled to the documents and testimony they seek, all of

28  Defendants' objections are meritless, and Defendants have not even attempted to

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

1    muster any supporting facts or law to justify their positions.  *Third*, no other

2    circumstances would make an award unjust.  To the contrary, this is now the sixth

3    motion to compel Plaintiffs have been required to file because of Defendants' repeated

4    discovery abuses and stonewalling.

5            Under these circumstances, Rule 37 states that "the court *must . . . require* the

6    party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable

7    expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P.

8    37(a)(5)(A) (emphasis added).

9    **B.    Defendants' Contentions in Opposition to The Imposition of Monetary**

10           **Sanctions.**

11           Sanctions are not warranted here for two simple reasons: (1) Defendants'

12   responses were substantially justified, and (2) Plaintiffs should not receive a windfall

13   in light of their own inexcusable discovery delays.

14           ***First***, under Fed. R. Civ. P. 37(a)(5)(a)(ii), sanctions are *not* warranted if "the

15   opposing party's nondisclosure, response or objection was substantially justified."

16   Here, sanctions are not warranted because Defendants' objections were substantially

17   justified in that Plaintiffs' sought to discover Defendants' financial and, in effect,

18   personal information, the disclosure of which is ordinarily prohibited by the California

19   and United States Constitutions.  *See Internat. Fed. of Prof. & Tech. Engineers, Local*

20   *21, AFL*-CIO, 42 Cal.4th at 330 (stating that "[e]ven before the explicit incorporation

21   of the right of privacy into our state Constitution, we recognized that 'the protection of

22   one's personal financial affairs … is protected by the Fourth Amendment and which

23   also falls within [a] penumbra of constitutional rights").  Furthermore, Defendants

24   objected in good faith, intending only to protect their personal and financial privacy

25   interests.  Throughout the meet and confer process up through the instant motion,

26   Defendants had a good faith argument that their privacy interests protected the

27   documents from production.

28

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL**
**NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

1     **Second**, sanctions are not warranted because "other circumstances make an

2  award of expenses unjust," such as Plaintiffs' own inexcusable discovery delays.  Fed.

3  R. Civ. P. 37(a)(5)(A)(iii).  Here, Plaintiffs filed the instant motion approximately two

4  weeks before the discovery cutoff, which demonstrates Plaintiffs' overall lack of

5  diligence and efficiency during discovery, for example:

6        •     April 2014: Plaintiffs file this action.

7        •     November 5, 2014: Seven months after filing this action, Plaintiffs serve

8  their Requests for Production of Documents, Set One.

9        •     December 18, 2014: Eight months after filing this action, Plaintiffs serve

10  their Interrogatories, Set One.

11       •     June 11, 2015: Ten months after filing this action, Plaintiffs serve their

12  Interrogatories, Set Two and Set Three, and their Requests for Production of

13  Documents, Set Two.

14       •     June 30, 2015: Plaintiffs file their Motion to Compel Answers to

15  Interrogatories of Girardi | Keese To Provide Further Responses and Produce

16  Documents Responsive to Plaintiffs' Request for Production of Documents, Set One,

17  approximately eight months after serving the subject discovery requests.

18       •     July 21, 2015: The Court grants Plaintiffs' Motion to Compel Answers to

19  Interrogatories of Girardi | Keese To Provide Further Responses and Produce

20  Documents Responsive to Plaintiffs' Request for Production of Documents, Set One.

21       •     August 28, 2015: Plaintiffs file their Motion to Compel to Compel

22  Defendant Girardi | Keese To Provide Verified Substantive Answers To Plaintiffs'

23  Interrogatories, Set Two, two months after serving the subject discovery request.

24       •     September 4, 2015: Plaintiffs file their Motion to Compel To Compel

25  Defendant Girardi | Keese To Provide Verified Substantive Answers To Plaintiffs'

26  Interrogatories, Set Three, three months after serving the subject discovery request.

27       •     September 16, 2015: Plaintiffs file their Motion to Compel Answers to

28  Interrogatories of Girardi | Keese To Provide Further Responses and Produce

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

1  Documents Responsive to Plaintiffs' Request for Production of Documents, Set Two,

2  three months after propounding the subject discovery requests.

3       •       September 24, 2015: Plaintiffs move to compel Further Responses to

4  Interrogatories, Set One, eight months after propounding the subject discovery

5  requests.

6       Moreover, Plaintiffs' inexcusable delay shows that the discovery sought was

7  not essential to their case and that Plaintiffs suffered no prejudice due to Defendants'

8  nondisclosure.  Therefore, Plaintiffs should not receive a windfall in light of their own

9  inexcusable discovery delays.  At bottom, there is no basis for imposing monetary

10  sanctions against Defendants as Defendants properly objected to the requests at issue

11  here and their conduct has at all times been substantially justified

12                      **VI.    CONCLUSION**

13  **A.    Plaintiffs' Conclusion.**

14       For the foregoing reasons, Plaintiffs request that the Court overrule Defendants'

15  boilerplate and meritless objections; compel GK to produce a person most

16  knowledgeable to testify concerning GK's distributions, loans and other payments to

17  Messrs. Girardi and O'Callahan during the relevant time period; compel GK and Mr.

18  Girardi to produce the requested financial and net worth documents at or before their

19  depositions; and impose appropriate monetary sanctions, including attorney's fees, for

20  Defendants' conduct necessitating the filing of this motion.

21  **B.    Defendants' Conclusion.**

22       For the foregoing reasons, Defendants respectfully request that the Court (1)

23  deny Plaintiffs' motion to compel because it is untimely and in violation of the Court's

24  Scheduling Order; (2) find Plaintiffs' have not met their burden to demonstrate they

25  will suffer actual and substantial prejudice from the denial of discovery; and (3)

26  sustain Defendants' objections to the depositions and document requests at issue

27  should be sustained. If granted, Plaintiffs' motion to compel would function merely to

28  prejudice Defendants, harass Defendants, further delay the instant litigation, and

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL**
**NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9

1  effectively permit Plaintiffs to violate the Court's order barring both Plaintiffs and

2  Defendants from serving additional discovery.  Further, sanctions are not warranted

3  here because there is substantial justification for Defendants' objections and conduct

4  during this discovery dispute.

5

6  Dated:  December 8, 2015         **ISAACS FRIEDBERG & LABATON LLP**

7

8                                   By:   _/s/ Jeffrey B. Isaacs_____
                                        JEFFREY B. ISAACS, ESQ.
9                                       *Attorneys for Plaintiffs Judith Allen, et al.*

10

11

12  Dated:  December 8, 2015         **BAKER KEENER & NAHRA**

13

14                                  By:   _/s/ Phillip A. Baker_____
                                        PHILLIP A. BAKER, ESQ.
15                                      *Attorneys for Defendant Girardi | Keese, et al.*

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT STIPULATION RE:  PLS.' MOTION TO COMPEL
NET WORTH DISCOVERY AND FOR MONETARY SANCTIONS**

185127.9